UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA HERSKOVIC,<br><br>         *Plaintiff,*<br><br>  -against-<br><br>VERIZON WIRELESS,<br><br>         *Defendant.* | Case No.: 1:19-cv-03372<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS' MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION**<br><br>Case Removed: June 6, 2019 |

## **PRELIMINARY STATEMENT**

Defendant Cellco Partnership d/b/a Verizon Wireless, *incorrectly sued as* "Verizon Wireless" ("Verizon Wireless" or "Defendant"), is mindful that this Honroable Court recently referred the case to *non-binding* arbitration through the court (Ex. 1: Dkt. # 13), however Verizon Wireless respectfully requests that this Honorable Court vacate such arbitration notice and in its place enter an Order compelling Plaintiff to engage in *binding* arbitration with Verizon Wireless pursuant to the parties' written arbitration agreement.

Plaintiff Yehuda Herskovic ("Plaintiff") alleges that Verizon Wireless charged a disconnection fee on his account, reported inaccurate information on his credit report, and engaged in improper collection activities. Based on these allegations, Plaintiff asserts what appear to be claims against Verizon Wireless for violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

Plaintiff's action, however, cannot proceed in this judicial forum. That is, long before Plaintiff commenced this action, Plaintiff and Verizon Wireless expressly agreed to arbitrate "any dispute that in any way relates to or arises out of this agreement [with Verizon Wireless]."

Resepctfully, since this dispute ariseses from Verizon Wireless' credit reporting and collection efforts relating to Plaintiff's account balance, the parties' agreement to arbitrate must be honored.

Accordingly, Verizon Wireless requests that this Court vacate such arbitration notice and in its place enter an Order compelling Plaintiff to engage in *binding* arbitration with Verizon Wireless, and stay this entire llitigation until completion of such arbitration.

## STATEMENT OF FACTS

### A. Plaintiff Agreed to Resolve His Disputes with Verizon Wireless Through Binding Arbitration

Plaintiff activated his wireless cellular service with Verizon Wireless on or about April 2, 2014. Declaration of Daniel Reed ("Reed Decl."), ¶ 5; Ex. A. At the point of sale, Plaintiff signed a sales receipt ("Customer Receipt"), in which he expressly agreed to the terms of the Customer Agreement. *Id.*, Ex. A at p. 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also expressly stated:

> In this Customer agreement, you'll find important information about your Service . . . our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.

*Id.*, Ex. A at p. 1.

The Verizon Wireless Customer Agreement – which Plaintiff agreed to be bound by when he executed the Customer Receipt at the point of sale – contains an arbitration provision ("Arbitration Provision"), conspicuously bolded and in all capital letters:

> **HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?**
>
> **YOU AND VERIZON WIRELESS, BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE**

2

> DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. [. . . .]
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS [. . . .]

Reed Decl., ¶ 6, Ex. B at p. 8 (bolded text in original).

By signing the Customer Receipt at the point of sale, Plaintiff agreed to the terms of the Customer Agreement, including the Arbitration Provision. Reed Decl., ¶ 5, Ex. A, p. 1.

Further, by activating and using his wireless service, Plaintiff again agreed to the terms of the Customer Agreement, including the Arbitration Provision. The Customer Agreement specifically provides (in pertinent part) as follows:

> **HOW DO I ACCEPT THIS AGREEMENT?**
>
> You accept this agreement by:
>
> • Agreeing in writing, by email, over the phone, or in person;
>
> • Opening a package that says you are accepting by opening it; or
>
> • Activating your service.

Reed Decl., ¶ 6, Ex. B, p. 1 (bolded text in original).

The activation letter sent to Plaintiff also referenced and enclosed a copy of the Customer Agrement. *Id.* at ¶ 7 and Ex. C.

B.  **Material Allegations of the Complaint**

The crux of Plaintiff's complaint is his allegation is that Verizon Wireless improperly refused to remove erroneous charges from his cellular telephone account, erroneously reported the charges as a delinquent debt to various Credit Reporting Agencies, and sought to collect the

erroneous debt from Plaintiff. Complaint, pp. 2-3. Based on these allegations, Plaintiff asserts what appear to be causes of action against Verizon Wireless for alleged violations of the FCRA. Plaintiff specifically seeks (1) an injunction directing Verizon Wireless to cease all collection activity on the account and remove the deliquencies from his credit report, and (2) pay him $30,000 in damages for alleged emotional and other injuries he allegedly sustained as a result of Verizon's erroneous collection efforts and reporting of the delinquent account. Complaint, pp. 3-4.

## LEGAL ANALYSIS

### A. Disputes Falling Within the Scope of the Federal Arbitration Act Must Be Arbitrated

The Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 2, *et seq.*, reflects a congressional declaration of a "liberal federal policy favoring arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (*"Concepcion"*) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration on issues as to which an agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (emphasis in original). Any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp., supra*, 460 U.S. at p. 24–25; *see also CompuCredit Corp. v. Greenwood*, 595 U.S. 95, 109 (2012) (concurring opinion) ("[W]e resolve doubts in favor of arbitration").

"Contracts to arbitrate are not to be avoided by allowing [plaintiffs] to ignore the contract and to resort to the courts." *Southland Corp. v. Keating* , 465 U.S. 1, 7 (1984); *see also Dean Witter Reynolds, Inc., supra*, 470 U.S. at p. 219–21. Where a plaintiff refuses to submit a dispute to arbitration, a defendant may "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, a court's task on a motion to compel arbitration is limited to answering two simple questions: (1) does a valid arbitration agreement exist between the parties; and (2) does the dispute at issue fall within the scope of the agreement. *See* 9 U.S.C. § 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626–28 (1985); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–77 (1995); *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is "yes," then arbitration must be compelled.

B.  **The FAA Governs the Arbitration Provision**

As a preliminary matter, by its express terms, the Arbitration Provision is governed by and enforceable under the FAA. Reed Decl., ¶ 6, Ex. B, p. 8 ("THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT."). *See Preston v. Ferrer*, 552 U.S. 346, 353 (2009) (applying FAA's procedural rules pursuant to choice-of-law clause); *Volt Info. Scic., Inc. v. Bd. of Trustees of Leland Standard Junior Univ.*, 489 U.S. 468, 479 (1989) ("Parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted.").

But even absent the parties' express agreement, the FAA would nevertheless govern the Arbitration Agreement. Pursuant to 9 U.S.C. section 2, the FAA governs any (1) written arbitration provision (2) in a contract evidencing a transaction "involving commerce." 9 U.S.C. § 2 ("*A written provision* in any maritime transaction or a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.") (emphasis added). Here, both requirements are satisfied.

First, the Arbitration Provision is in writing. *See* Reed Decl., Ex. B.

Second, the Customer Agreement, a contract for wireless telephone services is indisputably a contract "involving commerce." *See* Complaint, p. 1 (Plaintiff's address is in New York and he contends the alleged conduct occurred in New York); Reed Decl., ¶ 4. (Verizon

Wireless is a citizen of Delaware and New Jersey). *See Citizens Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995) ("[W]e conclude that the word 'involving' [in Section 2 of the FAA] is broad and is indeed the functional equivalent of 'affecting.'"). The scope of the FAA is interpreted broadly to include any transaction affecting interstate commerce. *Id.* Thus, even where the transaction is entered into between residents of the same state and consummated in that state, the FAA applies if the economic activity in question, in the aggregate, is "within the flow of interstate commerce." *Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F.Supp.2d 1045, 1052 (D. Or. 2004) ("The particular transaction at issue 'taken alone,' therefore, need not have 'any specific effect' on interstate commerce to implicate the FAA.") (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003)). Courts have held that wireless telephone service is within the flow of interstate commerce for purposes of the FAA. *Ozormoor v. T-Mobile USA, Inc.*, 2008 U.S. Dist. LEXIS 58725 at *6 (E.D. Mich., June 19, 2008, No. 08-11717) (finding wireless phone service involved interstate commerce for purposes of FAA); *Davidson v. Cingular Wireless LLC*, 2007 U.S. Dist. LEXIS 21040 at *28-29 (E.D. Ark., Mar. 23, 2007, No. 2:06CV00133-WRW) (wireless phone service is a transaction in interstate commerce for purposes of FAA).

Accordingly, the FAA governs the Arbitration Provision, and the Court must apply federal substantive law in interpreting the Arbitration Provision. *Mitsubishi Motors Corp.*, *supra*, 473 U.S. at p. 626 ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

### C. A Valid and Enforceable Arbitration Agreement Exists Between Plaintiff and Verizon Wireless

State law principles of contract construction govern the analysis of whether parties agreed to arbitrate and, hence, whether the parties should be compelled to arbitrate their claims. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). Determining the parties' intent to arbitrate is a

question of law, and the parties' intentions are generously construed in favor of arbitrability. *Mitsubishi Motors Corp., supra*, 473 U.S. at p. 626.

Here, it is beyond reasonable dispute that Plaintiff expressly agreed to arbitrate all disputes with Verizon Wireless. Specifically, as noted above, Plaintiff's account with Verizon Wireless was only activated after Plaintiff accepted all of the terms and conditions of the Customer Agreement, including "SETTLEMENT OF DISPUTES BY ARBITRATION." Reed Decl., ¶¶ 5-7, Exs. A-C.

In addition, as a condition to activating his service, Plaintiff again expressly agreed to all the terms and conditions of the Customer Agreement. Reed Decl., ¶ 5; Ex. B at p. 1 ("You accept this agreement by: . . . Activating your Service . . . .").

Accordingly, there can be no legitimate dispute that Plaintiff is bound by the Customer Agreement, and the Arbitration Provision therein.

Indeed, courts throughout the country have enforced Verizon Wireless's arbitration provision. *See, e.g., Carney v. Verizon Wireless Telecom, Inc.*, 2011 U.S. Dist. LEXIS 88172 (S.D. Cal., Aug. 9, 2011, No. 09CV1854 DMS (WVG)) (compelling arbitration pursuant to Verizon Wireless Customer Agreement); *see also Litman v. Cellco Partnership d/b/a Verizon Wireless*, 655 F.3d 225 (3d Cir. 2011) (same); *Ikechi v. Verizon Wireless (VAW), LLC, et al.*, 2012 U.S. Dist. LEXIS 105717 (D. Minn. July 6, 2012, No. 10-4554 (JNE/SER)) (finding that Verizon Wireless (VAW) LLC's arbitration provision applies to billing disputes); *Rhodall v. Verizon Wireless of the East, L.P.*, 2011 U.S. Dist. LEXIS 102127 (D.S.C., Sept. 9, 2011, No. 1:10-3195-MBS) (compelling arbitration pursuant to Verizon Wireless Customer Agreement).

Accordingly, a valid arbitration agreement exists between Plaintiff and Verizon Wireless.

### D. The Arbitration Provision Encompasses Plaintiff's Claims for Relief

Once it has been determined that the parties entered into a binding arbitration agreement, the U.S. Supreme Court has held that a presumption of arbitrability applies:

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the

sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. at 582-583 (1960)).

Moreover, such presumption "is particularly applicable where the clause is as broad as the one employed in this case." *AT&T, supra,* at 650 (court noting breadth of arbitration provision ostensibly covering "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder...."). Hence, in cases involving such a broadly-worded arbitration provision as that included in the Customer Agreement, a heightened presumption of arbitrability applies, such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, [ ] only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail[.]" *Id.* Further in such cases, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650 (quoting *United Steelworkers, supra,* 363 U.S. at 582–83 (1960)).

Here, as a threshold matter, the broadly-worded Arbitration Provision covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT [. . . .]" Reed Decl., Ex. B, at p. 8. Hence, there is no question that the allegations regarding improper billing activities on Plaintiff's wireless account, the resulting credit reporting which was purportedly erroneous, and the collection activities related to the account, are all related to, and arise out of, Plaintiff's wireless account agreement with *Verizon Wireless. Pickens v. ITT Educational Services, Inc.*, 2012 WL 5198332 at *5 (S.D. Texas 2012) (citing *Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720 (E.D. Texas 2001) aff'd sub nom.

*Coffman v. Provost Umphrey L.L.P.*, 33 F.Appx. 705 (5th Cir. 2001) (court noting that an arbitration clause is broad when using the language "arises out of *or relates to*".)

In fact, removing any and all reasonable doubt as to whether credit reporting activities are covered within the scope of the Arbitration Provision, the Customer Agreement explicitly states that "we may investigate your credit history at any time and share credit information about you with credit reporting agencies and other Verizon companies [. . . .]" Reed Decl., Ex. B at p. 2.

Accordingly, Plaintiff's allegations fall squarely within the scope of the Arbitration Provision because this entire action involves a dispute relating to the accuracy of information Verizon Wireless reported to the credit reporting agencies with respect to Plaintiff's Verizon Wireless account, and Verizon Wireless' alleged collection activities relating to that account. Complaint, pp. 4-5. And more generally, this dispute clearly "relates to or arises out of" the Customer Agreement and the service plan that Plaintiff received from Verizon Wireless. Reed Decl., Ex. B, at p. 8; *Wynn Resorts v. Atlantic-Pacific Capital, Inc.*, 497 Fed. Appx. 740 (9th Cir. 2012) (directing district court to compel arbitration where parties agreed to arbitrate "any dispute, controversy or claim arising from or relating to th[e] Agreement"); *Willis v. Nationwide Debt Settlement Group*, 878 F. Supp. 2d 1208, 1212–1213 (D. Or., Mar. 30 2012, No. 3:11-CV-430-BR) (compelling arbitration of claims under clause providing for arbitration of claims "arising from or relating in any way to this Agreement . . ."). For all of these reasons, Plaintiff's dispute is fully encompassed by the Arbitration Provision.[1]

### E. This Litigation Should Be Stayed Pending Completion of the Arbitration

---

[1] Courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here between Plaintiff and Verizon Wireless. *See, e.g.*, *CompuCredit Corp, supra,* 595 U.S. 95 (credit card agreement); *Concepcion, supra,* 563 U.S. 333 (cellular phone services contract); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (consumer loan agreement); *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79 (2000) (finance contract for purchase of mobile home); *Dobson, supra,* 513 U.S. 265 (termite protection contract); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d. 553 (7th Cir. 2003) (consumer loan agreement); *Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000) (consumer loan agreement).

The FAA mandates the Court to stay this action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Katz v. Cellco Partnership*, 794 F.3d 341, 345 (2d. Cir. 2015) (". . . the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). Staying the litigation is not only mandated by law, but would promote judicial economy by avoiding the multiplicity of claims, discovery, costs, and judgments that could result from concurrent proceedings in two different forums. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings . . . whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.") (citations omitted); *Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000) (staying entire action even where only one defendant was entitled to compel arbitration because the non-compelling defendant's liability was dependent on the outcome of the arbitration).

Accordingly, the litigation should be stayed in its entirety pending the completion of the arbitration of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Verizon Wireless respectfully requests that the Court: (1) vacate its notice of arbitration (Dkt. # 13) and in its place enter an Order compelling Plaintiff to engage in binding arbitration with Verizon Wireless; and (2) stay this litigation in its entirety, pending completion of said arbitration.

Dated: New York, New York
       July 25, 2019

                                Respectfully submitted,

                                _____
                                Andrew P. Kates, Esq. (AK4164)
                                Segal, McCambridge, Singer & Mahoney, Ltd.
                                *Attorneys for Defendant*
                                **Cellco Partnership d/b/a Verizon Wireless,**
                                ***incorrectly sued as* "Verizon Wireless"**
                                850 Third Avenue, Suite 1100
                                New York, New York 10022
                                (212) 651-7500

TO:

Yehuda Herskovic
*Plaintiff Pro Se*
303 Marcy Ave.
Brooklyn, NY 11211