UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
YEHUDA HERSKOVIC,

                    Plaintiff,                     REPORT AND
                                                                                     RECOMMENDATION

  -against-

                                                                                     19 CV 3372 (AMD)(RML)

VERIZON WIRELESS,

                    Defendant.
----------------------------------------------------X
LEVY, United States Magistrate Judge:

         By order dated July 26, 2019, the Honorable Ann M. Donnelly, United States District Judge, referred defendant's motion to compel arbitration and stay this action to me for report and recommendation. I held conferences on September 10, 2019 and October 31, 2019. For the reasons stated below, I respectfully recommend that defendant's motion be granted.

## BACKGROUND

         Plaintiff *pro se* Yehuda Herskovic ("plaintiff") commenced this action in March 2019 in New York State Supreme Court, Kings County, alleging wrongful debt collection practices. (See Complaint, dated Mar. 26, 2019 ("Compl."), Dkt. No. 2-2.) Defendant Verizon Wireless ("defendant" or "Verizon Wireless")[1] removed the case to this court on June 6, 2019. (See Notice of Removal, dated June 6, 2019, Dkt. No. 2.) Defendant now requests an order compelling plaintiff to engage in binding arbitration with Verizon Wireless pursuant to the parties' written arbitration agreement. (Defendant's Memorandum of Law, dated July 25, 2019 ("Def.'s Mem."), Dkt. No. 13-1, at 1.)

---

[1] Defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (See Def.'s Memorandum of Law, dated July 25, 2019, Dkt. No. 13-1, at 1.)

Plaintiff alleges that on December 27, 2017, he signed a sales receipt and Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless home telephone equipment and services for his home phone number ending in 4565. (See Compl. at 1.) He alleges that after about a month, he began experiencing problems with the phone service, including dropped calls and difficulty hearing. (Id.) He states that he made many attempts to have his service fixed, but ultimately decided to cancel the service. (Id.) According to plaintiff, on December 10, 2018, a Verizon Wireless customer service supervisor agreed to waive the disconnection fee so he could take his business to another company. (Id.) Nonetheless, Verizon Wireless sent him a bill containing a $176 disconnection fee and, despite his complaints, refused to remove the fee from subsequent bills and then sent the unpaid $176 charge to collection and reported it to credit agencies. (Id. at 2.) He alleges that the charge damaged his credit, such that when he applied for a credit card, his application was denied. (Id.)

It is undisputed that plaintiff first activated his wireless cellular service with Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale, plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the Customer Agreement. (Id., Ex. A at 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also stated:

> In this Customer agreement, you'll find important
> information about your Service . . . our liability if things
> don't work as planned and how any disputes between us
> must be resolved in arbitration or small claims court.

(Id., Ex. A at 1.)

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

> HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?
> YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS[.]

(Id. ¶ 6, Ex. B at 8). The Customer Agreement also provides, in pertinent part:

> HOW DO I ACCEPT THIS AGREEMENT?
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

(Id. ¶ 6, Ex. B at 1). The activation letter sent to plaintiff also referenced and enclosed a copy of the Customer Agreement. (Id. ¶ 7, Ex. C.)

The Arbitration Provision applies to "any dispute that in any way relates to or arises out of this agreement **or** from any equipment, products and services you receive from [Verizon Wireless]." (See id., Ex. B at 8 (emphasis added)). Thus, it covers all subsequent disputes between the parties, including those related to other equipment or services. Regardless, the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December 2017 contain identical language. (See Supplemental Declaration of Daniel Reed, Esq., dated Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

# DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that the FAA declares a national policy favoring arbitration and courts must "'rigorously enforce' arbitration agreements according to their terms." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see also Nitro–Lift Techs., L.L.C. v. Howard, 568 U.S. 17, 20 (2012); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir. 2015).

The inquiry before the court is two-fold: (1) did the parties enter into a valid arbitration agreement? and (2) is the dispute within the scope of the arbitration agreement? In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

A court deciding a motion to compel arbitration must apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the

undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted); see also Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015) ("In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).

Here, the Arbitration Clause covers "any dispute that in any way relates to or arises . . . from any equipment, products and services you receive from [Verizon Wireless]." (See Dkt. No. 18-2 at 7.) This is sufficiently broad to create a strong presumption of arbitrability. See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause"). Moreover, plaintiff accepted the terms of the Customer Agreement on at least two separate occasions over more than four years of service with Verizon Wireless. Plaintiff first accepted the Customer Agreement when initiating service and opening his Verizon Wireless account in April 2014, and a second time in December 2017.

Plaintiff does not contest the validity or enforceability of the Arbitration Provision. Although plaintiff does complain that the Arbitration Provision and Verizon's

5

conduct are unfair, there is nothing in the record to suggest that the agreement was improper; the terms of Verizon Wireless service—especially the Arbitration Provision—are conspicuous in the Customer Agreement. See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract.") (quoting Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 CV 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004)).  Because the parties have consented to a broad agreement to arbitrate and plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements, I respectfully recommend that defendant's motion to compel arbitration be granted.

> With respect to defendant's request for a stay, section 3 of the FAA provides:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Accordingly, this court is required to stay the proceedings pending the outcome of the arbitration.  Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015).

**CONCLUSION**

For the reasons explained above, I respectfully recommend that defendant's motion to compel arbitration and stay this action be granted.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Donnelly and to my chambers within fourteen (14) days.  Failure to file objections in a timely

manner may waive a right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       January 23, 2020