ORIGINAL

Case No.: 1-19-cv-03372-AMD-RML

Date February 24 2020

Honorable Judge Ann M Donnelly

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

RECEIVED FEB 24 2020 PRO SE OFFICE

Dear Honorable Judge Ann M Donnelly

I Yehuda Herskovic am the plaintiff in this action. I respectfully write in objection to the Magistrate report and recommendation dated January 23, 2020.

### JURISDICTION PRINCIPLES REQUIRES HOLDING THAT ARBITRATION IS WAIVED

It is well established that the State Courts have concurrent jurisdiction with the federal courts as to claims arising under the Fair Credit Reporting Act. Ladino v. Bank of Am., 52 A.D.3d 571, 573, 861 N.Y.S.2d 683, 686 (2008). It is also well established that a "Plaintiff's choice of venue is entitled to deference." La Russo v. St. George's Univ. Sch. of Med., 936 F. Supp. 2d 288, 305 (S.D.N.Y. 2013), aff'd, 747 F.3d 90 (2d Cir. 2014). Defendant removed this case from State court, asserting that this action arises under the FCRA. There is no evidence that the State Court was incapable of deciding the complaint and deciding whether to compel arbitration. Thus, the Magistrate failed to take into account that Defendant chose the Federal Court as its choice of venue for this action.

Defendant filed an answer in this case. Now, Defendant seeks to bait and switch and judge shop for arbitration. But the Defendant was fully capable of pleading the exact same relief in the State Court. The Magistrate failed to recognize that the Defendant's removal of this case to federal court was Defendant's choice of venue, waiving any purported right to arbitration.

"A party is deemed to have waived its right to arbitration if it engages in protracted litigation that results in prejudice to the opposing party." S & R Co. of

Page 1

Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998). "While waiver of arbitration is not to be lightly inferred, the issue is fact-specific and there are no bright-line rules." Id. "Prejudice refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." NV Petrus SA v. LPG Trading Corp., No. 14CV3138NGGPK, 2017 WL 1831096, at *3 (E.D.N.Y. May 4, 2017).

While the removal statutes are generous, allowing a defendant to choose the federal courts over the state courts where there is a necessary to determine a federal right; "Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights." Home Depot U. S. A., Inc. v. Jackson, 139 S. Ct. 1743, 1746, 204 L. Ed. 2d 34, reh'g denied, 140 S. Ct. 17, 204 L. Ed. 2d 1172 (2019). There is a limit to how fast and loose removals should burden the federal courts; "Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits." First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 462 (6th Cir. 2002). If a Defendant plans to compel to arbitration and the State Court is fully capable of granting that relief, it is plainly inappropriate of abusing the removal statutes and bringing a state commenced action to the federal courts and asking for the exact same relief that the State courts were capable of granting.

Put it in plain sight, it is well established that "Federal courts must therefore apply background principles of state contract law when evaluating arbitration agreements." Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1419, 203 L. Ed. 2d 636 (2019)(Thomas quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009); Perry v. Thomas, 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). This idea that a defendant removes a case to the federal court for the purpose of compelling arbitration, is by its own action, not a determination of a federal right, but a determination of State law.

By having taken the detour of choosing federal court as the venue of determining this action, the only appropriate conclusion is that defendant waived any purported arbitration option and designated the federal court as the consensual place of venue. Against this backdrop, the Magistrate's report and recommendation should be rejected.

Page 2

## FEDERAL ARBITRATION LAW IS INAPPLICABLE

Before discussing the lack of an arbitration agreement, the Court cannot follow the Magistrate's analysis, which begins with 9 U.S.C. § 2 and end with § 3; the Magistrate applied the wrong statute here. Federal Arbitration Act, "doesn't extend to all private contracts, no matter how emphatically they may express a preference for arbitration." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 537, 202 L. Ed. 2d 536 (2019). "Section 2 provides that the Act applies only when the parties' agreement to arbitrate is set forth as a 'written provision in any **maritime** transaction or a contract evidencing a transaction involving **commerce**." Id (emphasis added). The Magistrate did not and could not match this case with maritime; this case is about harassment for false consumer charges.

This case also does not involve any "commerce" within the definition defined in 9 U.S.C. § 1. The Supreme Court "recognized that Sections 1, 2, and 3 and 4 are integral parts of a whole.... Sections 1 and 2 define the field in which Congress was legislating, and §§ 3 and 4 apply only to contracts covered by those provisions." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019). "[W]hether those provisions are part of a written maritime contract or a contract 'evidencing a transaction involving commerce under § 2—which, in turn, depends on the application of § 1." Id. Nothing in this case falls within the definition of commerce to apply to 9 U.S.C. § 2.

Having erred in applying §§ 2 and 3, the entire analysis by the Magistrate discussing federal policy is inapplicable and must be rejected on the law.

## THERE IS NO CONSENSUAL ARBITRATION AGREEMENT

The Magistrate made a plain error in assuming that the Customer Agreement constitute an agreement to arbitrate. But the signature of the Verizon Wireless Customer Agreement is not Plaintiff's. (Compare ECF 13-4 with 18-2). The Verizon Wireless Customer Agreement of ECF 13-4 is inconsistent with the Your Verizon Receipt of ECF 18-2. These inconsistencies conclusively show that Verizon does not provide to each consumer the exact same Customer Agreement.

Beside the false signatures, said Verizon Wireless Customer Agreement does not contain any language that Plaintiff accepted the arbitration clause. The only terms to which Plaintiff allegedly agreed are:

> *I understand that if I am porting in my phone number from another service provider, I may owe that provider an early termination fee and other charges, and I understand that, during the porting process, the ability for me to receive calls, including return calls from 911 personnel, will not be available.*
>
> *I AGREE TO THE **<u>CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT</u>** (CA), INCLUDING THE CALLING PLAN, (WITH EXTENDED LIMITED WARRANTY/SERVICE CONRACT, IF APPLICABLE), AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH HAVE BEEN PRESENTED TO ME BY THE SALES REP AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO AN EARLY TERMINATION FEE PER LINE AS REFLECTED ON THIS RECEIPT, LIMITATIONS. (Emphasis added).*

The record is plain that the only purported agreement is "Current Verizon Wireless Customer Agreement." There is no evidence in the record whatsoever that the Plaintiff agreed to the purported "My Verizon Wireless Customer Agreement" filed as ECF 13-5. These variations of Current... and My... illustrate this precise point, that there was no clear agreement that the consumer adopted any terms coaching an arbitration clause.

Then, when Plaintiff pointed out that the dispute in this case arises from a different phone number than presented in ECF 13-4 and 13-6. (ECF 20). The Magistrate directed Defendant to produce the correct agreement. In return, Defendant produced another false document as ECF 18-2 claiming that document constitute the arbitration agreement. Plaintiff disputed ECF 18-2 as not being his signature, not being a contract signed by him, not being his phone number, and the signatures being in complete contradiction to ECF 13-4.

It is well established, "the Court must consider the negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." <u>Ruane v. Bank of Am., N.A.</u>, 308 F. Supp. 3d 718, 722 (E.D.N.Y. 2018). "Where a plaintiff signs a non-negotiable contract with standardized language

Page 4

drafted by the defendant, this inequality in relative bargaining positions suggests that the asserted waiver was neither knowing nor intentional." Id. "The disparity in bargaining power between Plaintiff, an individual described as lacking any business or negotiation experience and Defendant BANA, a major bank, is apparent." Id at 722–23. See Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756, 762 (9th Cir. 1997), the mere having an Employee Handbook does not create a valid arbitration agreement.

"The presumption in favor of arbitrability should only be applied where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand. In other words, while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, **the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made**." Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017)(emphasis added).

The Supreme Court already described the business model of Verizon as a "monopoly." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 567–68, 127 S. Ct. 1955, 1972, 167 L. Ed. 2d 929 (2007). The terms Verizon imposes on consumers are in the nature of an autocrat, unilateral and self-centered about manipulating consumers. But in essence, Verizon cannot show that the least sophisticated consumer ,when buying a cellphone, expects to knowingly waive the rights of being heard by the judiciary.

The absence of a knowing consent to arbitration is lacking in this case. A simple comparison of ECF 13-4 with ECF 13-5 and ECF 18-2 proves this point. ECF 13-4 which was manufactured in error of this lawsuit, and is capable of easily being edited in a PDF software does not match the print of ECF 13-5, which is a scan of a paper copy.  The page sequence of 13-4 does not synchronize with the page sequence of 13-5. There is no evidence whatsoever that Plaintiff agreed to the terms proposed in ECF 13-5. Likewise, the first bill, which is filed as ECF 13-6, does not mention any hint about arbitration. Nor does 13-6 mention which "Customer Agreement" was attached to that bill. Moreover, there is no evidence whatsoever, that 13-5 was attached to 13-6 when it was first mailed.

It was not until Defendant removed this action to Federal Court and filed an answer, that Defendant manufactured the proposed arbitration clause. Then

when challenged, Defendant produced the ECF 18-2 an agreement signed by a nameless consumer and the signature does not match with the purported signature of ECF 13-4 and involves a phone number not belonging to Plaintiff. Moreover, ECF 18-2, which is dated 12/08/2016 is not consistent with the proceeding "Customer Agreement" dated "April 13, 2018" and filed as ECF 18-3. This sloppy manufacturing of duplicitous Customer Agreements was a nice try at baiting and switching before the Magistrate, but the Court should reject a duplicitous Customer Agreements that lacks the authenticity of reliability. As cited earlier, **"the presumption [of arbitration] does not apply to disputes concerning whether an agreement to arbitrate has been made**." Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017)(emphasis added).

"A court must therefore first determine whether: (1) the parties entered into a valid agreement to arbitrate; and (2) the dispute falls within the scope of the arbitration agreement." Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 699 (S.D.N.Y. 2017).

The inconsistencies between various Customer Agreements as to which one if any Plaintiff agreed on when accepting service from Verizon, the inconsistency between the quality of the PDFs, and the lack of signature or acknowledgment, demonstrates that no valid arbitration agreement exists.

Furthermore, ECF 13-5 at p. 4 and ECF 18-3 at p. 7 states "THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT." But the Supreme Court already dispelled that myth, the Federal Arbitration Act "doesn't extend to all private contracts, no matter how emphatically they may express a preference for arbitration." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 537, 202 L. Ed. 2d 536 (2019). As such, no valid arbitration agreement exists.

The defendant exhibits and statement from Mr. Reed is misleading and simply not true the first is an old contract nothing to do with this case the second is even worse not even my telephone number not my name and not my signature. The parody presented by the Defendant and recommended by the Magistrate in its report is respectfully objected.

## CONCLUSION

I respectfully request that the Court enter an order denying the motion to compel arbitration.

Sincerely Yours

Yehuda Herskovic

Send to Andrew Kates as attorney

For Verizon Wireless

SEGAL Mc CAMBRIDGE

SINGER & MAHONEY, LTD.

850 THIRD AVE .SUITE 1100

NEW YORK, N Y 10022

TEL 212 651 7500

FAX 212 651 7499