UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA HERSKOVIC, <br><br> *Plaintiff,* <br><br> -against- <br><br> VERIZON WIRELESS, <br><br> *Defendant*. | Case No.: 1:19-cv-03372(AMD)(RML) <br><br> **DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** <br><br> Case Removed: June 6, 2019 |

**I.  INTRODUCTION**

Plaintiff Yehuda Herskovic ("Plaintiff") has objected to Judge Robert M. Levy's Report and Recommendation ("Report") based on three entirely novel arguments raised for the first time in his Objection (Dkt. No. 27).  Specifically, Plaintiff asserts that: (1) Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") waived the arbitration agreement by removing this case to federal court; (2) the Federal Arbitration Act ("FAA") is inapplicable to the parties' arbitration agreement; and (3) Verizon Wireless "manufactured" the arbitration agreement.  All of these arguments are meritless, and none were raised in Plaintiff's Opposition to Verizon Wireless's Motion to Compel Arbitration ("Motion").  Accordingly, Verizon Wireless respectfully requests that the Court reject Plaintiff's Objection and follow Judge Levy's Report to grant Verizon Wireless's Motion and stay this action.

## II. LEGAL ARGUMENT

### A. The Court Need Not Consider the Novel Arguments Raised by Plaintiff in His Objection to the Magistrate Judge's Report

In the Second Circuit, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, No. 06–CV–3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (citations omitted); *see also Pierce v. Mance*, No. 08 Civ. 4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009) ("Rule 72(b) does not provide that new claims may be raised in objections to a report and recommendation."); *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) (refusing to consider novel argument raised for first time in objection to report and recommendation).

Here, Plaintiff did not previously raise any of the arguments he asserts in his Objection. *See* Plaintiff's Opposition to Motion (Dkt. No. 14). Accordingly, the Court is not bound to consider these novel arguments before accepting Judge Levy's Report.

### B. Verizon Wireless Did Not Waive the Arbitration Agreement

Plaintiff has cited no legal authority supporting his claim that Verizon Wireless waived the parties' arbitration agreement by removing this case to federal court. To the contrary, courts in the Second Circuit "have held that removal does not waive a right to arbitration." *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015), *citing Builders Grp. LLC v. Qwest Commc'ns Corp.*, No. 07 CIV. 5464 (DAB), 2009 WL 3170101, at *5 (S.D.N.Y. Sept. 30, 2009). "There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir.2002). "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's

litigation results in prejudice to the opposing party." *Id.*, at 105. The most important factor, however, is prejudice, such that "[w]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Id.*

In *Builders Group, supra,* the court found "Plaintiff's waiver claim to be without merit" and noted that "Plaintiff cites to no case in which a Court has ruled that a party waived its right to arbitrate by waiting two-and-a-half months, especially where that short delay resulted, as here, from a good-faith attempt to resolve the dispute through settlement." *Id.* at p. *5. Here, the fact that Verizon Wireless removed this case from state court does not support a finding of waiver. Moreover, as in *Builders Group*, Verizon Wireless has taken no action to litigate this case, aside from filing an answer (Dkt. No. 8), followed within weeks by bringing its Motion (Dkt. No. 13). Most importantly, Plaintiff has not identified any prejudice he would suffer by being ordered to arbitrate his claims. *See* Objection at p. 1-2. Accordingly, Plaintiff's waiver argument is meritless.

### C. The FAA Applies to the Parties Arbitration Agreement

Plaintiff also asserts for the first time in his Objection that the FAA does not apply to the parties' arbitration agreement. *See* Objection at p. 3. This argument is also meritless. As Verizon Wireless argued in its Motion and Judge Levy correctly found, the FAA indeed applies to the arbitration agreement.

By its express terms, the parties' arbitration agreement is governed by and enforceable under the FAA. *See* Declaration of Daniel Reed ("Reed Decl."), ¶ 6, Ex. B, p. 8 ("THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT."). *See Preston v. Ferrer*, 552 U.S. 346, 353 (2009) (applying FAA's procedural rules pursuant to choice-of-law clause); *Volt Info. Scic., Inc. v. Bd. of Trustees of Leland Standard Junior Univ.*, 489 U.S. 468,

479 (1989) ("Parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted.").

But even absent the parties' express agreement, the FAA would nevertheless govern the arbitration agreement. Pursuant to 9 U.S.C. section 2, the FAA governs any (1) written arbitration provision (2) in a contract evidencing a transaction "involving commerce." 9 U.S.C. § 2 ("*A written provision* in any maritime transaction or a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.") (emphasis added). Here, both requirements are satisfied.

First, the Arbitration Provision is in writing. *See* Reed Decl., Ex. B. Second, the parties' Customer Agreement, a contract for wireless telephone services, is indisputably a contract "involving commerce." *See* Complaint, p. 1 (Plaintiff's address is in New York and he contends the alleged conduct occurred in New York); Reed Decl., ¶ 4 (Verizon Wireless is a citizen of Delaware and New Jersey). *See Citizens Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995) ("[W]e conclude that the word 'involving' [in Section 2 of the FAA] is broad and is indeed the functional equivalent of 'affecting.'"). The scope of the FAA is interpreted broadly to include any transaction affecting interstate commerce. *Id*. Thus, even where the transaction is entered into between residents of the same state and consummated in that state, the FAA applies if the economic activity in question, in the aggregate, is "within the flow of interstate commerce." *Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F.Supp.2d 1045, 1052 (D. Or. 2004) ("The particular transaction at issue 'taken alone,' therefore, need not have 'any

specific effect' on interstate commerce to implicate the FAA.") (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003)). Courts have held that wireless telephone service is within the flow of interstate commerce for purposes of the FAA. *Ozormoor v. T-Mobile USA, Inc.*, 2008 U.S. Dist. LEXIS 58725 at *6 (E.D. Mich., June 19, 2008, No. 08-11717) (finding wireless phone service involved interstate commerce for purposes of FAA); *Davidson v. Cingular Wireless LLC*, 2007 U.S. Dist. LEXIS 21040 at *28-29 (E.D. Ark., Mar. 23, 2007, No. 2:06CV00133-WRW) (wireless phone service is a transaction in interstate commerce for purposes of FAA).

Accordingly, Judge Levy properly applied the FAA to the parties' arbitration agreement.

### D. The Parties Have a Valid and Enforceable Arbitration Agreement

Finally, Plaintiff suggests that he never agreed to arbitration, asserting variously that Verizon Wireless "manufactured" the arbitration agreement, which is a "false document," that the signatures on his sales receipts from 2014 and 2017 are "not his" and that the phone number at issue is "not his." *See* Objection, pp. 3-6. All of these claims are belied by Plaintiff's own Complaint and Opposition to the Motion (Dkt. No. 14).

As the Magistrate Judge noted, "Plaintiff alleges that on December 27, 2017, he signed a sales receipt and Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless home telephone equipment and services for his home phone number ending in 4565." *See* Cmplt. at p. 1. As the Magistrate Judge further observed, "Plaintiff does not contest the validity or enforceability of the Arbitration Provision." Report (Dkt. No. 25), p. 5. Instead, Plaintiff concedes in his Opposition that he "bought a home base [cellular] wireless device from Verizon Wireless at 100 Wall St." *See* Opp. (Dkt. No. 14), at p. 1. Accordingly, the Magistrate Judge held as follows:

It is undisputed that plaintiff first activated his wireless cellular service with Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale, plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the Customer Agreement. (Id., Ex. A at 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also stated:

In this Customer agreement, you'll find important information about your Service . . . our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.

(*Id.*, Ex. A at 1.)

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?
YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:
(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS[.]

(*Id.* ¶ 6, Ex. B at 8).

The Customer Agreement also provides, in pertinent part:

HOW DO I ACCEPT THIS AGREEMENT?
You accept this agreement by:

> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> Activating your service.
>
> (Id. ¶ 6, Ex. B at 1).
>
> The activation letter sent to plaintiff also referenced and enclosed a copy of the Customer Agreement. (*Id.* ¶ 7, Ex. C.)
>
> The Arbitration Provision applies to "any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from [Verizon Wireless]." (*See id.*, Ex. B at 8 (emphasis added)). Thus, it covers all subsequent disputes between the parties, including those related to other equipment or services. Regardless, the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December 2017 contain identical language. (*See* Supplemental Declaration of Daniel Reed, Esq., dated Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

Report, pp. 2-3.

Moreover, "Plaintiff accepted the terms of the Customer Agreement on at least two separate occasions over more than four years of service with Verizon Wireless. Plaintiff first accepted the Customer Agreement when initiating service and opening his Verizon Wireless account in April 2014, and a second time in December 2017." *Id.* at pp. 5.

Given that Plaintiff did not dispute the validity of the arbitration agreement in his Opposition to Verizon Wireless's Motion, and given that he concedes he used Verizon Wireless's services, the Court should reject Plaintiff's attempt to disclaim the arbitration agreement at this late stage. Plaintiff's claim that he did not agree to arbitrate all disputes with Verizon Wireless is simply not credible.

### III. **CONCLUSION**

For the foregoing reasons, Verizon Wireless respectfully requests that the Court adopt Judge Levy's Report and Recommendation, and compel the parties to contractual arbitration, while staying this litigation pending completion of the arbitration.

Dated: New York, New York
       March 2, 2020

                                                   Respectfully submitted,

                                                   /s/ Andrew P. Kates
                                                   Andrew P. Kates, Esq. (AK4164)
                                                   Segal, McCambridge, Singer & Mahoney, Ltd.
                                                 *Attorneys for Defendant*
                                                 **Cellco Partnership d/b/a Verizon Wireless,**
                                                 *incorrectly sued as* **"Verizon Wireless**"
                                                 850 Third Avenue, Suite 1100
                                                 New York, New York 10022
                                                 (212) 651-7500

TO:

Yehuda Herskovic
*Plaintiff Pro Se*
303 Marcy Ave.
Brooklyn, NY 11211