UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

**YEHUDA HERSKOVIC,**

Plaintiff,

- against -

**VERIZON WIRELESS,**

Defendant.

----------------------------------------------------------X

**ORDER**
1:19-CV-3372 (AMD) (RML)

**ANN M. DONNELLY,** United States District Judge:

On March 6, 2020, I granted the defendant's motion to compel arbitration. (ECF No. 29.) Over nine months have passed since then, and the plaintiff has not made a demand for arbitration as required by the parties' customer agreements. Instead, he continues to argue that there was no arbitration agreement between the parties. (ECF Nos. 33, 37.)[1] He also argues that because the defendant compelled arbitration, the defendant must initiate arbitration proceedings by making a demand. (*Id.*)

A motion to compel arbitration does not shift the burden of litigating claims to the party who compelled arbitration. Rather, a motion to compel merely acknowledges that pursuant to a contractual agreement, this Court does not have jurisdiction over the plaintiff's claims. *See* 9 U.S.C. § 3 (requiring courts to stay proceedings after referring issues to arbitration); *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (once the court compels arbitration "the court has no further power or discretion to address the issues raised in the complaint").

---

[1] The defendant interprets the plaintiff's most recent letter as a motion for reconsideration and Rule 11 sanctions. (*See* ECF No. 38.) Although it is unclear whether the plaintiff does indeed seek such relief, either motion would be denied. Local Civil Rule 6.3 requires a party to move for reconsideration of an order within fourteen days after the issuance of the order. The plaintiff filed his first letter raising objections to my March 6, 2020 decision on September 27, 2020, well outside the fourteen-day deadline. Additionally, I considered and rejected the plaintiff's argument that there was not a valid arbitration agreement in deciding the motion to compel. The plaintiff may not use Rule 11 sanctions to relitigate the validity of that agreement.

Therefore, if the plaintiff wants to pursue the claims that he raised in his complaint, he must do so by making an arbitration demand as required under the customer agreement. (*See* ECF No. 13-3.)

As the plaintiff points out, this case is at an "impasse." But it is at an impasse because the plaintiff has not initiated arbitration. To put this in plain terms: this is the plaintiff's lawsuit. The only way he can continue this case is to initiate arbitration proceedings. Then, the arbitrator will decide the merits of the case. It is not the defendant's responsibility to initiate arbitration, because it is the party being sued. It is the plaintiff's responsibility.

Accordingly, I grant the plaintiff an additional 90 days to initiate arbitration by filing an arbitration demand. If he does not make a demand for arbitration of his claims by March 29, 2021, I will deem his claims to be abandoned and dismiss this action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). *See Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2d Cir. 2001) (suggesting that "a court which stays an action pending arbitration nevertheless maintains jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure to prosecute under Rule 41(b)"); *see also Dhaliwal v. Mallinckrodt PLC*, No. 18-CV-3146, 2020 WL 5236942, at *2 (S.D.N.Y. Sept. 2, 2020) (dismissing action with prejudice for failure to prosecute pursuant to Rule 41(b) because the plaintiff failed to initiate arbitration after one year); *Shetiwy v. Midland Credit Mgmt.*, No. 12-CV-7068, 2016 WL 4030488, at *4 (S.D.N.Y. July 25, 2016), *aff'd*, 706 F. App'x 30 (2d Cir. 2017) (dismissing action for failure to prosecute (Rule 41(b)) and failure to comply with court orders (Rule 16(f)) after the plaintiff refused to initiate arbitration more than three years following the Court's order to compel arbitration).

## CONCLUSION

The plaintiff is directed to initiate arbitration within 90 days or show cause why this action should not be dismissed for failure to prosecute. The parties are directed to file a status report updating the Court on the arbitration proceeding no later than April 2, 2021. The Clerk of Court is respectfully directed to mail a copy of this order to the plaintiff.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      December 28, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
YEHUDA HERSKOVIC,

                          Plaintiff,                    REPORT AND
                                                        RECOMMENDATION
          -against-
                                                        19 CV 3372 (AMD)(RML)
VERIZON WIRELESS,

                          Defendant.
-----------------------------------------------------X
LEVY, United States Magistrate Judge:

          By order dated July 26, 2019, the Honorable Ann M. Donnelly, United States

District Judge, referred defendant's motion to compel arbitration and stay this action to me for

report and recommendation. I held conferences on September 10, 2019 and October 31, 2019.

For the reasons stated below, I respectfully recommend that defendant's motion be granted.

                                    **BACKGROUND**

          Plaintiff *pro se* Yehuda Herskovic ("plaintiff") commenced this action in March

2019 in New York State Supreme Court, Kings County, alleging wrongful debt collection

practices. (See Complaint, dated Mar. 26, 2019 ("Compl."), Dkt. No. 2-2.) Defendant Verizon

Wireless ("defendant" or "Verizon Wireless")[1] removed the case to this court on June 6, 2019.

(See Notice of Removal, dated June 6, 2019, Dkt. No. 2.) Defendant now requests an order

compelling plaintiff to engage in binding arbitration with Verizon Wireless pursuant to the

parties' written arbitration agreement. (Defendant's Memorandum of Law, dated July 25, 2019

("Def.'s Mem."), Dkt. No. 13-1, at 1.)

---

[1]   Defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (See Def.'s
Memorandum of Law, dated July 25, 2019, Dkt. No. 13-1, at 1.)

Plaintiff alleges that on December 27, 2017, he signed a sales receipt and

Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless

home telephone equipment and services for his home phone number ending in 4565. (See

Compl. at 1.) He alleges that after about a month, he began experiencing problems with the

phone service, including dropped calls and difficulty hearing. (Id.) He states that he made

many attempts to have his service fixed, but ultimately decided to cancel the service. (Id.)

According to plaintiff, on December 10, 2018, a Verizon Wireless customer service supervisor

agreed to waive the disconnection fee so he could take his business to another company. (Id.)

Nonetheless, Verizon Wireless sent him a bill containing a $176 disconnection fee and, despite

his complaints, refused to remove the fee from subsequent bills and then sent the unpaid $176

charge to collection and reported it to credit agencies. (Id. at 2.) He alleges that the charge

damaged his credit, such that when he applied for a credit card, his application was denied. (Id.)

It is undisputed that plaintiff first activated his wireless cellular service with

Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel

Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale,

plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the

Customer Agreement. (Id., Ex. A at 2 ("I AGREE TO THE CURRENT VERIZON

WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also stated:

> In this Customer agreement, you'll find important
> information about your Service . . . our liability if things
> don't work as planned and how any disputes between us
> must be resolved in arbitration or small claims court.

(Id., Ex. A at 1.)

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be

bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

2

> HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?
> YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES
> ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO
> JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE
> DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME
> DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN
> THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR
> AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD
> THEM TOO. WE ALSO BOTH AGREE THAT:
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.
> EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY
> DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS
> AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES
> YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY
> SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR
> MORE NEUTRAL ARBITRATORS[.]

(Id. ¶ 6, Ex. B at 8). The Customer Agreement also provides, in pertinent part:

> HOW DO I ACCEPT THIS AGREEMENT?
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

(Id. ¶ 6, Ex. B at 1). The activation letter sent to plaintiff also referenced and enclosed a copy of the Customer Agreement. (Id. ¶ 7, Ex. C.)

The Arbitration Provision applies to "any dispute that in any way relates to or arises out of this agreement **or** from any equipment, products and services you receive from [Verizon Wireless]." (See id., Ex. B at 8 (emphasis added)). Thus, it covers all subsequent disputes between the parties, including those related to other equipment or services. Regardless, the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December 2017 contain identical language. (See Supplemental Declaration of Daniel Reed, Esq., dated Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

3

## DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> a written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction . . . shall be
> valid, irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that the FAA declares a national policy favoring arbitration and courts must "'rigorously enforce' arbitration agreements according to their terms." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see also Nitro–Lift Techs., L.L.C. v. Howard, 568 U.S. 17, 20 (2012); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir. 2015).

The inquiry before the court is two-fold: (1) did the parties enter into a valid arbitration agreement? and (2) is the dispute within the scope of the arbitration agreement? In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

A court deciding a motion to compel arbitration must apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the

undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted); see also Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015) ("In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).

Here, the Arbitration Clause covers "any dispute that in any way relates to or arises . . . from any equipment, products and services you receive from [Verizon Wireless]." (See Dkt. No. 18-2 at 7.) This is sufficiently broad to create a strong presumption of arbitrability. See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause"). Moreover, plaintiff accepted the terms of the Customer Agreement on at least two separate occasions over more than four years of service with Verizon Wireless. Plaintiff first accepted the Customer Agreement when initiating service and opening his Verizon Wireless account in April 2014, and a second time in December 2017.

Plaintiff does not contest the validity or enforceability of the Arbitration Provision. Although plaintiff does complain that the Arbitration Provision and Verizon's

5

conduct are unfair, there is nothing in the record to suggest that the agreement was improper; the terms of Verizon Wireless service—especially the Arbitration Provision—are conspicuous in the Customer Agreement. See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract.") (quoting Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 CV 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004)). Because the parties have consented to a broad agreement to arbitrate and plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements, I respectfully recommend that defendant's motion to compel arbitration be granted.

With respect to defendant's request for a stay, section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Accordingly, this court is required to stay the proceedings pending the outcome of the arbitration. Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015).

## CONCLUSION

For the reasons explained above, I respectfully recommend that defendant's motion to compel arbitration and stay this action be granted. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Donnelly and to my chambers within fourteen (14) days. Failure to file objections in a timely

6

manner may waive a right to appeal the district court's order. <u>See</u> 28 U.S.C. § 636(b)(1); FED.

R. CIV. P. 6(a), 6(d), 72.

                                        Respectfully submitted,


                                        _____/s/_____
                                        ROBERT M. LEVY
                                        United States Magistrate Judge
Dated: Brooklyn, New York
       January 23, 2020

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

YEHUDA HERSKOVIC,                        :

                    Plaintiff,           :

        - against –                      :      **MEMORANDUM
                                                DECISION AND ORDER**
VERIZON WIRELESS,                        :      1:19-CV-3372 (AMD) (RML)

                    Defendant.           :

-------------------------------------------------------------- X

**ANN M. DONNELLY, United States District Judge:**

In March of 2019, the *pro se* plaintiff brought this wrongful debt collection practices

action against Verizon Wireless.[1] (ECF No. 2.) The defendant removed the case to this court

and moved to compel arbitration and stay the action. (ECF No. 13.) In a January 23, 2020

Report and Recommendation, the Honorable Robert M. Levy recommended that I grant the

defendant's motion. (ECF No. 25.) The plaintiff filed an objection. (ECF No. 27.) For the

reasons set forth below, I adopt Magistrate Judge Levy's well-reasoned opinion, grant the

defendant's motion to compel arbitration and stay the action.

## BACKGROUND

The plaintiff, the defendant's former customer, alleges that the defendant charged him a

$176 disconnection fee that the company had previously agreed to waive. (ECF No. 2-2 at 4.)

The plaintiff first activated his Verizon account in April of 2014. (ECF No. 13-4 at 1-2.) As part

of his purchase, he accepted the terms of a customer agreement by signing a customer receipt.

(*Id.*) The agreement provides that the parties "agree to resolve disputes only by arbitration[,]"

and that the agreement would be governed by the Federal Arbitration Act.[2] (ECF No. 13-5 at 4.)

---

[1] The defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (ECF No. 13-1 at 1.)

[2] The plaintiff subsequently signed at least one additional customer receipt—generated December 8,
2016—in which he again agreed to the arbitration provision. (ECF Nos. 18-2, 18-3.)

In December of 2017, the plaintiff signed an additional contract for home phone service. (ECF No. 2-2 at 3.) He started having problems about a month later—calls would drop and people had trouble hearing him—which the defendant could not fix. (*Id.*) He decided to cancel the service. (*Id.*) Although a customer service supervisor allegedly agreed to waive the disconnection fee, the company charged him anyway. (*Id.* at 4.) When he refused to pay, the company sent the debt to multiple collection companies, which in turn inundated the plaintiff with letters and calls. (*Id.*) The charge damaged his credit. (*Id.*)

The plaintiff brought this claim in March of 2019. (ECF No. 2-2.) The defendant removed the case to this court, and moved to compel arbitration and stay the case, asserting that the action was subject to arbitration per the customer agreement. (ECF No. 13.)

In his Report and Recommendation, Judge Levy concluded that the parties "consented to a broad agreement to arbitrate and [that the] plaintiff . . . failed to overcome the strong presumption of arbitrability that attaches to such agreements[.]" (ECF No. 25 at 6.) Additionally, he recommended that I grant the defendant's application to stay the action. (*Id.*)

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A party's objections must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the [r]eport and [r]ecommendation only for clear error." *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie,* No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

"[E]ven in a *de novo* review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012) (quoting *Kennedy v. Adamo*, No. 02-CV-1776. 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)) (alterations omitted).

A *pro se* party's objections are "generally accorded leniency" and construed "to raise the strongest arguments that they suggest." *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks and citations omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Serv.*, No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotation marks and citation omitted).

## DISCUSSION

The plaintiff makes three arguments: that he did not agree to arbitration, that the Federal Arbitration Act does not apply to the agreement, and that the defendant waived arbitration by removing the case to federal court. (ECF No. 27 at 1-3.) The defendant responds that the Court should not consider these arguments because the plaintiff did not raise them before Judge Levy. (ECF No. 28.) In any event, the defendant says that the plaintiff's objections are meritless. (*Id.*)

Even construing the plaintiff's *pro se* objections liberally, he did not raise two of his claims—that the Federal Arbitration Act does not apply, and that the defendant waived arbitration—before Judge Levy. "[T]he Court is only obliged to review the Report for clear error." *Pall Corp.*, 249 F.R.D. at 51. Nevertheless, because the plaintiff is representing himself,

3

I consider his objections *de novo*. I conclude that Judge Levy's report and recommendation was correct, and I adopt it in its entirety.

## I. General Standard

A court deciding a motion to compel arbitration applies a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). The Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) (second alteration in original), and draws all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016). I consider the plaintiff's signed customer receipts and agreements, which the defendant submitted with its motion to compel arbitration.

## II. Validity of Agreement

"Ordinary principles of contract . . . determine which parties are bound by an agreement to arbitrate." *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-CV-7646, 2019 WL 1353279, at *6 (S.D.N.Y. Mar. 15, 2018) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 235 (2d Cir. 1960)). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). A forged signature generally renders a contract void. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003).

The plaintiff maintains that he did not sign the 2014 and 2016 customer receipts, and that the customer agreements are "false documents" with "false signatures." (No. 27 at 3-4.)

4

"[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Contemporary Mission v. United States Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal citations and quotation marks omitted). The plaintiff's claim, which is not supported by any evidence, is insufficient to create a genuine issue of material fact. After all, the plaintiff admits that he signed multiple contracts with the company, and he was a Verizon customer for the period covered by the signed agreements. (ECF Nos. 1 at 1; 14 at 1.) In short, there is no credible evidence that the records that the defendant produced are forgeries or otherwise false. Accordingly, Judge Levy's conclusion that the "plaintiff accepted the terms of the [c]ustomer [a]greement on at least two separate occasions over more than four years of service with Verizon Wireless" was correct. (ECF No. 25 at 5.)

Equally unimpressive is the plaintiff's claim that the agreements do not govern the December 2017 purchase underlying the disputed charge. (No. 27 at 3-4.) "[A] broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder . . . ." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017) (citation omitted). The arbitration clause in the customer agreement covers "any dispute that in any way relates to or arises . . . from any equipment, products and services [the plaintiff] receive[d] from [Verizon Wireless]." (ECF Nos. 13-5 at 4; 18-3 at 7.) As Judge Levy determined, this language "is sufficiently broad to create a strong presumption of arbitrability" (ECF No. 25 at 5), including over services he later purchased in 2017.

## III. Federal Arbitration Act

Next, the plaintiff argues that the Federal Arbitration Act does not apply because this is not a maritime action involving commerce. (ECF No. 27 at 3.) But the Act is not limited to maritime actions. On the contrary, it provides that arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts").

The parties' agreements reference the statute explicitly, providing that "[t]he Federal Arbitration Act applies to this agreement." (ECF Nos. 13-5 at 4; 18-3 at 7.) Unfair debt collection and credit reporting claims are unquestionably covered by the Act. *See DeGraziano v. Verizon Comms., Inc.*, 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("[T]he plaintiff's claims that Verizon Wireless violated the FCRA arise out of and are related to the [customer service agreement]" and are "presumptively arbitrable."); *see also Biggs v. Midland Credit Mgmt.*, No. 17-CV-340, 2018 WL 1225539, at 5 n.4 (E.D.N.Y. Mar. 9, 2018) (FDCPA acts are arbitrable) (citation omitted). Accordingly, Judge Levy correctly applied the Federal Arbitration Act.

## IV. Waiver

Finally, the plaintiff says that the defendant waived arbitration by removing the case to federal court which, according to the plaintiff, constituted protracted participation in litigation. (ECF No. 27 at 1-2.) The "waiver of the right to arbitration is not to be lightly inferred," and the determination "is not susceptible to bright line rules." *Galeana v. Mahasan Inc.*, No. 14-CV-

3625, 2019 WL 3024588, at *4 (S.D.N.Y. July 11, 2019) (citation omitted).  Courts determining whether a party has waived arbitration consider "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Id.* (citations omitted).

"[T]he mere act of removing [a] claim from state to federal court is hardly the sort of aggressive participation in litigation" that constitutes waiver. *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015) (citation omitted).  The defendant removed the case to federal court within about two months of service and moved to compel arbitration a month later.  With the exception of the customer receipts and customer agreements, the parties have not engaged in significant discovery or motion practice.  Moreover, the plaintiff has not demonstrated any prejudice resulting from being ordered to arbitrate his claims.

Accordingly, Judge Levy correctly concluded that "the parties have consented to a broad agreement to arbitrate and [the] plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements[.]"  (ECF No. 25 at 6.)

## CONCLUSION

The defendant's motion to compel arbitration is granted.  The action is stayed pursuant to section 3 of the Federal Arbitration Act.[3]  The parties must provide a status report by July 24, 2020.

---

[3] The defendant requested a stay. (ECF No. 13-1 at 9-10.)  Accordingly, the court is required to stay the proceedings pending the outcome of the arbitration.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d.Cir. 2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [is] requested.").

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      March 6, 2020

SUPREME COURT OF THE STATE OF NEW YORK,

County of ~~New York~~ KINGS

| | |
|---|---|
| YEHUDA HERSKOVIC | Summons |
| Plaintiffs, | Index No. 1251-19 |
| —against— | The summons was filed on [*month, date, year*] |
| VERIZON WIRELESS | |
| Defendants, | |

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to appear in this action by serving a copy of your notice of appearance upon the undersigned within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete, if this summons is not personally delivered to you within the state of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Take notice that the object of this action and the relief sought is as follows:

[*With respect to each cause of action to be asserted (a) separately state and describe it in summary fashion, and (b) state the amount of monetary damages sought (unless this is an action for medical malpractice or against a municipality), or other relief to be sought*]. In case of your failure to appear, judgment will be taken against you by default for [state the monetary damages and/or other relief sought under all causes of action], together with costs and disbursements of this action.

The basis of the venue designated is [(plaintiff's residence or address) *or* (specify 2 other basis of venue under N.Y. C.P.L.R. Article 5, e.g., residence of the defendant, plaintiffs designation persuant to N.Y. C.P.L.R. 503(a), etc.)].

Dated, 03 / 26 / 2019 _____, New York

_____

¹ Summons and notice.—*See* CPLR 305(b).

Notice in matrimonial actions.—*See* DRL § 232(a).

KINGS COUNTY CLERK
RECEIVED
2019 MAR 28 PH 2: 35

AND I KEAP EXPLANING THAT I DO NOT OWE THIS MONEY
AND THEY INSIST THAT I DO OWE THEM AND I ALSO
CALLD VERIZON WIRELESS BUT THEY ALSO WERE
NOT TO HELP OUT THE SITUATION THEN I APPLIED
FOR CREDIT CARD FROM BARCLYS WICH I HAVE A
CREDIT CARD AND OTHER THEY DENIED ME
BECAUSE OF NEGATIVE INFORMATION ON MY
CREDIT REPORT FROM EXPERIAN AN TRANSUNION
THEY HARASD ME WITH THIS FRAUDELENT CHARGE
SO LATE AS DEC/07/2018 THEY SEND ME A NEW
COLECTION LETTER AN ALSO THEY PUT IT ON
MY CREDIT REPORT. EVAN THEY ADMIT IN
SMALL CLAIM COURT THEY REFUDED ME 698$ FOR
BAD SERVICE, BUT THE 176 THEY STILL HAVE IT
ON MY CREDIT REPORT AN NOW ON 3/1/2019
I RECEIVE A NEW LETTER WITH A MORE GRETER
CHARGE OF 341,83$ AS YOU CAN SEE ATACH COPY
FROM DYNAMIC RECOVERY SOLUTIONS WITH ADRESS
135 INTERSTATE BLVD. GREENVILLE, SC 29615
THE HARASMENT DONT STOP I CANT GET NEW CREDIT
CARD I LOST ABOUT 3000$ ON INSANTIVES THE HARASMEN
IS GOING ON STILL TODAY THEIR IS NO END TO MY
AGRAVASION FROM THIS FALSE AND FRAUDELENT
CHARGE IS MY VORST NIGHTMARE CANT SLEEP AT
NIGHT THIS IS CAUSING ME HEADACKES AN IN
MIDEL OF THE NIGHT I WAKE UP THINKING OF
THIS COLECTION LETERS. I AM NERVES AND HAVE
BAD DAYDREAMS FRIDAY DEC 7 2018 I SPOKE TO THE
SUPERVISER OF COLLECTION DEP OF DIVERSIFIED

3

CONSALTANTS, INC WITH THE NAME PERALTA
ANGELYN AN THEY STILL REFUSE TO REMOVE THE
DAMAGING INFORMATION WICH IS FRAUDELONT AN
FALSE EVEN AFTER REFUNDING THE WHOLE AMOUNT
OF CHARGES FOR MONTLY SERVICE SO ON DEC
13 2018 I CALD VERIZON WIRELES THEY GAVE ME
CONFLICKTING DATE WHEN MY SERVICE STATED
AN WHEN IT ENDED ON CREDIT REPORT IT IS WRITEN
DEC 1 2016 ~~ANT~~ ANT THEY CLAIM VERIZON WIRELES
SHE SAID JAN 07 2018 THEN THEY GAVE ME THE
DATE DEC 21 2016 AND DEC 27 2017 ALSO
REPREZENTITIVE COMFIRD THAT I CALD IN ON
ALL THIS DATES JUNE 28 2017, SEP 10 2017,
DEC 10 2017, OCT 30 2017, DEC 9 2017, DEC
10 2017, AND ON THIS DATE OF DEC 10 2017
I HAD A CONVERSATION WITH A SUPERVISER
THAT I CANOT GO ON LIKE THIS ANY LONGER
WITH THIS BAD SERVICE AN I AM SWITCHING
CARIER BECAVSE OF PHONE DROPS CALLS AND
PEARCE ON OTHER END CANT HEAR ME AN SHE
AGREED THAT I CAN GO TO A DIFRENT CARER
SON ON DEC 27 2017 I WENT TO AT&T.
SO NOW THE RELIEF I AM SEEKING FROM
COURT IS AS FOLOWS
1) THAT VERIZON WIRELESS AND ALL THEIR
COLECTION AGENCIES STOP THE HARASMENT
AND AGRAVATING ME WITH THEIR COLECTION
AND EARASE THIS CHARGES FROM COLECTION
ON MY CREDIT REPORT OF ALL CREDIT REPORTING

Note: Strike *italicized* wording which does not apply.

# VERIFICATION

STATE OF NEW YORK)

COUNTY OF KINGS     )        ss.:

YEHUDA  HERSKOVIC (your name), being duly sworn, deposes and says:

That I am the (plaintiff) / *petitioner / defendant / respondent* in this *action / proceeding*. That I have read the foregoing _____ and know the contents thereof; that the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief; and as to those matters I believe them to be true.

_____

(Plaintiff) / *Petitioner / Defendant / Respondent*
(Sign your name before a Notary Public)

YEHUDA  HERSKOVIC
(Print Name)

Sworn before me this 26

day of MARCH, 20 19

_____
Notary Public

CHAIM PERLSTEIN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE5075699
Qualified in Kings County
My Commission Expires 05-30-2019

KOSR 02/17

AGENCIES LIKE EQUIFAX TRANS UNION EXPERIAN TO
REMOVE THE NEGATIVE REPORTING
2. 30,000$ FOR THE DAMAGES THAT DAY CAUSED TO
ME WITH THEIR ACTION OF THIS FALSE AND FRAUDULENT
CHARGES AN COLECTION ALL THIS TIME FROM
DEC 27 2017 UNTIL TODAY THE COUR SHOOL ORDER
TO REMOVES THE NEGATIVE COLECTION AND
RPORTING AND A JUGMENT IN THE AMOUNT
OF 30,000$ TO ~~YEHUDA HERS~~ BE GIVEN
TO YEHUDA HERSKOVIC

Dated: 3/26/2019

_YEHUDA HERSKOVIC_
Plaintiff

## VERIFICATION

_YEHUDA HERSKOVIC_, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint
and know the contents thereof. The same are true to my knowledge, except as to matters
therein stated to be alleged on information and belief and as to those matters I believe
them to be true.

_Signature_

YEHUDA HERSKOVIC
Print Name

Sworn to before me this
26 day of MARCH 2019

_Notary Public_

CHAIM FEILSTEIN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE6076699
Qualified in Kings County
My Commission Expires 08-30-2019

5

*[month, date, year]*

**(Print name)** YEHUDA HERSKOVIC

**Attorney for Plaintiffs**

**Address:** 225 ROSS STR BROOKLYN N.Y. 11211

**Telephone Number:** 347 731 8818

## TO THE ABOVE NAMED DEFENDANTS:

**TAKE NOTICE** that this is an action for (*set forth nature of action*) personal injuries sustained by the plaintiff [*name of plaintiff*], caused by defendants' negligence; (*set forth relief sought*) the relief sought is recovery of money damages for plaintiff's injuries, pain and suffering, medical expenses, loss of present and future earnings, and for plaintiff's loss of services, companionship, support and consortium;[2] (*unless the action is for medical malpractice, set forth the sum of money for which judgment may be taken in case of default*) in case of your failure to appear, judgment may be taken against you for $[*amount*], with interest, from [*month, date, year*], together with the costs and disbursements of this action.[3]

Dated, 03 / 26 / 2019 , New York

　　　　　　[*month, date, year*]

_____ ,

**(Print name)**

**Attorney for Plaintiffs**

**Address:**

**Telephone Number:**

Bender's Forms for the Civil Practice
Copyright 2018, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

End of Document

---

[2] **Required specificity.**—*See* Weinstein, Korn, & Miller, New York Civil Practice—CPLR ¶ 305.12a.

[3] **Notice of amount.**—The figure appearing in the notice limits the amount the court may enter as judgement upon default. It does not, however, limit the amount that may be demanded in a complaint subsequently served. *See* Weinstein, Korn, & Miller, New York Civil Practice—CPLR ¶ 305.13.

PERMISON TO CANCELD THE CONTRACT AND GO TO A OTHER
PROVIDER AND COMPANEY WHO CAN GIVE ME PROPER
SERVICE THE SUPERVISER AGREED WITH ME AND SAID
SHE WILL WAVE THE DISSCONECTION FEE SO I WENT
TO ANOTHER COMPANY AT&T WITH THE SAME
SERVICE AND SAME WIRELESS DEVICE FOR HOME
SERVICE AND SWITCH THE SERVICE TO AT&T WIRELESS
ATT THE END OF THE MONTH VERIZON WIRELESS SEND ME
A FINAL BILL WITH A 176.00$ DISCONETION CHARGE
FOR GOING TO A OTHER COMPANE WHO CAN GIVE ME
SERVICE, I RIGHT AWAY CALLD VERIZON WIRELLES
AND ASK WHAT IS THE 176$ DISCONECTION CHARGE
I GOT PERMISION AN THE SUPERVISER PROMISD ME
TO WAVE THE DISCONECTION CHARGE AND I WAS ON
THE PHONE FOR A LONG TIME ARGUING WITH THE
CUSTOMER SERVICE REPRESENTIVE THEN WITH THE
SUPEVISER BUT BOTH REFUSD TO WAVE THE FEE
THEY DNIED ME MY RIGHT TO HAVE PROPER SERVICE
AND I VERIFIED ALL THE COMPLAIN'S I WAS MAKING
AN THEY STILL DNIED ME AN KEPT SENDING
BILL'S FOR ONLY THIS CHARGE ALL OTHER I WAS UP
TO DATE PAID EVERTHING I OWED EXCEPT THE
DISCONECT CHARGE, THAN THE REAL NIGHTMARE
STARTED, THEY SEND ME COLECTION LETTERS ONE
AFTER THE OTHER AN CALLS OF COLECTION DIFERENT
COMPANOY'S AN THEY PUT IT ON MY CREDIT REPORT
AS A NEGATIVE RUNING MY CREDIT ONE LETTER
FROM DIVERSIFIED CONSULTANTS, INC, PO BOX 551268
THEY CALLD ME HOME AN CELL DAY AFFTER DAY

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ~~QUEENS~~ KINGS
-------------------------------------------------x



YEHUDA HERSKOVIC Plaintiff,

- against -

VERIZO WIRELESS

Defendant.
-------------------------------------------------x

Index No. 1251 /20 19

VERIFIED
**COMPLAINT**

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, YEHUDA HERSKOVIC , respectfully shows and alleges as follows:

ON THE DATE OF 12/27/2017 I WENT IN TO THE VERIZON WIRELESS STORE ON 100 WALL STR NEW YORK NY. 10005, AND MADE A CONTRACT FOR A HOME DEVICE TO HAVE PHONE SERVICE WITH THE NUMBER 718-387-4565 AND THE CONTRACT WAS FOR TWO YEARS, AFFTER ABOUT A MONTH I STARTED TO HAVE DIFICULTIES WITH THE SERVICE, PEAPLE ON THE OTHER END COLD NOT HEAR ME AND CALLS WERE DROPT IN MIDEL OF A CONVERSATION THEN I CALLD THE COMPANEY VERIZON WIRELESS AND THEY TRIED TO FIX IT BUT IT WAS NOT HELPING TO MUCH IT KEPT ON AN ON AND I KEAP CALLING AN COMPLANING THEY STATED THAT NOTHING IS WRONG AND THE SAME PROBLEM WAS GOING ON AND ON I REALY GOT TIRED OF THE SITUATION, AND ON THE DATE OF DEC/10/2018 I SPOKE TO A COSTOMER SERVICE AND SHE TRANSFERD ME TO A SUPERVISOR AND TOLD THEM THAT I CANOT GO ON WITH THIS NO SERVICE AN DIFICULTIES I NEED PROPER SERVICE AND I ASKED

**Customer:**

YUDA HERSKOVIC

**Ship To:**

BETTER BUSINESS BUREAU
30 E 33RD ST
12TH FL
NEW YORK, NY 10016-5337

**Details:**

UPS Ground - Commercial
Date/Time:        3/19/2021 11:15:55 AM
[User Defined]:
Package ID:       33172
Shipment ID:      33160
Tracking Number: 1ZAR60710307818561
Weight(MAN WT):  0 LB 6.0 OZ
Rating Weight:   1 LB 0.0 OZ
Dimensions:      12.00 x 9.00 x 1.00
Declared Value:  $0.00

Contents:

**Charges:**

| | |
|---|---|
| Shipping: | 8.39 |
| Labor: | 0.00 |
| Packing Materials: | 0.00 |
| Sales Tax: | $0.00 |
| **Total:** | **$8.39** |

PC 11.12.1.36 ZDssi

Universal Mailboxes Inc
320 Roebling St
BROOKLYN, NY 11211
718-599-6245

Date: 03/19/21        Time: 11:16:37

Sale

Result:           APPROVED
Auth No:          09083B
Ticket No:        152581
Workstation:      Master Workstation
Account No:       ***********3498
Card Issuer:      VISA
Card Member:      HERSKOVIC/YEHUDA
Amount:           16.78
AID: A0000000031010
Application Label: VISA CREDIT

Signature X.........................

I Agree to Pay Above Total Amount
According to Card Issuer Agreement
(Merchant Agreement if Credit Voucher)

**Customer:**

YUDA HERSKOVIC

**Ship To:**

HOWARD A FRIED, MCGIVNEY KLUGER CLARK PC
80 BROAD ST
23RD FL
NEW YORK, NY 10004-2209

**Details:**

UPS Ground - Commercial
Date/Time:        3/19/2021 11:13:02 AM
[User Defined]:
Package ID:       33171
Shipment ID:      33159
Tracking Number: 1ZAR60710311563757
Weight(MAN WT):  0 LB 5.0 OZ
Rating Weight:   1 LB 0.0 OZ
Dimensions:      12.00 x 9.00 x 1.00
Declared Value:  $0.00

Contents:

**Charges:**

| | |
|---|---|
| Shipping: | 8.39 |
| Labor: | 0.00 |
| Packing Materials: | 0.00 |
| Sales Tax: | $0.00 |
| **Total:** | **$8.39** |

PC 11.12.1.36 ZDssi