**ORIGINAL** 

Case No.: 1-19-cv-03372-AMD-RML

Date June 22, 2021
Hon. Ann M. Donnelly
United States District Court
Eastern District of New York

Dear Judge Donnelly,

I Yehuda Herskovic am the plaintiff in this action and provide the Court a response to Defendant's status report (ECF 48).

On April 13, 2021, the Court Ordered, "No later than April 20, 2021, the defendant is directed to respond to the plaintiff's April 9, 2021 letter 45, and explain to the Court whether the plaintiff has commenced an arbitration proceeding before the BBB, and if not, **what additional steps the plaintiff must take to commence the arbitration**." (Emphasis added).

On April 10, 2021, Defendant filed a status report, and "…The BBB informed counsel that the Complaint remains in process, and that no arbitration has been initiated based on the Complaint because the BBB requires that 30 days pass from the filing of a Complaint before an arbitration can be commenced. At the conclusion of the 30 days, Plaintiff may commence the arbitration by informing the BBB that he wishes to proceed with binding arbitration in that forum." (ECF 46).

It needs to be emphasized that, despite the Court directed the Defendant to "state what additional steps the plaintiff must take to commence the arbitration," Defendant did not inform the Court of the link https://bbbprograms.org/programs/all-programs/VerizonDisputeResolution ("link"). Defendant also did not inform the Court of the letter it attaches as ECF 48-1 ("letter"). This is the type of mockery Defendant make of due process, leaving the Court and the Plaintiff hanging and then pulling a new line of chores, whenever confronted with the unviability of its purported arbitration agreement.

Furthermore, the purported "User Agreement" that Defendant anchored as the purported "arbitration agreement," also does not inform the Court of the link and

Page 1

letter that Defendant attaches after months of having the duty to notify the Court of what additional steps the plaintiff must take to commence the arbitration.

Plaintiff has duly filed a letter with the BBB, based on the information that was available to him. (ECF 41). Now defendant is revealing a new letter outlining new terms that it has concocted with the BBB in some unknown date in 2020, long after this lawsuit was initiated.

More troubling, Defendant does not deny contacting the Gina B. at the BBB and informing her that Defendant will not attend arbitration at the BBB. When Plaintiff called Gina B. at the BBB to inquire what steps he must take to "initiate" the arbitration proceedings, Plaintiff received the stone wall, instead of receiving any information that would help get this case moving.

Moreover, the letter and the link produced by Defendant shows that Defendant and the BBB, and equally the AAA, have created formal agreements and arrangements that would materially affect any arbitration proceedings involving Defendant. Until now, Defendant failed to produce the letter and the link, because these information show that AAA and BBB are not some innocent parties running an independent arbitration business, but AAA and BBB have an extended relationship with Defendant intertwined with business arrangements that would materially affect the fairness of any arbitration proceeding. In particular, if it is true that Defendant has an intimate relationship with BBB and AAA, then they are not "neutral arbitrators" as provided in the very purported arbitration agreement, labeled as a "user agreement" (ECF 13-5), but what case law qualify as having a "repeat player effect" and grounds for disqualification.

The letter dated 2020 are simply in contrast to the very purported arbitration agreement, labeled as a "user agreement" (ECF 13-5) that Defendant has claimed compels arbitration. ECF 13-5 clearly states "(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, <u>ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT</u> ... NEUTRAL ARBITRATORS BEFORE THE <u>AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB")</u>." And "(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") **RULES** WILL APPLY..."

Nowhere does the "user agreement" limit any claims arbitrated at the BBB to the amount in controversy. A purported arbitration agreement can provide the rules that the arbitrator must follow, and that is all that ECF 13-5 does.

Defendant cannot show any agreement where Plaintiff agreed to limit claims at the BBB to $10,000. Defendant is now trying to impose on Plaintiff a new arraignment that they concocted in 2020 with BBB during the pendency of this action. That after the fact arrangement Defendant has made with BBB is not binding on Plaintiff but goes to show that Plaintiff is entitled to pre-arbitration discovery to establish whether the purported arbitration venues have any conflict of interest preventing the fair arbitration of the controversy at issue.

Now, that Defendant does not like the language Plaintiff quotes from ECF 13-5 instead defendant reference ECF 18-3, another "customer agreement" that was manufactured on April 13, 2018. ECF 18-3 is completely irrelevant to Plaintiff, even considering the order compelling arbitration, since the complaint alleges that the purchase at issue happened on December 27, 2017 (ECF 2-2), three and half months before the ECF 18-3 customer agreement. Even ECF 18-3 tracks the same relevant language of ECF 13-5 and the terms must be construed against the drafter, Defendant.

## Conclusion

Defendant has been playing fast and loose with what rights Plaintiff has or does not have to have the underlying controversy decided. Defendant's conduct arises from illusory "agreements" that Defendant drafts to benefit themselves and escape or diminish from all consumer protection laws enacted by Congress.

This time Defendant seeks to add-on terms and conditions to the underlying controversy not found in the purported "user agreement."

Wherefore, Plaintiff respectfully requests that the Court enter an order prohibiting the Defendant from imposing any terms and conditions on the underlying controversy that was not attached in its motion to compel arbitration. Without waiving appellate review of the contentions Plaintiff has regarding the order compelling arbitration, one thing is for sure, judicial estoppel prevents Defendant from advancing any new arbitration terms that was not found in its motion to compel arbitration.

Respectfully submitted,

Yehuda Herskovic, yhm1234@yahoo.com, **347 731 8818**