# Case No.: 1-19-cv-03372-AMD-RML

Date July 5, 2021
Hon. Ann M. Donnelly
United States District Court
Eastern District of New York



RECEIVED
JUL 0 6 2021
PRO SE OFFICE

## Dear Judge Donnelly,

I Yehuda Herskovic am the plaintiff in this action. I must bring to the Court's attention facts that the following issues in advance to the status conference.

## Background

On July 25, 2019, Defendant moved the Court to compel arbitration, relying on a 2013 "Customer Agreement" (ECF 13), in relevant part states, the parties will arbitrate "<u>ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT</u> … BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE <u>AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB")</u>." (ECF 13-5).

On March 6, 2020, the Court entered an order compelling arbitration. (ECF 29).

On December 28, 2020, the Court compelled Plaintiff to initiate arbitration by filing a demand for arbitration. (ECF 39).

On March 15, 2021, I filed, under protest, a demand for arbitration with the Better Business Bureau. (ECF 41).

On March 31, 2021, Defendant filed a false status report misrepresenting that I did not initiate arbitration proceedings. (ECF 42).

On April 5, 2021, the Court directed Defendant to clarify the conflicting filings.

On April 8, 2021, Defendant repeated the same falsehood, that I did not initiate arbitration. "'Verizon Wireless' ('Defendant') has not yet received any notice from the BBB that an arbitration has been commenced pursuant to Plaintiff's March 15, 2021 letter (received on March 22)." (ECF 44).

Page 1

On April 9, 2021, I filed with the Court evidence showing that on March 25, 2021, Defendant confirmed with the BBB that it received the demand for arbitration and labeled it as a "complaint." (ECF 45).

On April 13, 2021, the Court directed Verizon to clarify the conflicted filings: "No later than April 20, 2021, the defendant is directed to respond to the plaintiff's April 9, 2021 letter 45, and explain to the Court whether the plaintiff has commenced an arbitration proceeding before the BBB, and if not, **what additional steps the plaintiff must take to commence the arbitration**." (Emphasis added).

On April 20, 2021, Defendant represented to the Court, "Counsel for Defendant has spoken with the **Better Business Bureau** ("BBB") to clarify the status of the Complaint/Demand for Arbitration under Duress ('Complaint') that Plaintiff Yehuda Herskovic ('Plaintiff') filed on or about March 26, 2021 (see Doc. # 41). The BBB informed counsel that the Complaint remains in process, and that no arbitration has been initiated based on the Complaint because the BBB requires that 30 days pass from the filing of a Complaint before an arbitration can be commenced. At the conclusion of the 30 days, Plaintiff may commence the arbitration by informing the BBB that he wishes to proceed with binding arbitration in that forum.") (ECF 46 emphasis added).

On April 22, 2021, the Court ordered, that by "No later than June 21, 2021, the plaintiff must formally commence an arbitration proceeding with either the BBB or the AAA".

On June 8, 2021, I called the Better Business Bureau to inquire what steps I would have to take to initiate the compulsory arbitration proceedings. I was informed by Gina B. that an unnamed attorney for Verizon contacted them and advised them that Verizon would not consent to arbitration at the "Better Business Bureau." As a result, the Better Business Bureau issued a letter of "insufficient information". The Better Business Bureau refused to provide any other information. I immediately filed a status report. (ECF 47).

On June 21, 2021, Defendant filed a status report with the Court stating, Plaintiff must submit an Arbitration Request Form with the "**BBB National Program**" on its web portal at https://bbbprograms.org/programs/all-programs/VerizonDisputeResolution ("link") (ECF 48). Defendant also attached a

letter of protocol created by the BBB National Program for Verizon ("letter"). (ECF 48-1).[1]

On June 21, 2021, the Court ordered, "A status conference will be held on June 29, 2021 at 12:30 p.m. in Courtroom 4G North. The defendant should ensure that a BBB representative, who can address the issues raised in the parties' letters 47 and 48, is in attendance."

On June 24, 2021, the Defendant filed a status report stating, that the BBB National Program is located in Arlington Virginia and cannot appear in person. (ECF 50). This time, Defendant also attached an affidavit from the BBB National Programs, falsely claiming "BBB NP has been in operation through various BBB entities since 2003 and has always had a $10,000 limit." (ECF 51). Defendant also attached the 2020 rules of the "BBB National Programs Dispute Resolution Program for Verizon Wireless Customers" (ECF 51-1) and the Arbitration Request Form for the BBB National Programs (ECF 51-3).

On June 28, 2021, Defendant filed another status report stating that Juan Herrera is not available to appear on June 29, 2021. (ECF 52).

On June 28, 2021, the Court ordered "No later than June 30, 2021, the defendant is directed to provide the Court with dates and times in the coming weeks for a status conference during which a BBB representative will be available."

On June 30, 2021, Defendant represented the availability of the BBB National Programs. (ECF 53).

On June 30, 2021, the Court directed "No later than July 1, 2021, the defendant is directed to provide the Court with all dates and times in the week of July 12, 2021, for a status conference during which any BBB representative will be available."

---

[1] At the time, Plaintiff did not spot the difference between the Better Business Bureau and the BBB National Program; two separate entities as outlined later below.

On July 1, 2021, Defendant filed a list of available dates for an unnamed person on behalf of BBB National Programs who would appear by phone before the Court. (ECF 55).

On July 1, 2021, the Court scheduled the status conference July 13, 2021, and ordered, "The defendant will ensure that a BBB representative is available by telephone."

## Issues

The Better Business Bureau is a trademark of the International Association of Better Business Bureaus, Inc., an organization that has been in operation since 1912. (See Exhibit A). The Better Business Bureau is referred to "BBB" in short, with a website bbb.org, and is run by a team of Executives. (Exhibit B). The name the Better Business Bureau has been known to all of us and when its name is mentioned every other knows who they are.

The BBB National Programs Inc. is a Delaware corporation that was founded in Delaware on January 24, 2019. (Exhibit C). On April 26, 2019, the BBB National Programs was registered in New York as a foreign corporation. (Exhibit D). The BBB National Programs operates the website bbbprograms.org.

Although the International Association of Better Business Bureaus and BBB National Programs use "BBB" as its name of reference, they are not the same entities but autonomous groups. The Better Business Bureau consists of executives, as listed in Exhibit B. However, the BBB National Programs consists of a completely different group of people as its directors. (Exhibit E).

The Better Business Bureaus operate its own website, completely unrelated to the BBB National Programs.

Among the "directors" of the BBB National Programs is "Verizon" and has W. David Hubbard its "Vice President and Deputy General Counsel" as a director of the BBB National Program. (Exhibit F).

**Issue 1**: The Customer Agreement, which defendant claims as the arbitration agreement, refers to the Better Business Bureau and bbb.org with no mention of the "BBB National Programs" or "bbbprograms.org". (ECF 13-5).

Defendant is misleading the Court by claiming that Plaintiff needed to file a demand for arbitration with the BBB National Programs and follow the protocol of the BBB National Programs. Defendant is misusing the reference "BBB" to directly mislead the Court about the protocol to initiate the arbitration proceedings. As of April 20, 2021, the Defendant represented to the Court that Plaintiff would need to initiate the arbitration proceedings before the Better Business Bureau. (ECF 46). Now the Defendant is on a bait and switch, telling the Court that the arbitration proceedings need to be commenced with the "BBB National Programs", a completely different corporation.

**Issue 2**: as the evidence shows, the BBB National Programs were founded in 2019, a month after the controversy in this case was already born. The BBB National Programs was not even registered in the State of New York until after this lawsuit was filed in the State Court. Yet, Defendant is falsely misrepresenting to the Court that the BBB National Programs "has been in operation through various BBB entities since 2003 and has always had a $10,000 limit." (ECF 51). That is wrong. Verizon is plainly misleading the Court to unjustly extend the BBB National Programs as having some relevance on the matter before the Court, when in fact the User Agreement (ECF 13-5) has no mention of either the BBB National Program or any limit in the amount in controversy for disputes arbitrated at the Better Business Bureau. The Defendant is misusing the reference "BBB" to confuse the record and the Court by trying to add terms and conditions that are not found in the User Agreement.

**Issue 3**: Plaintiff duly filed the Demand for Arbitration with the Better Business Bureau. (ECF 41). Defendant informed the Court that Plaintiff would have to wait 30 days before initiating arbitration with the Better Business Bureau. (ECF 46). The Court ordered, at least four (4) times, that a "BBB representative" should be present for the status conference, in particular the Court ordered having "a BBB representative, who can address the issues raised in the parties' letters 47 and 48" (ECF 6/21/2021). Defendant in response offers to bring a representative of the BBB National Programs. At no time did the Defendant inform the Court that the BBB National Programs is not the same BBB entity of the Better Business Bureau. Moreover, ECF 47 addresses the Plaintiff's effort to initiate the arbitration with the Better Business Bureau; the BBB National Program cannot address the issues to which they were not a party.

**Issue 4**: First Verizon insisted that Plaintiff file a "demand for arbitration" to initiate the arbitration process. Even though the user agreement (ECF 13-5) does not have any mention of filing a "demand for arbitration". Then, after Plaintiff filed a "demand for arbitration" with the Better Business Bureau, the Court directed Defendant to state, "what additional steps the plaintiff must take to commence the arbitration." Defendant responded that "At the conclusion of the 30 days, Plaintiff may commence the arbitration by informing the BBB that he wishes to proceed with binding arbitration in that forum."

After the Thirty Days expired, Plaintiff contacted the Better Business Bureau to inquire what he has to do to commence the arbitration. The Better Business Bureau answered Plaintiff that the Defendant declined to attend arbitration and that the file was closed for "insufficient information." Plaintiff informed the Court of the foregoing, and Defendant responded with a new website link to commence arbitration together with a letter of new list of arbitration rules customized for Verizon. These new arbitration rules are not the same rules that the Better Business Bureau offers to the public at large, but it is self-serving rules that Verizon negotiated with the BBB National Program without Plaintiff being a party to that negotiation. Thereafter, Defendant attached a new process to initiate arbitration, the form is called "Arbitration Request Form." (ECF 51-3)

In sum, Defendant started with insisting that Plaintiff needs to file a demand for arbitration to commence arbitration, which Plaintiff did. Then Defendant informed the Court that Plaintiff needs to wait 30 days before he can commence arbitration by asking the BBB to commence arbitration, which Plaintiff did. But Defendant refused to attend arbitration. Once the Court became aware of this paradox, Defendant insists that Plaintiff need to go to the BBB National Program, which Plaintiff could not find when searching for the "demand for arbitration" form on bbb.org. Then Defendant comes along with a "Arbitration Request Form" to commence arbitration. This record shows that whatever Plaintiff tries to do to follow the Court's order, Defendant somehow manages to turn around with a new list of chores. Basically, Defendant is misusing the arbitration process, not to resolve the controversy, but to squeeze Plaintiff out of his claim.

This all comes down to a very simple game, whatever Plaintiff will do Defendant will turn up a new list of chores not found in the "user agreement." The so-called

process advanced by Defendant in the name of the BBB National Programs is in furtherance of that game, when in fact the BBB National Programs together with its concocted rules for Verizon that were not in existence in 2018 when Plaintiff rescinded its service with Verizon. But Defendant is still attempting to advance a set of rules upon which the parties did not mutually agree on.

Although the rules of the BBB National Program customized for Verizon is completely irrelevant, since the User Agreement states that for claims above $10,000 the arbitration would apply the "AAA'S Wireless Industry Arbitration ('WIA')." The real question is what new chores will Defendant advance tomorrow after the Court concludes its status conference?!

**Issue 5**: the evidence shows that Defendant is presiding as a "director" of the BBB National Programs. (Exhibit F).

Further, the record demonstrates that Defendant and the BBB National Programs have procured special "Rules of Binding Arbitration for Verizon Wireless Customers." This program is does not follow the arbitration rules that the Better Business Bureau offers on its website https://www.bbb.org/dispute-handling-and-resolution, https://www.bbb.org/globalassets/local-bbbs/council-113/dispute-resolution/bbb-rules-of-arbitration-pre-dispute.pdf, and https://www.bbb.org/bbb-dispute-handling-and-resolution/dispute-resolution-rules-and-brochures/rules-of-conditionally-binding-arbitration. But Defendant receives special treatment that have been unilaterally reached between BBB National Program and Defendant at an arm lengths negotiation, without the Plaintiff having any input in establishing those rules.

The Defendant uses the format of "user agreement" and "customer agreement" to diminish the consumer protection laws as much as possible. Defendant advanced these agreements drafted by sophisticated attorneys to only benefit themselves, not the consumer. The length of negotiations that Defendant has reached with BBB National Programs evidence that the Defendant is using its arbitration clauses to systematically quash any controversy against its interest.

Pursuant to 9 USC 10(a) the Court may vacate any arbitration (1) "where the award was procured by corruption, fraud, or undue means;" or (2) "where there was evident partiality or corruption in the arbitrators", (3) "in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior

by which the rights of any party have been prejudiced", (4) "or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." In this case, BBB National Programs is a party of Defendant to quash any adjudicating any controversy Defendant faces.

Pursuant to 10(a)(4), Plaintiff filed a demand for arbitration with the Better Business Bureau, which the Better Business Bureau refused to entertain.

This history of games, first bait and switching the process to initiate arbitration, then Defendant is bait and switching by claiming that Plaintiff's claim is not eligible for arbitration at the Better Business Bureau, then Defendant is bait and switching from the Better Business Bureau found in its user agreement by claiming that such arbitration must be administered by the BBB National Programs. This purported arbitration process is so corrupt that it is hard to tell what the process is.

Moreover, the Defendant now insists that Plaintiff must file a demand for arbitration with the American Arbitration Association. Yet the Defendant did not inform the Court what that process would entail. Thus, even if Plaintiff is to file a demand for arbitration with the American Arbitration Association, there is no confidence that Defendant will not replay the same bait and switch by claiming that Plaintiff somehow missed something... and did not properly initiate arbitration.

# Conclusion

Wherefore, Plaintiff respectfully requests that the Court enter an order prohibiting the Defendant from imposing any terms and conditions on the underlying controversy that was not attached in its motion to compel arbitration.

Plaintiff further requests that the Court enter an order declaring that (1) the purported arbitration process of arbitration is so imprecise as to which entity is responsible for the arbitration, the Better Business Bureau or the BBB National Programs, (2) the user agreement only referred to arbitration before the Better Business Bureau and there is no mention of the BBB National Programs, (3) the subjecting Plaintiff to the arbitration process of the BBB National Programs would unduly compel Plaintiff to an arbitration procedure that the User Agreement did not advance, (4) the continuation of the Defendant uses the arbitration process to quash the resolution of this controversy, (5) that Defendant willfully rejected attending the arbitration process at the Better Business Bureau after Plaintiff filed a demand for arbitration and (6) Defendant insisted that Plaintiff file a demand for arbitration with the American Arbitration Association without informing the Court what such process entails. Wherefore, Plaintiff requests that the Court enter an order that this case cannot proceed with arbitration

Respectfully submitted,


Yehuda Herskovic, yhm1234@yahoo.com**, 347 731 8818**

# Exhibit A

 **Better Business Bureau**®

# About Us

People today are overwhelmed with choices – and often unsure about where to find verified, unbiased information. There are more than 32 million businesses in North America alone, and hundreds of thousands of sites around the world where people shop online. Thousands of free and subscription websites offer a range of information, including reviews, reports, directories, listings, and gripe sites. Where can consumers turn to find trusted information?

For more than 100 years, the Better Business Bureau has been helping people find businesses, brands and charities they can trust. In 2019, people turned to BBB more than 183 million times for BBB Business Profiles on nearly 5.8 million businesses and Charity Reports on 11,000 charities, all available for free at BBB.org (https://www.BBB.org).

The Better Business Bureau brand is represented by four national and international non-profit organizations:

The **International Association of Better Business Bureaus** (BBB.org (https://www.BBB.org)) represents the local, independent BBBs that serve every community in the United States, most of Canada, and a growing number of locations in Mexico. Its foundation is the **BBB Institute for Marketplace Trust** (BBBMarketplaceTrust.org (http://www.BBBMarketplaceTrust.org)).

**BBB Wise Giving Alliance** (Give.org (http://www.Give.org)) helps donors make informed giving decisions and promotes high standards of conduct among organizations that solicit contributions from the public.

Fast Facts:

- Since 1912, BBB has helped people make smarter buying decisions, and BBB is evolving to meet today's fast changing marketplace needs.
- BBB sets standards for ethical business behavior and monitors compliance. Almost 400,000 Accredited Businesses meet and commit to our high standards.
- BBB helps consumers identify trustworthy businesses, and those that aren't, through more than 5.4 million BBB Business Profiles.
- BBB sets standards for and evaluates thousands of advertisements each year to ensure that people can trust what advertisers say.

- BBB sets standards for and evaluates the practices of thousands of charities so that donors know where their money is going.
- BBB coaches businesses on ethical behavior and how to build stronger, more trusting relationships with their customers.
- BBB offers its national and local consumer services online and in person, helping people nearly a quarter of a billion times each year.
- BBB is a trusted source for the news media, and its messaging reaches hundreds of millions more through stories in both traditional and social media.

# Exhibit B

 **Better Business Bureau®**

International Association of Better Business Bureaus

# Executives

**Learn More About This BBB**

## Kip Morse
**Chief Executive Officer**



## Richard Woods
**VP, General Counsel**



## Katherine Hutt
**Chief Communications Officer**



## Steve Salter
**Chief Development Officer**



## Joe Ollendick
**Chief Technology Officer**



## Sam McMakin

**Chief Operating Officer**



## Christy Page
**Chief Financial Officer**



## Melissa Trumpower
**Executive Director, BBB Institute for Marketplace Trust**



# Exhibit C

**July 3, 2021 | 1:00 pm**

**COVID-19 Updates**

The COVID-19 vaccine is here. It is safe, effective and free. Walk in to get vaccinated at sites across the state. Continue to mask up and stay distant where directed.

**GET THE FACTS >**

# Department of State
## Division of Corporations

## Entity Information

[ Return to Results ]  [ Return to Search ]

**Entity Details**

| | |
|---|---|
| **ENTITY NAME:** BBB NATIONAL PROGRAMS, INC. | **DOS ID:** 5541428 |
| **FOREIGN LEGAL NAME:** | **FICTITIOUS NAME:** |
| **ENTITY TYPE:** FOREIGN NOT-FOR-PROFIT CORPORATION | **DURATION DATE/LATEST DATE OF DISSOLUTION:** |
| **SECTIONOF LAW:** 1304 NCL - NOT-FOR-PROFIT CORPORATION LAW | **ENTITY STATUS:** Active |
| **DATE OF INITIAL DOS FILING:** 04/26/2019 | **REASON FOR STATUS:** |
| **EFFECTIVE DATE INITIAL FILING:** 04/26/2019 | **INACTIVE DATE:** |
| **FOREIGN FORMATION DATE:** 01/24/2019 | **STATEMENT STATUS:** |
| **COUNTY:** New York | **NEXT STATEMENT DUE DATE:** 04/30/2020 |
| **JURISDICTION:** Delaware, United States | **NFP CATEGORY:** NON-CHARITABLE |

**ENTITY DISPLAY**  NAME HISTORY  FILING HISTORY  MERGER HISTORY  ASSUMED NAME HISTORY

**Service of Process Name and Address**

**Name:** C/O C T CORPORATION SYSTEM

**Address:** 28 LIBERTY STREET, NEW YORK, NY, United States, 10005

**Chief Executive Officer's Name and Address**

**Name:**

**Address:**

**Principal Executive Office or Owner Name and Address**

**Name:**

**Address:**

**Registered Agent Name and Address**

**Name:** C T CORPORATION SYSTEM

**Address:** 28 LIBERTY STREET, NEW YORK, NY, 10005

## Entity Primary Location Name and Address

**Name:**

**Address:**

## Farmcorpflag

**Is The Entity A Farm Corporation:** No

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |

# Exhibit D

# Entity Information

Return to Results     Return to Search

**ils**

**IE:**

**VAL PROGRAMS, INC.**

**EGAL NAME:**

**E:**

**OT-FOR-PROFIT CORPORATION**

**LAW:**

**NOT-FOR-PROFIT CORPORATION LAW**

**ITIAL DOS FILING:**

**DATE INITIAL FILING:**

**ORMATION DATE:**

**ON:**

nited States

**DOS ID:**

5541428

**FICTITIOUS NAME:**

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**ENTITY STATUS:**

Active

**REASON FOR STATUS:**

**INACTIVE DATE:**

**STATEMENT STATUS:**

**NEXT STATEMENT DUE DATE:**

04/30/2020

**NFP CATEGORY:**

NON-CHARITABLE

| ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY |
|---|---|---|---|---|

Process Name and Address

/O C T CORPORATION SYSTEM

28 LIBERTY STREET, NEW YORK, NY, United States, 10005

utive Officer's Name and Address

xecutive Office or Owner Name and Address

**tity A Farm Corporation:** No

| ue | Number Of Shares | Value Per Share |
|---|---|---|

# Exhibit E

## National Programs
### BBB

🔍 ☰

Back to Leadership



# W. David Hubbard

Vice President and Deputy General Counsel

Verizon

W. David Hubbard is Vice President and Deputy General Counsel for Verizon. He leads Verizon's marketing, intellectual property, and new media law and policy team. Mr. Hubbard also serves as general counsel for the philanthropic Verizon Foundation, dedicated to solving critical social issues in the areas of education, health care and energy management, particularly in underserved communities. He serves on several boards, including the national board of directors for BBB National Programs, dedicated to fostering trust, innovation and competition in the marketplace; Brightpoint Health, a leading nonprofit provider of high-quality medical and mental health care, as well as social support services, to people,



Vice President and Deputy General Counsel
Verizon

### Jocelyn Hunter

Vice President & Deputy General Counsel
Home Depot

### Marla Kaplowitz

President and CEO
American Association of Advertising Agencies

### Joel Katz

Chief Ethics & Compliance Officer
Booz Allen Hamilton

### Elaine D. Kolish

Principal

https://bbbprograms.org/about-us/board-of-directors



**Bob Liodice**
Chief Executive Officer
Association of National Advertisers

**Carla R. McIntosh**
President
Core Homerica LLC

**Maureen K. Ohlhausen**
Partner
Baker Botts

**Brent Saunders**
Associate General Counsel
Microsoft





**National Programs**

**Barbara Wall**

Former Chief Legal Officer, Interim Chief Operating Officer & Current Board Member
Gannett Co, Inc.

**Eric D. Reicin**

President & Chief Executive Officer | Ex Officio Member
BBB National Programs

Follow us on social media

**National Programs**

BOARD OF DIRECTORS

LEADERSHIP

PODCASTS

ONLINE ARCHIVE

PRIVACY POLICY

TERMS OF USE

CONTACT US



# Exhibit F

 **National Programs**

    🔍 ☰

Back to Leadership



# W. David Hubbard

Vice President and Deputy General Counsel

Verizon

W. David Hubbard is Vice President and Deputy General Counsel for Verizon. He leads Verizon's marketing, intellectual property, and new media law and policy team. Mr. Hubbard also serves as general counsel for the philanthropic Verizon Foundation, dedicated to solving critical social issues in the areas of education, health care and energy management, particularly in underserved communities. He serves on several boards, including the national board of directors for BBB National Programs, dedicated to fostering trust, innovation and competition in the marketplace; Brightpoint Health, a leading nonprofit provider of high-quality medical and mental health care, as well as social support services, to people,





## Jocelyn Hunter

Vice President & Deputy General Counsel
Home Depot



## Marla Kaplowitz

President and CEO
American Association of Advertising Agencies



## Joel Katz

Chief Ethics & Compliance Officer
Booz Allen Hamilton



Chief Executive Officer
Association of National Advertisers



## Carla R. Michelotti

President
Carla Michelotti LLC



## Maureen K. Ohlhausen

Partner
Baker Botts

## Brent Sanders





Associate General Counsel
Microsoft



## Barbara Wall

Former Chief Legal Officer, Interim Chief Operating Officer & Current Board Member
Gannett Co., Inc.



## Eric D. Reicin

President & Chief Executive Officer | Ex Officio Member
BBB National Programs

Follow us on social media

   

ional
grams

F DIRECTORS