

# Herskovic v. Verizon Case No.:  EDNY 1-19-cv-03372-AMD-RML

Date September 12, 2021

American Arbitration Association
Case Filing Services,
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Via mail



RECEIVED
SEP 1 3 2021
PRO SE OFFICE

*Rec. in dkt box 9/15/21 rg

Dear American Arbitration Association,

I Yehuda Herskovic am the plaintiff in this action and provide this letter to obey under duress as a "demand for arbitration" following the compulsion issued by the Hon. Ann M. Donnelly to submit the above captioned case to arbitration.  the order is attached.

## Background

The complaint alleges that on December 27, 2017, I purchased from Verizon home phone service for the number 718.387.4565. (ECF 2-2). I subsequently returned the device and rescinded the sale due to defective service. I paid all outstanding arrears. Although I do not have any outstanding balance with Verizon, they have repeatedly been falsely reporting on my credit report to the Credit Reporting Bureaus that I owe money.  I have repeatedly disputed the false report and yet Verizon keeps falsely reporting that I owe a debt without the notation of dispute. This has caused me damages. The complaint full is attached.

Verizon has a business model of deceiving consumers and avoiding a public record of their wrongs, to avoid public scrutiny, and use the arbitration process for that purpose.  Given that the court system is public record and an open court, Verizon seeks to divert all litigation of their wronging consumers to secretive arbitration proceedings. However, in this case, Verizon does not have any arbitration agreement that are connected to phone number 718.387.4565. Because none exists and none can be attached.

Page 1

In addition, this dispute arises from a transaction that was rescinded to its defective service.  There is no mutual agreement between the parties.

 Given that no arbitration agreement exists, Verizon brought a motion to compel arbitration in the Eastern District of New York falsely alleging that I obtained Verizon Wireless service in April 2014 for a phone number ending 0559, and thus Verizon claimed that my home phone service for 718.387.4565 in 2017 is subject to the arbitration agreement found for phone number 0559. To fabricate a head and tail when non exist, Verizon attached a contract with a different "Yehuda Herskovic," who is not me, bearing an address and ending phone number 0559 that was never my number. Indeed, I never resided on Flushing Avenue, the purported address exhibited by Verizon. In other words, Verizon misrepresented a contract of a different "Yehuda Herskovic" who is not me. Attached is a copy of the phony declaration submitted by Verizon.

As I objected to the motion compelling arbitration, Verizon in its reply manufactured a different consumer contract, dated December 8, 2016, having no name nor address, just baring a phone number 718.675.6897. Attached is a copy of the second phony deceleration. Again, the second contract also did not belong to me and bore no relationship to the phone number "718.387.4565".

The magistrate did not pay attention to my objection, verbatim copied word for word alleged by Verizon, and recommended staying the action and compelling arbitration. I filed an objection to the Magistrate's report. Judge Donnelly did not afford me to file a reply to Verizon's opposition and verbatim repeated Verizon in its order compelling arbitration.

Given there is reversible error, I intend to appeal this case at its final conclusion. In the meanwhile, Judge Donnelly's reversible error cannot be appealed while the case is stayed and ongoing. See 9 USC 16(b)(1).

Now that Verizon was successful in removing a controversy from public record and the Eastern District court went along to get rid of a pro se case, I have no choice but to repeatedly protest that there is no arbitration agreement to initiate arbitration.  All there is the dictate of an order that did not and could not intelligently articulate how the Yehuda Herskovic "718.387.4565" is somehow related to the "Yehuda Herskovic" of "0559" or the owner of "718.675.6897".

It should be emphasized that I submit this "demand for arbitration" not of my own will, but under duress. This is not to say that I will defy the Judge Donnelly's order to attend arbitration. Rather, my attendance to arbitration is under protest and I emphasize that I am contesting the very basis for arbitration. I do not agree to arbitration despite this letter is labeled as "demand for arbitration." I do not consent to any waivers of rights. I also do not consent to this arbitration venue.

I also demand pre-arbitration disclosure of all interests and ties that the American Arbitration Association has with Verizon Wireless or any of its affiliate entities.  I also demand pre-arbitration disclosure of the names of all former and present personnel of Verizon Wireless, or any of its affiliate entities, who serve in the American Arbitration Association, including those who have served in the past three (3) years.


Respectfully filed under protest,


Yehuda Herskovic,                                SUMITED   SEP 13/2021

My address is:
Yehuda Herskovic
225 Ross Street,
Brooklyn, NY 11211
yhm1234@yahoo.com

347 731 8818

Defendant's attorney is:

Howard A. Fried
McGIVNEY, KLUGER, CLARK & INTOCCIA, P.C.
80 Broad Street, 23rd Floor
New York, NY 10004
hfried@mkcilaw.us.com
Attorney for Verizon Wireless,

Attached are:

Order to file "demand for arbitration"

Order compelling arbitration

Report and recommendation of arbitration

Complaint

The first phony deceleration by Verizon

The second phony deceleration by Verizon


Filing fee paid by Verizon Wireless



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

Filed under Dispute as Under Duress - No Arbitration Agreement Exist

Complete this form to start arbitration under an arbitration agreement in a contract.

| | |
|---|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer  ☐ Business | |

2. Briefly explain the dispute:

Verizon Wireless has been reporting false charges on my credit report.

3. Specify the amount of money in dispute, if any: $ 30,000

4. State any other relief you are seeking:

☐ Attorney Fees ☐ Interest ☐ Arbitration Costs ☑ Other; explain: removal of negative report

5. Identify the requested city and state for the hearing if an in-person hearing is held:

City: Brooklyn                                      State: New York    ▼

6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed.

**Consumer:**

Name: Yehuda Herskovic

Address: 225 Ross Street,

| City: Brooklyn, NY 11211 | State: New York  ▼ | Zip Code: 11211 |
|---|---|---|
| Telephone: 347 731 8818 | Fax: | |

Email Address: yhm1234@yahoo.com

**Consumer's Representative (if known):**

Name:

Firm:

Address:

| City: | State: Select... | Zip Code: |
|---|---|---|
| Telephone: | Fax: | |

Email Address:

**Business:**

Name: Howard A. Fried c/o Verizon Wireless

Address: 80 Broad Street, 23rd Floor

| City: New York | State: New York  ▼ | Zip Code: 10004 |
|---|---|---|
| Telephone: (212) 509-3456 | Fax: | |

Email Address: hfried@mkcilaw.us.com



**AMERICAN ARBITRATION ASSOCIATION**®

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

Filed under Dispute as Under Duress - No Arbitration Agreement Exist

| Business' Representative (if known): | | |
|---|---|---|
| Name: | | |
| Firm: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |
| Date: | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

---

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

---

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   MAR 6 2020   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

YEHUDA HERSKOVIC,                              :

                          Plaintiff,            :

            - against –                         :        **MEMORANDUM
                                                :        DECISION AND ORDER**
VERIZON WIRELESS,                               :        1:19-CV-3372 (AMD) (RML)

                          Defendant.            :

--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

In March of 2019, the *pro se* plaintiff brought this wrongful debt collection practices action against Verizon Wireless.[1] (ECF No. 2.) The defendant removed the case to this court and moved to compel arbitration and stay the action. (ECF No. 13.) In a January 23, 2020 Report and Recommendation, the Honorable Robert M. Levy recommended that I grant the defendant's motion. (ECF No. 25.) The plaintiff filed an objection. (ECF No. 27.) For the reasons set forth below, I adopt Magistrate Judge Levy's well-reasoned opinion, grant the defendant's motion to compel arbitration and stay the action.

## BACKGROUND

The plaintiff, the defendant's former customer, alleges that the defendant charged him a $176 disconnection fee that the company had previously agreed to waive. (ECF No. 2-2 at 4.) The plaintiff first activated his Verizon account in April of 2014. (ECF No. 13-4 at 1-2.) As part of his purchase, he accepted the terms of a customer agreement by signing a customer receipt. (*Id.*) The agreement provides that the parties "agree to resolve disputes only by arbitration[,]" and that the agreement would be governed by the Federal Arbitration Act.[2] (ECF No. 13-5 at 4.)

---

[1] The defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (ECF No. 13-1 at 1.)

[2] The plaintiff subsequently signed at least one additional customer receipt—generated December 8, 2016—in which he again agreed to the arbitration provision. (ECF Nos. 18-2, 18-3.)

In December of 2017, the plaintiff signed an additional contract for home phone service. (ECF No. 2-2 at 3.)  He started having problems about a month later—calls would drop and people had trouble hearing him—which the defendant could not fix.  (*Id.*)  He decided to cancel the service.  (*Id.*)  Although a customer service supervisor allegedly agreed to waive the disconnection fee, the company charged him anyway.  (*Id.* at 4.)  When he refused to pay, the company sent the debt to multiple collection companies, which in turn inundated the plaintiff with letters and calls.  (*Id.*)  The charge damaged his credit.  (*Id.*)

The plaintiff brought this claim in March of 2019.  (ECF No. 2-2.)  The defendant removed the case to this court, and moved to compel arbitration and stay the case, asserting that the action was subject to arbitration per the customer agreement.  (ECF No. 13.)

In his Report and Recommendation, Judge Levy concluded that the parties "consented to a broad agreement to arbitrate and [that the] plaintiff . . . failed to overcome the strong presumption of arbitrability that attaches to such agreements[.]"  (ECF No. 25 at 6.)  Additionally, he recommended that I grant the defendant's application to stay the action.  (*Id.*)

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A party's objections must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the [r]eport and [r]ecommendation only for clear error."  *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie,* No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)).  The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b)(3).

2

"[E]ven in a *de novo* review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09-CV-4522, 2012 WL 511581, at \*1 (E.D.N.Y. Feb. 15, 2012) (quoting *Kennedy v. Adamo,* No. 02-CV-1776. 2006 WL 3704784, at \*1 (E.D.N.Y. Sept. 1, 2006)) (alterations omitted).

A *pro se* party's objections are "generally accorded leniency" and construed "to raise the strongest arguments that they suggest." *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at \*2 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks and citations omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Serv.*, No. 06-CV-5023, 2008 WL 2811816, at \*1 (S.D.N.Y. July 21, 2008) (internal quotation marks and citation omitted).

## DISCUSSION

The plaintiff makes three arguments: that he did not agree to arbitration, that the Federal Arbitration Act does not apply to the agreement, and that the defendant waived arbitration by removing the case to federal court. (ECF No. 27 at 1-3.) The defendant responds that the Court should not consider these arguments because the plaintiff did not raise them before Judge Levy. (ECF No. 28.) In any event, the defendant says that the plaintiff's objections are meritless. (*Id.*)

Even construing the plaintiff's *pro se* objections liberally, he did not raise two of his claims—that the Federal Arbitration Act does not apply, and that the defendant waived arbitration—before Judge Levy. "[T]he Court is only obliged to review the Report for clear error." *Pall Corp.*, 249 F.R.D. at 51. Nevertheless, because the plaintiff is representing himself,

3

I consider his objections *de novo*. I conclude that Judge Levy's report and recommendation was correct, and I adopt it in its entirety.

## I.      General Standard

A court deciding a motion to compel arbitration applies a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). The Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) (second alteration in original), and draws all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016). I consider the plaintiff's signed customer receipts and agreements, which the defendant submitted with its motion to compel arbitration.

## II.     Validity of Agreement

"Ordinary principles of contract . . . determine which parties are bound by an agreement to arbitrate." *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-CV-7646, 2019 WL 1353279, at *6 (S.D.N.Y. Mar. 15, 2018) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 235 (2d Cir. 1960)). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). A forged signature generally renders a contract void. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003).

The plaintiff maintains that he did not sign the 2014 and 2016 customer receipts, and that the customer agreements are "false documents" with "false signatures." (No. 27 at 3-4.)

4

"[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not

defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996).  An

"opposing party's facts must be material and of a substantial nature, not fanciful, frivolous,

gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely

suspicions." *Contemporary Mission v. United States Postal Serv.,* 648 F.2d 97, 107 n.14 (2d Cir.

1981) (internal citations and quotation marks omitted).  The plaintiff's claim, which is not

supported by any evidence, is insufficient to create a genuine issue of material fact.  After all, the

plaintiff admits that he signed multiple contracts with the company, and he was a Verizon

customer for the period covered by the signed agreements.  (ECF Nos. 1 at 1; 14 at 1.)  In short,

there is no credible evidence that the records that the defendant produced are forgeries or

otherwise false.  Accordingly, Judge Levy's conclusion that the "plaintiff accepted the terms of

the [c]ustomer [a]greement on at least two separate occasions over more than four years of

service with Verizon Wireless" was correct.  (ECF No. 25 at 5.)

Equally unimpressive is the plaintiff's claim that the agreements do not govern the

December 2017 purchase underlying the disputed charge.  (No. 27 at 3-4.)  "[A] broad arbitration

clause in an agreement survives and remains enforceable for the resolution of disputes arising out

of that agreement subsequent to the termination thereof and the discharge of obligations

thereunder . . . ." *Eisen v. Venulum Ltd.,* 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017) (citation

omitted).  The arbitration clause in the customer agreement covers "any dispute that in any way

relates to or arises . . . from any equipment, products and services [the plaintiff] receive[d] from

[Verizon Wireless]."  (ECF Nos. 13-5 at 4; 18-3 at 7.)  As Judge Levy determined, this language

"is sufficiently broad to create a strong presumption of arbitrability" (ECF No. 25 at 5),

including over services he later purchased in 2017.

### III.    Federal Arbitration Act

Next, the plaintiff argues that the Federal Arbitration Act does not apply because this is not a maritime action involving commerce. (ECF No. 27 at 3.) But the Act is not limited to maritime actions. On the contrary, it provides that arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts").

The parties' agreements reference the statute explicitly, providing that "[t]he Federal Arbitration Act applies to this agreement." (ECF Nos. 13-5 at 4; 18-3 at 7.) Unfair debt collection and credit reporting claims are unquestionably covered by the Act. *See DeGraziano v. Verizon Comms., Inc.,* 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("[T]he plaintiff's claims that Verizon Wireless violated the FCRA arise out of and are related to the [customer service agreement]" and are "presumptively arbitrable."); *see also Biggs v. Midland Credit Mgmt.*, No. 17-CV-340, 2018 WL 1225539, at 5 n.4 (E.D.N.Y. Mar. 9, 2018) (FDCPA acts are arbitrable) (citation omitted). Accordingly, Judge Levy correctly applied the Federal Arbitration Act.

### IV.    Waiver

Finally, the plaintiff says that the defendant waived arbitration by removing the case to federal court which, according to the plaintiff, constituted protracted participation in litigation. (ECF No. 27 at 1-2.) The "waiver of the right to arbitration is not to be lightly inferred," and the determination "is not susceptible to bright line rules." *Galeana v. Mahasan Inc.*, No. 14-CV-

3625, 2019 WL 3024588, at *4 (S.D.N.Y. July 11, 2019) (citation omitted).  Courts determining whether a party has waived arbitration consider "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Id.* (citations omitted).

"[T]he mere act of removing [a] claim from state to federal court is hardly the sort of aggressive participation in litigation" that constitutes waiver. *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015) (citation omitted).  The defendant removed the case to federal court within about two months of service and moved to compel arbitration a month later. With the exception of the customer receipts and customer agreements, the parties have not engaged in significant discovery or motion practice.  Moreover, the plaintiff has not demonstrated any prejudice resulting from being ordered to arbitrate his claims.

Accordingly, Judge Levy correctly concluded that "the parties have consented to a broad agreement to arbitrate and [the] plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements[.]"  (ECF No. 25 at 6.)

## CONCLUSION

The defendant's motion to compel arbitration is granted.  The action is stayed pursuant to section 3 of the Federal Arbitration Act.[3]  The parties must provide a status report by July 24, 2020.

---

[3] The defendant requested a stay.  (ECF No. 13-1 at 9-10.)  Accordingly, the court is required to stay the proceedings pending the outcome of the arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [is] requested.").

**SO ORDERED.**

s/Ann M. Donnelly

_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
March 6, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
YEHUDA HERSKOVIC,

                   Plaintiff,                         REPORT AND
                                                    RECOMMENDATION

   -against-

                                                     19 CV 3372 (AMD)(RML)

VERIZON WIRELESS,

                   Defendant.
------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated July 26, 2019, the Honorable Ann M. Donnelly, United States

District Judge, referred defendant's motion to compel arbitration and stay this action to me for

report and recommendation.  I held conferences on September 10, 2019 and October 31, 2019.

For the reasons stated below, I respectfully recommend that defendant's motion be granted.

### BACKGROUND

        Plaintiff *pro se* Yehuda Herskovic ("plaintiff") commenced this action in March

2019 in New York State Supreme Court, Kings County, alleging wrongful debt collection

practices.  (See Complaint, dated Mar. 26, 2019 ("Compl."), Dkt. No. 2-2.)  Defendant Verizon

Wireless ("defendant" or "Verizon Wireless")[1] removed the case to this court on June 6, 2019.

(See Notice of Removal, dated June 6, 2019, Dkt. No. 2.)  Defendant now requests an order

compelling plaintiff to engage in binding arbitration with Verizon Wireless pursuant to the

parties' written arbitration agreement.  (Defendant's Memorandum of Law, dated July 25, 2019

("Def.'s Mem."), Dkt. No. 13-1, at 1.)

---

[1]   Defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless.  (See Def.'s
Memorandum of Law, dated July 25, 2019, Dkt. No. 13-1, at 1.)

Plaintiff alleges that on December 27, 2017, he signed a sales receipt and Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless home telephone equipment and services for his home phone number ending in 4565. (See Compl. at 1.) He alleges that after about a month, he began experiencing problems with the phone service, including dropped calls and difficulty hearing. (Id.) He states that he made many attempts to have his service fixed, but ultimately decided to cancel the service. (Id.) According to plaintiff, on December 10, 2018, a Verizon Wireless customer service supervisor agreed to waive the disconnection fee so he could take his business to another company. (Id.) Nonetheless, Verizon Wireless sent him a bill containing a $176 disconnection fee and, despite his complaints, refused to remove the fee from subsequent bills and then sent the unpaid $176 charge to collection and reported it to credit agencies. (Id. at 2.) He alleges that the charge damaged his credit, such that when he applied for a credit card, his application was denied. (Id.)

It is undisputed that plaintiff first activated his wireless cellular service with Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale, plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the Customer Agreement. (Id., Ex. A at 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also stated:

> In this Customer agreement, you'll find important
> information about your Service . . . our liability if things
> don't work as planned and how any disputes between us
> must be resolved in arbitration or small claims court.

(Id., Ex. A at 1.)

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

2

> HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?
> YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES
> ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT.  THERE'S NO
> JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE
> DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME
> DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN
> THIS AGREEMENT, AS A COURT WOULD.  IF THE LAW ALLOWS FOR
> AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD
> THEM TOO. WE ALSO BOTH AGREE THAT:
> (1)  THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.
> EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY
> DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS
> AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES
> YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY
> SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR
> MORE NEUTRAL ARBITRATORS[.]

(Id. ¶ 6, Ex. B at 8).  The Customer Agreement also provides, in pertinent part:

> HOW DO I ACCEPT THIS AGREEMENT?
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

(Id. ¶ 6, Ex. B at 1).  The activation letter sent to plaintiff also referenced and enclosed a copy of

the Customer Agreement.  (Id. ¶ 7, Ex. C.)

   The Arbitration Provision applies to "any dispute that in any way relates to or

arises out of this agreement **or** from any equipment, products and services you receive from

[Verizon Wireless]."   (See id., Ex. B at 8 (emphasis added)).  Thus, it covers all subsequent

disputes between the parties, including those related to other equipment or services.  Regardless,

the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December

2017 contain identical language.  (See Supplemental Declaration of Daniel Reed, Esq., dated

Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

3

**DISCUSSION**

Section 2 of the Federal Arbitration Act ("FAA") provides that:

a written provision in . . . a contract evidencing a transaction
involving commerce to settle by arbitration a controversy
thereafter arising out of such contract or transaction . . . shall be
valid, irrevocable, and enforceable, save upon such grounds as
exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that the FAA declares a national policy favoring

arbitration and courts must "'rigorously enforce' arbitration agreements according to their

terms." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (citing Dean Witter

Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see also Nitro–Lift Techs., L.L.C. v. Howard,

568 U.S. 17, 20 (2012); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir.

2015).

The inquiry before the court is two-fold: (1) did the parties enter into a valid

arbitration agreement? and (2) is the dispute within the scope of the arbitration agreement? In re

Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "A party to an

arbitration agreement seeking to avoid arbitration generally bears the burden of showing the

agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124

(2d Cir. 2010).

A court deciding a motion to compel arbitration must apply a standard "similar to

that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66,

74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all

relevant, admissible evidence submitted by the parties and contained in pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits," and draw all

reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the

4

undisputed facts in the record require the matter of arbitrability to be decided against one side or

the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the

need for further court proceedings." Id. (citation omitted); see also Holick v. Cellular Sales of

N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015) ("In light of the strong federal policy in favor of

arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability

which is only overcome if it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in

favor of coverage.").  "If the party seeking arbitration has substantiated the entitlement by a

showing of evidentiary facts, the party opposing may not rest on a denial but must submit

evidentiary facts showing that there is a dispute of fact to be tried."  Kutluca v. PQ New York

Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Oppenheimer & Co. v. Neidhardt, 56

F.3d 352, 358 (2d Cir. 1995)).

   Here, the Arbitration Clause covers "any dispute that in any way relates to or

arises . . . from any equipment, products and services you receive from [Verizon Wireless]."

(See Dkt. No. 18-2 at 7.)  This is sufficiently broad to create a strong presumption of

arbitrability.  See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir.

1995) (the phrase "any claim or controversy arising out of or relating to the agreement" is "the

paradigm of a broad clause").  Moreover, plaintiff accepted the terms of the Customer

Agreement on at least two separate occasions over more than four years of service with Verizon

Wireless.  Plaintiff first accepted the Customer Agreement when initiating service and opening

his Verizon Wireless account in April 2014, and a second time in December 2017.

   Plaintiff does not contest the validity or enforceability of the Arbitration

Provision.  Although plaintiff does complain that the Arbitration Provision and Verizon's

conduct are unfair, there is nothing in the record to suggest that the agreement was improper; the terms of Verizon Wireless service—especially the Arbitration Provision—are conspicuous in the Customer Agreement.  See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract.") (quoting Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 CV 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004)).  Because the parties have consented to a broad agreement to arbitrate and plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements, I respectfully recommend that defendant's motion to compel arbitration be granted.

With respect to defendant's request for a stay, section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Accordingly, this court is required to stay the proceedings pending the outcome of the arbitration.  Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015).

## CONCLUSION

For the reasons explained above, I respectfully recommend that defendant's motion to compel arbitration and stay this action be granted.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Donnelly and to my chambers within fourteen (14) days.  Failure to file objections in a timely

manner may waive a right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); FED.

R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      January 23, 2020

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
**YEHUDA HERSKOVIC,**

                              Plaintiff,

            - against -                                      **ORDER**
                                                             1:19-CV-3372 (AMD) (RML)
**VERIZON WIRELESS,**

                              Defendant.
--------------------------------------------------------X

**ANN M. DONNELLY,** United States District Judge:

On March 6, 2020, I granted the defendant's motion to compel arbitration.  (ECF No. 29.)

Over nine months have passed since then, and the plaintiff has not made a demand for arbitration

as required by the parties' customer agreements.  Instead, he continues to argue that there was no

arbitration agreement between the parties.  (ECF Nos. 33, 37.)[1]  He also argues that because the

defendant compelled arbitration, the defendant must initiate arbitration proceedings by making a

demand.  (*Id.*)

A motion to compel arbitration does not shift the burden of litigating claims to the party

who compelled arbitration.  Rather, a motion to compel merely acknowledges that pursuant to a

contractual agreement, this Court does not have jurisdiction over the plaintiff's claims.  *See* 9

U.S.C. § 3 (requiring courts to stay proceedings after referring issues to arbitration); *Merit Ins.*

*Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (once the court compels arbitration

"the court has no further power or discretion to address the issues raised in the complaint").

---

[1] The defendant interprets the plaintiff's most recent letter as a motion for reconsideration and Rule 11 sanctions.
(*See* ECF No. 38.)  Although it is unclear whether the plaintiff does indeed seek such relief, either motion would be
denied.  Local Civil Rule 6.3 requires a party to move for reconsideration of an order within fourteen days after the
issuance of the order.  The plaintiff filed his first letter raising objections to my March 6, 2020 decision on
September 27, 2020, well outside the fourteen-day deadline.  Additionally, I considered and rejected the plaintiff's
argument that there was not a valid arbitration agreement in deciding the motion to compel.  The plaintiff may not
use Rule 11 sanctions to relitigate the validity of that agreement.

Therefore, if the plaintiff wants to pursue the claims that he raised in his complaint, he must do so by making an arbitration demand as required under the customer agreement. (*See* ECF No. 13-3.)

As the plaintiff points out, this case is at an "impasse." But it is at an impasse because the plaintiff has not initiated arbitration. To put this in plain terms: this is the plaintiff's lawsuit. The only way he can continue this case is to initiate arbitration proceedings. Then, the arbitrator will decide the merits of the case. It is not the defendant's responsibility to initiate arbitration, because it is the party being sued. It is the plaintiff's responsibility.

Accordingly, I grant the plaintiff an additional 90 days to initiate arbitration by filing an arbitration demand. If he does not make a demand for arbitration of his claims by March 29, 2021, I will deem his claims to be abandoned and dismiss this action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). *See Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2d Cir. 2001) (suggesting that "a court which stays an action pending arbitration nevertheless maintains jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure to prosecute under Rule 41(b)"); *see also Dhaliwal v. Mallinckrodt PLC*, No. 18-CV-3146, 2020 WL 5236942, at *2 (S.D.N.Y. Sept. 2, 2020) (dismissing action with prejudice for failure to prosecute pursuant to Rule 41(b) because the plaintiff failed to initiate arbitration after one year); *Shetiwy v. Midland Credit Mgmt.*, No. 12-CV-7068, 2016 WL 4030488, at *4 (S.D.N.Y. July 25, 2016), *aff'd*, 706 F. App'x 30 (2d Cir. 2017) (dismissing action for failure to prosecute (Rule 41(b)) and failure to comply with court orders (Rule 16(f)) after the plaintiff refused to initiate arbitration more than three years following the Court's order to compel arbitration).

2

## CONCLUSION

The plaintiff is directed to initiate arbitration within 90 days or show cause why this action should not be dismissed for failure to prosecute. The parties are directed to file a status report updating the Court on the arbitration proceeding no later than April 2, 2021. The Clerk of Court is respectfully directed to mail a copy of this order to the plaintiff.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
         December 28, 2020

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YEHUDA HERSKOVIC,

                                    Plaintiff,

               -against-

VERIZON WIRELESS,

                                    Defendant.

Case No.: 1:2019cv03372

**DECLARATION OF DANIEL
REED IN SUPPORT OF
DEFENDANT CELLCO
PARTNERSHIP D/B/A VERIZON
WIRELESS' MOTION TO
COMPEL CONTRACTUAL
ARBITRATION AND STAY
ACTION**

Case Removed: June 6, 2019

## DECLARATION OF DANIEL REED IN SUPPORT OF MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION

I, Daniel Reed, hereby declare as follows:

1.      I am over the age of 18 and am competent to testify to the facts declared below, and could testify truthfully thereto if required. I am currently employed by Verizon Wireless as a Senior Analyst. I have been employed by Verizon Wireless since 2005.

2.      The Verizon Consumer Group where I am employed provides services to Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"). In my capacity as a Senior Analyst, I assist with the handling of consumer disputes for Verizon Wireless, among other things.

3.      In preparing this Declaration, I have relied on my personal knowledge of, and experience in, the business operations of Verizon Wireless as well as a review of Verizon Wireless' business records. Verizon Wireless' business records are made in the regular course of business, at or near the time of the act, conditions or events described in the documents, and by or from information provided by a person with knowledge of the act, conditions or events. True and correct copies of the business records of Verizon Wireless relevant to this Declaration are attached hereto as Exhibits A, B, and C.

4.      Verizon Wireless is a citizen of Delaware and New Jersey.

5.      On April 2, 2014, at a Verizon Wireless retail location in Brooklyn, NY, Plaintiff

Yehuda Herskovic ("Plaintiff") activated wireless service with Verizon Wireless.  Before

Verizon Wireless activated Plaintiff's service, Plaintiff executed a customer agreement

("Customer Receipt").  Attached hereto as **Exhibit A** is a true and correct copy of the receipt

executed by Plaintiff on April 2, 2014.

6.      Attached hereto as **Exhibit B** is a true and correct copy of the Verizon Wireless

Customer Agreement in effect when Plaintiff activated his cellular service with Verizon Wireless

on or about April 2, 2014.

7.      Attached hereto as **Exhibit C** is a true and correct copy of a notice of activation

for the cellular telephone ending in 0599, dated April 5, 2014, which Verizon Wireless sent to

Plaintiff along with a copy of the Customer Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Executed on July 24, 2019 at Irvine, California.

_____

DANIEL REED

2

VERIZON WIRELESS CUSTOMER AGREEMENT

Thanks for choosing Verizon Wireless. In this Customer Agreement, you'll find important information about your Service, including our ability to make changes to your Service or this agreement's terms, our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court. If you're signing up for Service for a minimum contract term, you'll also find information about that contract term and what happens if you cancel a line of Service early or don't pay on time, including the possibility of an Early Termination Fee you may owe Verizon Wireless.

Application ID No.: 437487703
Order Date: 04/02/2014
Bill Acct. No.:
Agent Name: Target 1849: 139 Flatbush Ave, Brooklyn, NY 11217, U.S.A
Activation Type: New

Customer Information:
yehuda herskovic
581 FLUSHING AV #
BROOKLYN NY 11206
US
Home Phone: ███3261

Line 1 Details
Mobile Number: ███0559
Price Plan: Verizon More Everything Unlimited Minutes & Messaging – 250MB Data
Plan Access Fee: 15.00
Line Access Fee: 30
ETF:
Term: 24 months
Activation Date: 04/02/2014
Activation Fee: 35.00
Upgrade Fee:

Features:
68871 – 3–WAY CALLING
68870 – BUSY TRANSFER
68876 – CALL FORWARDING
68873 – CALL WAITING
68872 – CALL DELIVERY
68874 – NO ANSWER TRANSFER
68869 – CALLER ID
76152 – PICTURE MESSAGE PROVISIONING
73598 – MOBILE WEB FOR MB PLANS
77572 – BASIC PHONE LINE ACCESS $30
48526 – TXT MSG W PER MSG CHARGES
77249 – MOBILE HOT SPOT TRIGGER $0
79032 – SE FAMILYBASE/UC INCOMPATIBLE
80148 – INTL FROM US MESSAGING $0
73324 – OTA SOFTWAREUPDATE–$0.00
76413 – MOBILE EMAIL
76405 – 3G MOBILE HOTSPOT
77256 – RTR FOR ALP
77524 – RTR/UC TRIGGER ALP $0
77581 – EMAIL TRIGGER ALP $0

77583 – DATA PROVISION ALP
73597 – GENERAL IP ADDRESS – MB PLANS
78196 – DATA ROAM USA/CANADA
68877 – BASIC VOICE MAIL – $0
48553 – STREAMLINED BILLING – $0
77540 – 3G PROVISIONING $0

Security Deposit (per line): USD 0
Customer Accepted: 04/02/2014 07:00:23 PST
Customer Agreement version: 06.10.2013

Taxes & surcharges apply may vary. Federal Universal Service Charge of 16.10% of interstate & int'l telecom charges (varies quarterly based on FCC rate), a $.16 Regulatory & a $.90 Administrative Charge per line/month are our charges, not taxes. The iPhone 4 is configured to work only with the wireless services of Verizon Wireless, and may not work on another carrier's network, even after completion of your contract term.

I understand that if I am porting in my phone number from another service provider, I may owe that provider an early termination fee and other charges, and I understand that, during the porting process, the ability for me to receive calls, including return calls from 911 personnel, will not be available.

I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (CA),INCLUDING THE CALLING PLAN, (WITH EXTENDED LIMITED WARRANTY/SERVICE CONRACT, IF APPLICABLE), AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH HAVE BEEN PRESENTED TO ME BY THE SALES REP AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO AN EARLY TERMINATION FEE PER LINE AS REFLECTED ON THIS RECEIPT, LIMITATIONS.

**Customer Signature:**

**Customer Signature Accepted:** 04/02/2014 7:08:38 AM

2

# MY VERIZON WIRELESS
# CUSTOMER AGREEMENT

*(Para una copia de este documento en español, visite nuestro website:*
**vzw.com/espanol)**
Thanks for choosing Verizon Wireless. **In this Customer
Agreement, you'll find important information about your
Service, including our ability to make changes to your Service
or this agreement's terms, our liability if things don't work as
planned and how any disputes between us must be resolved in
arbitration or small claims court. If you're signing up for Service
for a minimum contract term, you'll also find information
about that contract term and what happens if you cancel a line
of Service early or don't pay on time, including the possibility
of an early termination fee you may owe Verizon Wireless.**

**MY SERVICE**
**Your Service terms and conditions are part of this agreement.**
Your Plan includes your monthly allowances and features, where
you can use them (your "Coverage Area"), and their monthly and
pay-per-use charges. You can also subscribe to several Optional
Services, like text messaging packages. Together, your Plan and
any Optional Services you select are your Service. The terms and
conditions for your Service can be found in the brochures that are
available when you activate, or online at **verizonwireless.com**

**HOW DO I ACCEPT THIS AGREEMENT?**
You accept this agreement by:
· Agreeing in writing, by email, over the phone, or in person;
· Opening a package that says you are accepting by opening it; or
· Activating your Service.
When you accept, you're representing that you are at least 18 years
old and are legally able to accept an agreement. If you're accepting
for an organization, you're representing that you are authorized
to bind that organization, and where the context requires, "you"
means the organization. By accepting, you are agreeing to every
provision of this Agreement whether or not you have read it.

**If you do accept, you can cancel a line of Service within 14 days
of accepting this Agreement without having to pay an early
termination fee as long as you return, within the applicable**



of our authorized agents at a discount in connection with your
acceptance of this Agreement, but you'll still have to pay for your
Service through that date. If you signed up for Prepaid Service, no
refunds will be granted after 14 days or if your account has been
activated. Your activation fee will not be refunded unless you
cancel within three days of accepting.
If you change your device or receive a Service promotion, you may be
required to change your Plan to one that we are currently offering at
that time.

**MY PRIVACY**
We collect personal information about you. We gather some information
through our relationship with you, such as information about the
quantity, technical configuration, type, destination and amount of your
use of our telecommunications services. You can find out how we use,
share and protect the information we collect about you in our Privacy
Policy, available at **verizon.com/privacy**. By entering this Agreement,
you consent to our data collection, use and sharing practices described
in our Privacy Policy. We provide you with choices to limit, in certain
circumstances, our use of the data we have about you. You can review
these choices at **verizon.com/privacy#limits**. If there are additional
specific advertising and marketing practices for which your consent
is necessary, we will seek your consent (such as through the privacy-
related notices you receive when you purchase or use our products and
services) before engaging in those practices. If you subscribe to Service
for which usage charges are billed at the end of the billing period
("Postpay Service"), we may investigate your credit history at any time
and share credit information about you with credit reporting agencies
and other Verizon companies. If you'd like the name and address of any
credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be
provided by third parties. Some of these services and applications,
which you may block or restrict at no cost, may involve charges for
which you will be billed. The amount and frequency of the charges
will be disclosed when you agree to the charges. Before you use, link
to or download a service or application provided by a third party, you
should review the terms of such service or application and applicable
privacy policy. Personal information you submit may be read, collected
or used by the service or application provider and/or other users of
those forums. Verizon Wireless is not responsible for any third-party
information, content, applications or services you access, download or
use on your device. You are responsible for maintaining virus and other
Internet security protections when accessing these third-party products
or services. For additional information, visit the Verizon Content Policy
at **http://responsibility.verizon.com/contentpolicy**

You consent to allow Verizon Wireless and anyone who collects on our
behalf to contact you about your account status, including past due or
current charges, using prerecorded calls, email and calls or messages
delivered by an automatic telephone dialing system to any wireless
phone number or email address you provide. Verizon Wireless will
treat any email address you provide as your private email that is not
accessible by unauthorized third parties. Unless you notify us that your

CA-P.2

## THE END OF MY CONTRACT TERM?
WHAT HAPPENS IF MY POSTPAY SERVICE IS CANCELED BEFORE

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month-to-month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without Postpay billing, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month-to-month basis for that line of Service. If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350 minus $10 for each full month of your contract term that you complete. Otherwise, your early termination fee will be the $175 minus $5 for each full month of your contract term that you complete. Cancellations will become effective on the last day of that month's billing cycle, and you are responsible for all charges incurred until then. Also, if you buy your wireless device from an authorized agent or third-party vendor, you should check whether they charge a separate termination fee.

## CAN I TAKE MY WIRELESS PHONE NUMBER TO ANOTHER CARRIER?
You may be able to take, or "port," your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services (such as 911 location services, or the ability to call certain numbers) while we transfer your number. Porting a number from us may require you to create a new account. Please call us before porting a number to or from us, so we can explain how porting may affect your other services. When porting a number from another carrier, please don't cancel your existing service until the porting process is completed.

## DIRECTORY INFORMATION
We will not publish your wireless phone number in any available directory or give it to anyone for that purpose, unless you ask us to.

## CAN I HAVE SOMEONE ELSE MANAGE MY POSTPAY ACCOUNT?
No problem—just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account for a single transaction, or until you tell us otherwise. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this agreement.

## CAN VERIZON WIRELESS CHANGE THIS AGREEMENT OR MY SERVICE?
We may change prices or any other term of your Service or this agreement at any time, but we'll provide notice first, including written

CA-P3

---

notice if you have Postpay Service. If you use your Service after the change takes effect, that means you're accepting the change. If you're a Postpay customer and a change to this agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no early termination fee if we fail to negotiate a resolution to your objection to it.

## MY WIRELESS DEVICE
Your wireless device must comply with Federal Communications Commission regulations. Be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your device. By activating Service that uses a SIM [Subscriber Identity Module] card, you agree that we own the intellectual property and software in the SIM card, that we may change software in the SIM card remotely and without notice, and that we may unlike any capacity in the SIM card for administrative, network, business and/or commercial purposes. If you bought a wireless device for Postpay Service from Verizon Wireless that doesn't use a SIM card, and you want to reprogram it for use with another wireless network, the default programming code is set to "000000" or "123456." But please note that your wireless device may not work with another wireless network, or the other wireless carrier may not accept your wireless device on its network. If you activate a wireless device for use with our Prepaid Service, the Prepaid is configured to work only with our Prepaid Service. During the first six (6) months after activation, it can only be used for Prepaid Service. The wireless services of Verizon Wireless and may not work on another carrier's network, even after completion of your contract term.

## WHERE AND HOW DOES VERIZON WIRELESS SERVICE WORK?
Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within our Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

## WHAT CHARGES ARE SET BY VERIZON WIRELESS?
You agree to pay all access, usage and other charges that you or the user of your wireless device incurred. For Postpay Service, our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us or the government in whole or in part, and the amounts and what they pay for may change.

## GOVERNMENT TAXES, FEES AND SURCHARGES
You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we do not always set these charges in advance of changes to these charges.

## WHAT ARE ROAMING CHARGES?
You're "roaming" whenever your wireless device uses a transmission site outside your Coverage Area or uses another company's transmission

CA-P4

Coverage Area. There may be higher rates and extra charges (including charges for long distance, tolls or calls that don't connect) for roaming calls, depending on your Plan.

**HOW DOES VERIZON WIRELESS CALCULATE MY CHARGES?**

For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **Send** or the call connects to a network (which may be before it rings). Usage time may end several seconds after you press **End** or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

**HOW AND WHEN CAN I DISPUTE CHARGES?**

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM) WITHIN THE 180-DAY PERIOD MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.**

**WHAT ARE MY RIGHTS FOR DROPPED CALLS OR INTERRUPTED SERVICE?**

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1-minute airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24 hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost. Please be aware that these are your only rights for dropped calls or interrupted Service.

**ABOUT MY PAYMENTS**

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to 1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is greater, if allowed by law in the state of your billing address. (If you choose another company to bill you for our Service (such as another

CA-P5

service provider, a bank or even a credit card company) and they don't pay us, you must pay us directly.) We may charge you for the costs we pay to others to collect any money you owe us, including collection agency or attorney fees, and if we do, those fees are part of the rates and may be higher than our late fees.) Late Fees are part of the rates and charges you agree to pay us. If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent. We may require a deposit at the time of activation or afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires. We may apply deposits or payments in any order to any amounts you owe us on any account. If your final credit balance is less than $1, we will refund it only if you ask. You may have to pay a $35 fee to re-activate Service if your Service is terminated, or a $15 fee to reconnect Service if it is interrupted for non-payment or suspended for any reason.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by providing us with another payment. Your balance may not exceed $1,000 and you may be prevented from replenishing if your balance reaches $1,000. We will suspend service when your account reaches the expiration date and any unused balance will be forfeited.

We may charge you up to $25 for any returned check.

**WHAT IF MY WIRELESS DEVICE GETS LOST OR STOLEN?**

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep someone else from using it. If you're a Postpay customer and your wireless device is used after the loss or theft but before you report it, and you want a credit for any charges for that usage, we're happy to review your account activity and any other information you'd like us to consider. Keep in mind that you may be held responsible for the charges if you delayed reporting the loss or theft without good reason, but you don't have to pay any charges you dispute while they are being investigated. If we haven't given you a courtesy suspension of recurring monthly charges during the past year, we'll give you one for 30 days or until you replace or recover your wireless device, whichever comes first.

**WHAT ARE VERIZON WIRELESS' RIGHTS TO LIMIT OR END SERVICE OR END THIS AGREEMENT?**

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause, including, but not limited to: (1) if you: (a) breach this agreement; (b) resell your Service; (c) use your Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions promulgated by any US governmental agency; (d) install, deploy or use any regeneration equipment or similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an RF signal without our permission; (e) steal from or lie to us; or, if you're a Postpay customer: (f) do not pay your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information you can't verify; or (i) are unable to pay us or go bankrupt; or (2) if you, any user of your device or any line of service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar and/or inappropriate language toward

CA-P6

engage in other abusive messaging or calling; (d) modify your device from its manufacturer's specifications; or (e) use your Service in a way that negatively affects our network or other customers. We can also temporarily limit your Service for any operational or governmental reason.

**AM I ELIGIBLE FOR SPECIAL DISCOUNTS?**

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an organization that has an agreement with us. Unless your discount is through a government employee discount program, we may share certain information about your Service (including your name, your wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

**DISCLAIMER OF WARRANTIES**

We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network-related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third-party products.

Please be aware that if you activated your wireless device through our Open Development program, we can't vouch for the device's call quality or overall functionality.

**WAIVERS AND LIMITATIONS OF LIABILITY**

You and Verizon Wireless both agree to limit claims against each other for damages or other monetary relief to direct damages. This limitation and waiver will apply regardless of the theory of liability. That means neither of us will try to get any indirect, special, consequential, treble or punitive damages from the other. This limitation and waiver also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim. You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

CA-P.7

**HOW DO YOU RESOLVE DISPUTES WITH VERIZON WIRELESS?** WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.

YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA"), OR BETTER BUSINESS BUREAU ("BBB"), YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU

(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") RULES WILL APPLY. IN SUCH CASES, THE LOSER CAN ASK FOR A PANEL OF THREE NEW ARBITRATORS TO REVIEW THE AWARD. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S WIA RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN

CA-P.8

WIRELESS SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, VC52N061, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL PAY ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WIRELESS WILL PAY THE FEE DIRECTLY TO THE AAA OR THE BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER, AS WELL AS FOR ANY APPEAL TO A PANEL OF THREE NEW ARBITRATORS (IF THE ARBITRATION AWARD IS APPEALABLE UNDER THIS AGREEMENT);

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT **VERIZONWIRELESS.COM** OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO **VERIZONWIRELESS.COM** OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT, AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE ARBITRATION BEGINS. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEY'S FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE**

CA-P9

ENFORCED, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON WIRELESS AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON WIRELESS UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

**ABOUT THIS AGREEMENT**

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this agreement or any of your rights or duties under it without our permission. However, we may assign this agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.** This agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

CA-P10

PO Box 4003
Acworth, GA 30101

YEHUDA HERSKOVIC
581 FLUSHING AV
APT 2
BROOKLYN, NY 11206-5100

You have successfully activated service on line
████-0559!
For a summary of your service, read on.

April 5, 2014

Dear Yehuda Herskovic,

Thank you for choosing Verizon Wireless. This letter confirms that you activated service for line ████ 0559 on April 2, 2014.
See a snapshot of your service below. A copy of your Customer Agreement is enclosed.

Sincerely,
Verizon Wireless

## SERVICE SUMMARY FOR LINE 347-263-0559 AS OF 04/02/14

Contract End Date: 04/02/16
Early Termination Fee: Up To $175




| | | TALK | TEXT | DATA |
|---|---|---|---|---|
| | | SHARED | SHARED | SHARED |
| Allowance | | **Unlimited** | **Unlimited** | **250 MB** |
| Monthly Access - This Device | $30.00 | Included | Included | Included |
| Overage Rate | | N/A | N/A | $15.00/200MB |

Included Feature(s) for this line:  •Unlimited Nights And Weekend Share  •Unlimited National M2m

## YOUR ACCOUNT SHARED SERVICE(S) AS OF 04/02/14

Account # :  0588290985-00001          Account Plan Description : More Everything - Talk, Text & Data Plan

| | | SHARED SERVICES | | |
|---|---|---|---|---|
| Allowance | | TALK **Unlimited** | TEXT **Unlimited** | DATA **250 MB** |
| Monthly Access - Account | $15.00 | Included | Included | Included |
| Overage Rate | | N/A | N/A | $15/200MB |
| Total Monthly Line Access Charge | $30.00 | Included | Included | Included |
| Total Lines Enrolled | | 1 | 1 | 1 |

Nights: 9:01pm - 5:59am, Monday - Friday   Weekends: 12:00am Saturday - 11:59pm Sunday

**Additional billing information:** The monthly charges and allowance minutes above do not reflect prorated fees/allowances for a partial month's service. These partial month charges will be added to your first full month's charges on your first bill. Individual devices may have additional, recurring monthly fees for non-shared services.  Taxes & surcharges apply; see details following this service summary. View individual device details at myverizon.com

**Estimated taxes & surcharges on your first bill:**
    Estimated taxes, governmental surcharges and fees ................. $6.42
    Estimated Verizon Wireless surcharges ..................................... $6.65

**These estimated amounts are based on:**
    Monthly Regulatory Charge (subject to change from time to time) ........... 21¢ per device
    Monthly Administrative Charge (subject to change from time to time) ....... 88¢ per device
    Monthly Federal Universal Service Charge on interstate & international
    telecom charges .......................................................................... 16.6% per device
    *(This percentage varies quarterly based on FCC rate)*
**Note:**
Estimated taxes and surcharges may be for both the partial and full month period.  Federal Universal Service, Regulatory and Administrative Charges are Verizon Wireless charges, not taxes.  Taxes and Verizon Wireless surcharges may be between 13% to 42% of your monthly bill.

**In addition:**
Our records indicate you were billed a $35.00 activation fee for your service.

*continued...*

QUESTIONS? We're here to help.
**CLICK** verizonwireless.com/support   |   **CALL** 1.800.922.0204
or dial *611 from your wireless device

**Note:** Please retain this letter, which is for information purposes only, for your records. Discounts apply only if you are on a qualifying plan. In the case of error, your Calling Plan and Customer Agreement will govern.

## INCLUDED FEATURES

| | |
|---|---|
| 411 Search[1] | $1.99 per call. Up to 3 numbers can be provided per call. |
| Calling Features[2] | Enjoy Basic Voice Mail with Message Waiting Indicator, Caller ID, Call Waiting, 3-Way Calling, Call Forwarding and No Answer/Busy Transfer. |
| Global Voice & Messaging (outside the U.S.) | For a complete list of destinations, rates and coverage, visit verizonwireless.com/global before traveling. |
| International Calling (from the U.S.) | Visit verizonwireless.com/international for applicable long distance rates to the places you can call direct. |
| Unlimited Messaging[3] | Send as many text, picture and video messages as you want from the US to any capable number in the world. |

1. Rates and features vary when in Extended Network or Roaming.
2. Not available in some areas
3. For sending and receiving text and multimedia messages (i) in the U.S.; (ii) sent via email; (iii) with customers of wireless carriers on participating networks throughout the world. Premium Messaging programs not included. Visit www.vzw.com/global for details on participating carriers by country.

**For a map of your wireless coverage, visit verizonwireless.com/coveragelocator and enter a street address.**

13700

Verizon Wireless calling plans, rate and coverage areas, rates, agreement provisions, business practices, procedures and policies are subject to change as specified in the Customer Agreement.

Data Services
Verizon Wireless charges you for all data and content sent or received using our network (including any network overhead and/or Internet Protocol overhead associated with content sent or received), as well as resolution of Internet Protocol addresses from domain names. Sending or receiving data using a virtual private network (VPN) involves additional VPN overhead for which you will be charged. Please note that certain applications or widgets periodically send and receive data in the background, without any action by the user, and you will be billed for such data use. Applications may automatically re-initiate data sessions without your pressing or clicking the SEND or connect button. Data sessions automatically terminate after 24 hours. A data session is inactive when no data is being transferred. Data sessions may seem inactive while data is actively being transferred, or may seem active when the data is actually cached and data is not being transferred.

We are implementing optimization and transcoding technologies in our network to transmit data files in a more efficient manner to allow available network capacity to benefit the greatest number of users. These techniques include caching less data, using less capacity, and sizing the video more appropriately for the device. The optimization process is agnostic to the content itself and to the website that provides it. While we invest much effort to avoid changing text, image and video files in the compression process, and while any change to the file is likely to be indiscernible, the optimization process may minimally impact the appearance of the file as displayed on your device. For a further, more detailed explanation of these techniques, please visit verizonwireless.com/vzwoptimization

You may use Mobile Hotspot or any other Wi-Fi hotspot or tethering service to use your smartphone or basic phone as a Wi-Fi hotspot or to tether it to your computer or tablet. If you subscribe to a data plan or package with an unlimited data allowance, there is an additional $20/ month fee to do so.

Data transfer amounts will vary based on application. If you download an audio or video file, the file may be downloaded in sections or in its entirety; data charges will apply to the portion downloaded, regardless of whether you listen to or watch all of it. You may access and monitor your own data usage during a particular billing period, including during the Return Period, by accessing My Verizon online or by contacting Customer Service.

Data Services: Permitted Uses
You can use our Data Services for accessing the Internet and for such things as: (i) Internet browsing; (ii) email; (iii) intranet access (including accessing corporate intranets, email and individual productivity applications made available by your company); (iv) uploading, downloading and streaming of audio, video and games; and (v) Voice over Internet Protocol (VoIP).

Data Services: Prohibited Uses
You may not use our Data Services for illegal purposes or purposes that infringe upon others' intellectual property rights, or in a manner that interferes with other users' service; that violates trade and economic sanctions and prohibitions as promulgated by the departments of Commerce, Treasury or any other U.S. government agency; that interferes with the network's ability to fairly allocate capacity among users or that otherwise degrades service quality for other users. Examples of prohibited usage include: (i) server devices or host computer applications that are broadcast to multiple servers or recipients such that they could enable "bots" or similar routines (as set forth in more detail in (ii) below) or otherwise degrade network capacity or functionality; (ii) "auto-responders," "cancel-bots," or similar automated or manual routines that generate amounts of net traffic that could disrupt net user groups or email use by others; (iii) generating "spam" or unsolicited commercial or bulk email (or activities that facilitate the dissemination of such email); (iv) any activity that adversely affects the ability of other users or systems to use either Verizon Wireless' services or the Internet-based resources of others, including the generation or dissemination of viruses, malware or "denial of service" attacks; (v) accessing, or attempting to access without authority, the information, accounts or devices of others, or to penetrate, or attempt to penetrate, Verizon Wireless' or another entity's network or systems; or (vi) running software or other devices that maintain continuous active Internet connections when a computer's connection would otherwise be idle, or "keep alive" functions, unless they adhere to Verizon Wireless' requirements for such usage, which may be changed from time to time.

We further reserve the right to take measures to protect our network and other users from harm, compromised capacity or degradation in performance. These measures may impact your service, and we reserve the right to deny, modify or terminate service, with or without notice, to anyone we believe is using Data Plans or Features in a manner that adversely impacts our network. We may monitor your compliance, or other subscribers' compliance, with these terms and conditions, but we will not monitor the content of your communications except as otherwise expressly permitted or required by law. [See verizonwireless.com/privacy]

12310

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA HERSKOVIC, | Case No.: 1:2019cv03372 |
| *Plaintiff,* | **SUPPLEMENTAL DECLARATION OF DANIEL REED RE MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION** |
| *-against-* | |
| VERIZON WIRELESS, | |
| *Defendant.* | Case Removed: June 6, 2019 |

## SUPPLEMENTAL DECLARATION OF DANIEL REED IN SUPPORT OF MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION

I, Daniel Reed, hereby declare as follows:

1.     I am over the age of 18 and am competent to testify to the facts declared below, and could testify truthfully thereto if required. I am currently employed by Verizon Wireless as a Senior Analyst. I have been employed by Verizon Wireless since 2005. In my capacity as a Senior Analyst, I provide services to Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"). Specifically, I assist with the handling of consumer disputes for Verizon Wireless, among other things.

2.     In preparing this Supplemental Declaration, I have relied on my personal knowledge of, and experience in, the business operations of Verizon Wireless as well as a review of Verizon Wireless's business records. Verizon Wireless's business records are made in the regular course of business, at or near the time of the act, conditions or events described in the documents, and by or from information provided by a person with knowledge of the act,

1

conditions or event.  The attached Exhibits 1 and 2 are true and correct copies of Verizon Wireless's business records.

3.      I offer this Supplemental Declaration to address the request made by the Court at the initial status conference on September 10, 2019 for the sales receipt and customer agreement that Plaintiff Yehuda Herskovic ("Plaintiff") executed at 100 Wall Street, New York, NY for his phone number ending in 4565.

4.      On December 8, 2016, at a third-party Verizon Wireless retail store located at 100 Wall Street, New York, NY, Plaintiff executed a sales receipt for equipment and services in connection with phone numbers ending in 4565 and 6897.  Attached hereto as **Exhibit A** is a true and correct copy of this sales receipt executed by Plaintiff on December 8, 2016.

5.      Attached hereto as **Exhibit B** is a true and correct copy of the Verizon Wireless Customer Agreement in effect on December 8, 2016 when Exhibit A was executed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September $27$, 2019 at Irvine, California.

Daniel Reed

2

# verizon√

**Total paid today** $32.65

## Thank you.

| Monthly charges | | Today's charges | |
|---|---|---|---|
| **718-675-6897** | | Verizon Wireless Home Phone in Black 2 Year Price | **$29.99** |
| Verizon Wireless Home Phone in Black | | | |
| DEV ID: A000004FC2E8D3 | | | |
| Device | | | |
| WIRELESS HOME PHONE UNLIMITED $20.00 Contract end date 12/08/2018 | **$20.00** | | |
| Features | | Accessories | |
| Decline Equipment Protection | **$0.00** | | |
| | | NY Local Sales Tax | $1.46 |
| | | NY State Sales Tax | $1.20 |
| Taxes & Fees | **$0.00** | Total taxes & fees | **$2.66** |
| **Due monthly** | **$20.00** | **Paid today** | **$32.65** |

(Expect an email shortly detailing your next bill or go to www.vzw.com/myverizon)

Your Verizon receipt continued

# Payment method

### Transaction type : Sale
Transactions are charged in USD
I agree to pay the below payment amount

### Cash                                                    $ 32.65

Change Due: $67.35
Register: 43

### Decline Equipment Protection
You have declined equipment protection on one or more of your
devices. If you need to replace your device the full retail cost may
exceed $700.00.

# Agreements (View full agreement at vzw.cc/m/my_verizon)

### Customer agreement
I agree to the Verizon Wireless Customer Agreement including an
early termination fee up to $350 per line, settlement of disputes by
arbitration instead of jury trial, as well as the terms of my plan and any
optional services I have agreed to purchase as reflected on the
previous screen.Note: This purchase may be returned or exchanged
through 1/14/2017. $35 restock fee applies (excluding Hawaii).

# Signature

By signing below I accept the agreements above



### Device trade-in
In some states, recycle credit reduces the tax base. The Taxes or fees
on your purchase were based on a price of:$29.99
**Amount tendered : $100.00 / This payment : $32.65**

Trade-in device transactions are final and devices cannot be
returned.

If you received promo value when trading in a device and/or instant
device savings, you will be charged for that value if you do not maintain
active service for three billing cycles.

Verizon will also adjust any promotional Trade-in value if you return or
exchange your promotional device for an ineligible device.

Promotional trade in credits issued over 24 months and will appear in
2-3 bill cycles after receipt of trade at Verizon. Your smartphone
purchase must remain active on device payment agreement for 24
months to receive credits.

If you cancel service, or if device payment agreement is paid off or
transferred, promotional credits will stop. Traded device must be in
good working and cosmetic condition to receive credits.

### Ewaste tax disclaimer
Electronic waste should be recycled or disposed of properly. Contact
http://www.state.nj.us/dep/dshw/recycling/
Electronic_Waste/index.html or 866-DEPKNOW for information.

Your Verizon receipt continued

## Return policy

New and Certified Pre-Owned merchandise purchased between November 24 and December 31, 2016 may be returned or exchanged through January 14, 2017. You are permitted to make one exchange. A restocking fee of $35 applies to any return or exchange of a wireless device (excluding Hawaii). If you received your merchandise through a 'Buy One, Get One' or similar offer, both items must be returned in order to receive a refund. For exchanges for the same merchandise make and model, only the item to be exchanged needs to be returned. See verizonwireless.com/returnpolicy for complete details. To receive a credit for the activation fee, cancellations must occur within 3 days of activation of service.

## Taxes and surcharges

Taxes and surcharges can add 6% to 44% to your monthly access and usage charges including these Verizon Wireless monthly surcharges:
Monthly Federal Universal Service Charge on interstate & international telecom charges (varies quarterly based on FCC rate): 17.4% per line.
Regulatory ($.21 per voice line; $.02 per data-only line);
Administrative ($1.23 per voice line; $.06 per data-only line).

Handset, equipment and accessories sold by Verizon Wireless Network Procurement, LP

---

**Verizon retail location**

VERIZON,100 WALL ST
NEW YORK,NY
10005-3701
212-510-6160
**www.vzw.com**

**Receipt of transaction**

Order No: 454773 12/08/2016 @ 04:50 EST

First Copy - Customer, Second Copy - Merchant

**Verizon specialist**

REP

Your Verizon receipt; generated on 12/08/2016 @ 04:50 EST; order #: 454773; location D231601

**Page 3** of 3



# Customer Agreement

## Customer Agreement

(Para una copia de este documento en espanol, visite nuestro website: vzw.com/espanol.)

**Thanks for choosing Verizon. In this Customer Agreement ("Agreement"), you'll find important information about your wireless Service, including:**

- **our ability to make changes to your Service or this Agreement's terms,**
- **our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.**

# My Service

**Your Service terms and conditions are part of this Agreement.** Your Plan includes your monthly allowances and features, where you can use them (your "Coverage Area"), and their monthly and pay–per–use charges. You can also subscribe to several Optional Services, like international service plans or equipment protection services. Together, your Plan, features you use, and any Optional Services you select are your Service. Your billing and shipping addresses, and your primary place of use, must be within the areas served by the network Verizon owns and operates. The current version of this Agreement and the terms and conditions for your Service are available online at **verizonwireless.com**.

By using the Service you are agreeing to every provision of this Agreement whether or not you have read it. This agreement also applies to anyone who uses your Service.

## Cancellation

**You can cancel a line of Service within 14 days of accepting this Agreement without having to pay an early termination fee as long as you return, within the applicable return period, any equipment you purchased from us or one of our authorized agents at a discount in connection with your acceptance of this Agreement, but you'll still have to pay for your Service through that date. If you signed up for Prepaid Service, no refunds will be granted after 14 days or if your account has been activated. See vzw.com/returnpolicy for complete details and information on returning your equipment.**

## My Privacy

We collect personal information about you. By entering into this Agreement, you consent to our data collection, use and sharing practices described in our Privacy Policy. It is your responsibility to notify people who connect devices through your mobile hotspot, Jetpack or wireless router that we will collect, use and share information about their device and use of the Service in accordance with our Privacy Policy. We provide you with choices to limit, in certain circumstances, our use of the data we have about you. You can review these choices at Verizon.com/Privacy#Limits. If there are additional specific advertising and marketing practices for which your consent is necessary, we will seek your

consent (such as through the privacy-related notices you receive when you purchase or use our products and services) before engaging in those practices. You can find out how we use, share and protect the information we collect about you in the Verizon Privacy Policy, available at **verizon.com/privacy**.

If you subscribe to Service for which usage charges are billed at the end of the billing period ("Postpay Service"), we may investigate your credit history at any time. If you'd like the name and address of any credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be provided by third parties. Before you use, link to or download a service or application provided by a third party, you should review the terms of such service or application and applicable privacy policy. Personal information you submit may be read, collected or used by the service or application provider and/or other users of those forums.

You consent to allow Verizon and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number, other contact number or email address you provide. Verizon will treat any email address you provide as your private email that is not accessible by unauthorized third parties. Unless you notify us that your wireless service is based in a different time zone, calls will be made to your cellular device during permitted calling hours based upon the time zone affiliated with the mobile telephone number you provide.

## What happens if my Postpay Service is canceled before the end of my contract term?

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month–to–month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without billing or at a reduced billing rate, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month–to–month basis for that line of Service.**If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350, which will decline by $10 per month upon completion of months 7–17, $20 per month upon completion of months 18–22, $60 upon completion of month 23 and will be $0 upon completion of the contract term. For other contract terms entered into on or after November 14, 2014, your early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17, $10 per month upon completion of months 18–22, $30 upon completion of month 23 and will be $0 upon completion of your contract term. If you cancel service, you may have to immediately pay off the remaining balance on any device agreement. Cancellations will become effective on the last day of that month's billing cycle,** and you are responsible for all charges incurred until then. Also, if you bought your wireless device from an authorized agent or third–party vendor, you should check whether it charges a separate termination fee.

## Can I take my wireless phone number to another carrier?

You may be able to transfer, or "port", your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain

responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services right away, such as 911 location services. You don't have any rights to your wireless phone number, except for any right you may have to port it.

## Can I have someone else manage my Postpay account?

No problem – just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this Agreement.

## Can Verizon change this Agreement or my Service?

We may change prices or any other term of your Service or this Agreement at any time, but we'll provide notice first, including written notice if you have Postpay Service. If you use your Service after the change takes effect that means you're accepting the change. If you're a Postpay customer and a change to your Plan or this Agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no early termination fee if we fail to negate the change after you notify us of your objection to it. Notwithstanding this provision, if we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change.

## My wireless device

Your wireless device must comply with Federal Communications Commission regulations, be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your wireless device. By activating Service that uses a SIM (Subscriber Identity Module) card, you agree we own the intellectual property and software in the SIM card that we may change the software or other data in the SIM card remotely and without notice, and we may utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes.

## Where and how does Verizon wireless Service work?

Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within your Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

## How does Verizon calculate my charges?

You agree to pay all access, usage and other charges that you or any other user of your wireless device incurred. If multiple wireless devices are associated with your account, you agree to pay all charges incurred by users of those wireless devices. For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **Send** or the call connects to a network, and for incoming calls, it starts when

the call connects to a network (which may be before it rings). Usage time may end several seconds after you press **End** or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

## What Charges are set by Verizon?

Our charges may also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

## Government Taxes, Fees and Surcharges

You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we may not always be able to notify you in advance of changes to these charges.

## What is roaming?

You're "roaming" whenever your wireless device connects to a network outside your Coverage Area or connects to another carrier's network, which could happen even within your Coverage Area. There may be higher rates or extra charges (including charges for long distance, tolls or calls that don't connect), and your data service may be limited or slowed, when roaming.

## How can I prevent unintended charges on my bill?

Many services and applications are accessible on or through wireless devices, including purchases of games, movies, music and other content. Some of these services are provided by Verizon. Others are provided by third parties that may offer the option to bill the charges to your Verizon bill or other methods of payment. Charges may be one–time or recurring. The amount and frequency of the charges will be disclosed to you or the person using your device or a device associated with your account at the time a purchase is made. If the purchaser chooses to have the charges billed to your account, such charges will become part of the amount due for that billing cycle.**Verizon offers tools to block or restrict these services, and to block all billing for third–party services on your Verizon wireless bill, at verizonwireless.com/myverizon. We do not support calls to 900, 976 and certain other international premium rate numbers.**

## How and when can I dispute charges?

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM), WITHIN THE 180–DAY PERIOD**

**MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.**

## What are my rights for dropped calls or interrupted Service?

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1—minute airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24 hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost. Please be aware that these are your only rights for dropped calls or interrupted Service.

## Billing and Payments

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to 1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is greater, if allowed by law in the state of your billing address. (If you choose to have your Service billed by another company (pursuant to a Verizon-approved program), late fees are set by that company and may be higher than our late fees.) Late fees are part of the rates and charges you agree to pay. If you fail to pay on time and we refer your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent. We may require a deposit at the time of activation or afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires. We may apply deposits or payments in any order to any amounts you owe us on any account. If your final credit balance is less than $1, we will refund it only if you ask. If your service is suspended or terminated, you may have to pay a fee to have service reactivated.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by providing us with another payment. If you maintain a Prepaid account balance, it may not exceed $1,000 and you may be prevented from replenishing if your balance reaches $1,000. We may apply your payments to any amounts you may owe us if your earlier account replenishment payments had been reversed. We will suspend service when your account reaches the expiration date and any unused balance will be forfeited.

We may charge you up to $25 for any returned check. If you make a payment, or make a payment arrangement, through a call center representative, we may charge you an Agent Assistance Fee of $7.00

## What if my wireless device gets lost or stolen?

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep someone else from using it. If you're a Postpay customer and your wireless device is used after the loss or theft but before you report it, and you want a credit for any charges for that usage, we're happy to review your account activity and any other information you'd like us to consider. Keep in mind that you may be held responsible for the charges if you delayed reporting the loss or theft without good reason, but you don't have to pay any charges you dispute while they are being investigated. If you are a California customer and we haven't given you a courtesy suspension of

recurring monthly charges during the past year, we'll give you one for 30 days or until you replace or recover your wireless device, whichever comes first.

## What are Verizon's rights to limit or end Service or end this Agreement?

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause, including, but not limited to: (1) if you: (a) breach this agreement; (b) resell your Service; (c) use your Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions promulgated by any US governmental agency; (d) install, deploy or use any regeneration equipment or similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an RF signal without our permission; (e) steal from or lie to us; or, if you're a Postpay customer; (f) do not pay your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information we can't verify; or (i) are unable to pay us or go bankrupt; or (2) if you, any user of your device or any line of service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar and/or inappropriate language toward our representatives; (b) interfere with our operations; (c) "spam," or engage in other abusive messaging or calling; (d) modify your device from its manufacturer's specifications; or (e) use your Service in a way that negatively affects our network or other customers. We can also temporarily limit your Service for any operational or governmental reason.

## Am I eligible for special discounts?

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an organization that has an agreement with us. Unless your discount is through a government employee discount program, we may share certain information about your Service (including your name, your wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

## DISCLAIMER OF WARRANTIES

**We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network–related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third–party products. Verizon Wireless is not responsible for any third–party information, content, applications or services you access, download or use on your device. You are responsible for maintaining virus and other Internet security protections when accessing these third–party products or services. For additional information, visit the Verizon Content Policy at responsibility.verizon.com/contentpolicy**

## WAIVERS AND LIMITATIONS OF LIABILITY

**You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive. For example, disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device, or the use of your account or device to access or make changes to an account with another entity, such as a financial entity, without authorization. This limitation and waiver will apply regardless of the theory of liability. It also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim.** You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

## HOW DO I RESOLVE DISPUTES WITH VERIZON?

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. THIS AGREEMENT TO ARBITRATE CONTINUES TO APPLY EVEN AFTER YOU HAVE STOPPED RECEIVING SERVICE FROM US.

(2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S CONSUMER ARBITRATION RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER

**PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.**

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL REIMBURSE ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WILL PAY THE FEE DIRECTLY TO THE AAA OR BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER.

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT **VERIZONWIRELESS.COM** OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO **VERIZONWIRELESS.COM** OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT, AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE THE ARBITRATION HEARING. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER, AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU ONLY THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED AS TO ALL OR PART OF A DISPUTE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY TO THAT DISPUTE OR PART OF THE DISPUTE.**

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

## About this Agreement

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this Agreement or any of your rights or duties under it without our permission. However, we may assign this Agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus**

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.** This Agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

April 13, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA HERSKOVIC, | Case No.: 1:19-cv-03372 |
| *Plaintiff,* | **DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS'S STATUS UPDATE RE AAA ARBITRATION** |
| -*against*- | |
| VERIZON WIRELESS, | |
| *Defendant.* | Case Removed: June 6, 2019 Compelled to Arb.: March 6, 2020 |

Defendant Cellco Partnership d/b/a Verizon Wireless, *incorrectly sued as* "Verizon Wireless" ("Defendant") submits this status update in response to Plaintiff Yehuda Herskovic's "letter" to the Court dated July 27, 2021.

The portion of the Verizon Wireless arbitration agreement that Plaintiff quotes in his letter applies in situations where the customer has attempted to resolve an issue with Defendant *informally* through Defendant's internal mediation process, not where, as here, the customer has attempted to litigate the dispute and avoid arbitration. However, in an effort to facilitate arbitration, Defendant will pay the $200.00 American Arbitration Association ("AAA") initiation fee after Plaintiff submits the dispute to the AAA. Plaintiff has not yet done so, and Defendant believes that Plaintiff has filed this "letter" in a further attempt to avoid arbitration.

Dated: New York, New York
        August 11, 2021

                            Respectfully submitted,

                            *Howard A. Fried*
                            Howard A. Fried (HF2114)
                            McGIVNEY, KLUGER, CLARK &
                            INTOCCIA, P.C.
                            *Attorneys for Defendant*
                            **Cellco Partnership d/b/a Verizon Wireless,**
                            *incorrectly sued as* **"Verizon Wireless"**
                            80 Broad Street,  23rd Floor
                            New York, NY 10004
                            (212) 509 3456

TO – *via ECF*

Yehuda Herskovic
*Plaintiff Pro Se*
225 Ross St.
Brooklyn, NY 11211

YEHUDA HERSKOVIC
225 ROSS STR 1FL
BROOKLYN NY. 11211

AMERICAN ARBITRATION ASSOCIATION
CASE FILING SERVICES
1101 LAUREL OAK ROAD SUITE 100
VOORHEES NJ 08043



CADMAN PLAZA
271 CADMAN PLZ E STE 2
BROOKLYN, NY 11201-9997
(800)275-8777

09/13/2021                           10:52 AM
-------------------------------------------
Product            Qty    Unit    Price
                          Price
-------------------------------------------
First-Class Mail®    1                  $2.76
Large Envelope
    Voorhees, NJ 08043
    Weight: 0 lb 8.80 oz
    Estimated Delivery Date
       Thu 09/16/2021
                          -----------------
                                         $2.76
Grand Total:
-------------------------------------------
                                         $2.76
Credit Card Remitted
    Card Name: AMEX
    Account #: XXXXXXXXXXX1003
    Approval #: 827099
    Transaction #: 791
    AID: A000000025010801      Chip
    AL: AMERICAN EXPRESS
    PIN: Not Required
                          -----------------

**********************************************
USPS is experiencing unprecedented volume
     increases and limited employee
     availability due to the impacts of
COVID-19. We appreciate your patience.
**********************************************

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
        Associate can show you how.



CADMAN PLAZA
271 CADMAN PLZ E STE 2
BROOKLYN, NY 11201-9997
(800)275-8777

09/13/2021                           10:51 AM
-------------------------------------------
Product            Qty    Unit    Price
                          Price
-------------------------------------------
First-Class Mail®    1                  $2.76
Large Envelope
    New York, NY 10004
    Weight: 0 lb 9.00 oz
    Estimated Delivery Date
       Thu 09/16/2021
-------------------------------------------
Grand Total:                             $2.76
-------------------------------------------
Credit Card Remitted                     $2.76
    Card Name: AMEX
    Account #: XXXXXXXXXXX1003
    Approval #: 801386
    Transaction #: 790
    AID: A000000025010801      Chip
    AL: AMERICAN EXPRESS
    PIN: Not Required
-------------------------------------------

**********************************************
USPS is experiencing unprecedented volume
     increases and limited employee
     availability due to the impacts of
COVID-19. We appreciate your patience.
**********************************************

In a hurry? Self-service kiosks offer