ORIGINAL

RECEIVED
SEP 3 0 2022
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Yehuda Herskovic, plaintiff,

Case EDNY 1-19-cv-03372-HG-RML

v.

Verizon Wireless also doing business as Cellco Partnership, Defendant.

Notice of Motion to vacate orders compelling arbitration, vacate or modify arbitration award, remand to State Court, and/or for clarification that the limit on damages is null and void

PLEASE TAKE NOTICE upon the annexed, affirmation affirmed by the undersigned, dated October 2, 2022, and the full record of this case to date, Yehuda Herskovic moves before the Honorable Hector Gonzalez at the United States District Court for the Eastern District of New York at 225 Cadman Plaza East, Brooklyn, NY 11201 for an order granting:

A) Pursuant to FRCP 60(b)(1), (3), (4), (5) and (6) to vacate the orders compelling arbitration, since the underlying controversy arises from a judgment, not a contract, as found by the arbitrator that the disputed debt merged with the judgment of the Small Claims Court, and thus the matter must remand the matter to the State court;

B) In the alternative or in the furtherance, pursuant to 9 USC 10(a)(4) and 11(b) to vacate the arbitrator's award as to damages, the arbitrator exceeded its power, since the underlying damages arises from disobedience to a judgment, not a contract, as found by the arbitrator that the disputed debt merged with the judgment of the Small Claims Court, and in addition exceeded the purported Customer Agreement; and

C) In the furtherance, for declaratory relief holding that the so-called "Customer Agreement" insulating itself from damages is null and void; In the alternative, pursuant to 9 USC 10(a)(4) and 11(b) vacating and rejecting the arbitration award inasmuch it failed to consider damages under the FCRA.

Dated: Brooklyn, NY
    September 30, 2022
Respectfully submitted,

Yehuda Herskovic, plaintiff,

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Yehuda Herskovic, plaintiff,

v.

Verizon Wireless also doing
business as Cellco Partnership,
Defendant.

Case EDNY 1-19-cv-03372-HG-RML

Affirmation in Support to vacate
orders compelling arbitration,
remanding the matter to State
court, vacate or modify arbitration
award, and/or for clarification that
the limit on damages is null and
void

Yehuda Herskovic states under the laws prohibiting perjury:

1. I state the following facts based on personal knowledge and
familiarity of the record of this case.

# Preliminary Statement

2. This lawsuit arises out of an injury that Defendant caused
Plaintiff in defiance to a judgment from the Small Claims Court of Kings
County against Defendant. In plain words, this lawsuit is post-judgment,
to enforce a judgment of the Kings County Small Claims Court.

3. The arbitration award, which a true copy is attached as Exhibit
A, acknowledges that the Defendant's ability to reprise on Plaintiff's credit
report—purporting that Plaintiff owes $176.11 as a termination fee—
ended when Plaintiff obtained a judgment in the Small Claims Court of
Kings County awarding Plaintiff a refund of all monies paid under the
contract. Indeed, Defendant acknowledges as such ("The Arbitrator ruled
that because the small claims court judgment that Plaintiff previously
obtained amounted to a "refund" of his account payments, Verizon
Wireless should no longer attempt to collect or credit report Plaintiff's
outstanding account balance") (ECF 72-2 p. 4).

4. The amended complaint pleads for monetary damages
arising from the fact that Defendant continued reporting the alleged debt
of $176.11 after Plaintiff obtained a judgment in the Small Claims Court
of Kings County awarding a refund of all monies paid under the contract
(ECF 63).

# Nature of the Case

5.    On or about December 6, 2016, Plaintiff purchased a home device from Verizon Wireless and Cellco Partnership under the phone number 718.387.4565 that would allow making phone calls through the internet.

6.    The services were for a "Wireless Home Phone Unlimited" with a $20.00 monthly charge for unlimited phone calls in addition there were a fee for activation.

7.    After finding the home device defective due to frequent dropped calls, Defendant was unable to cure the defective service, on or about December 27, 2017, the services between Defendant and Plaintiff were rescinded.

8.    A representative for Defendant conveyed to Plaintiff that it would issue a refund and will not be charged a termination fee.  In the interim, Plaintiff paid the bill for December 2017 in full.

9.    On or about January 30, 2018, Defendant issued an invoice to Plaintiff charging an "early termination fee" along with other surcharges in the total amount of $176.11.  Attached as Exhibit B is a true copy of the invoice that Plaintiff received.

10.    The termination fee, Defendant claims were justified under the so-called Customer Agreement stating:

> *For other contract terms entered into on or after November 14, 2014, your early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17, $10 per month upon completion of months 18–22, $30 upon completion of month 23 and will be $0 upon completion of your contract term. If you cancel service, you may have to immediately pay off the remaining balance on any device agreement. Cancellations will become effective on the last day of that month's billing cycle, and you are responsible for all charges incurred until then.*

Attached as Exhibit C is a true copy of the so-called Customer Agreement contended by Defendant as the basis for the termination fee and arbitration agreement.

11.    Because Defendant failed to refund the money paid and

continued charging a termination fee, Plaintiff sued Defendant in Small Claims Court of King County under the caption <u>Yehuda Herskovic v. Verizon Wireless</u>, Index No. 3766/18. The lawsuit was filed February 7, 2018. On December 4, 2018, the Small Claims Court awarded judgment in his favor for $718.00. The basis for the lawsuit sought a refund of all payments for the rescinded services. Attached as Exhibit D is a true copy of the judgment.

12. On January 9, 2019, Defendant duly satisfied the judgment in full. Attached as Exhibit E is a true copy of the paystub of the check that Plaintiff received from Defendant, which state in the Description that the payment is a "Customer Refund".

13. The issue in this case is that starting about August 2018 to August 2022, Defendant reported on Plaintiff's credit report a tradeline of a "charge off" of $176, representing the early termination fee. Attached as Exhibit F, G, and H are true extracts of Plaintiff's credit reports, the only negative reporting on Plaintiff's credit report is from Defendant.

14. This negative tradeline has been repeated monthly with all three credit bureaus and every time that Plaintiff disputed the alleged debt with the credit bureaus, Defendant has been insisting that the debt is valid. Indeed, at the evidentiary hearing before the arbitrator, Defendant has insisted that the debt is valid and contended that the furnishing on Plaintiff's credit report is accurate. Attached as Exhibit F, G, and H are true copies of extracts of Plaintiff's credit reports, showing the notation that Plaintiff disputed the debt with the credit reporting bureaus.

15. The amended complaint pleads that Defendant's negative tradeline is false because the services has been rescinded and Plaintiff should have never been charged an early termination fee. Under State law, a recission leaves the parties with the position as if there was no contract and with no contract there is no basis for the early termination fee. Most important, the amended complaint pleads, Defendant's negative tradeline is false because Plaintiff prevailed in Small Claims Court upholding the rescission awarding a refund of all monies paid. Plaintiff pleads that after Defendant satisfied the judgment, Defendant is now barred by collateral estoppel and transactional res judicata from claiming that Plaintiff still owed them any money.

16. As delineated in the procedural history, the Court compelled arbitration based on the Customer Agreement, without ever taking into

consideration the judgment of the Small Claims Court.

17. The arbitrator agreed with Plaintiff:

*While the contract [(referring to the Customer Agreement)] between the parties did provide for a fee for "early termination," the evidence showed that Claimant brought an action in small claims court in which he recovered $698.00, which appears to have been in effect a refund for "defective services rendered." Under those circumstances, I find that no fee for "early termination" should have been due.*

*While Respondent claims not to have had notice of the small claims court case, it paid the judgment and did not seek to reopen the case. In addition, Respondent stated that it was not asserting a counterclaim for the termination fee in this arbitration. For all of those reasons, I find that Respondent has no claim against Claimant for the purported termination fee.*

*Accordingly, Respondent is hereby ordered to refrain from taking any steps to collect the aforesaid termination fee from Claimant, including retaining any debt collection agencies for such purpose, and from reporting to any credit reporting agencies or similar organizations that Claimant is in default or past due on any obligation because of his refusal to pay such putative termination fee. In addition, Respondent shall take all steps reasonably necessary to correct any current negative credit report on Claimant based on Respondent's prior reporting that Claimant was in default or past due because of his refusal to pay the aforesaid termination fee.*

## Basis for Damages

18. After the judgment of the Small Claims Court was satisfied, Defendant continued reporting on Plaintiff's credit report the negative tradeline that money is owed. Attached as Exhibit F, G, and H are true copies of extracts of Plaintiff's credit reports, showing that the disputed the debt was reported on Plaintiff's credit report from January 2019 onwards.

19. As a result of the negative tradeline on the credit report, Plaintiff's applications for several credit cards were denied, causing him financial harm, and that he suffered emotional distress and psychological injury.

20. The basis for damages is that Plaintiff transacts about $50,000 per month in credit transactions, which would be eligible for a reward of points/milage. The reward of points/milage are the equivalent of money. As a direct result of Defendant's negative tradeline on Plaintiff's credit report, Plaintiff has been repeatedly denied credit for credit cards that offer higher reward of points/milage.

## Basis for Punitive Damages

21. As shown above, on December 4, 2018, Plaintiff obtained judgment from the Small Claims Court.

22. On December 7, 2018, Defendant utilized a debt collector with the name Diversified Consultants Inc. to issue a dunning letter falsely purporting that Plaintiff owes $176.11 plus $31.69 in interest in the total amount of $207.80. Attached as Exhibit I is a true copy of the collection letter delegated from Defendant. Plaintiff duly disputed the false debt with Diversified Consultants Inc. Defendant was unable to verify the debt with Diversified Consultants Inc. and the tradeline was returned to Defendant.

23. On June 14, 2019, Defendant utilized a different debt collector with the name Convergent Outsourcing Inc. to send Plaintiff a dunning letter to falsely state that he owes $176.11 plus $31.69 in interest in the total amount of $207.80. Attached as Exhibit J is a true copy of the collection letter delegated from Defendant. Plaintiff duly disputed the false debt with Convergent Outsourcing Inc.

24. The amended complaint pleads that despite having prevailed with a judgment on the entirety of the transaction and despite having Plaintiff's dispute honored by independent debt collectors, Defendant had deliberately continued the negative tradeline on Plaintiff's credit report, causing damages to Plaintiff. Further, despite having debt collectors return the tradeline to Defendant as an illegal collection, Defendant continued injuring Plaintiff with a false and negative tradeline on his credit report. Three years has already elapsed, and Defendant maintained the negative tradeline on Plaintiff's credit report until the arbitrator ordered its removal.

25.     In addition, each of these debt collectors, and there were other debt collectors as well, dunned Plaintiff with phone calls multiple times a day demanding payment for the nonexistent debt. The dunning continued until Plaintiff filed this lawsuit in State court.

26.     Moreover, Plaintiff contends that the collection letters were false and deceptive for a number of reasons.  First, Defendant had no legal basis for charging Plaintiff interest on the termination fee. Defendant has been unable to explain the basis for sending debt collectors to Plaintiff seeking compounded interest on a disputed termination fee.  Second, the $31.69 violated the usury statutes of the State of New York. The General Obligations Law voids obligations that charge above the civil usury rate of 16%.  Third, Defendant caused a debt collector to harass Plaintiff by falsely misrepresenting the amount of the debt, in violation of 15 USC § 1692e(2)(a).  Fourth, the judgment of the Small Claims Court and the satisfaction thereof foreclosed the claim that Plaintiff owed Defendant any money. Each of these violations were caused by Defendant in maliciously unleashing debt collectors against Plaintiff based on false pretenses prohibited by the FDCPA.

27.     At the evidentiary hearing before the arbitrator, Defendant admitted that it has a habit of alternating debt collectors after a debt collector marks a debt as disputed to harass the consumer and illegitimately force the consumer to either repeat the dispute process, give up on the dispute, or extort payment for the disputed debt. Defendant admitted that it is able to do that bait and switch because the FDCPA does not apply to the original creditor, it only applies to a debt collector, and thus Defendant can alternate debt collectors to annoy and mislead the consumer to repeat disputing the debt.

28.     Furthermore, this harassment by Defendant is by design. Despite reporting the termination fee as delinquent, Defendant never reported to the credit reporting agencies the positive payments that Plaintiff made on the account.  That is because Defendant have a "recovery" team with the sole purpose to dun consumers with malicious charges as a "termination fee" in retaliation for leaving Defendant to another utility provider. The malicious charge offs imposed by Defendant against consumers is manipulative, even when the debt cannot be substantiated, to create an obstacle for the consumer to obtain utility services with another provider.   The negative results are that a successive utility provider will demand a substantial security deposit from the consumer, because Defendant has reported on the consumer's credit

report the termination fee as a debt.

29.   Defendant abuses the credit report system knowing that consumers have a limited recourse.   At the same time, Defendant's Customer Agreement precludes any damages afforded under a provision it drafted unilaterally, stating:

> You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive. For example, disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device, or the use of your account or device to access or make changes to an account with another entity, such as a financial entity, without authorization. This limitation and waiver will apply regardless of the theory of liability. It also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim. You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

Exhibit C ps. 6-7.

30.   It is upon this history of abuse Defendant willfully tarnished Plaintiff's credit report that punitive damages are warranted. That is Defendant is deliberate in its acts despite the judgment of the Small Claims Court foreclosed Defendant's claim for $176, confident that a case for any damages for its misconduct is foreclosed by the terms of its purported Customer Agreement expecting that an arbitrator would follow to the letter, since the Customer Agreement also has an arbitration clause.

# Procedural History

31.   On February 7, 2018, Plaintiff sued Defendant in Small

Claims Court of King County under the caption <u>Yehuda Herskovic v. Verizon Wireless</u>, Index No. 3766/18.

32.    On December 4, 2018, the Small Claims Court awarded judgment in his favor for $718.00.

33.    On January 9, 2019, Defendant duly satisfied the judgment in full.

34.    On March 26, 2019, Plaintiff filed a complaint in the Supreme Court of New York, Kings County, alleging that Defendant persisted in the collection efforts $176.11 with telephone calls from debt collectors, despite the Small Claims awarded recission to Plaintiff. (ECF 2-2).

35.    On June 6, 2019, Defendant removed the case from the Supreme Court to this Court.  (ECF 2-1)

36.    On July 25, 2019, Defendant filed a motion to Compel Contractual Arbitration, contending that the termination fee arises from the purported Customer Agreement. No mention that this case arises from a judgment as opposed to a contract.

37.    On January 23, 2020, the Magistrate entered a report recommending arbitration. No mention whether this case arises from a judgment as opposed to a contract. (ECF 25).

38.    On March 6, 2020, the Court entered an order compelling arbitration.  No mention whether this case arises from a judgment as opposed to a contract.  (ECF 29).

39.    On December 28, 2020, the Court entered an order directing Plaintiff to file a demand for arbitration, holding "a motion to compel merely acknowledges that pursuant to a contractual agreement, **this Court does not have jurisdiction over the plaintiff's claims**." (ECF 39).

40.    On June 13, 2021, the Court directed that the "contractual arbitration" should proceed before the AAA.

41.    On September 1, 2021, Plaintiff initiated the arbitration proceedings under duress with the AAA. (ECF 60).

42.    On November 29, 2021, Plaintiff filed an amended complaint to clarify facts surrounding the cause of action.  (ECF 63).

43.    On March 15, 2022, after the parties briefed on whether there is a basis for arbitration. Attached as Exhibit K is a true copy of

Defendant's briefing, Exhibit L a true copy of Plaintiff's opposition, and Exhibit M is a true copy of Defendant's reply. The arbitrator ruled:

> *Having duly considered the submissions of the parties, I hereby rule pursuant to ICDR Rule 14 (a) that I do have jurisdiction to arbitrate this case because there is a valid arbitration agreement covering the claim.*
>
> *Additionally, the respondent's request to file a summary judgment motion on res judicata grounds is hereby denied under ICDR Rule 33 because, in light of the apparent differences between the claim at issue in the small claims case and the claim in this arbitration, I cannot determine based on the materials before me that Respondent has shown substantial cause that the motion is likely to succeed*

44.    On June 9, 2022, the arbitrator held an evidentiary hearing.

45.    On June 23, 2022, the parties filed post hearing briefs. Attached as Exhibit O is a true copy of Plaintiff's briefing. Attached as Exhibit N is a true copy of Defendant's briefing.

46.    On July 7, 2022, the American Arbitration Association emailed the arbitrator's decision as June 30, 2022, stating:

> *AWARD OF ARBITRATOR*
>
> *I, Michael D. Blechman, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, Yehuda Herskovic, Claimant appearing Pro Se and Verizon Wireless represented by Lisa Lawrence-Hughes of Yu Mohandesi LLP at an evidentiary hearing held on June 9, 2022, do hereby, AWARD, as follows:*
>
> *This case involves a purported termination charge of $176.11 which Respondent engaged various debt collection companies to collect from Claimant and which it reported as a past due debt to various credit bureaus.*
>
> *Claimant claims that, as a result, his applications for several credit cards were denied, causing him financial harm, and*

*that he suffered emotional and psychological injury.*

*While the contract between the parties did provide for a fee for "early termination," the evidence showed that Claimant brought an action in small claims court in which he recovered $698.00, which appears to have been in effect a refund for "defective services rendered." Under those circumstances, I find that no fee for "early termination" should have been due.*

*While Respondent claims not to have had notice of the small claims court case, it paid the judgment and did not seek to reopen the case. In addition, Respondent stated that it was not asserting a counterclaim for the termination fee in this arbitration. For all of those reasons, I find that Respondent has no claim against Claimant for the purported termination fee.*

*Accordingly, Respondent is hereby ordered to refrain from taking any steps to collect the aforesaid termination fee from Claimant, including retaining any debt collection agencies for such purpose, and from reporting to any credit reporting agencies or similar organizations that Claimant is in default or past due on any obligation because of his refusal to pay such putative termination fee. In addition, Respondent shall take all steps reasonably necessary to correct any current negative credit report on Claimant based on Respondent's prior reporting that Claimant was in default or past due because of his refusal to pay the aforesaid termination fee.*

*On the other hand, Claimant has failed to establish any compensable money damages resulting from Respondent's actions. In particular Claimant's evidence was insufficient to prove that the denial of his applications for three credit cards was due to Respondent's reporting of his failure to pay the termination fee. I further find that none of his proffered theories in support of a damage claim have merit. Therefore Claimant's claim for money damages is denied.*

*The administrative fees of the American Arbitration*

*Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $2,500 shall be borne as incurred.*

*This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.*

Attached as Exhibit A is a true copy of the arbitration award.

# Argument

**I.   Pursuant to FRCP 60(b)(1), (3), (4) and (6) the Court should vacate the orders compelling arbitration, since the underlying controversy arises from a judgment, not a contract, as found by the arbitrator that the disputed debt merged with the judgment of the Small Claims Court.**

47.   FRCP 60(b)(1), (3), (4), (5) and (6) provisions enable the Court to vacate the orders compelling arbitration, as relevant:

*On motion and just terms, the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (3) … misconduct by an opposing party; (4) the judgment is void; (5) the judgment applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.*

48.   There are two ways under which FRCP 60(b) can be decided. When it involves an issue previously considered by the Court, the review is subject to the sound discretion of the court.  When the issue involves a legal question presented for the first time by an amended complaint, the review is a question of law. *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (factual content of a proposed amended complaint is reviewed de novo on appeal from a denial of FRCP 60(b)), *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011) (a defect in jurisdiction is a legal question not subject to discretion).

49.   The issue presented here is a pure legal question, whether

the controversy arises from a judgment or a contract. Given the controversy arises from a post judgment, as found by the arbitrator, the Court did not have had the jurisdiction to compel arbitration, since the Customer Agreement (including its arbitration clause) had merged with the judgment. See *Kleynshvag v. GAN Ins. Co.*, 21 A.D.3d 999, 1003, 801 N.Y.S.2d 383, 386 (2005) (holding that the claim made under the agreement of insurance merged with the default judgment against the insured and an independent action against the insurer to enforce the judgment was proper); "Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises" *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir. 1972); "The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives" *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004).

50.    "Moreover, in *D'Urso* we applied the federal rate in spite of the parties' *explicit* agreement to apply a 15.5% interest rate to any arbitration award from the date payment was due to the date payment is made. We rejected the parties' agreed-upon rate because the general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract." *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010).

51.    This legal question was previously not addressed by the respondent and the Court, since the factual content addressing the judgment of the Small Claims Court was overlooked by the Court when reviewing the factual allegations of the handwritten complaint. The facts were clarified in the amended complaint, the arbitrator took note of the amended complaint and ruled that the negative tradeline of $176.11 is foreclosed by the judgment of the Small Claims Court.

52.    Under FRCP 60(b)(1), (3), (4), (5) and (6) vacatur is warranted. The holding of the arbitrator delegitimizes the legal posture of the orders compelling arbitration. Given that the controversy, addressing the Defendant's continuance negative tradeline on Plaintiff's credit report, did not arise from the contract but was barred by the judgment of the Small Claims Court. Whether the judgment of the Small Claims Court extended to the termination fee was a question for the State court to decide, not this Court.

53.    Under New York law, the transactional analysis approach to res judicata provides, that once a claim is brought to a final conclusion, all other claims between the same parties or those in privity with them arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. See *Kleinman v Weisman Law Group, P.C.*, 176 AD3d 1046, 1047 (2d Dept 2019) (applying res judicata to claim decided by the Nassau County District Court, a sister court to the NYC Small Claims Court).    The transaction here has been fully decided, which involved the services of a home device, the doctrine of res judicata precludes the Respondent from relitigating the basis for the termination fee, as a judgment on the merits exist in the prior action between the same parties involving the same transaction.    Identical to *Kleinman v Weisman Law Group, P.C.*, 176 AD3d 1046, 1047 [2d Dept 2019].  Even if Respondent is to argue that the doctrine of res judicata only applies to claims and cannot bar affirmative defenses, still affirmative defenses may be dismissed as barred by res judicata. *Conway & Conway v Kaplan*, 70 Misc 3d 1213(A) (Sup Ct 2021). *Res judicata* applies to affirmative defenses, as well as all defenses and compulsory counterclaims that were, or could have been, raised in the prior matter. *In re Ditech Holding Corp.*, 19-10412 (JLG), 2022 WL 1750997, at *13 (Bankr SDNY May 28, 2022).

54.    In a sense, there are no differences between the merger judgment doctrine and res judicata.  The Defendant had no independent basis for compelling contractual arbitration, since the Customer Agreement together with its arbitration clauses merged with the judgment. Any issue arising from the transaction or series of transactions between the parties involving the controversy leading to the judgment became collateral to the judgment.  Plaintiff has brought this action to enforce the judgment and Defendant could no longer justify the validity of the negative tradeline on Plaintiff's credit report as arising under a contract.

55.    As such, there was no contractual basis for compelling arbitration. The Customer Agreement provided that the Small Court is capable of resolving the parties' disputes as to money owed.  Once the Small Claims issued judgment, there was no controversy left under the contract, since the contract merged with the judgment, but rather an independent claim arose under the judgment. The judgment did not provide for continuous arbitration. The Customer Agreement also did not provide for continuous arbitration post judgment.

56.    Indeed, the purported Customer Agreement specifically provided that the "(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO **ENFORCE THE AWARD ITSELF**." (Exhibit C p. 8 ¶ 7, emphasis added).

57.    Here, the Plaintiff is suing Defendant on the ground that the negative tradeline is foreclosed by the judgment of the Small Claims Court.    This is precisely the type of plenary action to enforce the judgment; not to litigate whether the debt is valid.

58.    The Defendant's motion to compel "contractual arbitration" was erroneously hedged on determining whether the debt of $176.11 was valid. This relevant legal distinction was misleading and distracted the Court from noticing that the controversy arises from an enforcement of judgment.

59.    If the issue in this case was determining whether the tradeline was valid, that would essentially have been an appeal from the Small Claims Court, which the Court lacks jurisdiction under the Rooker-Feldman doctrines. But because the Defendant carefully fashioned its motion to compel contractual arbitration as involving a tradeline under a contract, Defendant omitted addressing that the judgment already decided the matter, and there was an erroneous presupposition that the negative tradeline had no relationship with the judgment that arbitration followed. This omission being essential to Plaintiff's claim has now been exposed and confirmed by the award of the arbitrator.

60.    Moreover, there might be a theory that the violations of the FCRA are independent claims from the judgment of the debt that created the negative tradeline; see *Williams v Capital One Bank (USA) N.A.*, 785 Fed Appx 741, 745 [11th Cir 2019] (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). Also see *Wilson v HSBC Bank, USA*, 16-CV-8405 (NSR), 2018 WL 1449204, at *7 [SDNY Mar. 22, 2018]. But even with the violation of the FCRA being an independent of a claim deciding the debt, the Plaintiff's claim is proper inasmuch it seeks to enforce the judgment of the Small Claims Court, by holding Defendant accountable for multiplying the negative tradeline monthly after the purported debt became disposed by the judgment. The same cannot be said to Defendant, inasmuch as Defendant sought to litigate whether the $176.11 was a valid debt, that impermissibly asked the Court to assign an arbitrator to scrutinize the

judgment of the Small Claims Court; an act that is foreclosed by the Rooker-Feldman doctrines. Indeed, Defendant asked for the arbitration and at the arbitration presented the argument that the debt is valid, but the arbitrator found that the purported debt is foreclosed by the judgment of the Small Claims Court. Defendant was barred by the Rooker-Feldman doctrine from asking the Court to compel arbitration to determine whether the debt is valid and accurate.

61. Put otherwise, this action being post judgment belonged in the jurisdiction that issued the judgment. Rooker-Feldman barred from entangling the federal court on an issue that involves review of the State issued judgment.

62. Now that the arbitrator's holding the clarified the posture of this case, the basis for arbitration falls with it. Pursuant to FRCP 60(b)(5) the orders compelling arbitration are no longer equitable given the undeniable fact that this case arises from the enforcement of a judgment, not a under a contract. It was a mistake by the parties and the Court, pursuant to FRCP 60(b)(1), or misconduct by the Defendant under 60(b)(3), in not directing the Court's attention that the controversy in this case arises from a post judgment enforcement.[1] The mistake could be attributed to the fact that Defendant branded its defense for the negative tradeline as arising from the Customer Agreement. It is under such circumstances, where the motion to compel contractual arbitration invited the impermissible review to scrutinize the judgment of the Small Claims Court, that renders the orders compelling arbitration as void under Rooker-Feldman, pursuant to FRCP 60(b)(4).

63. Regardless of the other non-exhaustive provisions of 60(b)(1)-(5), the Court must vacate the orders compelling arbitration, pursuant to FRCP 60(b)(6), since the controversy in this case arises from the efforts to enforce a money judgment, not a contract. Otherwise, a creditor who loses in state court could aggravate the consumer with a negative tradeline to the credit buraus and repeatedly shield itself from any scrutiny by the courts by resurrecting an arbitration clause that merged away with the judgment. The principle ought to be finality and respect to state judgments, not gamesmanship of instigating new arbitration proceedings every time the consumer prevails with a judgment

---

[1] Plaintiff did bring it to the Court's attention. (See ECF 14). But as common with pro se, their factual arguments are too often overlooked or discounted, and the decision verbatim relied on the misrepresentations made by counsel for Defendant.

in state court.

64. Wherefore, Plaintiff duly requests the Court to grant the motion and pursuant to FRCP 60(b)(1), (3), (4), (5) and (6) vacate the orders compelling arbitration, and remand the matter to State court since the underlying controversy arises from a State judgment, not a contract, as found by the arbitrator that the disputed debt merged with the judgment of the Small Claims Court.

## II.    The Court has no jurisdiction to this case.

65. 28 U.S.C.A. § 1447(c) provides that "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

66. There are several grounds for lacking subject matter jurisdiction. First, as delineated earlier, Rooker-Feldman bars any review of the State judgment. Given that the review in this case sought appellate review of the State judgment, by way of rerouting the matter to an arbitrator, the Court lacked jurisdiction to preside over any efforts to compel and supervise arbitration. Second, as a threshold matter a court has an obligation to examine a litigant's standing under Article III. Zlotnick v Equifax Info. Services, LLC, 21CV7089GRBJMW, 2022 WL 351996, at *2 [EDNY Feb. 3, 2022]. Here, in the plain terms of this litigation, as corroborated by the arbitrator, there was no Article III standing to remove this case to federal court and the matter must be remitted to the State courts.

67. To have standing, plaintiff must prove: (1) he or she has suffered a concrete and particularized injury; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury "is likely to be redressed by a favorable judicial decision. Zlotnick v Equifax Info. Services, LLC, 21CV7089GRBJMW, 2022 WL 351996, at *2 [EDNY Feb. 3, 2022].

68. In the FCRA context, the Supreme Court made clear that a bare procedural violation, divorced from any concrete harm fails to satisfy the injury-in-fact requirement of Article III. Zlotnick v Equifax Info. Services, LLC, 21CV7089GRBJMW, 2022 WL 351996, at *2 [EDNY Feb. 3, 2022]. A claim that the Plaintiff "suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial" is insufficient to confer Article III standing. Zlotnick v Equifax Info. Services, LLC, 21CV7089GRBJMW, 2022 WL 351996, at *2 [EDNY

Feb. 3, 2022].

69. "**Neither an incorrect notation on plaintiff's credit report nor the diminution in his credit score are sufficient to confer standing.**" Zlotnick v Equifax Info. Services, LLC, 21CV7089GRBJMW, 2022 WL 351996, at \*3 [EDNY Feb. 3, 2022].

70. As the Supreme Court explained, where a "plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law … Those are not grounds for Article III standing." TransUnion LLC v Ramirez, 141 S Ct 2190, 2206, 210 L Ed 2d 568 [2021].

71. Here, the arbitrator found, which Defendant seeks the Court to uphold, "Claimant has failed to establish any compensable money damages resulting from Respondent's actions. In particular Claimant's evidence was insufficient to prove that the denial of his applications for three credit cards was due to Respondent's reporting of his failure to pay the termination fee. I further find that none of his proffered theories in support of a damage claim have merit. Therefore Claimant's claim for money damages is denied." These conclusions by the Arbitrator highlight an absence of Article III standing to be in federal court.

72. However, the Court itself did not review whether the original complaint and whether the amended complaint confer Article III standing.

73. Plaintiff alleges to have suffered a denial of credit where he could collect points on monthly transactions, and alleges punitive damages for procedural violations, that is under Zlotnick insufficient to confer standing. There is nothing in the complaint or the amended complaint, enough to satisfy the Court's prerogative to hear this case. The allegation that Plaintiff suffered mental and emotional pain is also not enough to satisfy Article III under Zlotnick.

74. As such, the Court was without jurisdiction to accept the removal of this case from State court, the Court was without jurisdiction to compel arbitration, and the Court is without jurisdiction to decide whether the arbitrators award can be confirmed. The proper course under is 28 U.S.C.A. § 1447(c) for the Court to enter an order remanding the case to State court.

**III. Pursuant to 9 USC 10(a)(4) and 11(b) the Court should vacate the arbitrator's award as to damages, the arbitrator exceeded its power, since the underlying damages arises from disobedience to a judgment, not a contract, as found by the arbitrator that the disputed debt merged with the judgment of the Small Claims Court, and in addition exceeded the purported Customer Agreement.**

75.    In expounding on the arguments made in Point I and II, in the alternative or in the furtherance, provided that the Court has jurisdiction over this matter to compel arbitration and confirm such award, the Court must reject the arbitrator's award as to damages.[2]

76.    9 USC 10(a)(4) provides "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . .(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

77.    9 USC 11(b)  provides "In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration … (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."

78.    The underlying injury-controversy arises from disobedience to a judgment, not a contract, as found by the arbitrator that the disputed

---

[2] As for having preserved the objection.  Plaintiff "has already objected to the arbitrator's authority to proceed with the arbitration and thereby reserved its right to argue in court against enforcement of any arbitration award should the NLRB find that there was no CBA and therefore no agreement to arbitrate in effect during the relevant time period." *Trump Vill. Section 4, Inc. v. Loc. 804 Int'l Bhd. of Teamsters*, No. 22CV3925PKCPK, 2022 WL 2669898, at *4 (E.D.N.Y. July 11, 2022).  Here, the record is similar to *Trump Village*, Plaintiff has repeatedly objected to the basis for arbitration, and the docket reflects that.  Plaintiff also preserved his objection to arbitration before the arbitrator.  Attached as Exhibit L is a true copy of Plaintiff's objection, also see Exhibit O at ¶ 50, a true copy of Plaintiff's briefing post evidentiary hearing objecting that this controversy is subject to contract). Plaintiff has repeatedly notified the parties and the arbitrator that he is only attending the arbitration under duress, pursuant to Court order and he objects to arbitrability.

debt merged with the judgment of the Small Claims Court, the arbitrator exceeded its power in deciding damages. The damages aspect does not arise from the purported Customer Agreement but from the judgment. "Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises." *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir. 1972). "The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004).

### A)  The Arbitrator Exceeded the Purported Customer Agreement

79.  Indeed, the purported Customer Agreement provides underlined:

> *(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.*

Exhibit C ps. 7-8 (underline added).

80.  At the evidentiary hearing, Plaintiff informed the arbitrator that he also seeks damages as compensatory and punitive. The arbitrator stated that he is unsure whether there are damages available under the Customer Agreement, given the above cited limitations (supra at ¶¶ 29,

79).

81.   In the post evidentiary hearing briefings, the parties argued whether the Customer Agreement can limit damages. Plaintiff argued in his brief (Exhibit O ¶ 67), under New York public policy, it is the public policy of this State, that a party may not insulate itself from damages caused by grossly negligent conduct. This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum. Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing. *Sommer v Fed. Signal Corp.*, 79 NY2d 540, 554 [1992], *Media Glow Digital, LLC v Panasonic Corp. of N. Am.*, 16 CIV. 7907 (JFK), 2018 WL 2175550, at *5 [SDNY May 11, 2018]. The Defendant cannot resort to its Customer Agreement as a shield against damages for willful misconduct. The FCRA under 15 USCA 1681o(a)(1)(A) and General Business Law § 380-l provides for damages for willful misconduct of making a false report on a consumer credit report.   **Defendant is foreclosed under *Sommer* from escaping liability for compensatory and punitive the damages it caused**.

82.   The Defendant argued that its limitation on damages is enforceable to limit damages sought by Plaintiff. Attached as Exhibit N is a true copy of Defendant's post briefing filing.

83.   In determining damages, the arbitrator ruled:

> *Claimant has failed to establish any compensable money damages resulting from Respondent's actions. In particular Claimant's evidence was insufficient to prove that the denial of his applications for three credit cards was due to Respondent's reporting of his failure to pay the termination fee. I further find that none of his proffered theories in support of a damage claim have merit.   Therefore Claimant's claim for money damages is denied.*

84.   On its face, the arbitrator for two reasons exceeded its powers under the purported Customer Agreement, which state "NO…PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR."

85.    First, "The FCRA is a private-attorney-general statute, and its enforcement depends on the willingness of private plaintiffs to bring claims." *Prado v. Equifax Info. Servs. LLC*, 331 F.R.D. 134, 138 (N.D. Cal. 2019). The FCRA contains several enforcement mechanisms … private individuals may obtain relief against willful or negligent violators of the Act." *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 704 (6th Cir. 2009). The Plaintiff specifically pleads for damages under the FCRA. Given that the "NO…PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT" the arbitrator did not have any authority to dispose with liability under the FCRA. Whether the Plaintiff can maintain a claim as a private attorney general is a question for the judiciary, not the arbitrator. Thus, the arbitrator exceeded its authority in deciding whether Plaintiff's claim has merit.

86.    Second, the Plaintiff clearly argued that pursuant to *Sommer v Fed. Signal Corp.*, 79 NY2d 540, 554 [1992], *Media Glow Digital, LLC v Panasonic Corp. of N. Am.,* 16 CIV. 7907 (JFK), 2018 WL 2175550, at *5 (SDNY May 11, 2018), the Defendant cannot resort to its Customer Agreement as a shield against damages for willful misconduct and **is foreclosed under *Sommer* from escaping liability for compensatory and punitive the damages it caused**. Regardless of whether Plaintiff's argument prevails, Pursuant to the purported Customer Agreement, the arbitrator was without any authority to decide the enforceability on the limitation of damages, given that parties argued whether the limitation is enforceable. Thus, the arbitrator exceeded its authority in deciding that the limitations on damages apply.

B)    The Arbitrator Had No Power to Decide Damages

87.    Besides the purported Customer Agreement, the arbitrator had no authority to dispense with the award of damages after determining that the negative tradeline is collateral to the judgment of the Small Claims Court.

88.    The arbitrator acknowledged that the foundation for the negative tradeline is collateral to the judgment and that Defendant is barred from continuing the negative tradeline retroactively to the date of the judgment. Given that "Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises." *Kotsopoulos v. Asturia Shipping*

*Co.*, 467 F.2d 91, 95 (2d Cir. 1972). As such, there is no arbitration agreement for the arbitrator to have decided the damages in this case, arising from a post judgment injury.

89.    Even if assuming that the arbitrator had the authority under the Customer Agreement to decide whether the negative tradeline merged with the judgment (notwithstanding Plaintiff's objections), there is no provision giving the arbitrator the power to address the damages arising from defiance to a valid judgment. As such, the Court must reject the arbitrator's conclusion as to damages, pursuant to 9 USC 10(a)(4) and 11(b), the arbitrator exceeded its authority in deciding damages.

90.    The law is simple, "If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it." *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*, 277 F. Supp. 3d 356, 365 (E.D.N.Y. 2017). There is nothing in the purported Customer Agreement that survives the merger of a judgment. Nor is there any authority for Defendant to disobey a judgment of the Small Claims Court to continue publishing a negative tradeline. "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21CV7089GRBJMW, 2022 WL 351996, at *1 (E.D.N.Y. Feb. 3, 2022). Defendant does not have any authority, nor can they create so with the Customer Agreement, to allow false reporting after a judgment disposed with the debt.

91.    Moreover, "the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration." *Bowmer v. Bowmer*, 50 N.Y.2d 288, 293–94, 406 N.E.2d 760, 762 (1980). Nothing in the purported Customer Agreement provides that an arbitrator can decide damages arising from a disobedience to a judgment. Rather, the enforcement of a judgment is matter for the judiciary. Here, the Small Claims Court was an arbitration tribunal, agreed by Defendant as a venue for arbitration, entered judgment that Defendant must refund Plaintiff for its defective services. The instances of bringing Defendant to comply with the judgment of the Small Claims Court is an enforcement of an arbitration award/judgment.

92.    Wherefore, since the arbitrator was with no authority to decide damages under the purported Customer Agreement and there is no

foundation for an arbitrator to decide damages arising from a disobedience to judgment, Plaintiff requests an order pursuant to 9 USC 10(a)(4) and 11(b) to vacate the arbitrator's award inasmuch that it decided the issue of damages.

 **IV.** **The Court should grant clarification holding that the so-called "Customer Agreement" insulating itself from damages is null and void; In the alternative, pursuant to 9 USC 10(a)(4) and 11(b) vacating and rejecting the arbitration award inasmuch it failed to consider damages under the FCRA.**

 93. In the alternative, if the Court rejects Plaintiff's arguments on jurisdiction and that the Customer Agreement merged with the judgment, Plaintiff requests a holding that Defendant cannot insulate its from the damages of the injury caused to Plaintiff.

 94. In seeking to insulate itself from making a person whole after a wrongdoing, Defendant drafted the purported "Customer Agreement" in such way to literally insulate itself from any laws that protect consumers. In Defendant's business model, going back to when it still operated under the name Bell Atlantic, "monopoly was the norm in telecommunications, not the exception." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568, 127 S. Ct. 1955, 1972, 167 L. Ed. 2d 929 (2007). And to a large degree, consumers still have no bargaining power in accepting or declining extraneous terms and conditions imposed by the Defendant in the so-called Customer Agreement. Yet, Defendant claims that the unnegotiated so-called Customer Agreement insulate them from liability, based on the following terms that Defendant imposes on the Consumer without allowing the consumer to opt-out of them:

> *NO CLASS OR REPRESENTATIVE OR <u>PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR</u>.*

Exhibit C ps. 7-8 (underline added).

> *You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive. For example, disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device, or the use of your account or device to access or make changes to an account with another entity, such as a financial entity, without authorization. This limitation and waiver will apply regardless of the theory of liability. It also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim. You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.*

Exhibit C ps. 6-7.

    95.    Defendant employed those provisions to limit the arbitrator's ability to award damages.

    96.    Here there is a prima facie issue of law of whether such provision is enforceable. The FCRA (both federal and State) provides:

> *Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of-- (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or*

> *(2) such amount of punitive damages as the court may allow; and*

> *(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

15 U.S.C.A. § 1681n(a)

> *Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--*
>
> ***(1)*** *any actual damages sustained by the consumer as a result of the failure; and*
>
> ***(2)*** *in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

15 U.S.C.A. § 1681o(a)

> *Any person, firm, partnership, corporation, or association whose knowing and willful violation of section three hundred eighty-s of this article resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided, and any consumer reporting agency or user of information who or which willfully and knowingly fails to comply with any requirement imposed under this article with respect to any consumer is liable to that consumer in an amount equal to the sum of:*
>
> *(a) Any actual damages sustained by the consumer as a result of such failure or as a result of a violation of section three hundred eighty-s of this article;*
>
> *(b) Such amount of punitive damages as the court may allow; and*
>
> *(c) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

N.Y. Gen. Bus. Law § 380-l.

97.　In order to state a claim under the FCRA, the Plaintiff must allege that the furnisher furnished to a credit reporting agency false information, the customer disputed the false information with the credit reporting agencies, the furnisher must investigate the dispute and remove the false information.

98.     The unconstitutional part about the FCRA, it allows the furnisher to slander a credit report and injure a person with impunity and gives the furnisher the sole right as the arbiter to determine whether the slander/debt is accurate. See 15 U.S.C.A. § 1681s-2. The FCRA in that regard is unconstitutional in that empowers causing the injury and bars the injured party from any due process to recover for damages incurred, including causes of action under common and state law; thus, failing both in the equal protection (by failing to protect equally protect the consumer as it protects the furnisher) and due process (in depriving the consumer from otherwise valid law available to make the consumer whole from its injuries).

99.     Notwithstanding the unconstitutional part about the FCRA, Defendant falls within the liability of the FCRA.  Exhibit F, G, and H are true copies of extracts of Plaintiff's credit reports and show that Plaintiff disputed the purported debt with the credit reporting agencies. Plaintiff's disputed with the credit reporting agencies occurred initially incurred August 2018, when the Defendant initiated the negative tradeline. Whether the Defendant properly investigated the accuracy of its negative report is immaterial, the Defendant as its sole arbiter still insists that the negative report is accurate in utter disregard to the judgment of the Small Claims Court awarding Plaintiff a judgment refunding the entire transaction. Nonetheless, the judgment of the Small Claims Court overrides the Defendant's ability to claim that the debt is valid. The fact that the Defendant did not respect the judgment of the Small Claims Court confirms that the Defendant did not investigate Plaintiff's dispute made to the credit reporting agencies. Thus, Plaintiff can pursue a FCRA claim for damages against Defendant.

100.    Because Plaintiff has brought forth all the elements necessary to enforce the judgment of the Small Claims Court, there is no legitimate basis upon which Defendant could claim that it negotiated the Customer Agreement to insulate itself from willful disobedience to a valid State judgment.  Under New York public policy, a party may not insulate itself from damages caused by grossly negligent conduct. This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum.  Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing. Sommer v Fed. Signal Corp., 79 NY2d 540, 554 [1992], Media Glow Digital, LLC v Panasonic Corp. of N. Am., 16 CIV. 7907 (JFK), 2018 WL 2175550, at *5 [SDNY

May 11, 2018]. It is well settled that public policy forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by 'grossly negligent conduct. Gross negligence differs in kind, not only degree, from claims of ordinary negligence. Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing or evince a reckless indifference to the rights of others. *Matter of Part 60 Put-Back Litig.*, 36 NY3d 342, 352 [2020].

101. Here the Plaintiff seeks damages that would otherwise be available as a matter of law to smack the intentional wrongdoing of disobedience to a valid State judgment. At the arbitration, the Defendant disclosed that after it received the judgment of the Small Claims Court it made a decision to continue with the negative reporting on Plaintiff's credit report. As explained by Defendant, in its view, the FRCA provides an uphill battle for the consumer to remove a negative reporting, and they could disregard the judgment of the Small Claims Court as excluding the tradeline. This choice that Defendant made to continue the negative reporting on Plaintiff's credit report, was an intentional wrongdoing and evinced a reckless indifference to the rights of Plaintiff.

102. The Defendant's choice to disregard the judgment of the Small Claims Court to slander Plaintiff's credit report evince a reckless indifference to the rights of others.

103. The Defendant cannot resort to its Customer Agreement as a shield against damages for willful misconduct because it violates public policy of having accurate credit reporting. As held by the Court of Appeals, a bargain for exemption from liability for the consequences of a willful breach of duty is illegal. Matter of Part 60 Put-Back Litig., 36 NY3d 342, 353 [2020]. Grossly negligent conduct will render unenforceable only exculpatory or nominal damages clauses. Id. "Exculpatory clauses immunize a party from liability for its own misconduct." Id at 355. A limitation on a plaintiff's damages reduces the amount of recovery. *Id.* Public policy will not permit that actor to escape all liability for its misconduct. Furthermore, public policy does not allow the party injured as a result of such wrongdoing to be left uncompensated for its losses. Id at 354.

104. The FCRA under 15 USCA 1681o(a)(1)(A) and General Business Law § 380-l provides for damages for willful misconduct of making an inaccurate report on a consumer credit report. Defendant is foreclosed under Part 60 and Sommer from escaping liability for actual

and punitive the damages it caused.

105. Because the arbitrator's assessment of damages was based on limitations provided in the Customer Agreement, which the Arbitrator did not the have the authority to decide whether it is enforceable, the Court has the authority to decide that. The limitations on liability which wholly exempts Defendant from its own misconduct must be ruled as unenforceable. The Plaintiff is right to ask the judiciary to decide the issue of damages, since the controversy in this case arises from an intentional breach of judgment.

## Conclusion

106. Wherefore, Plaintiff requests vacating the orders compelling arbitration and remanding the matter to the State court.

107. Wherefore, Plaintiff also requests in the alternative a holding that the arbitrator exceeded its authority in deciding damages, which arises from a breach of judgment.

108. Wherefore, Plaintiff requests in the alternative that the limitation of damages provided in the Customer Agreement is inapplicable to Plaintiff's claim.

September 30, 2022
Respectfully submitted,


Yehuda Herskovic, yhm1234@yahoo.com, **347 731 8818**


plaintiff Yehuda Herskovic,

Telephone number **347-731-8818**