# Exhibit A

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-21-0016-5580

Yehuda Herskovic, Claimant
-vs-
Verizon Wireless, Respondent

## AWARD OF ARBITRATOR

I, Michael D. Blechman, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, Yehuda Herskovic, Claimant appearing Pro Se and Verizon Wireless represented by Lisa Lawrence-Hughes of Yu Mohandesi LLP at an evidentiary hearing held on June 9, 2022, do hereby, AWARD, as follows:

This case involves a purported termination charge of $176.11 which Respondent engaged various debt collection companies to collect from Claimant and which it reported as a past due debt to various credit bureaus. Claimant claims that, as a result, his applications for several credit cards were denied, causing him financial harm, and that he suffered emotional and psychological injury.

While the contract between the parties did provide for a fee for "early termination," the evidence showed that Claimant brought an action in small claims court in which he recovered $698.00, which appears to have been in effect a refund for "defective services rendered." Under those circumstances, I find that no fee for "early termination" should have been due.

While Respondent claims not to have had notice of the small claims court case, it paid the judgment and did not seek to reopen the case. In addition, Respondent stated that it was not asserting a counterclaim for the termination fee in this arbitration. For all of those reasons, I find that Respondent has no claim against Claimant for the purported termination fee.

Accordingly, Respondent is hereby ordered to refrain from taking any steps to collect the aforesaid termination fee from Claimant, including retaining any debt collection agencies for such purpose, and from reporting to any credit reporting agencies or similar organizations that Claimant is in default or past due on any obligation because of his refusal to pay such putative termination fee. In addition, Respondent shall take all steps reasonably necessary to correct any current negative credit report on Claimant based on Respondent's prior reporting that Claimant was in default or past due because of his refusal to pay the aforesaid termination fee.

On the other hand, Claimant has failed to establish any compensable money damages resulting from Respondent's actions. In particular Claimant's evidence was insufficient to prove that the denial of his applications for three credit cards was due to Respondent's reporting of his failure to pay the termination fee. I further find that none of his proffered theories in support of a damage claim have merit. Therefore Claimant's claim for money damages is denied.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $2,500 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

6/30/22
_____
Date

Michael D. Blechman

Michael D. Blechman, Arbitrator

# Exhibit B



## Summary for Yehuda Herskovic: 718-387-4565

### Your Plan

Plan from 12/8 – 1/7
**Wireless Home Phone Unlimited**
$20.00 monthly charge
Unlimited monthly minutes

Plan from 12/8 – 1/7
**PAYU MB With EVDO**
$1.99 per MB

**M2M National Unlimited**
Unlimited monthly Mobile to Mobile

**UNL Night & Weekend Min**
Unlimited monthly OFFPEAK

Have more questions about your charges?
Get details for usage charges at
www.vzw.com. Sign into My Verizon.

### Monthly Charges
### Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| **Unbilled Usage from Previous Months** | | | | | |
| (Minutes are applied against any remaining allowance for the month in which the call was made) | | | | | |
| Night/Weekend | minutes | | 25 | -- | -- |
| **Current Usage** | | | | | |
| Calling Plan | minutes | unlimited | 2966 | -- | -- |
| Mobile to Mobile | minutes | unlimited | 47 | -- | -- |
| Night/Weekend | minutes | unlimited | 3742 | -- | -- |
| Total Voice | | | | | $.00 |
| **Total Usage and Purchase Charges** | | | | | **$.00** |

| Surcharges | |
|---|---|
| Fed Universal Service Charge | 7.80 |
| Gross Receipts Surchg | 9.03 |
| **Other Charges and Credits** | |
| Early Termination Fee | 145.00 |
| | **$161.83** |

| Taxes, Governmental Surcharges and Fees | |
|---|---|
| NY State Sales Tax–Telecom | 6.44 |
| New York City Sales Tax–Teleco | 7.24 |
| NY McTd Sales Tax–Telecom | .60 |
| | **$14.28** |

| Total Current Charges for 718-387-4565 | **$176.11** |
|---|---|





# Need-to-Know Information

### Customer Proprietary Network Information (CPNI)

CPNI is information made available to us solely by virtue of our
relationship with you that relates to the type, quantity, destination,
technical configuration, location, and amount of use of the
telecommunications and interconnected VoIP services you
purchase from us, as well as related billing information. The
protection of your information is important to us, and you have a
right, and we have a duty, under federal law, to protect the
confidentiality of your CPNI.

We may use and share your CPNI among our affiliates and agents
to offer you services that are different from the services you
currently purchase from us. Verizon offers a full range of services,
such as television, telematics, high-speed Internet, video, and local
and long distance services. Visit Verizon.com for more information
on our services and companies.

If you don't want your CPNI used for the marketing purposes
described above, please notify us by phone any time at
800.333.9956, online at vzw.com/myprivacy or through Customer
Service at 800.922.0204 from Monday - Friday 7 AM to 11 PM and
Saturday - Sunday 8 AM to 9 PM.

Unless you notify us in one of these ways, we may use your CPNI as
described above beginning 30 days after the first time we notify
you of this CPNI policy. Your choice will remain valid until you notify
us that you wish to change your selection. Your decision about use
of your CPNI will not affect the provision of any services you
currently have with us.

Note: This CPNI notice does not apply to residents of the state of
Arizona.

### Explanation of Surcharges

Surcharges include (i) a Regulatory Charge (which helps defray
various government charges we pay including government number
administration and license fees); (ii) a Federal Universal Service
Charge (and, if applicable, a State Universal Service Charge) to
recover charges imposed on us by the government to support
universal service; and (iii) an Administrative Charge, which helps
defray certain expenses we incur, including: charges we, or our
agents, pay local telephone companies for delivering calls from our
customers to their customers; fees and assessments on our
network facilities and services; property taxes; and the costs we
incur responding to regulatory obligations. **Please note that these
are Verizon Wireless charges, not taxes. These charges, and
what's included, are subject to change from time to time.**

### Bankruptcy Information

If you are or were in bankruptcy, this bill may include amounts for
pre-bankruptcy service. You should not pay pre-bankruptcy
amounts, they are for your information only. Mail bankruptcy-related
correspondence to 500 Technology Drive, Suite 550, Weldon
Spring, MO 63304

### Returned Payments

In the event your check for payment of your wireless bill is returned
by your bank for insufficient or uncollected funds, Verizon Wireless
may resubmit your check electronically to your bank for payment
from your checking account.

### Late Fee Information

A late payment applies for unpaid balances. The charge is the
greater of $5 or 1.5% per month, or as permitted by law.

### FUSC Change

The Federal Universal Service Charge (FUSC) is a Verizon Wireless
charge that is subject to change each calendar quarter based on
contribution rates prescribed by the FCC. On January 1, 2018 the
FUSC changed to 19.5% of assessable interstate and international
wireless charges. For more details, please call 888.684.1888

### Important Bill Due Date Information

Verizon is standardizing the number of days to pay your bill.
Beginning with your bill with a January bill date, your payment will be
due 3 days earlier than it is today. This change will only affect the
amount of time you have to pay your bill and will not change your
billing cycle or billed charges.

#### Important Next Steps
What you need to do depends on how you pay your bill:

**Verizon AutoPay** - Please update your auto payment with the new
due date. You can change your payment settlement from
MyVerizon
**Online banking** - Update your new due date with your bank.
**Check or payment service** - Make your payment as usual on or
before your new payment due date

### Important Information Regarding Your Customer Agreement

In the arbitration section, we clarified that if a court declares that
the prohibition on class arbitration is not enforceable as to all or a
portion of a dispute, then only that portion deemed unenforceable is
not subject to arbitration. For the complete Customer Agreement,
visit www.vzw.com

# Exhibit C

# Customer Agreement

## Customer Agreement

(Para una copia de este documento en espanol, visite nuestro website: vzw.com/espanol.)

**Thanks for choosing Verizon. In this Customer Agreement ("Agreement"), you'll find important information about your wireless Service, including:**

- **our ability to make changes to your Service or this Agreement's terms,**
- **our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.**

# My Service

**Your Service terms and conditions are part of this Agreement.** Your Plan includes your monthly allowances and features, where you can use them (your "Coverage Area"), and their monthly and pay–per–use charges. You can also subscribe to several Optional Services, like international service plans or equipment protection services. Together, your Plan, features you use, and any Optional Services you select are your Service. Your billing and shipping addresses, and your primary place of use, must be within the areas served by the network Verizon owns and operates. The current version of this Agreement and the terms and conditions for your Service are available online at **verizonwireless.com**.

By using the Service you are agreeing to every provision of this Agreement whether or not you have read it. This agreement also applies to anyone who uses your Service.

## Cancellation

**You can cancel a line of Service within 14 days of accepting this Agreement without having to pay an early termination fee as long as you return, within the applicable return period, any equipment you purchased from us or one of our authorized agents at a discount in connection with your acceptance of this Agreement, but you'll still have to pay for your Service through that date. If you signed up for Prepaid Service, no refunds will be granted after 14 days or if your account has been activated. See vzw.com/returnpolicy for complete details and information on returning your equipment.**

## My Privacy

We collect personal information about you. By entering into this Agreement, you consent to our data collection, use and sharing practices described in our Privacy Policy. It is your responsibility to notify people who connect devices through your mobile hotspot, Jetpack or wireless router that we will collect, use and share information about their device and use of the Service in accordance with our Privacy Policy. We provide you with choices to limit, in certain circumstances, our use of the data we have about you. You can review these choices at Verizon.com/Privacy#Limits. If there are additional specific advertising and marketing practices for which your consent is necessary, we will seek your

RESPONDENT'S EXHIBIT 5-1

consent (such as through the privacy-related notices you receive when you purchase or use our products and services) before engaging in those practices. You can find out how we use, share and protect the information we collect about you in the Verizon Privacy Policy, available at **verizon.com/privacy**.

If you subscribe to Service for which usage charges are billed at the end of the billing period ("Postpay Service"), we may investigate your credit history at any time. If you'd like the name and address of any credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be provided by third parties. Before you use, link to or download a service or application provided by a third party, you should review the terms of such service or application and applicable privacy policy. Personal information you submit may be read, collected or used by the service or application provider and/or other users of those forums.

You consent to allow Verizon and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number, other contact number or email address you provide. Verizon will treat any email address you provide as your private email that is not accessible by unauthorized third parties. Unless you notify us that your wireless service is based in a different time zone, calls will be made to your cellular device during permitted calling hours based upon the time zone affiliated with the mobile telephone number you provide.

## What happens if my Postpay Service is canceled before the end of my contract term?

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month–to–month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without billing or at a reduced billing rate, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month–to–month basis for that line of Service.**If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350, which will decline by $10 per month upon completion of months 7–17, $20 per month upon completion of months 18–22, $60 upon completion of month 23 and will be $0 upon completion of the contract term. For other contract terms entered into on or after November 14, 2014, your early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17, $10 per month upon completion of months 18–22, $30 upon completion of month 23 and will be $0 upon completion of your contract term. If you cancel service, you may have to immediately pay off the remaining balance on any device agreement. Cancellations will become effective on the last day of that month's billing cycle,** and you are responsible for all charges incurred until then. Also, if you bought your wireless device from an authorized agent or third–party vendor, you should check whether it charges a separate termination fee.

## Can I take my wireless phone number to another carrier?

You may be able to transfer, or "port", your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain

responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services right away, such as 911 location services. You don't have any rights to your wireless phone number, except for any right you may have to port it.

## Can I have someone else manage my Postpay account?

No problem – just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this Agreement.

## Can Verizon change this Agreement or my Service?

We may change prices or any other term of your Service or this Agreement at any time, but we'll provide notice first, including written notice if you have Postpay Service. If you use your Service after the change takes effect that means you're accepting the change. If you're a Postpay customer and a change to your Plan or this Agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no early termination fee if we fail to negate the change after you notify us of your objection to it. Notwithstanding this provision, if we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change.

## My wireless device

Your wireless device must comply with Federal Communications Commission regulations, be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your wireless device. By activating Service that uses a SIM (Subscriber Identity Module) card, you agree we own the intellectual property and software in the SIM card that we may change the software or other data in the SIM card remotely and without notice, and we may utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes.

## Where and how does Verizon wireless Service work?

Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within your Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

## How does Verizon calculate my charges?

You agree to pay all access, usage and other charges that you or any other user of your wireless device incurred. If multiple wireless devices are associated with your account, you agree to pay all charges incurred by users of those wireless devices. For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **Send** or the call connects to a network, and for incoming calls, it starts when

the call connects to a network (which may be before it rings). Usage time may end several seconds after you press **End** or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

## What Charges are set by Verizon?

Our charges may also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

## Government Taxes, Fees and Surcharges

You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we may not always be able to notify you in advance of changes to these charges.

## What is roaming?

You're "roaming" whenever your wireless device connects to a network outside your Coverage Area or connects to another carrier's network, which could happen even within your Coverage Area. There may be higher rates or extra charges (including charges for long distance, tolls or calls that don't connect), and your data service may be limited or slowed, when roaming.

## How can I prevent unintended charges on my bill?

Many services and applications are accessible on or through wireless devices, including purchases of games, movies, music and other content. Some of these services are provided by Verizon. Others are provided by third parties that may offer the option to bill the charges to your Verizon bill or other methods of payment. Charges may be one–time or recurring. The amount and frequency of the charges will be disclosed to you or the person using your device or a device associated with your account at the time a purchase is made. If the purchaser chooses to have the charges billed to your account, such charges will become part of the amount due for that billing cycle.**Verizon offers tools to block or restrict these services, and to block all billing for third–party services on your Verizon wireless bill, at verizonwireless.com/myverizon. We do not support calls to 900, 976 and certain other international premium rate numbers.**

## How and when can I dispute charges?

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM), WITHIN THE 180–DAY PERIOD**

**MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.**

## What are my rights for dropped calls or interrupted Service?

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1–minute airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24 hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost. Please be aware that these are your only rights for dropped calls or interrupted Service.

## Billing and Payments

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to 1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is greater, if allowed by law in the state of your billing address. (If you choose to have your Service billed by another company (pursuant to a Verizon-approved program), late fees are set by that company and may be higher than our late fees.) Late fees are part of the rates and charges you agree to pay. If you fail to pay on time and we refer your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent. We may require a deposit at the time of activation or afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires. We may apply deposits or payments in any order to any amounts you owe us on any account. If your final credit balance is less than $1, we will refund it only if you ask. If your service is suspended or terminated, you may have to pay a fee to have service reactivated.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by providing us with another payment. If you maintain a Prepaid account balance, it may not exceed $1,000 and you may be prevented from replenishing if your balance reaches $1,000. We may apply your payments to any amounts you may owe us if your earlier account replenishment payments had been reversed. We will suspend service when your account reaches the expiration date and any unused balance will be forfeited.

We may charge you up to $25 for any returned check. If you make a payment, or make a payment arrangement, through a call center representative, we may charge you an Agent Assistance Fee of $7.00

## What if my wireless device gets lost or stolen?

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep someone else from using it. If you're a Postpay customer and your wireless device is used after the loss or theft but before you report it, and you want a credit for any charges for that usage, we're happy to review your account activity and any other information you'd like us to consider. Keep in mind that you may be held responsible for the charges if you delayed reporting the loss or theft without good reason, but you don't have to pay any charges you dispute while they are being investigated. If you are a California customer and we haven't given you a courtesy suspension of

recurring monthly charges during the past year, we'll give you one for 30 days or until you replace or recover your wireless device, whichever comes first.

## What are Verizon's rights to limit or end Service or end this Agreement?

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause, including, but not limited to: (1) if you: (a) breach this agreement; (b) resell your Service; (c) use your Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions promulgated by any US governmental agency; (d) install, deploy or use any regeneration equipment or similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an RF signal without our permission; (e) steal from or lie to us; or, if you're a Postpay customer; (f) do not pay your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information we can't verify; or (i) are unable to pay us or go bankrupt; or (2) if you, any user of your device or any line of service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar and/or inappropriate language toward our representatives; (b) interfere with our operations; (c) "spam," or engage in other abusive messaging or calling; (d) modify your device from its manufacturer's specifications; or (e) use your Service in a way that negatively affects our network or other customers. We can also temporarily limit your Service for any operational or governmental reason.

## Am I eligible for special discounts?

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an organization that has an agreement with us. Unless your discount is through a government employee discount program, we may share certain information about your Service (including your name, your wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

## DISCLAIMER OF WARRANTIES

**We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network–related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third–party products. Verizon Wireless is not responsible for any third–party information, content, applications or services you access, download or use on your device. You are responsible for maintaining virus and other Internet security protections when accessing these third–party products or services. For additional information, visit the Verizon Content Policy at responsibility.verizon.com/contentpolicy**

## WAIVERS AND LIMITATIONS OF LIABILITY

You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive. For example, disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device, or the use of your account or device to access or make changes to an account with another entity, such as a financial entity, without authorization. This limitation and waiver will apply regardless of the theory of liability. It also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim. You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

## HOW DO I RESOLVE DISPUTES WITH VERIZON?

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. THIS AGREEMENT TO ARBITRATE CONTINUES TO APPLY EVEN AFTER YOU HAVE STOPPED RECEIVING SERVICE FROM US.

(2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S CONSUMER ARBITRATION RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

**(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER**

RESPONDENT'S EXHIBIT 5-7

**PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.**

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL REIMBURSE ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WILL PAY THE FEE DIRECTLY TO THE AAA OR BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER.

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT **VERIZONWIRELESS.COM** OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO **VERIZONWIRELESS.COM** OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT, AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE THE ARBITRATION HEARING. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER, AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU ONLY THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED AS TO ALL OR PART OF A DISPUTE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY TO THAT DISPUTE OR PART OF THE DISPUTE.**

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

## About this Agreement

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this Agreement or any of your rights or duties under it without our permission. However, we may assign this Agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus**

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.** This Agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

April 13, 2018

# Exhibit D

# Civil Court of the City of New York

COUNTY OF _____KINGS_____

Small Claims/Commercial Claims Part

Index Number  S.C. __3766 / 18__

HERSKOVIC, YEHUDA

against

VERIZON WIRELESS

Claimant(s),

Defendant(s)

## NOTICE OF JUDGMENT

**DECISION:** After Trial/Inquest, the decision in the above action is as follows:

A. ☑ Judgment in favor of _Claimant for $ 693_

| | |
|---|---|
| Judgment Award Amount | $ _693.00_ |
| Interest | $ |
| Disbursements | $ _20.00_ |
| TOTAL JUDGMENT | $ _718.00_ |

*When an Award has been granted, information below the bold line and on the reverse side applies to all parties.*

B. ☐ Judgment in favor of Defendant. Claim Dismissed. No monetary award.
*Information below the bold line and on the reverse side of this form does not apply to Dismissed Claims*

_12/4/18_
Date

_Nathan M_
Judge, Civil Court/Arbitrator

**APPEAL:** An Appeal may only be taken from an Order or a Judgment rendered by a Judge (not an Arbitrator), after a trial.
An Appeal from this Judgment must be taken no later than the earliest of the following dates:
   (i) thirty days after receipt in court of a copy of the judgment by the appealing party,
   (ii) thirty days after personal delivery of a copy of the judgment by another party to the action to the appealing party (or by the appealing party to another party), or
   (iii) thirty-five days after the mailing of a copy of the judgment to the appealing party by the clerk of the court or by another party to the action.

## INFORMATION FOR THE JUDGMENT DEBTOR
*(The party against whom a money judgment has been entered)*

**YOU HAVE A LEGAL OBLIGATION TO PAY THIS JUDGMENT TO THE JUDGMENT CREDITOR.**
**YOU MUST PRESENT PROOF TO THE COURT UPON SATISFACTION OF THE JUDGMENT.**
Your failure to pay the judgment may subject you to any one or any combination of the following:
   a) garnishment of wage(s) and/or bank account(s);
   b) lien, seizure and/or sale of real property and/or personal property, including automobile(s)
   c) suspension of motor vehicle registration, and/or drivers license, if the underlying claim is based on judgment debtor's ownership or operation of a motor vehicle.
   d) revocation, suspension, or denial of renewal of any applicable business license or permit..
   e) investigation and prosecution by the State Attorney General for fraudulent or illegal business practices.
   f) a penalty equal to three times the amount of the unsatisfied judgment plus attorney's fees, if there are unpaid claims.

If you did not appear in court on the day the Hearing was held, you are a defaulting party. A judgment may have been taken against you even though you were not in court. If that is so, you may come to the court and apply in writing to have the default judgment opened. You must give the Judge a reasonable excuse for your failure to appear in court and show that you have a meritorious defense. The Judge will review your request and may vacate the default judgment and give you another chance to go to court.

**THE JUDGMENT IS VALID FOR A PERIOD OF 20 YEARS. IF THE JUDGMENT IS NOT COLLECTED UPON THE FIRST ATTEMPT, FURTHER ATTEMPTS TO COLLECT MAY BE MADE AT A LATER DATE.**

**("INFORMATION FOR THE JUDGMENT CREDITOR" is on the reverse side.)**

CIV-SC-02 (Revised, October, 2000)

# Exhibit E

| INVOICE NUMBER | INVOICE DT | DESCRIPTION | GROSS | DISCOUNT | NET AMT |
|---|---|---|---|---|---|
| 9880769171 | 01/07/2019 | CUSTOMER REFUND | 718.00 | 0.00 | 718.00 |

| Check No. | Check Date | Vendor No. | MC | BU | TOTAL | | | |
|---|---|---|---|---|---|---|---|---|
| 18361314 | 01/09/2019 | 0006008607 | RE | APCRF | Questions? Call 800/922-0204 | $718.00 | $0.00 | $718.00 |

Page 1 of 1

FOLD ALONG PERFORATED DOTTED LINE & REMOVE CHECK

# Exhibit F

 **experian.**

---

⊕VERIZON WIRELESS                                                                                                                   $176

39 potentially negative months                                                                                                      Closed

## ⊙ Account info

| | | | |
|---|---|---|---|
| Account name | **VERIZON WIRELESS** | Balance | **$176** |
| Account number | ████**XXXXXXXX** | Balance updated | **Oct 31, 2021** |
| Original creditor | - | Original amount | **$176** |
| Company sold | - | Monthly payment | - |
| Account type | **Cell Phone** | Past due amount | **$176** |
| Date opened | **Dec 08, 2016** | Terms | **1 Month** |
| Account status | **Closed** | Responsibility | **Individual** |
| Payment status | **Seriously past due date / assigned to attorney, collection agency, or credit grantor's internal collection department** | Your statement | **\*\*CONSUMER STATEMENT\*\* Y ITEM DISPUTED BY CONSUMER** |
| Status updated | **Aug 2018** | | |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | C | C | C | C | C | C | C | C | C | C | – | – |
| 2020 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2019 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2018 | – | – | – | – | – | – | – | C | C | C | C | C |

C  Collection                — Data unavailable

## ▢ Contact info

| | |
|---|---|
| Address | **PO BOX 650051 DALLAS, TX 75265** |
| Phone number | **(800) 852-1922** |

## ▢ Comments

**Account information disputed by consumer**

# Exhibit G



**●VERIZON WIRELESS**                                                                                                    $176

45 potentially negative months                                                                                          Closed


## ℛ Account Info

| | | | |
|---|---|---|---|
| Account name | **VERIZON WIRELESS** | Balance | $176 |
| Account number | ■■■XXXXXXXX | Balance updated | **Apr 30, 2022** |
| Original creditor | - | Original amount | $176 |
| Company sold | - | Monthly payment | - |
| Account type | **Cell Phone** | Past due amount | $176 |
| Date opened | **Dec 08, 2016** | Terms | **1 Month** |
| Account status | **Closed** | Responsibility | **Individual** |
| Payment status | **Seriously past due date / assigned to attorney, collection agency, or credit grantor's internal collection department** | Your statement | **\*\*CONSUMER STATEMENT\*\* Y ITEM DISPUTED BY CONSUMER** |
| Status updated | **Aug 2018** | | |


## ⅉ Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022 | C | C | C | C | – | – | – | – | – | – | – | – |
| 2021 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2020 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2019 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2018 | – | – | – | – | – | – | – | C | C | C | C | C |

C  Collection          — Data unavailable


## ✉ Contact Info

| | |
|---|---|
| Address | PO BOX 650051 DALLAS, TX 75265 |
| Phone number | (800) 852-1922 |


## ✍ Comments

Account information disputed by consumer

# Exhibit H

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| Feb 2021 | $400 | $29 | $0 on 2/12/2021 |
| Jan 2021 | $550 | $29 | $0 on 1/12/2021 |
| Dec 2020 | $700 | $29 | $0 on 12/12/2020 |
| Nov 2020 | $850 | $29 | $0 on 11/12/2020 |
| Oct 2020 | $1,000 | $29 | $0 on 10/12/2020 |
| Sep 2020 | $1,150 | $29 | $0 on 9/12/2020 |
| Aug 2020 | $1,300 | $29 | $0 on 8/12/2020 |
| Jul 2020 | $1,450 | $29 | $0 on 7/12/2020 |
| Jun 2020 | $1,381 | $29 | $0 |

### Additional info

Between Jun 2020 and Jun 2021, your credit limit/high balance was $2,000

 **Contact Info**

| | |
|---|---|
| Address | PO BOX 6497, SIOUX FALLS SD 57117 |
| Phone Number | (800) 677-0232 |

 **Comment**

**Current:**

**Account closed at consumer's request.**

**Previous:**

**None**

## VERIZON WIRELESS
**Potentially Negative**

### Account Info

| | |
|---|---|
| Account Name | VERIZON WIRELESS |
| Account Number | XXXXXXXX |
| Account Type | Cell Phone |
| Responsibility | Individual |
| Date Opened | 12/08/2016 |
| Status | Collection account. $176 past due as of Sep 2021. |
| Status Updated | Aug 2018 |
| Balance | $176 |
| Balance Updated | 09/30/2021 |
| Recent Payment | $0 |
| Monthly Payment | $0 |
| Original Balance | $176 |
| Highest Balance | $176 |

| | | |
|---|---|---|
| Terms | | **1 Months** |
| On Record Until | | **Nov 2024** |

## $ Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|------|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | C | C | C | C | C | C | C | C | C | — | — | — |
| 2020 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2019 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2018 | — | — | — | — | — | — | — | C | C | C | C | C |

C    Collection

**Payment history guide**

Collection as of Nov 2018 to Sep 2021, Aug 2018 to Nov 2018

## Balance Histories

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| **Aug 2021** | **$176** | $0 | $0 |
| **Jul 2021** | **$176** | $0 | $0 |
| **Jun 2021** | **$176** | $0 | $0 |
| **May 2021** | **$176** | $0 | $0 |
| **Apr 2021** | **$176** | $0 | $0 |
| **Mar 2021** | **$176** | $0 | $0 |
| **Feb 2021** | **$176** | $0 | $0 |
| **Jan 2021** | **$176** | $0 | $0 |
| **Dec 2020** | **$176** | $0 | $0 |
| **Nov 2020** | **$176** | $0 | $0 |
| **Oct 2020** | **$176** | $0 | $0 |
| **Sep 2020** | **$176** | $0 | $0 |
| **Aug 2020** | **$176** | $0 | $0 |
| **Jul 2020** | **$176** | $0 | $0 |
| **Jun 2020** | **$176** | $0 | $0 |
| **May 2020** | **$176** | $0 | $0 |
| **Apr 2020** | **$176** | $0 | $0 |
| **Mar 2020** | **$176** | $0 | $0 |
| **Feb 2020** | **$176** | $0 | $0 |
| **Jan 2020** | **$176** | $0 | $0 |

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| **Dec 2019** | **$176** | **$0** | **$0** |
| **Nov 2019** | **$176** | **$0** | **$0** |
| **Oct 2019** | **$176** | **$0** | **$0** |

**Additional info**

The original amount of this account was $176

 **Contact Info**

Address                      **PO BOX 650051,**
                                     **DALLAS TX 75265**

Phone Number           **(800) 852-1922**

 **Comment**

**Current:**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

**Previous:**

None

 **Your Statement**

Y ITEM DISPUTED BY CONSUMER

 **Reinvestigation Info**

This item was updated from our processing of your dispute in Nov 2018.

## Public Records

Information gathered from courts or other government agencies about legal matters associated with you. The most common Public Records are bankruptcies, tax liens, and monetary judgments.

**No public records reported.**

## Hard Inquiries

Hard inquiries are requests for your consumer information based on an action or process initiated by you generally related to a credit or other monetary obligation, such as when you apply for credit, rental property, or utility service, or default on a loan causing it to be sent to a collection agency. Hard inquiries are displayed to companies that receive your consumer report and may stay on your report at least two years.

# Exhibit I

PO BOX 1391
SOUTHGATE, MI 48195-0391


DIVERSIFIED
CONSULTANTS, INC.

12/07/18

Current Creditor: VERIZON WIRELESS
Original Creditor: VERIZON WIRELESS
Account Number: ███████████
Agency Reference Number: ████████
Balance: $207.80

████████████████████████████████████

Yehuda Herskovic
225 Ross St Apt 1
Brooklyn, NY 11211-7204

| Total Debt Due As of Charge-Off: | Total Interest Accrued Since Charge-Off: | Total Non-Interest Charges or Fees Since Charge-Off: | Total of Payments Made On the Debt Since Charge-Off: |
|---|---|---|---|
| $176.11 | N/A | $31.69 | N/A |

This notice is to inform you that your account with VERIZON WIRELESS has been referred to our office for collections.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Calls to or from this company may be monitored or recorded.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

Sincerely,

Adam Felty
Diversified Consultants, Inc.
PO Box 551268
Jacksonville, FL 32255-1268
877-848-1045

 Toll Free: 877-848-1045

**Hours of Operation:**
Monday – Thursday: 8 AM – 11 PM EST
Friday: 8 AM – 10 PM EST
Saturday: 9 AM – 4 PM EST

Pay Your Bill Online at:
www.dcicollect.com

**NOTICE: See Reverse Side for Important Information.**

DCI\00100\237396854687

1675\0001134\0006-

- - - - - - - - - - - - - - - - - - - - - - - - Detach and Return with Payment - - - - - - - - - - - - - - - - - - - - - - - -

00100

**To pay by credit card, please complete the information below:**

Check One: ❏ VISA ❏ MasterCard ❏ AMEX ❏ Check

Card Number: ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐

Expiration Date: ☐☐☐☐ CCV#: ☐☐☐ Last 3 digits on back of card

Signature of Cardholder: _____

Cardholder Name: _____

Cardholder Billing Address:
_____
_____

**Amount Due: $207.80**

**Amount Submitted:**

$ _____ . ___

**Make Checks Payable to Verizon**



Current Creditor: VERIZON WIRELESS
Original Creditor: VERIZON WIRELESS
Account Number: 098887691700001
Agency Reference Number: 77535322
Balance: $207.80

███████████████████████████████
DIVERSIFIED CONSULTANTS, INC.
PO BOX 551268
JACKSONVILLE, FL 32255-1268

877-848-1045



# Exhibit J

ATERSOO1
PO Box 1280
Oaks, PA 19456-1280
CHANGE SERVICE REQUESTED

Yehuda Herskovic
225 Ross St Apt 1
Brooklyn NY 11211-7204

# Convergent

Convergent Outsourcing, Inc.
800 SW 39th St., Suite #100/PO Box 9004
Renton, WA 98057
Mon-Thu 8AM-8PM, Fri 8AM-5PM CST
866-336-8383

Date: 06/14/2019
Creditor: Verizon Wireless
Client Account #
Convergent Account #: T
Reduced Balance Amount: $ 155.85

| | |
|---|---|
| Amount Owed: | $ 176.11 |
| Collection Cost: | $ 31.69 |
| Total Balance: | $ 207.80 |

Reduced Balance Opportunity

Dear Yehuda Herskovic:

This notice is being sent to you by a collection agency. The records of Verizon Wireless show that your account has a past due balance of $ 207.80.

Our client has advised us that they are willing to satisfy your account for 75% of your total balance. The full amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Your reduced balance amount would be $ 155.85. Even if you are unable to take advantage of this opportunity, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

Sincerely,

Convergent Outsourcing, Inc.

# Exhibit K

**YU | MOHANDESI** LLP

Lisa M. Lawrence
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

February 18, 2022

***VIA E-Mail Only***
Michael D. Blechman, Esq.
American Arbitration Association
Email: prosemanager3@adr.org

> **Re:** ***Yehuda Herskovic v. Verizon Wireless***
> ***AAA Case No.: 01-21-0016-5580***
> <u>**Opening Brief Re Arbitrability of the Dispute**</u>

Dear Arbitrator Blechman:

Please accept this letter as Respondent Cellco Partnership d/b/a Verizon Wireless's ("Respondent")[1] opening brief on the issue of arbitrability that Claimant Yehuda Herskovic ("Claimant") has brought before the Arbitrator.

## I.    Introduction

Claimant's assertion that the Arbitrator lacks jurisdiction to hear this case is meritless. There is no legal basis for the Arbitrator to revisit the question of arbitrability previously and conclusively determined by the United States District Court for the Eastern District of New York. "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The Court *ordered* Claimant to arbitrate his claims against Verizon Wireless nearly two years ago on March 6, 2020, after considering the same arguments that Claimant is advancing here. But Claimant repeatedly refused to comply with the Court's order, bringing multiple requests that the Court revisit its ruling—all of which the Court considered and rejected.

---

[1] Defendant Cellco Partnership d/b/a Verizon Wireless was erroneously sued as "Verizon Wireless."

In short, Claimant has attempted to avoid AAA arbitration for over 2 years and is currently bringing a frivolous, duplicative challenge to the arbitrability of his claims after he himself initiated this arbitration pursuant to the Court's binding orders. Claimant is improperly asking the Arbitrator to *overturn* the Court's orders and send this case back to Court. Accordingly, Verizon Wireless respectfully requests that the Arbitrator find that Claimant's dispute is arbitrable and move forward with the arbitration.

## II.     Relevant Facts

### A.  The Court's Prior Rulings on the Arbitrability of Plaintiff's Claims

On July 25, 2019, Verizon Wireless filed a Motion to Compel Contractual Arbitration and Stay Action ("Motion") in the case currently pending between the parties in the United States District Court for the Eastern District of New York, entitled *Yehuda Herskovic v. Verizon Wireless*, E.D.N.Y. Case No. 1:19-cv-03372-AMD-RML (the "District Court Case"). On January 23, 2020, after full briefing, supplemental briefing, and an in-person hearing, Magistrate Judge Robert M. Levy issued a Report and Recommendation in the District Court Case finding that the dispute between the parties concerning Claimant's Verizon Wireless account was arbitrable. *See* **Exhibit 1.**

On March 6, 2020, after reviewing Claimant's objection to the Report and Recommendation, District Judge Ann M. Donnelly granted Respondent's Motion. Judge Donnelly expressly held that Claimant's claims were arbitrable under the parties' valid contractual arbitration agreement and stayed the action pending the arbitration. *See* **Exhibit 2.**

Claimant subsequently brought a Motion for Reconsideration, which the Court rejected as set forth below and in **Exhibit 3** attached:

| 12/28/2020 | 39 | ORDER: The plaintiff is directed to initiate arbitration within 90 days or show cause why this action should not be dismissed for failure to prosecute. The parties are directed to file a status report updating the Court on the arbitration proceeding no later than April 2, 2021. The Clerk of Court is respectfully directed to mail a copy of this order to the plaintiff. Ordered by Judge Ann M. Donnelly on 12/28/2020. (Greene, Donna) (Entered: 12/28/2020) |

Most recently, Claimant argued that the Court should order the case to be heard before the Better Business Bureau ("BBB"), rather than the American Arbitration Association ("AAA"). After another in-person hearing, the Court also denied this assertion based on the plain language of the parties' arbitration agreement and reaffirmed that Claimant was bound to arbitrate his claims before the AAA:



| 07/13/2021 | Minute Entry for proceedings held before Judge Ann M. Donnelly: Status conference held on July 13, 2021. Yehuda Herskovic, plaintiff, appeared *pro se*. Howard Fried appeared for the defendant. Case called; discussion held. The defendant is directed to file a letter by July 20, 2021, with step-by-step instructions for initiating an arbitration before the AAA. The plaintiff will initiate an arbitration proceeding with the AAA no later than September 20, 2021. The parties are directed to submit a joint status report by September 27, 2021. (Court Reporter Sophie Nolan.) (Dang, Michelle) (Entered: 07/13/2021) |
| --- | --- |

Accordingly, the arbitrability of this dispute has been repeatedly, and conclusively, decided by the Court.

### B. The Parties' Arbitration Agreement

Although academic given the Court's prior orders, the arbitrability of this dispute is beyond reasonable debate. Specifically, Claimant first activated service with Verizon Wireless on or about April 2, 2014. *See* **Exhibit 4**, Declaration of Daniel Reed submitted in support of Verizon Wireless's Motion ("Reed Decl."), ¶ 5; Exh. A. At the point of sale, Plaintiff signed a sales receipt ("2014 Receipt"), in which he expressly agreed to the terms of the Customer Agreement. *Id.*, Exh. A at p. 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT…"). The 2014 Receipt also states:

> In this Customer agreement, you'll find important information about your Service . . . our liability if things don't work as planned and how *any disputes between us must be resolved in arbitration* or small claims court.

*Id.*, Exh. A at p. 1 (emphasis added).

The Verizon Wireless Customer Agreement – which Plaintiff agreed to be bound by when he executed the 2014 Receipt at the point of sale – contains an arbitration provision ("Arbitration Provision"), conspicuously bolded and in all capital letters:

**HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?**

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD....**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA")...

**Exhibit 4**, Reed Decl., ¶ 6, Exh. B at p. 8 (bolded text in original).

By signing the 2014 Receipt at the point of sale, Claimant agreed to the terms of the Customer Agreement, including the Arbitration Provision. **Exhibit 4**, Reed Decl., ¶ 5, Ex. A, p. 1. Further, by activating and using his Verizon Wireless service, Claimant again agreed to the terms of the Customer Agreement, including the Arbitration Provision. The Customer Agreement specifically provides (in pertinent part) as follows:

> **HOW DO I ACCEPT THIS AGREEMENT?**
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

**Exhibit 4**, Reed Decl., ¶ 6, Exh. B, p. 1 (bolded text in original). The activation letter sent to Plaintiff also referenced and enclosed a copy of the Customer Agreement. *Id.* at ¶ 7 and Ex. C.

On or about December 8, 2016, Claimant opened a second account with Verizon Wireless. *See* **Exhibit 5**, Supplemental Declaration of Daniel Reed submitted in support of Verizon Wireless's Motion ("Supp. Reed Decl."), ¶ 5; Exh. A. At the point of sale, Plaintiff signed a sales receipt ("2016 Receipt"), in which he reaffirmed his express agreement to arbitrate all disputes with Verizon Wireless. *Id.*, Exh. A at p. 2. Specifically, the 2016 Receipt states that by signing, "I agree to the Verizon Wireless Customer Agreement including … settlement of disputes by arbitration instead of jury trial." *Id.* Further, by activating and using his service and



**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

equipment, Claimant again agreed to the terms of the Customer Agreement, including the Arbitration Provision. *Id.,* Exh. B at p. 1 ("By using the Service you are agreeing to every provision of this Agreement whether or not you have read it.").

The Customer Agreement in effect in 2016 contains an Arbitration Provision that is nearly identical to that in effect in 2014:

**HOW DO I RESOLVE DISPUTES WITH VERIZON?...**

**YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES)... WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA")...

**Exhibit 5,** Supp. Reed Decl., Exh. B at p. 7 (bolded text in original).

### C. The Material Allegations of the Amended Complaint

The crux of Plaintiff's Amended Complaint is his allegation that Verizon Wireless improperly refused to remove erroneous charges from his Verizon Wireless account, erroneously reported the charges as a delinquent debt to various Credit Reporting Agencies ("CRAs") and sought to collect the erroneous debt from him. Cmplt., pp. 2-3. Specifically, Plaintiff alleges that "on or about December 6, 2016, [he] purchased service [and] a home device from Verizon Wireless" associated with a phone number ending in -4565. *Id.,* ¶ 3.

Claimant further alleges that the service and device were "defective," and that he subsequently "rescinded" the sale. *Id.,* ¶¶ 4-6. Claimant asserts that Verizon Wireless charged him an early termination fee of $176.11, which it reported on Plaintiff's credit report, and that it

has directed collection agencies to collect the $176.11 from him, as well as another $341.83. *Id.*, ¶¶ 8-9, 15-16.

Based on these allegations, Plaintiff asserts what appear to be two causes of action against Verizon Wireless for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, based Verizon Wireless's credit reporting of the unpaid balances on his Verizon Wireless accounts. *See* Cmplt.,¶¶ 22-26; 41-44. It is unclear if Claimant is also asserting a claim under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692, *et seq.*, based on the activities of other debt collectors. Claimant requests actual and punitive damages for alleged "willful" violations of the FCRA.

### III.   Legal Argument

#### A.   Claimant's Request That the Arbitrator Revisit the Court's Prior Rulings on Arbitrability Is Improper and Should Be Denied

Unless the parties clearly and unmistakably provide otherwise, the question of whether they agreed to arbitrate the dispute is to be decided by the court, not the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *BG Group PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) ("courts presume that the parties intend courts, not arbitrators, to decide … disputes about 'arbitrability'"). *See also Litton Fin'l Printing Div., a Div. of Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 208 (1991) ("Whether or not a [party] … is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'").

Here, Claimant has identified no language in the parties' arbitration agreement that would allow the arbitrator to rule on the question of arbitrability—because there is none. Moreover, the issue is *moot* because it has already been decided by the Court, which ordered this dispute to arbitration. *See* **Exhibits 2-3**. Thus, Claimant's request that the Arbitrator revisit the issue of arbitrability fails on this basis alone.

#### B.   Disputes Falling Within the Scope of the Federal Arbitration Act Must Be Arbitrated

However, even if the Arbitrator revisits the issue of arbitrability, which is not permitted under controlling law, there can be no legitimate debate that this dispute belongs in arbitration. The FAA, codified at 9 U.S.C. § 2, *et seq.*, reflects a congressional declaration of a "liberal federal policy favoring arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("*Concepcion*") (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA "leaves no place for the exercise of discretion by a court, but instead mandates that courts shall direct the parties to proceed to arbitration on issues as to which an

**YU | MOHANDESI** LLP

**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp., supra,* 460 U.S. at p. 24–25; *see also CompuCredit Corp. v. Greenwood*, 595 U.S. 95, 109 (2012) (concurring opinion) ("[W]e resolve doubts in favor of arbitration").

"Contracts to arbitrate are not to be avoided by allowing [plaintiffs] to ignore the contract and to resort to the courts." *Southland Corp. v. Keating* , 465 U.S. 1, 7 (1984); *see also Dean Witter Reynolds, Inc., supra,* 470 U.S. at p. 219–21. Where a plaintiff refuses to submit a dispute to arbitration, a defendant may "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, a tribunal's task in determining arbitrability is limited to answering two simple questions: (1) does a valid arbitration agreement exist between the parties; and (2) does the dispute at issue fall within the scope of the agreement. *See* 9 U.S.C. § 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626–28 (1985); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–77 (1995). If the answer to both questions is "yes," then the dispute must be arbitrated.

### C. <u>The FAA Governs the Arbitration Provision in the Customer Agreement</u>

As a preliminary matter, by its express terms, the parties' Arbitration Provision is governed by and enforceable under the FAA. *See* **Exhibits 4-5**, Reed Decl., Exh. B and Reed Supp. Decl., Exh. B ("THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT."). *See Preston v. Ferrer*, 552 U.S. 346, 353 (2009) (applying FAA's procedural rules pursuant to choice-of-law clause); *Volt Info. Scic., Inc. v. Bd. of Trustees of Leland Standard Junior Univ.*, 489 U.S. 468, 479 (1989) ("Parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted.").

But even absent the parties' express agreement, the FAA would nevertheless govern the Arbitration Agreement. Pursuant to 9 U.S.C. section 2, the FAA governs any (1) written arbitration provision (2) in a contract evidencing a transaction "involving commerce." 9 U.S.C. § 2 ("*A written provision* in any maritime transaction or a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract.") (emphasis added). Here, both requirements are satisfied.

First, the Arbitration Provision is in writing. *See* **Exhibits 4-5**, Reed Decl., Exh. B and Reed Supp. Decl., Exh. B. Second, the Customer Agreement, a contract for wireless telephone services, is indisputably a contract "involving commerce." Third, Claimant is a citizen of New York and Verizon Wireless is a citizen of Delaware and New Jersey. *See* **Exhibit 4**, Reed Decl., ¶ 4. *See Citizens Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995) ("[W]e conclude that the word 'involving' [in Section 2 of the FAA] is broad and is indeed the functional equivalent of 'affecting.'"). The scope of the FAA is interpreted broadly to include any transaction affecting interstate commerce. *Id.*

Courts in New York and across jurisdictions have held that wireless telephone service is within the flow of interstate commerce for purposes of the FAA. *Interceptor Ignition Interlocks, Inc. v. AT&T Mobility Servs., LLC*, 2019 U.S. Dist. LEXIS 36886, at *5 (S.D.N.Y. Mar. 7, 2019, No. 18-cv-4289 (PKC)) ("The FAA applies to the claims in Interceptor's Complaint because the described wireless services are comfortably encompassed within the term interstate commerce."); *Ozormoor v. T-Mobile USA, Inc.*, 2008 U.S. Dist. LEXIS 58725 at *6 (E.D. Mich., June 19, 2008, No. 08-11717) (finding wireless phone service involved interstate commerce for purposes of FAA); *Davidson v. Cingular Wireless LLC*, 2007 U.S. Dist. LEXIS 21040 at *28-29 (E.D. Ark., Mar. 23, 2007, No. 2:06-CV00133-WRW) (wireless phone service is a transaction in interstate commerce for purposes of FAA).

Accordingly, the FAA governs the Arbitration Provision, and the Arbitrator must apply federal substantive law in interpreting it. *Mitsubishi Motors Corp., supra*, 473 U.S. at p. 626 ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

### D. A Valid and Enforceable Arbitration Agreement Exists Between Plaintiff and Verizon Wireless

State law principles of contract construction govern the analysis of whether parties agreed to arbitrate and, hence, whether the parties should be compelled to arbitrate their claims. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). Determining the parties' intent to arbitrate is a question of law, and the parties' intentions are generously construed in favor of arbitrability. *Mitsubishi Motors Corp., supra,* 473 U.S. at p. 626.

Here, it is beyond reasonable debate that Claimant expressly agreed to arbitrate all disputes with Verizon Wireless. Specifically, as noted above, Claimant's service with Verizon



**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

Wireless was only activated after he accepted all of the terms and conditions of the Customer Agreement, including "SETTLEMENT OF DISPUTES BY ARBITRATION." *See* **Exhibits 4-5**, Reed Decl., Exhs. A-C and Reed Supp. Decl., Exhs. A-B. In addition, as a condition of activating his service, Plaintiff again expressly agreed to all the terms and conditions of the Customer Agreement. Reed Decl., Exh. B at p. 1 ("You accept this agreement by: . . . Activating your Service."); Supp. Reed Decl., Exh. B at p. 1 ("By using the Service you are agreeing to every provision of this Agreement whether or not you have read it."). Accordingly, Claimant is clearly bound by the Customer Agreement and the Arbitration Provision therein.

Indeed, courts in New York and throughout the country have enforced Verizon Wireless's arbitration provision. *See Carney v. Verizon Wireless Telecom, Inc.*, 2011 U.S. Dist. LEXIS 88172 (S.D. Cal., Aug. 9, 2011, No. 09CV1854 DMS (WVG)) (compelling arbitration pursuant to Verizon Wireless Customer Agreement); *see also Litman v. Cellco Partnership d/b/a Verizon Wireless*, 655 F.3d 225 (3d Cir. 2011) (same); *Ikechi v. Verizon Wireless (VAW), LLC, et al.,* 2012 U.S. Dist. LEXIS 105717 (D. Minn. July 6, 2012, No. 10-4554 (JNE/SER)) (finding that Verizon Wireless's arbitration provision applies to billing disputes).

Accordingly, a valid arbitration agreement exists between Claimant and Verizon Wireless.

### E. The Arbitration Provision Encompasses Plaintiff's Claims for Relief

Once it has been determined that the parties entered into a binding arbitration agreement, the U.S. Supreme Court has held that a presumption of arbitrability applies:

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (*quoting United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. at 582-583 (1960)).

Moreover, such presumption "is particularly applicable where the clause is as broad as the one employed in this case." *AT&T, supra*, at 650 (court noting breadth of arbitration

provision ostensibly covering "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder....."). Hence, in cases involving such a broadly-worded arbitration provision as that included in the Customer Agreement, a heightened presumption of arbitrability applies, such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, [ ] only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail[.]" *Id.* Further in such cases, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650 (*quoting United Steelworkers, supra,* 363 U.S. at 582–83 (1960)).

Here, the broadly worded Arbitration Provision covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US." **Exhibits 4-5**, Reed Decl., Exh. B, at p. 8; Supp. Reed Decl., Exh. B at p. 7. Thus, there is no question that Claimant's allegations regarding improper billing, collection and credit reporting on his Verizon Wireless account are all related to, and arise out of, his Customer Agreement and the equipment and services provided under it. *See DeGraziano v. Verizon Comms., Inc.*, 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("[T]he plaintiff's claims that Verizon Wireless violated the FCRA arise out of and are related to the [Customer Agreement]" and are "presumptively arbitrable."); *see also Biggs v. Midland Credit Mgmt.*, 2018WL1225539 at p. n. 4 (E.D.N.Y. Mar.9, 2018) (alleged FDCPA violations are arbitrable). In fact, removing any reasonable doubt as to whether credit reporting activities are covered by the Arbitration Provision, the Customer Agreement explicitly states that "we may investigate your credit history at any time and share credit information about you with credit reporting agencies and other Verizon companies." *See* **Exhibit 4**, Reed Decl., Exh. B at p. 2.

Thus, Claimant's dispute falls squarely within the scope of the Arbitration Provision and his claims are clearly arbitrable.

### F. The Arbitration Provision Is Enforceable Despite the Termination of the Customer Agreement by Claimant

"[A] broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017) (citation omitted). The broad Arbitration provision here covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENTOR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US." As Judge Levy and Judge Donnelly previously held in rejecting the same argument Claimant reasserts here, this language "is sufficiently broad to create a strong presumption of arbitrability." *See* **Exhibit 2** at p. 5. Moreover, absent an explicit agreement

**YU | MOHANDESI** LLP

**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

between the parties to rescind an arbitration provision, it remains in full effect after the cancellation of a contract. *See Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557, 558-59 (2d Cir. 2002) (arbitration clause survived termination of contract because there was no subsequent "express rescission of the arbitration provision" by the parties).

Accordingly, there is no merit to Claimant's assertion—expressly rejected by the Court—that the Arbitration Clause was terminated along with the Customer Agreement.

### IV.    Conclusion

Respondent respectfully requests that the Arbitrator affirm the Court's prior holding that Claimant's claims against Verizon Wireless are arbitrable and find that the AAA has jurisdiction to hear them.

Sincerely,

Lisa M. Lawrence

cc:
Yehuda Herskovic

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
YEHUDA HERSKOVIC,

               Plaintiff,                                REPORT AND
                                                  RECOMMENDATION

    -against-

                                                  19 CV 3372 (AMD)(RML)

VERIZON WIRELESS,

               Defendant.
-----------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated July 26, 2019, the Honorable Ann M. Donnelly, United States

District Judge, referred defendant's motion to compel arbitration and stay this action to me for

report and recommendation. I held conferences on September 10, 2019 and October 31, 2019.

For the reasons stated below, I respectfully recommend that defendant's motion be granted.

**BACKGROUND**

        Plaintiff *pro se* Yehuda Herskovic ("plaintiff") commenced this action in March

2019 in New York State Supreme Court, Kings County, alleging wrongful debt collection

practices. (See Complaint, dated Mar. 26, 2019 ("Compl."), Dkt. No. 2-2.) Defendant Verizon

Wireless ("defendant" or "Verizon Wireless")[1] removed the case to this court on June 6, 2019.

(See Notice of Removal, dated June 6, 2019, Dkt. No. 2.) Defendant now requests an order

compelling plaintiff to engage in binding arbitration with Verizon Wireless pursuant to the

parties' written arbitration agreement. (Defendant's Memorandum of Law, dated July 25, 2019

("Def.'s Mem."), Dkt. No. 13-1, at 1.)

---

[1] Defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (See Def.'s
Memorandum of Law, dated July 25, 2019, Dkt. No. 13-1, at 1.)

Plaintiff alleges that on December 27, 2017, he signed a sales receipt and Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless home telephone equipment and services for his home phone number ending in 4565. (See Compl. at 1.) He alleges that after about a month, he began experiencing problems with the phone service, including dropped calls and difficulty hearing. (Id.) He states that he made many attempts to have his service fixed, but ultimately decided to cancel the service. (Id.) According to plaintiff, on December 10, 2018, a Verizon Wireless customer service supervisor agreed to waive the disconnection fee so he could take his business to another company. (Id.) Nonetheless, Verizon Wireless sent him a bill containing a $176 disconnection fee and, despite his complaints, refused to remove the fee from subsequent bills and then sent the unpaid $176 charge to collection and reported it to credit agencies. (Id. at 2.) He alleges that the charge damaged his credit, such that when he applied for a credit card, his application was denied. (Id.)

It is undisputed that plaintiff first activated his wireless cellular service with Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale, plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the Customer Agreement. (Id., Ex. A at 2 ("I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]"). The Customer Receipt also stated:

> In this Customer agreement, you'll find important
> information about your Service . . . our liability if things
> don't work as planned and how any disputes between us
> must be resolved in arbitration or small claims court.

(Id., Ex. A at 1.)

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

> HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?
> YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES
> ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO
> JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE
> DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME
> DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN
> THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR
> AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD
> THEM TOO. WE ALSO BOTH AGREE THAT:
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.
> EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY
> DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS
> AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES
> YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY
> SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR
> MORE NEUTRAL ARBITRATORS[.]

(Id. ¶ 6, Ex. B at 8). The Customer Agreement also provides, in pertinent part:

> HOW DO I ACCEPT THIS AGREEMENT?
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

(Id. ¶ 6, Ex. B at 1). The activation letter sent to plaintiff also referenced and enclosed a copy of

the Customer Agreement. (Id. ¶ 7, Ex. C.)

The Arbitration Provision applies to "any dispute that in any way relates to or

arises out of this agreement **or** from any equipment, products and services you receive from

[Verizon Wireless]." (See id., Ex. B at 8 (emphasis added)). Thus, it covers all subsequent

disputes between the parties, including those related to other equipment or services. Regardless,

the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December

2017 contain identical language. (See Supplemental Declaration of Daniel Reed, Esq., dated

Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

3

## DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> a written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction . . . shall be
> valid, irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that the FAA declares a national policy favoring

arbitration and courts must "'rigorously enforce' arbitration agreements according to their

terms." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (citing Dean Witter

Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see also Nitro–Lift Techs., L.L.C. v. Howard,

568 U.S. 17, 20 (2012); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir.

2015).

The inquiry before the court is two-fold: (1) did the parties enter into a valid

arbitration agreement? and (2) is the dispute within the scope of the arbitration agreement? In re

Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "A party to an

arbitration agreement seeking to avoid arbitration generally bears the burden of showing the

agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124

(2d Cir. 2010).

A court deciding a motion to compel arbitration must apply a standard "similar to

that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66,

74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all

relevant, admissible evidence submitted by the parties and contained in pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits," and draw all

reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the

undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted); see also Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015) ("In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).

Here, the Arbitration Clause covers "any dispute that in any way relates to or arises . . . from any equipment, products and services you receive from [Verizon Wireless]." (See Dkt. No. 18-2 at 7.) This is sufficiently broad to create a strong presumption of arbitrability. See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause"). Moreover, plaintiff accepted the terms of the Customer Agreement on at least two separate occasions over more than four years of service with Verizon Wireless. Plaintiff first accepted the Customer Agreement when initiating service and opening his Verizon Wireless account in April 2014, and a second time in December 2017.

Plaintiff does not contest the validity or enforceability of the Arbitration Provision. Although plaintiff does complain that the Arbitration Provision and Verizon's

conduct are unfair, there is nothing in the record to suggest that the agreement was improper; the

terms of Verizon Wireless service—especially the Arbitration Provision—are conspicuous in the

Customer Agreement.  See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 243

(E.D.N.Y. 2004) ("An individual who signs a contract is presumed to know its contents and

assent to them, unless he can show special circumstances, such as duress or coercion, which

would justify non-enforcement of the contract.") (quoting Cap Gemini Ernst & Young U.S. LLC

v. Arentowicz, No. 04 CV 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004)).  Because

the parties have consented to a broad agreement to arbitrate and plaintiff has failed to overcome

the strong presumption of arbitrability that attaches to such agreements, I respectfully

recommend that defendant's motion to compel arbitration be granted.

>With respect to defendant's request for a stay, section 3 of the FAA provides:
>
>>If any suit or proceeding be brought in any of the courts of the
>>United States upon any issue referable to arbitration under an
>>agreement in writing for such arbitration, the court in which such
>>suit is pending, upon being satisfied that the issue involved in such
>>suit or proceeding is referable to arbitration under such an
>>agreement, shall on application of one of the parties stay the trial
>>of the action until such arbitration has been had in accordance with
>>the terms of the agreement, providing the applicant for the stay is
>>not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Accordingly, this court is required to stay the proceedings

pending the outcome of the arbitration.  Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015).

**CONCLUSION**

>For the reasons explained above, I respectfully recommend that defendant's

motion to compel arbitration and stay this action be granted.  Any objection to this Report and

Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge

Donnelly and to my chambers within fourteen (14) days.  Failure to file objections in a timely

6

manner may waive a right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED.

R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

_____
/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       January 23, 2020

7

# EXHIBIT 2

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   MAR 6 2020   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
**YEHUDA HERSKOVIC,**                               :

                      Plaintiff,              :

                - against –              :   **MEMORANDUM
                                                    :   DECISION AND ORDER**
**VERIZON WIRELESS,**                               :   1:19-CV-3372 (AMD) (RML)

               Defendant.            :
-------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

      In March of 2019, the *pro se* plaintiff brought this wrongful debt collection practices

action against Verizon Wireless.[1] (ECF No. 2.) The defendant removed the case to this court

and moved to compel arbitration and stay the action. (ECF No. 13.) In a January 23, 2020

Report and Recommendation, the Honorable Robert M. Levy recommended that I grant the

defendant's motion. (ECF No. 25.) The plaintiff filed an objection. (ECF No. 27.) For the

reasons set forth below, I adopt Magistrate Judge Levy's well-reasoned opinion, grant the

defendant's motion to compel arbitration and stay the action.

## BACKGROUND

      The plaintiff, the defendant's former customer, alleges that the defendant charged him a

$176 disconnection fee that the company had previously agreed to waive. (ECF No. 2-2 at 4.)

The plaintiff first activated his Verizon account in April of 2014. (ECF No. 13-4 at 1-2.) As part

of his purchase, he accepted the terms of a customer agreement by signing a customer receipt.

(*Id.*) The agreement provides that the parties "agree to resolve disputes only by arbitration[,]"

and that the agreement would be governed by the Federal Arbitration Act.[2] (ECF No. 13-5 at 4.)

---

[1] The defendant identifies itself as Cellco Partnership d/b/a Verizon Wireless. (ECF No. 13-1 at 1.)

[2] The plaintiff subsequently signed at least one additional customer receipt—generated December 8, 2016—in which he again agreed to the arbitration provision. (ECF Nos. 18-2, 18-3.)

In December of 2017, the plaintiff signed an additional contract for home phone service. (ECF No. 2-2 at 3.) He started having problems about a month later—calls would drop and people had trouble hearing him—which the defendant could not fix. (*Id.*) He decided to cancel the service. (*Id.*) Although a customer service supervisor allegedly agreed to waive the disconnection fee, the company charged him anyway. (*Id.* at 4.) When he refused to pay, the company sent the debt to multiple collection companies, which in turn inundated the plaintiff with letters and calls. (*Id.*) The charge damaged his credit. (*Id.*)

The plaintiff brought this claim in March of 2019. (ECF No. 2-2.) The defendant removed the case to this court, and moved to compel arbitration and stay the case, asserting that the action was subject to arbitration per the customer agreement. (ECF No. 13.)

In his Report and Recommendation, Judge Levy concluded that the parties "consented to a broad agreement to arbitrate and [that the] plaintiff . . . failed to overcome the strong presumption of arbitrability that attaches to such agreements[.]" (ECF No. 25 at 6.) Additionally, he recommended that I grant the defendant's application to stay the action. (*Id.*)

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A party's objections must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the [r]eport and [r]ecommendation only for clear error." *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie,* No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

"[E]ven in a *de novo* review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith,* No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012) (quoting *Kennedy v. Adamo,* No. 02-CV-1776. 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)) (alterations omitted).

A *pro se* party's objections are "generally accorded leniency" and construed "to raise the strongest arguments that they suggest." *Milano v. Astrue,* No. 05-CV-6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks and citations omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Serv.,* No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotation marks and citation omitted).

## DISCUSSION

The plaintiff makes three arguments: that he did not agree to arbitration, that the Federal Arbitration Act does not apply to the agreement, and that the defendant waived arbitration by removing the case to federal court. (ECF No. 27 at 1-3.) The defendant responds that the Court should not consider these arguments because the plaintiff did not raise them before Judge Levy. (ECF No. 28.) In any event, the defendant says that the plaintiff's objections are meritless. (*Id.*)

Even construing the plaintiff's *pro se* objections liberally, he did not raise two of his claims—that the Federal Arbitration Act does not apply, and that the defendant waived arbitration—before Judge Levy. "[T]he Court is only obliged to review the Report for clear error." *Pall Corp.,* 249 F.R.D. at 51. Nevertheless, because the plaintiff is representing himself,

3

I consider his objections *de novo*. I conclude that Judge Levy's report and recommendation was correct, and I adopt it in its entirety.

## I.      General Standard

A court deciding a motion to compel arbitration applies a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). The Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) (second alteration in original), and draws all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016). I consider the plaintiff's signed customer receipts and agreements, which the defendant submitted with its motion to compel arbitration.

## II.     Validity of Agreement

"Ordinary principles of contract . . . determine which parties are bound by an agreement to arbitrate." *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-CV-7646, 2019 WL 1353279, at *6 (S.D.N.Y. Mar. 15, 2018) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 235 (2d Cir. 1960)). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). A forged signature generally renders a contract void. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003).

The plaintiff maintains that he did not sign the 2014 and 2016 customer receipts, and that the customer agreements are "false documents" with "false signatures." (No. 27 at 3-4.)

4

"[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996). An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Contemporary Mission v. United States Postal Serv.,* 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal citations and quotation marks omitted). The plaintiff's claim, which is not supported by any evidence, is insufficient to create a genuine issue of material fact. After all, the plaintiff admits that he signed multiple contracts with the company, and he was a Verizon customer for the period covered by the signed agreements. (ECF Nos. 1 at 1; 14 at 1.) In short, there is no credible evidence that the records that the defendant produced are forgeries or otherwise false. Accordingly, Judge Levy's conclusion that the "plaintiff accepted the terms of the [c]ustomer [a]greement on at least two separate occasions over more than four years of service with Verizon Wireless" was correct. (ECF No. 25 at 5.)

Equally unimpressive is the plaintiff's claim that the agreements do not govern the December 2017 purchase underlying the disputed charge. (No. 27 at 3-4.) "[A] broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder . . . ." *Eisen v. Venulum Ltd.,* 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017) (citation omitted). The arbitration clause in the customer agreement covers "any dispute that in any way relates to or arises . . . from any equipment, products and services [the plaintiff] receive[d] from [Verizon Wireless]." (ECF Nos. 13-5 at 4; 18-3 at 7.) As Judge Levy determined, this language "is sufficiently broad to create a strong presumption of arbitrability" (ECF No. 25 at 5), including over services he later purchased in 2017.

5

### III.    Federal Arbitration Act

Next, the plaintiff argues that the Federal Arbitration Act does not apply because this is

not a maritime action involving commerce.  (ECF No. 27 at 3.)  But the Act is not limited to

maritime actions.  On the contrary, it provides that arbitration agreements "evidencing a

transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The statute

establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v.

Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546

U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places

arbitration agreements on equal footing with all other contracts").

The parties' agreements reference the statute explicitly, providing that "[t]he Federal

Arbitration Act applies to this agreement." (ECF Nos. 13-5 at 4; 18-3 at 7.)  Unfair debt

collection and credit reporting claims are unquestionably covered by the Act.  *See DeGraziano v.

Verizon Comms., Inc.,* 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("[T]he plaintiff's claims that

Verizon Wireless violated the FCRA arise out of and are related to the [customer service

agreement]" and are "presumptively arbitrable."); *see also Biggs v. Midland Credit Mgmt.*, No.

17-CV-340, 2018 WL 1225539, at 5 n.4 (E.D.N.Y. Mar. 9, 2018) (FDCPA acts are arbitrable)

(citation omitted).  Accordingly, Judge Levy correctly applied the Federal Arbitration Act.

### IV.    Waiver

Finally, the plaintiff says that the defendant waived arbitration by removing the case to

federal court which, according to the plaintiff, constituted protracted participation in litigation.

(ECF No. 27 at 1-2.)  The "waiver of the right to arbitration is not to be lightly inferred," and the

determination "is not susceptible to bright line rules." *Galeana v. Mahasan Inc.*, No. 14-CV-

3625, 2019 WL 3024588, at *4 (S.D.N.Y. July 11, 2019) (citation omitted).  Courts determining

whether a party has waived arbitration consider "(1) the time elapsed from the commencement of

litigation to the request for arbitration; (2) the amount of litigation (including exchanges of

pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking

advantage of pre-trial discovery not available in arbitration, delay, and expense." *Id.* (citations

omitted).

"[T]he mere act of removing [a] claim from state to federal court is hardly the sort of

aggressive participation in litigation" that constitutes waiver. *Gonder v. Dollar Tree Stores, Inc.*,

144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015) (citation omitted).  The defendant removed the case to

federal court within about two months of service and moved to compel arbitration a month later.

With the exception of the customer receipts and customer agreements, the parties have not

engaged in significant discovery or motion practice.  Moreover, the plaintiff has not

demonstrated any prejudice resulting from being ordered to arbitrate his claims.

Accordingly, Judge Levy correctly concluded that "the parties have consented to a broad

agreement to arbitrate and [the] plaintiff has failed to overcome the strong presumption of

arbitrability that attaches to such agreements[.]"  (ECF No. 25 at 6.)

## CONCLUSION

The defendant's motion to compel arbitration is granted.  The action is stayed pursuant to

section 3 of the Federal Arbitration Act.[3]  The parties must provide a status report by July 24,

2020.

---

[3] The defendant requested a stay.  (ECF No. 13-1 at 9-10.)  Accordingly, the court is required to stay the
proceedings pending the outcome of the arbitration.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir.
2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been
referred to arbitration and a stay [is] requested.").

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
    March 6, 2020

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

**YEHUDA HERSKOVIC,**

                              Plaintiff,

              - against -                              **ORDER**
                                                       1:19-CV-3372 (AMD) (RML)
**VERIZON WIRELESS,**

                              Defendant.
--------------------------------------------------------X

**ANN M. DONNELLY**, United States District Judge:

On March 6, 2020, I granted the defendant's motion to compel arbitration. (ECF No. 29.)

Over nine months have passed since then, and the plaintiff has not made a demand for arbitration

as required by the parties' customer agreements. Instead, he continues to argue that there was no

arbitration agreement between the parties. (ECF Nos. 33, 37.)[1] He also argues that because the

defendant compelled arbitration, the defendant must initiate arbitration proceedings by making a

demand. (*Id.*)

A motion to compel arbitration does not shift the burden of litigating claims to the party

who compelled arbitration. Rather, a motion to compel merely acknowledges that pursuant to a

contractual agreement, this Court does not have jurisdiction over the plaintiff's claims. *See* 9

U.S.C. § 3 (requiring courts to stay proceedings after referring issues to arbitration); *Merit Ins.*

*Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (once the court compels arbitration

"the court has no further power or discretion to address the issues raised in the complaint").

---

[1] The defendant interprets the plaintiff's most recent letter as a motion for reconsideration and Rule 11 sanctions.
(*See* ECF No. 38.) Although it is unclear whether the plaintiff does indeed seek such relief, either motion would be
denied. Local Civil Rule 6.3 requires a party to move for reconsideration of an order within fourteen days after the
issuance of the order. The plaintiff filed his first letter raising objections to my March 6, 2020 decision on
September 27, 2020, well outside the fourteen-day deadline. Additionally, I considered and rejected the plaintiff's
argument that there was not a valid arbitration agreement in deciding the motion to compel. The plaintiff may not
use Rule 11 sanctions to relitigate the validity of that agreement.

Therefore, if the plaintiff wants to pursue the claims that he raised in his complaint, he must do

so by making an arbitration demand as required under the customer agreement. (*See* ECF No.

13-3.)

   As the plaintiff points out, this case is at an "impasse." But it is at an impasse because

the plaintiff has not initiated arbitration. To put this in plain terms: this is the plaintiff's lawsuit.

The only way he can continue this case is to initiate arbitration proceedings. Then, the arbitrator

will decide the merits of the case. It is not the defendant's responsibility to initiate arbitration,

because it is the party being sued. It is the plaintiff's responsibility.

   Accordingly, I grant the plaintiff an additional 90 days to initiate arbitration by filing an

arbitration demand. If he does not make a demand for arbitration of his claims by March 29,

2021, I will deem his claims to be abandoned and dismiss this action for failure to prosecute

pursuant to Fed. R. Civ. P. 41(b). *See Martens v. Thomann*, 273 F.3d 159, 179 n.14 (2d Cir.

2001) (suggesting that "a court which stays an action pending arbitration nevertheless maintains

jurisdiction to regulate the parties' conduct by issuing sanctions, including dismissal for failure

to prosecute under Rule 41(b)"); *see also Dhaliwal v. Mallinckrodt PLC*, No. 18-CV-3146, 2020

WL 5236942, at *2 (S.D.N.Y. Sept. 2, 2020) (dismissing action with prejudice for failure to

prosecute pursuant to Rule 41(b) because the plaintiff failed to initiate arbitration after one year);

*Shetiwy v. Midland Credit Mgmt.*, No. 12-CV-7068, 2016 WL 4030488, at *4 (S.D.N.Y. July 25,

2016), *aff'd*, 706 F. App'x 30 (2d Cir. 2017) (dismissing action for failure to prosecute (Rule

41(b)) and failure to comply with court orders (Rule 16(f)) after the plaintiff refused to initiate

arbitration more than three years following the Court's order to compel arbitration).

**CONCLUSION**

The plaintiff is directed to initiate arbitration within 90 days or show cause why this action should not be dismissed for failure to prosecute. The parties are directed to file a status report updating the Court on the arbitration proceeding no later than April 2, 2021. The Clerk of Court is respectfully directed to mail a copy of this order to the plaintiff.


**SO ORDERED.**


s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
      December 28, 2020

3

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA HERSKOVIC,<br><br>     *Plaintiff,*<br><br>  *-against-*<br><br>VERIZON WIRELESS,<br><br>     *Defendant.* | Case No.: 1:2019cv03372<br><br>**DECLARATION OF DANIEL REED IN SUPPORT OF DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS' MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION**<br><br>Case Removed: June 6, 2019 |

## DECLARATION OF DANIEL REED IN SUPPORT OF MOTION TO  COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION

I, Daniel Reed, hereby declare as follows:

1. I am over the age of 18 and am competent to testify to the facts declared below, and could testify truthfully thereto if required.  I am currently employed by Verizon Wireless as a Senior Analyst.  I have been employed by Verizon Wireless since 2005.

2. The Verizon Consumer Group where I am employed provides services to Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless").  In my capacity as a Senior Analyst, I assist with the handling of consumer disputes for Verizon Wireless, among other things.

3. In preparing this Declaration, I have relied on my personal knowledge of, and experience in, the business operations of Verizon Wireless as well as a review of Verizon Wireless' business records.  Verizon Wireless' business records are made in the regular course of business, at or near the time of the act, conditions or events described in the documents, and by or from information provided by a person with knowledge of the act, conditions or events.  True and correct copies of the business records of Verizon Wireless relevant to this Declaration are attached hereto as Exhibits A, B, and C.

4. Verizon Wireless is a citizen of Delaware and New Jersey.

5.      On April 2, 2014, at a Verizon Wireless retail location in Brooklyn, NY, Plaintiff
Yehuda Herskovic ("Plaintiff") activated wireless service with Verizon Wireless.  Before
Verizon Wireless activated Plaintiff's service, Plaintiff executed a customer agreement
("Customer Receipt").  Attached hereto as **Exhibit A** is a true and correct copy of the receipt
executed by Plaintiff on April 2, 2014.

6.      Attached hereto as **Exhibit B** is a true and correct copy of the Verizon Wireless
Customer Agreement in effect when Plaintiff activated his cellular service with Verizon Wireless
on or about April 2, 2014.

7.      Attached hereto as **Exhibit C** is a true and correct copy of a notice of activation
for the cellular telephone ending in 0599, dated April 5, 2014, which Verizon Wireless sent to
Plaintiff along with a copy of the Customer Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.

Executed on July 24, 2019 at Irvine, California.

DANIEL REED

2

# EXHIBIT A

VERIZON WIRELESS CUSTOMER AGREEMENT

Thanks for choosing Verizon Wireless. In this Customer Agreement, you'll find important information about your Service, including our ability to make changes to your Service or this agreement's terms, our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court. If you're signing up for Service for a minimum contract term, you'll also find information about that contract term and what happens if you cancel a line of Service early or don't pay on time, including the possibility of an Early Termination Fee you may owe Verizon Wireless.

Application ID No.: 437487703
Order Date: 04/02/2014
Bill Acct. No.:
Agent Name: Target 1849: 139 Flatbush Ave, Brooklyn, NY 11217, U.S.A
Activation Type: New

Customer Information:
yehuda herskovic
581 FLUSHING AV #
BROOKLYN NY 11206
US
Home Phone: ▆▆▆3261

Line 1 Details
Mobile Number: ▆▆▆0559
Price Plan: Verizon More Everything Unlimited Minutes & Messaging – 250MB Data
Plan Access Fee: 15.00
Line Access Fee: 30
ETF:
Term: 24 months
Activation Date: 04/02/2014
Activation Fee: 35.00
Upgrade Fee:

Features:
68871 – 3–WAY CALLING
68870 – BUSY TRANSFER
68876 – CALL FORWARDING
68873 – CALL WAITING
68872 – CALL DELIVERY
68874 – NO ANSWER TRANSFER
68869 – CALLER ID
76152 – PICTURE MESSAGE PROVISIONING
73598 – MOBILE WEB FOR MB PLANS
77572 – BASIC PHONE LINE ACCESS $30
48526 – TXT MSG W PER MSG CHARGES
77249 – MOBILE HOT SPOT TRIGGER $0
79032 – SE FAMILYBASE/UC INCOMPATIBLE
80148 – INTL FROM US MESSAGING $0
73324 – OTA SOFTWAREUPDATE–$0.00
76413 – MOBILE EMAIL
76405 – 3G MOBILE HOTSPOT
77256 – RTR FOR ALP
77524 – RTR/UC TRIGGER ALP $0
77581 – EMAIL TRIGGER ALP $0

1

77583 – DATA PROVISION ALP
73597 – GENERAL IP ADDRESS – MB PLANS
78196 – DATA ROAM USA/CANADA
68877 – BASIC VOICE MAIL – $0
48553 – STREAMLINED BILLING – $0
77540 – 3G PROVISIONING $0

Security Deposit (per line): USD 0
Customer Accepted: 04/02/2014 07:00:23 PST
Customer Agreement version: 06.10.2013

Taxes & surcharges apply may vary. Federal Universal Service Charge of 16.10% of interstate & int'l telecom charges (varies quarterly based on FCC rate), a $.16 Regulatory & a $.90 Administrative Charge per line/month are our charges, not taxes. The iPhone 4 is configured to work only with the wireless services of Verizon Wireless, and may not work on another carrier's network, even after completion of your contract term.

I understand that if I am porting in my phone number from another service provider, I may owe that provider an early termination fee and other charges, and I understand that, during the porting process, the ability for me to receive calls, including return calls from 911 personnel, will not be available.

I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (CA),INCLUDING THE CALLING PLAN, (WITH EXTENDED LIMITED WARRANTY/SERVICE CONRACT, IF APPLICABLE), AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH HAVE BEEN PRESENTED TO ME BY THE SALES REP AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO AN EARLY TERMINATION FEE PER LINE AS REFLECTED ON THIS RECEIPT, LIMITATIONS.

**Customer Signature:**

**Customer Signature Accepted:** 04/02/2014 7:08:38 AM

2

# EXHIBIT B

# MY VERIZON WIRELESS CUSTOMER AGREEMENT

*(Para una copia de este documento en español, visite nuestro website:* **vzw.com/espanol)**

Thanks for choosing Verizon Wireless. **In this Customer Agreement, you'll find important information about your Service, including our ability to make changes to your Service or this agreement's terms, our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court. If you're signing up for Service for a minimum contract term, you'll also find information about that contract term and what happens if you cancel a line of Service early or don't pay on time, including the possibility of an early termination fee you may owe Verizon Wireless.**

## MY SERVICE

**Your Service terms and conditions are part of this agreement.** Your Plan includes your monthly allowances and features, where you can use them (your "Coverage Area"), and their monthly and pay-per-use charges. You can also subscribe to several Optional Services, like text messaging packages. Together, your Plan and any Optional Services you select are your Service. The terms and conditions for your Service can be found in the brochures that are available when you activate, or online at **verizonwireless.com**

## HOW DO I ACCEPT THIS AGREEMENT?

You accept this agreement by:
- Agreeing in writing, by email, over the phone, or in person;
- Opening a package that says you are accepting by opening it; or
- Activating your Service.

When you accept, you're representing that you are at least 18 years old and are legally able to accept an agreement. If you're accepting for an organization, you're representing that you are authorized to bind that organization, and where the context requires, "you" means the organization. By accepting, you are agreeing to every provision of this Agreement whether or not you have read it.

**If you do accept, you can cancel a line of Service within 14 days of accepting this Agreement without having to pay an early termination fee as long as you return, within the applicable**



return period, any equipment you purchased from us or one of our retail stores. **If you signed up for Service and later, within that return period, decide to cancel Service, you're responsible for a pro-rated access charge for the time you had Service through that date. If you signed up for Prepaid Service, no refunds will be granted after 14 days or if your account has been activated. Your activation fee will not be refunded unless you cancel within three days of accepting.**

If you change your device or receive a Service promotion, you may be required to change your Plan to one that we are currently offering at that time.

## MY PRIVACY

We collect personal information about you. We gather some information through our relationship with you, such as information about the quantity, technical configuration, type, destination and amount of your use of our telecommunications services. You can find out how we use, share and protect the information we collect about you in our Privacy Policy, available at **verizon.com/privacy**. By entering this Agreement, you consent to our data collection, use and sharing practices described in our Privacy Policy. We provide you with choices to limit, in certain circumstances, our use of the data we have about you. You can review these choices at **verizon.com/privacy#limits**. If there are additional specific advertising and marketing practices for which your consent is necessary, we will seek your consent (such as through the privacy-related notices you receive when you purchase or use our products and services) before engaging in those practices. If you subscribe to Service for which usage charges are billed at the end of the billing period ("Postpay Service"), we may investigate your credit history at any time and share credit information about you with credit reporting agencies and other Verizon companies. If you'd like the name and address of any credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be provided by third parties. Some of these services and applications, which you may block or restrict at no cost, may involve charges for which you will be billed. The amount and frequency of the charges will be disclosed when you agree to the charges. Before you use, link to or download a service or application provided by a third party, you should review the terms of such service or application and applicable privacy policy. Personal information you submit may be read, collected or used by the service or application provider and/or other users of those forums. Verizon Wireless is not responsible for any third-party information, content, applications or services you access, download or use on your device. You are responsible for maintaining virus and other Internet security protections when accessing these third-party products or services. For additional information, visit the Verizon Content Policy at **http://responsibility.verizon.com/contentpolicy**

You consent to allow Verizon Wireless and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number or email address you provide. Verizon Wireless will treat any email address you provide as your private email that is not accessible by unauthorized third parties. Unless you notify us that your

CA-P2

wireless service is based in a different time zone, calls will be made to your cellular, long-distance and roaming services based on the time zone associated with the mobile telephone number you provide.

## WHAT HAPPENS IF MY POSTPAY SERVICE IS CANCELED BEFORE THE END OF MY CONTRACT TERM?

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month-to-month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without billing, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month-to-month basis for that line of Service. **If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350 minus $10 for each full month of your contract term that you complete. Otherwise, your early termination fee will be $175 minus $5 for each full month of your contract term that you complete. Cancellations will become effective on the last day of that month's billing cycle,** and you are responsible for all charges incurred until then. Also, if you bought your wireless device from an authorized agent or third-party vendor, you should check whether they charge a separate termination fee.

## CAN I TAKE MY WIRELESS PHONE NUMBER TO ANOTHER CARRIER?

You may be able to take, or "port," your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services right away such as 911 location services. You don't have any rights to your wireless phone number, except for any right you may have to port it.

## DIRECTORY INFORMATION

We will not publish your wireless phone number in any available directory or give it to anyone for that purpose, unless you ask us to.

## CAN I HAVE SOMEONE ELSE MANAGE MY POSTPAY ACCOUNT?

No problem—just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account for a single transaction, or until you tell us otherwise. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this agreement.

## CAN VERIZON WIRELESS CHANGE THIS AGREEMENT OR MY SERVICE?

We may change prices or any other term of your Service or this agreement at any time, but we'll provide notice first, including written

CA-P3

notice if you have Postpay Service. If you use your Service after the change takes effect, that means you're accepting the change. If you're a Postpay customer and a change to your Plan or this agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no early termination fee if we fail to negate the change after you notify us of your objection to it.

## MY WIRELESS DEVICE

Your wireless device must comply with Federal Communications Commission regulations, be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your wireless device. By activating Service that uses a SIM (Subscriber Identity Module) card, you agree that we own the intellectual property and software in the SIM card, that we may change the software or other data in the SIM card remotely and without notice, and that we may utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes. If you bought a wireless device for Postpay Service from Verizon Wireless that doesn't use a SIM card, and you want to reprogram it for use with another wireless network, the default programming code is set to "000000" or "123456." But please note that your wireless device may not work with another wireless network, or the other wireless carrier may not accept your wireless device on its network. If you activate a wireless device for Prepaid Service, during the first six (6) months after activation, it can only be used for Prepaid Service. The iPhone 4 is configured to work only with the wireless services of Verizon Wireless and may not work on another carrier's network, even after completion of your contract term.

## WHERE AND HOW DOES VERIZON WIRELESS SERVICE WORK?

Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within your Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

## WHAT CHARGES ARE SET BY VERIZON WIRELESS?

You agree to pay all access, usage and other charges that you or the user of your wireless device incurred. For Postpay Service, our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

## GOVERNMENT TAXES, FEES AND SURCHARGES

You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we may not always be able to notify you in advance of changes to these charges.

## WHAT ARE ROAMING CHARGES?

You're "roaming" whenever your wireless device uses a transmission site outside your Coverage Area or uses another company's transmission

CA-P4

site. Sometimes roaming happens even when you're within your Coverage Area, such as when you're near a border. Sometimes roaming charges may be much less or much more expensive for us, and we charge you for roaming based on our cost. Roaming calls may not connect or may disconnect. Roaming calls or data that don't connect (or roaming calls depending on your Plan.

## HOW DOES VERIZON WIRELESS CALCULATE MY CHARGES?

For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **Send** or the call connects to a network, and for incoming calls, it starts when the call connects to a network (which may be before it rings). Usage time may end several seconds after you press End or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

## HOW AND WHEN CAN I DISPUTE CHARGES?

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM) WITHIN THE 180-DAY PERIOD MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.**

## WHAT ARE MY RIGHTS FOR DROPPED CALLS OR INTERRUPTED SERVICE?

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1-minute airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24 hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost. Please be aware that these are your only rights for dropped calls or interrupted Service.

## ABOUT MY PAYMENTS

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to 1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is greater, if allowed by law in the state of your billing address. (If you choose another company to bill you for our Service (such as another

CAIP6

Verizon company), late fees are set by that company or by its tariffs and charges you pay us or that company to pay your bill.) Late fees and charges paid to us or others to try to collect are not in lieu of, and are in addition to, any other rights and remedies we have. "Charges to Collect" refers to your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent. We may require a deposit at the time of activation or afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires. We may apply deposits or payments in any order to any amounts you owe us on any account. If your final credit balance is less than $1, we will refund it only if you ask. You may have to pay a $35 fee to re-activate Service if your Service is terminated, or a $15 fee to reconnect Service if its interrupted for non-payment or suspended for any reason.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by providing us with another payment. Your balance may not exceed $1,000 and you may be prevented from replenishing if your balance reaches $1,000. We will suspend service when your account reaches the expiration date and any unused balance will be forfeited.

We may charge you up to 52% for any returned check.

## WHAT IF MY WIRELESS DEVICE GETS LOST OR STOLEN?

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep someone else from using it. If you're a Postpay customer and your wireless device is used after the loss or theft but before you report it, and you want a credit for any charges for that usage, we're happy to review your account activity and any other information you'd like us to consider. Keep in mind that you may be held responsible for the charges if you delayed reporting the loss or theft without good reason, but you don't have to pay any charges you dispute while they are being investigated. If we haven't given you a courtesy suspension of recurring monthly charges during the past year, we'll give you one for 30 days or until you replace or recover your wireless device, whichever comes first.

## WHAT ARE VERIZON WIRELESS' RIGHTS TO LIMIT OR END SERVICE OR END THIS AGREEMENT?

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause, including, but not limited to: (1) if your (a) breach this agreement; (b) resell your Service; (c) use your Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions promulgated by any US governmental agency; (d) install, deploy or use any regeneration equipment or similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an RF signal without our permission; (e) steal from or lie to us, or, if you're a Postpay customer; (f) do not pay your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information we can't verify, or (i) are unable to pay us or go bankrupt; or (2) if you: any user of your device or any line of service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar and/or inappropriate language toward

CAIP6

our representatives; (b) interfere with our operations; (c) "spam," or ... from its manufacturer's specifications; or (e) use your Service in a way that negatively affects our network or other customers. We can also temporarily limit your Service for any operational or governmental reason.

**AM I ELIGIBLE FOR SPECIAL DISCOUNTS?**

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an organization that has an agreement with us. Unless your discount is through a government employee discount program, we may share certain information about your Service (including your name, your wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

**DISCLAIMER OF WARRANTIES**

We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network-related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third-party products.

Please be aware that if you activated your wireless device through our Open Development program, we can't vouch for the device's call quality or overall functionality.

**WAIVERS AND LIMITATIONS OF LIABILITY**

You and Verizon Wireless both agree to limit claims against each other for damages or other monetary relief to direct damages. This limitation and waiver will apply regardless of the theory of liability. That means neither of us will try to get any indirect, special, consequential, treble or punitive damages from the other. This limitation and waiver also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim. You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

CA-P7

**HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?**

YOU AND VERIZON WIRELESS BOTH AGREE TO TRY TO RESOLVE DISPUTES ISSUE THAT NEEDS TO BE RESOLVED. THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.

YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA"), OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.

(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000 THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") RULES WILL APPLY. IN SUCH CASES, THE LOSER CAN ASK FOR A PANEL OF THREE NEW ARBITRATORS TO REVIEW THE AWARD. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S WIA RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN

CA-P8

Case 1:19-cv-03972-AMD-RML Document 3-3 Filed 07/13/19 Page 77 of 81 PageID #: 85

ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON WIRELESS SHOULD BE SENT TO: [illegible] RESOLUTION MANAGER ONE VERIZON WAY VC52N062 BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL PAY ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WIRELESS WILL PAY THE FEE DIRECTLY TO THE AAA OR THE BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER, AS WELL AS FOR ANY APPEAL TO A PANEL OF THREE NEW ARBITRATORS (IF THE ARBITRATION AWARD IS APPEALABLE UNDER THIS AGREEMENT).

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT VERIZONWIRELESS.COM OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO VERIZONWIRELESS.COM OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE ARBITRATION BEGINS. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE**

CA P9

**ENFORCED, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.**

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON WIRELESS AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON WIRELESS UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

#### ABOUT THIS AGREEMENT

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this agreement or any of your rights or duties under it without our permission. However, we may assign this agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus.**

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.** This agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

CA P10

# EXHIBIT C

**PO Box 4003**
**Acworth, GA 30101**

YEHUDA HERSKOVIC
581 FLUSHING AV
APT 2
BROOKLYN, NY 11206-5100

You have successfully activated service on line
███ -0559!
For a summary of your service, read on.

April 5, 2014

Dear Yehuda Herskovic,

Thank you for choosing Verizon Wireless. This letter confirms that you activated service for line ███ 0559 on April 2, 2014.
See a snapshot of your service below. A copy of your Customer Agreement is enclosed.

Sincerely,
Verizon Wireless

## SERVICE SUMMARY FOR LINE 347-263-0559 AS OF 04/02/14

Contract End Date: 04/02/16
Early Termination Fee: Up To $175

| | | TALK | TEXT | DATA |
|---|---|---|---|---|
| | | SHARED | SHARED | SHARED |
| Allowance | | Unlimited | Unlimited | 250 MB |
| Monthly Access - This Device | $30.00 | Included | Included | Included |
| Overage Rate | | N/A | N/A | $15.00/200MB |

Included Feature(s) for this line: ·Unlimited Nights And Weekend Share  ·Unlimited National M2m

## YOUR ACCOUNT SHARED SERVICE(S) AS OF 04/02/14

Account # :  0588290985-00001          Account Plan Description : More Everything - Talk, Text & Data Plan

| | | SHARED SERVICES | | |
|---|---|---|---|---|
| Allowance | | TALK Unlimited | TEXT Unlimited | DATA 250 MB |
| Monthly Access - Account | $15.00 | Included | Included | Included |
| Overage Rate | | N/A | N/A | $15/200MB |
| Total Monthly Line Access Charge | $30.00 | Included | Included | Included |
| Total Lines Enrolled | | 1 | 1 | 1 |

Nights: 9:01pm - 5:59am, Monday - Friday  Weekends: 12:00am Saturday - 11:59pm Sunday

**Additional billing information:** The monthly charges and allowance minutes above do not reflect prorated fees/allowances for a partial month's service. These partial month charges will be added to your first full month's charges on your first bill. Individual devices may have additional, recurring monthly fees for non-shared services. Taxes & surcharges apply; see details following this service summary. View individual device details at myverizon.com

**Estimated taxes & surcharges on your first bill:**
Estimated taxes, governmental surcharges and fees .................. $6.42
Estimated Verizon Wireless surcharges ...................................... $6.65

**These estimated amounts are based on:**
Monthly Regulatory Charge (subject to change from time to time) ........... 21¢ per device
Monthly Administrative Charge (subject to change from time to time) ....... 88¢ per device
Monthly Federal Universal Service Charge on interstate & international
telecom charges ........................................................................................ 16.6% per device
*(This percentage varies quarterly based on FCC rate)*

**Note:**
Estimated taxes and surcharges may be for both the partial and full month period.  Federal Universal Service, Regulatory and Administrative Charges are Verizon Wireless charges, not taxes.  Taxes and Verizon Wireless surcharges may be between 13% to 42% of your monthly bill.

**In addition:**
Our records indicate you were billed a $35.00 activation fee for your service.

*continued...*

QUESTIONS? We're here to help.

**CLICK** verizonwireless.com/support  |  **CALL** 1.800.922.0204
or dial *611 from your wireless device

04/03/142472630559N11A4014049046SNM99995999999  12

**Note:** Please retain this letter, which is for information purposes only, for your records. Discounts apply only if you are on a qualifying plan. In the case of error, your Calling Plan and Customer Agreement will govern.

## INCLUDED FEATURES

| 411 Search[1] | $1.99 per call. Up to 3 numbers can be provided per call. |
|---|---|
| Calling Features[2] | Enjoy Basic Voice Mail with Message Waiting Indicator, Caller ID, Call Waiting, 3-Way Calling, Call Forwarding and No Answer/Busy Transfer. |
| Global Voice & Messaging (outside the U.S.) | For a complete list of destinations, rates and coverage, visit verizonwireless.com/global before traveling |
| International Calling (from the U.S.) | Visit verizonwireless.com/international for applicable long distance rates to the places you can call direct |
| Unlimited Messaging[3] | Send as many text, picture and video messages as you want from the US to any capable number in the world. |

1. Rates and features vary when in Extended Network or Roaming.
2. Not available in some areas.
3. For sending and receiving text and multimedia messages (i) in the U.S.; (ii) sent via email, (iii) with customers of wireless carriers on participating networks throughout the world. Premium Messaging programs not included. Visit www.vzw.com/global for details on participating carriers by country.

**For a map of your wireless coverage, visit verizonwireless.com/coveragelocator and enter a street address.**

13700

Verizon Wireless calling plans, rate and coverage areas, rates, agreement provisions, business practices, procedures and policies are subject to change as specified in the Customer Agreement.

Data Services
Verizon Wireless charges you for all data and content sent or received using our network (including any network overhead and/or Internet Protocol overhead associated with content sent or received), as well as resolution of Internet Protocol addresses from domain names. Sending or receiving data using a virtual private network (VPN) involves additional VPN overhead for which you will be charged. Please note that certain applications or widgets periodically send and receive data in the background, without any action by the user, and you will be billed for such data use. Applications may automatically re-initiate data sessions without your pressing or clicking the SEND or connect button. Data sessions automatically terminate after 24 hours. A data session is inactive when no data is being transferred. Data sessions may seem inactive while data is actively being transferred, or may seem active when the data is actually cached and data is not being transferred.

We are implementing optimization and transcoding technologies in our network to transmit data files in a more efficient manner to allow available network capacity to benefit the greatest number of users. These techniques include caching less data, using less capacity, and sizing the video more appropriately for the device. The optimization process is agnostic to the content itself and to the website that provides it. While we invest much effort to avoid changing text, image and video files in the compression process, and while any change to the file is likely to be indiscernible, the optimization process may minimally impact the appearance of the file as displayed on your device. For a further, more detailed explanation of these techniques, please visit verizonwireless.com/vzwoptimization

You may use Mobile Hotspot or any other Wi-Fi hotspot or tethering service to use your smartphone or basic phone as a Wi-Fi hotspot or to tether it to your computer or tablet. If you subscribe to a data plan or package with an unlimited data allowance, there is an additional $20/ month fee to do so.

Data transfer amounts will vary based on application. If you download an audio or video file, the file may be downloaded in sections or in its entirety; data charges will apply to the portion downloaded, regardless of whether you listen to or watch all of it. You may access and monitor your own data usage during a particular billing period, including during the Return Period, by accessing My Verizon online or by contacting Customer Service.

Data Services: Permitted Uses
You can use our Data Services for accessing the Internet and for such things as: (i) Internet browsing; (ii) email; (iii) intranet access (including accessing corporate intranets, email and individual productivity applications made available by your company); (iv) uploading, downloading and streaming of audio, video and games; and (v) Voice over Internet Protocol (VoIP).

Data Services: Prohibited Uses
You may not use our Data Services for illegal purposes or purposes that infringe upon others' intellectual property rights, or in a manner that interferes with other users' service; that violates trade and economic sanctions and prohibitions as promulgated by the departments of Commerce, Treasury or any other U.S. government agency; that interferes with the network's ability to fairly allocate capacity among users or that otherwise degrades service quality for other users. Examples of prohibited usage include: (i) server devices or host computer applications that are broadcast to multiple servers or recipients such that they could enable "bots" or similar routines (as set forth in more detail in (ii) below) or otherwise degrade network capacity or functionality; (ii) "auto-responders," "cancel-bots," or similar automated or manual routines that generate amounts of net traffic that could disrupt net user groups or email use by others; (iii) generating "spam" or unsolicited commercial or bulk email (or activities that facilitate the dissemination of such email); (iv) any activity that adversely affects the ability of other users or systems to use either Verizon Wireless' services or the Internet-based resources of others, including the generation or dissemination of viruses, malware or "denial of service" attacks; (v) accessing, or attempting to access without authority, the information, accounts or devices of others, or to penetrate, or attempt to penetrate, Verizon Wireless' or another entity's network or systems; or (vi) running software or other devices that maintain continuous active Internet connections when a computer's connection would otherwise be idle, or "keep alive" functions, unless they adhere to Verizon Wireless' requirements for such usage, which may be changed from time to time.

We further reserve the right to take measures to protect our network and other users from harm, compromised capacity or degradation in performance. These measures may impact your service, and we reserve the right to deny, modify or terminate service, with or without notice, to anyone we believe is using Data Plans or Features in a manner that adversely impacts our network. We may monitor your compliance, or other subscribers' compliance, with these terms and conditions, but we will not monitor the content of your communications except as otherwise expressly permitted or required by law. [See verizonwireless.com/privacy]

12310