# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YEHUDA HERSKOVIC,

          *Plaintiff,*

     *-against-*

VERIZON WIRELESS,

          *Defendant.*

Case No.: 1:2019cv03372

**SUPPLEMENTAL
DECLARATION OF DANIEL
REED RE MOTION TO
COMPEL CONTRACTUAL
ARBITRATION AND STAY
ACTION**

Case Removed: June 6, 2019

---

## SUPPLEMENTAL DECLARATION OF DANIEL REED IN SUPPORT OF MOTION TO COMPEL CONTRACTUAL ARBITRATION AND STAY ACTION

    I, Daniel Reed, hereby declare as follows:

    1.    I am over the age of 18 and am competent to testify to the facts declared below, and could testify truthfully thereto if required. I am currently employed by Verizon Wireless as a Senior Analyst. I have been employed by Verizon Wireless since 2005. In my capacity as a Senior Analyst, I provide services to Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"). Specifically, I assist with the handling of consumer disputes for Verizon Wireless, among other things.

    2.    In preparing this Supplemental Declaration, I have relied on my personal knowledge of, and experience in, the business operations of Verizon Wireless as well as a review of Verizon Wireless's business records. Verizon Wireless's business records are made in the regular course of business, at or near the time of the act, conditions or events described in the documents, and by or from information provided by a person with knowledge of the act,

conditions or event. The attached Exhibits 1 and 2 are true and correct copies of Verizon Wireless's business records.

3.      I offer this Supplemental Declaration to address the request made by the Court at the initial status conference on September 10, 2019 for the sales receipt and customer agreement that Plaintiff Yehuda Herskovic ("Plaintiff") executed at 100 Wall Street, New York, NY for his phone number ending in 4565.

4.      On December 8, 2016, at a third-party Verizon Wireless retail store located at 100 Wall Street, New York, NY, Plaintiff executed a sales receipt for equipment and services in connection with phone numbers ending in 4565 and 6897. Attached hereto as **Exhibit A** is a true and correct copy of this sales receipt executed by Plaintiff on December 8, 2016.

5.      Attached hereto as **Exhibit B** is a true and correct copy of the Verizon Wireless Customer Agreement in effect on December 8, 2016 when Exhibit A was executed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September $27$, 2019 at Irvine, California.

_____
Daniel Reed

2

# verizon√

**Total paid today**  $32.65

## Thank you .

### Monthly charges

📱 **718-675-6897**

Verizon Wireless Home Phone in
Black
DEV ID. A000004FC2E8D3

**Device**

WIRELESS HOME PHONE                $20.00
UNLIMITED $20.00
Contract end date 12/08/2018

**Features**

Decline Equipment Protection        $0.00

Taxes & Fees                        $0.00

**Due monthly**                  $20.00
(Expect an email shortly detailing your next bill or go to
www.vzw.com/myverizon)

### Today's charges

Verizon Wireless Home Phone in        $29.99
Black 2 Year Price

**Accessories**

NY Local Sales Tax                    $1.46

NY State Sales Tax                    $1.20

Total taxes & fees                    $2.66

**Paid today**                      $32.65

# Payment method

### Transaction type : Sale
Transactions are charged in USD
I agree to pay the below payment amount

### Cash                                    $32.65

Change Due: $67.35
Register: 43

### Decline Equipment Protection
You have declined equipment protection on one or more of your
devices. If you need to replace your device the full retail cost may
exceed $700.00.

# Agreements (View full agreement at vzw.com/my.verizon)

### Customer agreement
I agree to the Verizon Wireless Customer Agreement including an
early termination fee up to $350 per line, settlement of disputes by
arbitration instead of jury trial, as well as the terms of my plan and any
optional services I have agreed to purchase as reflected on the
previous screen.Note: This purchase may be returned or exchanged
through 1/14/2017. $35 restock fee applies (excluding Hawaii).

# Signature

By signing below I accept the agreements above



### Device trade-in
In some states, recycle credit reduces the tax base. The Taxes or fees
on your purchase were based on a price of:$29.99
**Amount tendered : $100.00** / **This payment : $32.65**

Trade-in device transactions are final and devices cannot be
returned.

If you received promo value when trading in a device and/or instant
device savings, you will be charged for that value if you do not maintain
active service for three billing cycles.

Verizon will also adjust any promotional Trade-in value if you return or
exchange your promotional device for an ineligible device.

Promotional trade-in credits issued over 24 months and will appear in
2-3 bill cycles after receipt of trade at Verizon. Your smartphone
purchase must remain active on device payment agreement for 24
months to receive credits.

If you cancel service, or if device payment agreement is paid off or
transferred, promotional credits will stop. Traded device must be in
good working and cosmetic condition to receive credits.

### Ewaste tax disclaimer
Electronic waste should be recycled or disposed of properly. Contact
http://www.state.nj.us/dep/dshw/recycling/
Electronic_Waste/index.html or 866-DEPKNOW for information.

Your Verizon receipt

## Return policy

New and Certified Pre-Owned merchandise purchased between
November 24 and December 31, 2016 may be returned or exchanged
through January 14, 2017. You are permitted to make one exchange. A
restocking fee of $35 applies to any return or exchange of a wireless
device (excluding Hawaii). If you received your merchandise through
a 'Buy One, Get One' or similar offer, both items must be returned in
order to receive a refund. For exchanges for the same merchandise
make and model, only the item to be exchanged needs to be returned.
See verizonwireless.com/returnpolicy for complete details. To
receive a credit for the activation fee, cancellations must occur within
3 days of activation of service.

## Taxes and surcharges

Taxes and surcharges can add 6% to 44% to your monthly access
and usage charges, including these Verizon Wireless monthly
surcharges:
Monthly Federal Universal Service Charge on interstate &
international telecom charges (varies quarterly based on FCC rate):
17.4% per line.
Regulatory ($.21 per voice line; $.02 per data-only line);
Administrative ($1.23 per voice line; $.06 per data-only line).

Handset, equipment and accessories sold by Verizon Wireless
Network Procurement, LP

---

**Verizon retail location**

VERIZON, 100 WALL ST
NEW YORK, NY
10005-3701
212-510-6160

**www.vzw.com**

**Receipt of transaction**

Order No: 454773 12/08/2016 @ 04:50 EST

First Copy - Customer, Second Copy - Merchant

**Verizon specialist**

REP

Your Verizon receipt; generated on 12/08/2016 @ 04:50 EST; order #: 454773; location D231601

**Page 3** of 3



# Customer Agreement

## Customer Agreement

(Para una copia de este documento en espanol, visite nuestro website: vzw.com/espanol.)

**Thanks for choosing Verizon. In this Customer Agreement ("Agreement"), you'll find important information about your wireless Service, including:**

- **our ability to make changes to your Service or this Agreement's terms,**
- **our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court.**

# My Service

**Your Service terms and conditions are part of this Agreement.** Your Plan includes your monthly allowances and features, where you can use them (your "Coverage Area"), and their monthly and pay–per–use charges. You can also subscribe to several Optional Services, like international service plans or equipment protection services. Together, your Plan, features you use, and any Optional Services you select are your Service. Your billing and shipping addresses, and your primary place of use, must be within the areas served by the network Verizon owns and operates. The current version of this Agreement and the terms and conditions for your Service are available online at **verizonwireless.com**.

By using the Service you are agreeing to every provision of this Agreement whether or not you have read it. This agreement also applies to anyone who uses your Service.

## Cancellation

**You can cancel a line of Service within 14 days of accepting this Agreement without having to pay an early termination fee as long as you return, within the applicable return period, any equipment you purchased from us or one of our authorized agents at a discount in connection with your acceptance of this Agreement, but you'll still have to pay for your Service through that date. If you signed up for Prepaid Service, no refunds will be granted after 14 days or if your account has been activated. See vzw.com/returnpolicy for complete details and information on returning your equipment.**

## My Privacy

We collect personal information about you. By entering into this Agreement, you consent to our data collection, use and sharing practices described in our Privacy Policy. It is your responsibility to notify people who connect devices through your mobile hotspot, Jetpack or wireless router that we will collect, use and share information about their device and use of the Service in accordance with our Privacy Policy. We provide you with choices to limit, in certain circumstances, our use of the data we have about you. You can review these choices at Verizon.com/Privacy#Limits. If there are additional specific advertising and marketing practices for which your consent is necessary, we will seek your

consent (such as through the privacy-related notices you receive when you purchase or use our products and services) before engaging in those practices. You can find out how we use, share and protect the information we collect about you in the Verizon Privacy Policy, available at **verizon.com/privacy**.

If you subscribe to Service for which usage charges are billed at the end of the billing period ("Postpay Service"), we may investigate your credit history at any time. If you'd like the name and address of any credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be provided by third parties. Before you use, link to or download a service or application provided by a third party, you should review the terms of such service or application and applicable privacy policy. Personal information you submit may be read, collected or used by the service or application provider and/or other users of those forums.

You consent to allow Verizon and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number, other contact number or email address you provide. Verizon will treat any email address you provide as your private email that is not accessible by unauthorized third parties. Unless you notify us that your wireless service is based in a different time zone, calls will be made to your cellular device during permitted calling hours based upon the time zone affiliated with the mobile telephone number you provide.

## What happens if my Postpay Service is canceled before the end of my contract term?

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month–to–month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without billing or at a reduced billing rate, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month–to–month basis for that line of Service.**If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350, which will decline by $10 per month upon completion of months 7–17, $20 per month upon completion of months 18–22, $60 upon completion of month 23 and will be $0 upon completion of the contract term. For other contract terms entered into on or after November 14, 2014, your early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17, $10 per month upon completion of months 18–22, $30 upon completion of month 23 and will be $0 upon completion of your contract term. If you cancel service, you may have to immediately pay off the remaining balance on any device agreement. Cancellations will become effective on the last day of that month's billing cycle,** and you are responsible for all charges incurred until then. Also, if you bought your wireless device from an authorized agent or third–party vendor, you should check whether it charges a separate termination fee.

## Can I take my wireless phone number to another carrier?

You may be able to transfer, or "port", your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain

responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services right away, such as 911 location services. You don't have any rights to your wireless phone number, except for any right you may have to port it.

## Can I have someone else manage my Postpay account?

No problem – just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this Agreement.

## Can Verizon change this Agreement or my Service?

We may change prices or any other term of your Service or this Agreement at any time, but we'll provide notice first, including written notice if you have Postpay Service. If you use your Service after the change takes effect that means you're accepting the change. If you're a Postpay customer and a change to your Plan or this Agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no early termination fee if we fail to negate the change after you notify us of your objection to it. Notwithstanding this provision, if we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change.

## My wireless device

Your wireless device must comply with Federal Communications Commission regulations, be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your wireless device. By activating Service that uses a SIM (Subscriber Identity Module) card, you agree we own the intellectual property and software in the SIM card that we may change the software or other data in the SIM card remotely and without notice, and we may utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes.

## Where and how does Verizon wireless Service work?

Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within your Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

## How does Verizon calculate my charges?

You agree to pay all access, usage and other charges that you or any other user of your wireless device incurred. If multiple wireless devices are associated with your account, you agree to pay all charges incurred by users of those wireless devices. For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **Send** or the call connects to a network, and for incoming calls, it starts when

the call connects to a network (which may be before it rings). Usage time may end several seconds after you press **End** or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

## What Charges are set by Verizon?

Our charges may also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

## Government Taxes, Fees and Surcharges

You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we may not always be able to notify you in advance of changes to these charges.

## What is roaming?

You're "roaming" whenever your wireless device connects to a network outside your Coverage Area or connects to another carrier's network, which could happen even within your Coverage Area. There may be higher rates or extra charges (including charges for long distance, tolls or calls that don't connect), and your data service may be limited or slowed, when roaming.

## How can I prevent unintended charges on my bill?

Many services and applications are accessible on or through wireless devices, including purchases of games, movies, music and other content. Some of these services are provided by Verizon. Others are provided by third parties that may offer the option to bill the charges to your Verizon bill or other methods of payment. Charges may be one–time or recurring. The amount and frequency of the charges will be disclosed to you or the person using your device or a device associated with your account at the time a purchase is made. If the purchaser chooses to have the charges billed to your account, such charges will become part of the amount due for that billing cycle.**Verizon offers tools to block or restrict these services, and to block all billing for third–party services on your Verizon wireless bill, at verizonwireless.com/myverizon. We do not support calls to 900, 976 and certain other international premium rate numbers.**

## How and when can I dispute charges?

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM), WITHIN THE 180–DAY PERIOD**

**MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.**

## What are my rights for dropped calls or interrupted Service?

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1–minute airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24 hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost. Please be aware that these are your only rights for dropped calls or interrupted Service.

## Billing and Payments

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to 1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is greater, if allowed by law in the state of your billing address. (If you choose to have your Service billed by another company (pursuant to a Verizon-approved program), late fees are set by that company and may be higher than our late fees.) Late fees are part of the rates and charges you agree to pay. If you fail to pay on time and we refer your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent. We may require a deposit at the time of activation or afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires. We may apply deposits or payments in any order to any amounts you owe us on any account. If your final credit balance is less than $1, we will refund it only if you ask. If your service is suspended or terminated, you may have to pay a fee to have service reactivated.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by providing us with another payment. If you maintain a Prepaid account balance, it may not exceed $1,000 and you may be prevented from replenishing if your balance reaches $1,000. We may apply your payments to any amounts you may owe us if your earlier account replenishment payments had been reversed. We will suspend service when your account reaches the expiration date and any unused balance will be forfeited.

We may charge you up to $25 for any returned check. If you make a payment, or make a payment arrangement, through a call center representative, we may charge you an Agent Assistance Fee of $7.00

## What if my wireless device gets lost or stolen?

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep someone else from using it. If you're a Postpay customer and your wireless device is used after the loss or theft but before you report it, and you want a credit for any charges for that usage, we're happy to review your account activity and any other information you'd like us to consider. Keep in mind that you may be held responsible for the charges if you delayed reporting the loss or theft without good reason, but you don't have to pay any charges you dispute while they are being investigated. If you are a California customer and we haven't given you a courtesy suspension of

recurring monthly charges during the past year, we'll give you one for 30 days or until you replace or recover your wireless device, whichever comes first.

## What are Verizon's rights to limit or end Service or end this Agreement?

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause, including, but not limited to: (1) if you: (a) breach this agreement; (b) resell your Service; (c) use your Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions promulgated by any US governmental agency; (d) install, deploy or use any regeneration equipment or similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an RF signal without our permission; (e) steal from or lie to us; or, if you're a Postpay customer; (f) do not pay your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information we can't verify; or (i) are unable to pay us or go bankrupt; or (2) if you, any user of your device or any line of service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar and/or inappropriate language toward our representatives; (b) interfere with our operations; (c) "spam," or engage in other abusive messaging or calling; (d) modify your device from its manufacturer's specifications; or (e) use your Service in a way that negatively affects our network or other customers. We can also temporarily limit your Service for any operational or governmental reason.

## Am I eligible for special discounts?

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an organization that has an agreement with us. Unless your discount is through a government employee discount program, we may share certain information about your Service (including your name, your wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

## DISCLAIMER OF WARRANTIES

**We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network–related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third–party products. Verizon Wireless is not responsible for any third–party information, content, applications or services you access, download or use on your device. You are responsible for maintaining virus and other Internet security protections when accessing these third–party products or services. For additional information, visit the Verizon Content Policy at responsibility.verizon.com/contentpolicy**

## WAIVERS AND LIMITATIONS OF LIABILITY

**You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive. For example, disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device, or the use of your account or device to access or make changes to an account with another entity, such as a financial entity, without authorization. This limitation and waiver will apply regardless of the theory of liability. It also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim.**You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

## HOW DO I RESOLVE DISPUTES WITH VERIZON?

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. THIS AGREEMENT TO ARBITRATE CONTINUES TO APPLY EVEN AFTER YOU HAVE STOPPED RECEIVING SERVICE FROM US.

(2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S CONSUMER ARBITRATION RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

**(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER**

**PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.**

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL REIMBURSE ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WILL PAY THE FEE DIRECTLY TO THE AAA OR BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER.

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT **VERIZONWIRELESS.COM** OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO **VERIZONWIRELESS.COM** OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT, AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE THE ARBITRATION HEARING. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER, AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU ONLY THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED AS TO ALL OR PART OF A DISPUTE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY TO THAT DISPUTE OR PART OF THE DISPUTE.**

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

## About this Agreement

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this Agreement or any of your rights or duties under it without our permission. However, we may assign this Agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus**

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.** This Agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

April 13, 2018

# Exhibit L

# Case No.: 01-21-0016-5580

Date March 4, 2022
Hon. Michael D. Blechman
Arbitrator
American Arbitration Association


## Dear Arbitrator Blechman,

I Yehuda Herskovic am the Claimant and respond to the letter from Respondent Verizon Wireless, dated February 18, 2022.

On February 2, 2022, your honor asked the parties what rules apply to the arbitration proceedings, specifically, I recall the question was whether the contract provides the rules for arbitration. In response, I objected to the proceeding and notified your honor that there is no contract, no arbitration agreement, and that my presence is under duress and protest.

Respondent letter omits addressing the rules that apply here, because there is no arbitration agreement. Respondents do not address the facts, that upon a rescission no benefit of the contract remains—not even the arbitration clause, no provision in the purported arbitration agreement survives rescission, none of Respondent's attachments show an arbitration agreement for the phone number 718.387.4565—the account at issue, and none of the attachments of Respondent involve the same "Yehuda Herskovic" with an address at 225 Ross Street.

The claim in this case involves a rescinded account for a home device under the account and phone number for 718.387.4565. The rescission was upheld by the Small Claims Court of Kings County. The force of the rescission is not up for debate. At issue, despite the transaction was rescinded and Claimant received a judgment consisting of a refund of all the monies paid, Respondent continues reporting a false charge on Claimant's credit report. The claim in this case does not second guess the judgment of the Small Claims Court but seeks to enforce the full effect of the judgment.

As for the first issue, a recission of a contract precludes recovery under the contract or to even enforce it. Once a contract is rescinded, it has no legal effect.

Horowitz v Natl. Gas & Electric, LLC, 17-CV-7742 (JPO), 2021 WL 4478622, at *10 [SDNY Sept. 30, 2021]. It is common sense; a rescinded contract provides no recourse. The effect of rescission is to declare the contract void from its inception and put or restore the parties to status quo as if there was no contract. Broder v Pallotta & Assoc. Dev., Inc., 186 AD3d 1189, 1192 [2d Dept 2020]. Here, the rescission was upheld by the Small Claims Court of Kings County. The purported arbitration agreement produced by Respondent are a "customer agreement". But Claimant is not a customer of Verizon, the transaction has been rescinded. Thus, there is no agreement/contract to enforce and the purported contract that provided for arbitration (even if there were any-since there were none) is void.

As for the second issue, the issue of this case does not arise from a dispute under a purported customer agreement, but from a failure to honor a judgment by the Small Claims Court and reporting a debt that is collaterally estopped by the judgment of the Small Claims Court. Thus, Respondent cannot show that any provision of its rescinded customer agreement survives the judgment of the Small Claims Court. Given that the Small Claims Court judgment affirmed the rescission, Respondent has no basis for attempting to enforce a rescinded contract (even if any ever existed); neither the alleged debt that Respondent has placed on Claimant's credit report nor the arbitration clause of the customer agreement (even if any ever existed) survives the rescission of the Small Claims Court. The rules of arbitration do not provide the authority to second the force of the judgment of the Small Claim Court. Respondent's insistence that it has an arbitration agreement is an attempt to contest the judgment of the Small Claims Court and relitigate that judgment.

As for the third issue, each account at Verizon is attached to a phone number. None of Respondent's attachments show a customer agreement/contract for the phone number 718.387.4565—the account at issue. In particular, the amended complaint alleges that the home device was purchased December 2016. Respondent does not show any document of that date. The document dated 4/02/2014 involves an account with a phone number ending as 3261 and 0559. The other document dated 12/08/2016 involves the phone number 718-675-6897. Neither of these documents show an arbitration agreement for 718.387.4565—the account at issue.

As for the fourth issue, neither arbitration agreement contended by the Respondent show a "Yehuda Herskovic" with an address at 225 Ross Street. Claimant does not live at 581 Flushing Av, Brooklyn NY 11206 and never resided there. This "Yehuda Herskovic" 581 Flushing Av is not the same person as claimant. Claimant has resided at 225 Ross Street for the past 10 years.

Indeed, the decelerations by Daniel Reed do not and cannot authenticate that the "Yehuda Herskovic" of 3261 and 0559 is the same as Claimant. It is not the same person. Nor does the statement for 6897 show any connection to 4565 or a name and address. Attached is a Spokeo lookup for the number 6897 and it belongs to "Mordechai Beite"; not "Yehuda Herskovic".

Moreover, the Respondents cannot make up any consistent phone numbers related to Claimant. The Claimant's phone numbers are 718.387.4565 and 347.731.8818. The phone numbers ending 3261, 0559 and 6897 never belonged to Claimant.

What is really going on, Lisa Lawrence is not admitted before the Eastern District of New York and was ghost writing the papers filed with the Federal Court. She insisted that an arbitration agreement existed, even though none exist, because she is not admitted in federal court and is able to appear at the American Arbitration Association. Basically, the desire for arbitration arises from a yearning by Lisa Lawrence to litigate this case by herself. So, she claims that there is an arbitration agreement when none exist. The bottom line is, "a basic premise is that we initially must find that there is a valid agreement to arbitrate." Id. "And if a party has not agreed to arbitrate, the courts have no authority to mandate that it do so." Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E., 817 F.3d 857, 864 (3d Cir. 2016). The arbitrator must separately verify if there is an arbitration agreement, because the only authority an arbitrator has comes from the arbitration agreement. "Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1416, 203 L. Ed. 2d 636 (2019). The arbitrator's duty to verify an arbitration agreement is essential because without an agreement, without knowing whether there is an agreement, the arbitrator has no authority.

## Conclusion

Wherefore, claimant request that an order that Respondent has not produced any evidence of an agreement to arbitrate.

Respectfully submitted,

Yehuda Herskovic, yhm1234@yahoo.com**, 347 731 8818**

# Exhibit M

Exhibit M

**YU | MOHANDESI** LLP

**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

March 11, 2022

***VIA E-Mail Only***
Michael D. Blechman, Esq.
American Arbitration Association
Email: prosemanager3@adr.org

> **Re:** ***Yehuda Herskovic v. Verizon Wireless***
> ***AAA Case No.: 01-21-0016-5580***
> <ins>**Reply Brief Re Arbitrability of the Dispute and Briefing Re Res Judicata**</ins>

Dear Arbitrator Blechman:

Please accept this letter as Respondent Cellco Partnership d/b/a Verizon Wireless's ("Respondent")[1] reply brief on the issue of arbitrability, as well as Respondent's statement regarding the motion for summary judgment it requests to bring under AAA Consumer Rule 33.

### I.    <ins>Response to Claimant's Arguments re Arbitrability</ins>

In his Opposition, Claimant Yehuda Herskovic ("Claimant") reiterates the same arguments regarding arbitrability that the U.S. District Court twice rejected. *See* Respondent's **Exhibits 1-3**. Moreover, Claimant has cited no legal authority supporting his request that the Arbitrator revisit and overturn the Court's binding orders that Claimant arbitrate his dispute with Respondent before the AAA.

Claimant cites just four cases in support of his request. Neither *Horowitz v. Nat'l Gas & Elec., LLC*, 2021 WL 4478622 (S.D.N.Y. Sept. 30, 2021) nor *Broder v. Pallotta & Assocs. Dev., Inc.*, 186 A.D.3d 1189, 130 N.Y.S.3d 75 (2020) even mention arbitration. The former case rejected "recessionary damages" on a breach of contract claim, and the second explained the effect of a void deed on a bona fide purchaser. *See Horowitz*, 2021 WL 4478622 at *9; *Broder*, 186 A.D.3d at 1192.

Similarly, the remaining two cases cited by Claimant—*Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 866 (3d Cir. 2016) and *Lamps*

---

[1] Defendant Cellco Partnership d/b/a Verizon Wireless was erroneously sued as "Verizon Wireless."

*Plus, Inc. v. Varela*, 139 S. Ct. 1407, 203 L. Ed. 2d 636 (2019)—stand for the unremarkable proposition that arbitration is a matter of contract. *See Hamilton Park*, 817 F.3d at 864 (holding that an NLRB arbitration award could not include "a self-perpetuating arbitration provision that the parties did not agree to"); *Lamps Plus*, 139 S. Ct. at 1410 (holding that under the FAA, an "ambiguous agreement cannot provide the necessary contractual basis for … class arbitration").

None of these four cases has any bearing on the issue of whether the Arbitrator may disregard the Court's prior orders and consider anew the issue of arbitrability. To the contrary, the cases cited by Respondent are dispositive on this issue. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *BG Group PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) ("courts presume that the parties intend courts, not arbitrators, to decide … disputes about 'arbitrability'"); *Litton Fin'l Printing Div., a Div. of Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 208 (1991) ("Whether or not a [party] … is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'"). The Court already definitively determined that the parties contractually agreed to arbitrate this dispute before the AAA.

In addition to citing no legal authority supporting his position, Claimant's factual assertions are either mistaken or misleading. As set forth in the Supplemental Declaration of Daniel Reed (Respondent's **Exhibit 5**), previously submitted to the Court, Claimant is wrong that his Verizon Wireless account did not cover the phone number at issue (718-387-4565). Mr. Reed is clear that the sales receipt Claimant executed in December 2016 covered _both_ phone numbers on Claimant's account ending in -6710-00001: 718-387-4565 _and_ 718-675-6897. *See* Respondent's **Exhibit 5**, Supp. Reed Decl., ¶ 4; Respondent's **Exhibit 6** (January 7, 2017 bill for Claimant's account, ending in -6710-00001 and showing charges for both phone numbers). Thus, Claimant's assertion that the phone number 718-675-6897 never belonged to him is also wrong. And Claimant's suggestion that the phone number could not belong to him because it is now linked to someone else (Mordechai Beite) is nonsensical; Claimant admittedly closed his Verizon Wireless account, and the number would have been reassigned.

All of Verizon Wireless's customers are bound by the same Customer Agreement, to which they assent by purchasing and/or using Respondent's services and equipment. *See* Supp. Reed Decl., Exhs. (Claimant's sales receipt and Customer Agreement). By signing the sales receipt, Claimant "agree[d] to the Verizon Wireless Customer Agreement including … settlement of disputes by arbitration instead of jury trial"); further, "[b]y using the [Verizon Wireless] Service," Claimant accepted the entire Customer Agreement, including the Arbitration Provision. The parties' Arbitration Provision states plainly that for arbitrations over $10,000, the AAA Consumer Rules apply.

In addition, Claimant is incorrect that the Customer Agreement or Arbitration Provision were in any way rescinded by the small claims court judgment or otherwise. As will be developed on the factual record, the default judgment that Claimant received in small claims court simply awarded him $718.00, which Respondent duly paid to Claimant in full. *See* Respondent's **Exhibit 7** (Notice of Judgment and attached cover letter from Claimant). There was no rescission, just a default money judgment. Moreover, Respondent never appeared in the action because Respondent was never served with the Complaint. Respondent only discovered

**YU | MOHANDESI** LLP

**Lisa M. Lawrence**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

the existence of the small claims court action upon receipt of the Notice of Judgment from Plaintiff in December 2018.

Although Claimant closed his Verizon Wireless account, received a default money judgment from the small claims court, and purports to have unilaterally "rescinded" the Customer Agreement, the Arbitration Provision remains binding. "[A] broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017) (citation omitted). *See also Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557, 558-59 (2d Cir. 2002) (arbitration clause survived termination of contract because there was no "express rescission of the arbitration provision" by the parties).

As Judge Levy and Judge Donnelly previously held in rejecting the same argument regarding rescission that Claimant reasserts here, the language of the Arbitration Provision "is sufficiently broad to create a strong presumption of arbitrability." *See* Respondent's **Exhibit 2** at p. 5. Accordingly, Respondent respectfully requests that the Arbitrator defer to the Court's ruling – as required by law – and arbitrate the parties' dispute.

## II.     Basis for Request to File Summary Judgment Motion on Res Judicata Grounds

Respondent asserts that Claimant's current action is barred by res judicata under applicable New York law. Specifically, a recent decision by the New York Court of Appeals clarifies that "a small claims judgment may preclude a subsequent claim between the same adversaries arising out of the same transaction or series of transactions as the prior action." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 115, 170 N.E.3d 733 (2021). The clarification was requested by the United States Court of Appeals for the Second Circuit, which certified the following question to the New York Court of Appeals:

> "Under New York City Civil Court Act § 1808, what issue preclusion, claim preclusion, and/or res judicata effects, if any, does a small claims court's prior judgment have on subsequent actions brought in other courts involving the same facts, issues, and/or parties? In particular, where a small claims court has rendered a judgment on a claim, does Section 1808 preclude a subsequent action involving a claim arising from the same transaction, occurrence, or employment relationship?"

*Simmons*, 37 N.Y.3d at 107.

The issue was presented because the relevant section of the Civil Court Act states that a small claims court judgment "shall not be deemed an adjudication of any fact at issue or found therein in any other action or court," but that the amount of the judgment will act as an offset in a subsequent action. N.Y. City Civ. Ct. Act § 1808. The *Simons* court held that although the text

of Section 1808 prevents a small claims court judgment from having any collateral estoppel effect as to individual issues, the legislature intended for small claims judgments to act as a res judicata bar to subsequent actions arising out of the same transaction or series of transactions.

"Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347, 712 N.E.2d 647 (1999). Importantly, "the claim preclusion rule extends beyond attempts to relitigate identical claims." *Simmons*, 37 N.Y.3d at 111. New York courts have consistently applied a "transactional analysis approach" in determining whether an earlier judgment has claim preclusive effect, such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Id, quoting O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687 (1981). This rule is grounded in public policy concerns, including fairness to the parties, and is "intended to ensure finality, prevent vexatious litigation and promote judicial economy." *Id., quoting Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100, 810 N.Y.S.2d 96 (2005). Res judicata applies to default judgments. *See Lazides v. P & G Enters.*, 58 A.D.3d 607, 609, 871 N.Y.S.2d 357 (2009) (Res judicata applies "to an order or judgment taken by default which was not been vacated, as well as to issues which were or could have been raised in the prior [action].").

Under the New York transactional approach to res judicata, "to determine whether two claims arise out of the same transaction or series of transactions, we have held that courts should analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Simmons*, 37 N.Y.3d at 111 (internal quotation marks omitted). Ultimately, "the application of the transactional approach to claim preclusion seeks to prevent litigants from taking two bites at the apple." *Id.* at 112.

Here, Claimant seeks to relitigate the very same Verizon Wireless account and phone number (718-387-4565) that were previously at issue in his small claims court action. In that prior action, Plaintiff received a default judgment against Verizon Wireless for $718. See Respondent's **Exhibit 7**. When Claimant provided a Notice of Judgment to Respondent, he was asked whether he would like to have his outstanding account balances of $176.11 on the account ending in -6710-00001 and $341.83 on the account ending in -0985-00001 deducted from the judgment amount. Claimant stated that he wanted the full judgment amount paid to him, and intimated that he planned to take further legal action. Accordingly, Respondent paid him the full $718.00 judgment.

Just three months later, Plaintiff filed an action against Respondent in New York Supreme Court for Kings County, asserting Fair Credit Reporting Act ("FCRA") claims involving the same Verizon Wireless account and phone number (718-387-4565), but now requesting $30,000 in damages (the Second Action). *See* Respondent's **Exhibit 8** (Supreme Court Complaint). Respondent removed the Second Action to federal court, and because the parties' arbitration agreement provides for adjudication of disputes only in small claims court or by arbitration, Respondent moved to compel arbitration.

**YU | MOHANDESI** LLP

Lisa M. Lawrence
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5504 | F. 213.377.5501
llawrence@yumollp.com

Claimant admits in his Arbitration Demand, Complaint and Amended Complaint filed in this Arbitration that his claims involve the same Verizon Wireless account and phone number at issue in his small claims action, including reporting of the $176.11 and $341.83 balances he never paid. *See, e.g.,* Amended Cmplt., ¶¶ 14-15, 29-32. Plaintiff expressly instructed Respondent's representatives that they should not deduct these balances from payment on his default judgment. Now, Claimant is attempting to take a second bite at the apple, by bringing a duplicative, vexatious action based on the same Verizon Wireless account at issue in his small claims action.

Claimant's small claims action was clearly part of the same transaction or series of transactions with Respondent as the current claim. Accordingly, Respondent requests an opportunity to brief this issue more fully on a motion for summary judgment.

## III.   Conclusion

Respondent respectfully requests that the Arbitrator (1) affirm the Court's prior holding that Claimant's claims against Respondent must be arbitrated before the AAA; and (2) set a briefing schedule for Respondent to bring a motion for summary judgment pursuant to AAA Consumer Rule 33.

Sincerely,

Lisa M. Lawrence

cc:
Yehuda Herskovic

# EXHIBIT 6



PO BOX 4003
ACWORTH, GA 30101

KEYLINE
|..||..||..|.||..|.||..|||..|.|.|||..|..|..|||

YEHUDA HERSKOVIC
225 ROSS ST
APT 1
BROOKLYN, NY 11211–7204

| Manage Your Account | Account Number | Date Due |
|---|---|---|
| www.vzw.com | 988876917–00001 | Past Due |
| Change your address at vzw.com/changeaddress | Invoice Number | 3513543757 |

## Quick Bill Summary

Dec 08 – Jan 07

| | |
|---|---|
| Previous Balance (see back for details) | $75.63 |
| No Payment Received | $.00 |
| **Balance Forward Due Immediately** | **$75.63** |
| | |
| Account Charges and Credits | |
| Includes Late Fee of $5.00 | $5.00 |
| Monthly Charges | $20.00 |
| Usage and Purchase Charges | |
| Voice | $.49 |
| Surcharges | |
| and Other Charges & Credits | $5.43 |
| Taxes, Governmental Surcharges & Fees | $5.51 |
| **Total Current Charges Due by February 02, 2017** | **$36.43** |

| | |
|---|---|
| **Total Amount Due** | **$112.06** |

### Verizon Wireless News

**Save Time Go Online**

If you have questions about your bill, or need help with your devices, you can find answers using go.vzw.com/Support. You can also easily access Support through the My Verizon app. Try it today.

Our records indicate your account is past due. Please send payment now to avoid service disruption.

| Pay from phone | Pay on the Web | Questions: |
|---|---|---|
| #PMT (#768) | My Verizon at www.vzw.com | 1.800.922.0204 or *611 from your phone |



YEHUDA HERSKOVIC
225 ROSS ST
APT 1
BROOKLYN, NY 11211–7204

| | |
|---|---|
| Bill Date | January 07, 2017 |
| Account Number | 988876917–00001 |
| Invoice Number | 3513543757 |

## Total Amount Due

Make check payable to Verizon Wireless.
Please return this remit slip with payment.

**$112.06**

$ ☐☐☐ . ☐☐

P.O. BOX 408
NEWARK, NJ 07101–0408

||..|.|..|..|||..|..|||..|.|||..|.|.|..|.|.|.|

3513543757010988876917000010000003643000000112063

NOTICE: Bank account and routing numbers will be retained to enable future payments by phone or online. To opt out, call 1–866–544–0401.



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–0001 | Past Due | 2 of 24 |

| Get Minutes Used | Get Data Used | Get Balance |
|---|---|---|
| #MIN + SEND | #DATA + SEND | #BAL + SEND |

## Payments

| | |
|---|---|
| **Previous Balance** | **$75.63** |
| No Payment Received | |
| Total Payments | $.00 |
| **Balance Forward Due Immediately** | **$75.63** |

## Account Charges and Credits

| | |
|---|---|
| Late Fee | 5.00 |
| Gross Receipts Surchg | .30 |
| Subtotal | $5.30 |
| Total Account Charges and Credits | $5.30 |

Written notations included with or on your payment will not be reviewed or honored. Please send correspondence to:
**Verizon Wireless Attn: Correspondence Team PO Box 5029 Wallingford, CT 06492**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Automatic Payment Enrollment for Account: 988876917-00001 YEHUDA HERSKOVIC**

By signing below, you authorize Verizon Wireless to electronically debit your bank account each month for the total balance due on your account. The check you send will be used to setup Automatic Payment. You will be notified each month of the date and amount of the debit 10 days in advance of the payment. I understand and accept these terms. This agreement does not alter the terms of your existing Customer Agreement. I agree that Verizon Wireless is not liable for erroneous bill statements or incorrect debits to my account. To withdraw your authorization you must call Verizon Wireless. Check with your bank for any charges.

**1. Check this box.**   **2. Sign name in box below, as shown on the bill and date.**   **3. Return this slip with your payment. Do not send a voided check.**



## Overview of Lines

| Total Account Charges (pg.2) | Account Charges and Credits | Monthly Charges | Usage and Purchase Charges | Equipment Charges | Surcharges and Other Charges and Credits | Taxes, Governmental Surcharges and Fees | Third–Party Charges (includes Tax) | Total Charges |
|---|---|---|---|---|---|---|---|---|
| **Total Account Charges (pg.2)** | **$5.00** | -- | --- | -- | -- | **$0.30** | **$.00** | **$5.30** |

| Line Charges | Page Number | Monthly Charges | Usage and Purchase Charges | Equipment Charges | Surcharges and Other Charges and Credits | Taxes, Governmental Surcharges and Fees | Third–Party Charges (includes Tax) | Total Charges |
|---|---|---|---|---|---|---|---|---|
| 718–387–4565   Yehuda Herskovic | 4 | $31.61 | $.49 | -- | $6.67 | $6.35 | -- | $45.12 |
| 718–675–6897   Yehuda Herskovic | 18 | –$11.61 | -- | -- | –$1.24 | –$1.14 | -- | –$13.99 |
| **Total Current Charges** | | **$5.00** | **$20.00** | **$0.49** | **$.00** | **$5.43** | **$5.51** | **$.00** | **$36.43** |



## Summary for Yehuda Herskovic: 718–387–4565

### Your Plan

**Plan from 12/21 – 1/7**
**Wireless Home Phone Unlimited**
$20.00 monthly charge
Unlimited monthly minutes

**Plan from 12/21 – 1/7**
**PAYU MB With EVDO**
$1.99 per megabyte

**M2M National Unlimited**
Unlimited monthly Mobile to Mobile

**UNL Night & Weekend Min**
Unlimited monthly OFFPEAK

Have more questions about your charges?
Get details at www.vzw.com. Sign into My
Verizon.

### Monthly Charges

**New Plan**

| | | |
|---|---|---|
| Wireless Home Phone Unlimited | 12/21 – 01/07 | 11.61 |
| $20.00 per month / 18 days on new plan | | |

**Month in Advance**

| | | |
|---|---|---|
| Wireless Home Phone Unlimited | 01/08 – 02/07 | 20.00 |
| These are the normal monthly charges billed in advance. | | |
| | | **$31.61** |

### Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| Calling Plan (12/21 – 01/07) | minutes | unlimited | 1742 | –– | –– |
| Mobile to Mobile (12/21 – 01/07) | minutes | unlimited | 176 | –– | –– |
| Night/Weekend | minutes | unlimited | 2329 | –– | –– |
| Long Distance – Verizon Wireless | | | | | .49 |
| Total Voice | | | | | $.49 |
| **Total Usage and Purchase Charges** | | | | | **$.49** |

**Surcharges**

| | |
|---|---|
| Fed Universal Service Charge | 1.64 |
| Regulatory Charge | .42 |
| Administrative Charge | 2.46 |
| Gross Receipts Surchg | 2.15 |
| | **$6.67** |

**Taxes, Governmental Surcharges and Fees**

| | |
|---|---|
| NY Public Safety Comm Surchg | 2.40 |
| NYC 911 Surchg | .60 |
| NY State Sales Tax–Telecom | 1.51 |
| New York City Sales Tax–Teleco | 1.70 |
| NY McTd Sales Tax–Telecom | .14 |
| | **$6.35** |

| | |
|---|---|
| **Total Current Charges for 718–387–4565** | **$45.12** |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 5 of 24 |

## Detail for Yehuda Herskovic: 718–387–4565

## Voice

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/21 | 2:26P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/21 | 2:40P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 1 | --- | --- | --- |
| 12/21 | 2:45P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/21 | 2:48P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/21 | 2:52P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/21 | 3:00P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/21 | 4:07P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/22 | 12:54A | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/22 | 1:45A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 75 | --- | --- | --- |
| 12/22 | 9:47A | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 12/22 | 10:42A | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 10:43A | 718–387–2437 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/22 | 10:55A | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/22 | 4:36P | 718–916–0948 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/22 | 4:37P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/22 | 5:03P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 5:07P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 5:11P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 5:17P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 5:52P | 347–482–7252 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/22 | 5:54P | 347–482–7252 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 3 | --- | --- | --- |
| 12/22 | 5:59P | 718–599–5291 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/22 | 6:01P | 718–916–0948 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/22 | 6:20P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/22 | 6:32P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/22 | 6:49P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/22 | 6:51P | 917–474–0513 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/22 | 6:57P | 917–474–0513 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/22 | 7:01P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 91 | --- | --- | --- |
| 12/22 | 8:39P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/22 | 10:05P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/22 | 11:20P | 845–662–3315 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/23 | 1:14A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 2 | --- | --- | --- |
| 12/23 | 1:21A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 21 | --- | --- | --- |
| 12/23 | 2:00A | 000–000–0086 | Off–Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 5 | --- | --- | --- |
| 12/23 | 7:12A | 718–210–5572 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/23 | 7:15A | 718–210–5572 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/23 | 9:08A | 212–444–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn01 NY | 6 | --- | --- | --- |
| 12/23 | 10:24A | 917–903–7216 | Peak | M2MAllow | Brooklyn NY | New York NY | 40 | --- | --- | --- |
| 12/23 | 11:04A | 718–963–2111 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/23 | 1:08P | 347–482–7252 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/23 | 1:13P | 347–482–7252 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/23 | 1:14P | 347–482–7252 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/23 | 1:18P | 201–926–1770 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/23 | 1:20P | 718–599–4824 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |

# verizon√

| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 6 of 24 |

## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/23 | 1:21P | 718–599–4872 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/23 | 1:22P | 718–599–0728 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/23 | 1:23P | 718–782–7044 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/23 | 1:43P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/23 | 1:45P | 845–351–3100 | Peak | PlanAllow | Brooklyn NY | Tuxedo NY | 13 | --- | --- | --- |
| 12/23 | 1:59P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn08 NY | 1 | --- | --- | --- |
| 12/23 | 2:07P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/23 | 2:10P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/23 | 2:13P | 845–351–3100 | Peak | PlanAllow | Brooklyn NY | Tuxedo NY | 10 | --- | --- | --- |
| 12/23 | 2:22P | 718–384–3230 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 12/23 | 2:28P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn08 NY | 2 | --- | --- | --- |
| 12/23 | 3:36P | 845–783–3670 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 5 | --- | --- | --- |
| 12/23 | 3:41P | 845–662–6367 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 3 | --- | --- | --- |
| 12/23 | 3:43P | 845–662–6367 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/23 | 3:46P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/23 | 3:48P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 34 | --- | --- | --- |
| 12/23 | 4:55P | 949–201–2330 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/24 | 6:01P | 845–783–3670 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/24 | 6:02P | 845–783–3670 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/24 | 6:03P | 845–662–5088 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 5 | --- | --- | --- |
| 12/24 | 6:04P | 845–248–6429 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/24 | 6:06P | 845–783–3670 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 2 | --- | --- | --- |
| 12/24 | 6:06P | 845–248–6429 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/24 | 6:09P | 212–444–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn01 NY | 4 | --- | --- | --- |
| 12/24 | 6:20P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/24 | 6:56P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/24 | 8:00P | 718–682–2995 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/24 | 8:12P | 845–774–2413 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/24 | 8:15P | 000–000–0086 | Off–Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 12/24 | 8:18P | 949–201–2330 | Off–Peak | N&W | Brooklyn NY | Capitrmvly CA | 2 | --- | --- | --- |
| 12/24 | 8:20P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 23 | --- | --- | --- |
| 12/24 | 8:41P | 718–782–7731 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/24 | 8:42P | 718–689–1100 | Off–Peak | N&W,CallWait | Brooklyn NY | Nwyrcyzn15 NY | 17 | --- | --- | --- |
| 12/24 | 9:17P | 888–328–6399 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 3 | --- | --- | --- |
| 12/24 | 9:19P | 888–328–6399 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/24 | 10:19P | 646–726–9929 | Off–Peak | N&W | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/25 | 12:47A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 12/25 | 12:49A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 165 | --- | --- | --- |
| 12/25 | 3:36A | 917–935–8463 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn08 NY | 2 | --- | --- | --- |
| 12/25 | 10:15A | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/25 | 10:16A | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/25 | 11:22A | 347–482–7252 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/25 | 12:22P | 917–935–8463 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/25 | 12:24P | 917–935–8463 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn08 NY | 3 | --- | --- | --- |
| 12/25 | 12:28P | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718—387—4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/25 | 12:30P | 718—243—2091 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 2 | -- | -- | -- |
| 12/25 | 12:31P | 718—689—1100 | Off—Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 2 | -- | -- | -- |
| 12/25 | 12:33P | 718—689—1100 | Off—Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 2 | -- | -- | -- |
| 12/25 | 12:35P | 845—351—3100 | Off—Peak | N&W | Brooklyn NY | Tuxedo NY | 27 | -- | -- | -- |
| 12/25 | 1:06P | 718—782—7731 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:07P | 718—782—7731 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/25 | 1:33P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:34P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:37P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 5 | -- | -- | -- |
| 12/25 | 1:41P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:42P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:43P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:44P | 347—357—4031 | Off—Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 1:45P | 718—782—3261 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 3 | -- | -- | -- |
| 12/25 | 1:47P | 347—546—9596 | Off—Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 2 | -- | -- | -- |
| 12/25 | 2:18P | 347—357—4031 | Off—Peak | N&W | Brooklyn NY | Nwyrcyzn11 NY | 1 | -- | -- | -- |
| 12/25 | 2:19P | 347—357—4031 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 2:59P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 10 | -- | -- | -- |
| 12/25 | 3:09P | 718—782—7731 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:10P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 34 | -- | -- | -- |
| 12/25 | 3:44P | 718—210—5572 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | -- | -- | -- |
| 12/25 | 3:46P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:47P | 718—384—3230 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | -- | -- | -- |
| 12/25 | 3:48P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:49P | 718—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:50P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:50P | 718—384—3230 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | -- | -- | -- |
| 12/25 | 3:56P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:56P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:57P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 3:57P | 718—384—3230 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | -- | -- | -- |
| 12/25 | 4:09P | 914—902—2775 | Off—Peak | N&W | Brooklyn NY | Wschstzn05 NY | 6 | -- | -- | -- |
| 12/25 | 4:20P | 347—436—7000 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 4:20P | 718—689—1100 | Off—Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 5 | -- | -- | -- |
| 12/25 | 4:25P | 718—384—2666 | Off—Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 4:26P | 718—384—2666 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 2 | -- | -- | -- |
| 12/25 | 4:31P | 718—689—1100 | Off—Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 28 | -- | -- | -- |
| 12/25 | 4:48P | 347—512—0530 | Off—Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 5:24P | 718—704—0082 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 5:28P | 718—852—1418 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/25 | 5:37P | 718—384—3230 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/25 | 5:43P | 718—384—2666 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 3 | -- | -- | -- |
| 12/25 | 5:47P | 718—782—7731 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/25 | 6:02P | 845—782—6841 | Off—Peak | N&W | Brooklyn NY | Incoming CL | 1 | -- | -- | -- |
| 12/25 | 6:03P | 718—782—7731 | Off—Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 8 of 24 |

## Detail for Yehuda Herskovic: 718–387–4565

# Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/25 | 6:04P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/25 | 6:05P | 718–384–2666 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/25 | 6:09P | 845–783–4352 | Off–Peak | N&W | Brooklyn NY | Monroe NY | 2 | --- | --- | --- |
| 12/25 | 6:41P | 347–988–4904 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/25 | 6:46P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/25 | 6:58P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 8 | --- | --- | --- |
| 12/25 | 7:33P | 845–774–2413 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 8 | --- | --- | --- |
| 12/25 | 8:02P | 347–742–2280 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 12/25 | 8:21P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/25 | 8:23P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 16 | --- | --- | --- |
| 12/25 | 8:41P | 347–742–2280 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/25 | 8:48P | 347–742–2280 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/25 | 8:50P | 718–389–1100 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/25 | 8:52P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 1 | --- | --- | --- |
| 12/25 | 8:54P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 83 | --- | --- | --- |
| 12/26 | 2:33A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 56 | --- | --- | --- |
| 12/26 | 8:51A | 718–305–6100 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/26 | 9:27A | 718–782–0747 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/26 | 10:31A | 888–331–3383 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 13 | --- | --- | --- |
| 12/26 | 10:52A | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 19 | --- | --- | --- |
| 12/26 | 12:52P | 917–363–0041 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/26 | 1:01P | 347–587–9851 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn07 NY | 2 | --- | --- | --- |
| 12/26 | 3:44P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/26 | 3:49P | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/26 | 3:54P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/26 | 4:00P | 718–871–0249 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 12/26 | 4:43P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/26 | 5:38P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 12/26 | 5:52P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/26 | 10:35P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 113 | --- | --- | --- |
| 12/27 | 9:15A | 917–903–7216 | Peak | M2MAllow | Brooklyn NY | New York NY | 28 | --- | --- | --- |
| 12/27 | 9:44A | 718–407–4151 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/27 | 9:47A | 908–202–4962 | Peak | M2MAllow | Brooklyn NY | Newbrnswck NJ | 1 | --- | --- | --- |
| 12/27 | 9:57A | 917–903–7216 | Peak | M2MAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/27 | 10:02A | 800–600–9240 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 12/27 | 10:05A | 800–275–8777 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 4 | --- | --- | --- |
| 12/27 | 12:34P | 877–777–0450 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 11 | --- | --- | --- |
| 12/27 | 2:15P | 917–903–7216 | Peak | M2MAllow | Brooklyn NY | New York NY | 5 | --- | --- | --- |
| 12/27 | 4:48P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/27 | 4:51P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 10 | --- | --- | --- |
| 12/27 | 5:00P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/27 | 5:10P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/27 | 5:39P | 347–426–7463 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/27 | 6:10P | 917–935–8463 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn08 NY | 2 | --- | --- | --- |
| 12/27 | 6:23P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 5 | --- | --- | --- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 9 of 24 |

## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/27 | 7:24P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/27 | 7:46P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 4 | --- | --- | --- |
| 12/27 | 7:53P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 9 | --- | --- | --- |
| 12/27 | 8:10P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 51 | --- | --- | --- |
| 12/27 | 9:04P | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 23 | --- | --- | --- |
| 12/27 | 10:10P | 718–384–2666 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 7 | --- | --- | --- |
| 12/27 | 10:20P | 718–237–0445 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/27 | 10:21P | 718–237–0445 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/27 | 10:22P | 718–871–0269 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 43 | --- | --- | --- |
| 12/28 | 1:04A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 177 | --- | --- | --- |
| 12/28 | 4:16P | 929–214–2303 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn06 NY | 2 | --- | --- | --- |
| 12/28 | 5:23P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/28 | 5:26P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/28 | 5:37P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 12/28 | 5:40P | 845–783–4352 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 12/28 | 5:44P | 646–699–1252 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/28 | 5:47P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 12/28 | 5:51P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/28 | 6:00P | 718–342–5564 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/28 | 6:04P | 888–925–5016 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 6 | --- | --- | --- |
| 12/28 | 6:10P | 888–925–5016 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 15 | --- | --- | --- |
| 12/28 | 6:55P | 800–275–8777 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/28 | 6:56P | 800–275–8777 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 51 | --- | --- | --- |
| 12/28 | 9:09P | 347–743–9270 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 2 | --- | --- | --- |
| 12/28 | 9:14P | 347–743–9270 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/28 | 9:45P | 718–855–7618 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 8 | --- | --- | --- |
| 12/28 | 9:53P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 12/28 | 10:30P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 12/29 | 10:10A | 855–672–5094 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 12/29 | 10:11A | 855–672–5094 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 9 | --- | --- | --- |
| 12/29 | 10:24A | 718–599–1495 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/29 | 10:25A | 718–387–5142 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/29 | 10:28A | 718–387–5142 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/29 | 10:31A | 718–387–5142 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/29 | 10:33A | 718–387–5142 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/29 | 10:35A | 311–000–0000 | Peak | PlanAllow | Brooklyn NY | Govt Info CL | 9 | --- | --- | --- |
| 12/29 | 10:44A | 718–387–5142 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/29 | 10:52A | 718–938–2650 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/29 | 10:57A | 678–279–7980 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 26 | --- | --- | --- |
| 12/29 | 4:27P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn08 NY | 2 | --- | --- | --- |
| 12/29 | 5:01P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/29 | 5:28P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/29 | 5:29P | 855–672–5094 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 7 | --- | --- | --- |
| 12/29 | 5:36P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 5 | --- | --- | --- |
| 12/29 | 5:48P | 718–384–1923 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |


## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/29 | 5:49P | 718–682–2995 | Peak | PlanAllow | Brooklyn NY | Staten Is NY | 1 | --- | --- | --- |
| 12/29 | 6:24P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 1 | --- | --- | --- |
| 12/29 | 7:09P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 110 | --- | --- | --- |
| 12/29 | 7:48P | 718–599–5291 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/29 | 8:02P | 718–384–2666 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 12/29 | 8:57P | 718–384–2666 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/29 | 8:58P | 718–689–1100 | Peak | PlanAllow,CallWait | Brooklyn NY | Nwyrcyzn15 NY | 40 | --- | --- | --- |
| 12/30 | 2:16A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 147 | --- | --- | --- |
| 12/30 | 9:46A | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/30 | 9:48A | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 9:50A | 718–812–8257 | Peak | M2MAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/30 | 10:34A | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 1 | --- | --- | --- |
| 12/30 | 10:35A | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/30 | 10:37A | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 10:39A | 347–512–0530 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 10:40A | 201–926–1770 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 10:42A | 201–926–1770 | Peak | M2MAllow | Brooklyn NY | Hackensack NJ | 1 | --- | --- | --- |
| 12/30 | 10:46A | 646–726–9929 | Peak | PlanAllow | Brooklyn NY | New York NY | 30 | --- | --- | --- |
| 12/30 | 10:47A | 718–384–2666 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 11:13A | 917–935–8463 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 11:17A | 347–512–0530 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/30 | 11:20A | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 11:20A | 646–726–9929 | Peak | PlanAllow | Brooklyn NY | New York NY | 15 | --- | --- | --- |
| 12/30 | 12:18P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 20 | --- | --- | --- |
| 12/30 | 12:37P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 18 | --- | --- | --- |
| 12/30 | 12:55P | 718–599–4824 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/30 | 12:56P | 718–599–4872 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/30 | 12:58P | 718–599–0728 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 1:02P | 718–782–7044 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 1:05P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/30 | 1:07P | 877–227–3728 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 9 | --- | --- | --- |
| 12/30 | 1:17P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/30 | 1:53P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/30 | 1:54P | 347–512–0530 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/30 | 1:55P | 718–218–9269 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 1:56P | 347–512–0530 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/30 | 2:18P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/30 | 2:23P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/30 | 2:33P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 35 | --- | --- | --- |
| 12/30 | 3:31P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/31 | 6:11P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 6:28P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/31 | 6:29P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/31 | 6:35P | 718–935–1897 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/31 | 6:36P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |


## Detail for Yehuda Herskovic: 718-387-4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|------|-----------|-------------|-------------|------|-----------------|----------------------|-------|
| 12/31 | 6:47P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 7:14P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 7:27P | 347-988-4904 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 7:28P | 718-782-3261 | Off-Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/31 | 7:29P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 12/31 | 7:32P | 718-243-2091 | Off-Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 7:56P | 000-000-0086 | Off-Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 12/31 | 8:05P | 000-000-0086 | Off-Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 12/31 | 8:10P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/31 | 8:39P | 845-662-3315 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/31 | 8:43P | 845-662-3315 | Off-Peak | N&W | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 12/31 | 8:44P | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 10 | --- | --- | --- |
| 12/31 | 8:48P | 917-935-8463 | Off-Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 12/31 | 8:51P | 718-384-2666 | Off-Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 12/31 | 8:54P | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 4 | --- | --- | --- |
| 12/31 | 8:57P | 845-662-3315 | Off-Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/31 | 8:58P | 718-689-1100 | Off-Peak | N&W,CallWait | Brooklyn NY | Nwyrcyzn15 NY | 1 | --- | --- | --- |
| 1/01 | 1:25A | 718-243-2091 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 1/01 | 1:59A | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 29 | --- | --- | --- |
| 1/01 | 5:29A | 000-000-0086 | Off-Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/01 | 8:40A | 347-731-8818 | Off-Peak | N&W | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/01 | 9:35A | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/01 | 11:19A | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 1/01 | 11:22A | 845-351-3100 | Off-Peak | N&W | Brooklyn NY | Tuxedo NY | 17 | --- | --- | --- |
| 1/01 | 12:17P | 845-513-0512 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/01 | 12:58P | 347-426-7463 | Off-Peak | N&W | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/01 | 12:59P | 347-426-7463 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/01 | 1:10P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/01 | 1:23P | 347-426-7463 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/01 | 2:19P | 917-935-8463 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/01 | 2:50P | 917-935-8463 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn08 NY | 2 | --- | --- | --- |
| 1/01 | 2:52P | 347-426-7463 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/01 | 3:52P | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 25 | --- | --- | --- |
| 1/01 | 4:31P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/01 | 4:46P | 718-599-5555 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 4:47P | 718-387-7777 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 4:48P | 718-782-7878 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 4:51P | 718-782-3261 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 8 | --- | --- | --- |
| 1/01 | 5:01P | 718-388-2828 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 5:07P | 347-623-7597 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/01 | 5:52P | 718-782-3261 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 6:24P | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 37 | --- | --- | --- |
| 1/01 | 7:07P | 718-599-2771 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 1/01 | 7:13P | 347-452-5989 | Off-Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/01 | 7:16P | 718-935-1897 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/01 | 7:38P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 2 | --- | --- | --- |
| 1/01 | 7:39P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 14 | --- | --- | --- |
| 1/01 | 7:46P | 718–384–2666 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 8 | --- | --- | --- |
| 1/01 | 7:53P | 718–689–1100 | Off–Peak | N&W,CallWait | Brooklyn NY | Nwyrcyzn15 NY | 1 | --- | --- | --- |
| 1/01 | 7:54P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 4 | --- | --- | --- |
| 1/01 | 8:07P | 347–452–5989 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/01 | 8:12P | 929–999–1121 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/01 | 8:29P | 888–328–6399 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 1/01 | 8:34P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 4 | --- | --- | --- |
| 1/01 | 9:28P | 718–344–5036 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/01 | 9:30P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 24 | --- | --- | --- |
| 1/01 | 9:53P | 718–344–5036 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 1/01 | 10:04P | 845–783–4352 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 15 | --- | --- | --- |
| 1/01 | 10:26P | 845–783–4352 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/01 | 11:34P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 69 | --- | --- | --- |
| 1/02 | 12:53A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 18 | --- | --- | --- |
| 1/02 | 11:28A | 347–623–7597 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/02 | 11:30A | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 1/02 | 12:13P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 2 | --- | --- | --- |
| 1/02 | 2:17P | 800–321–5880 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/02 | 2:19P | 888–321–5880 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 16 | --- | --- | --- |
| 1/02 | 3:14P | 718–387–2408 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 1/02 | 3:23P | 718–387–2408 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/02 | 3:25P | 888–321–5880 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 9 | --- | --- | --- |
| 1/02 | 4:26P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 1/02 | 4:38P | 800–308–1977 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/02 | 4:39P | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 4 | --- | --- | --- |
| 1/02 | 4:42P | 800–731–4553 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 1/02 | 4:44P | 800–731–4553 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/02 | 5:01P | 718–387–2574 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/02 | 5:03P | 845–651–4450 | Peak | PlanAllow | Brooklyn NY | Florida NY | 2 | --- | --- | --- |
| 1/02 | 5:04P | 718–342–5564 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/02 | 5:07P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/02 | 5:09P | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/02 | 5:33P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 1 | --- | --- | --- |
| 1/02 | 5:37P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 16 | --- | --- | --- |
| 1/02 | 5:54P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 13 | --- | --- | --- |
| 1/02 | 6:06P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/02 | 6:08P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/02 | 6:12P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 1/02 | 6:27P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 14 | --- | --- | --- |
| 1/02 | 6:39P | 347–357–4031 | Peak | M2MAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/02 | 6:41P | 347–357–4031 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/02 | 6:42P | 347–357–4031 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 27 | --- | --- | --- |
| 1/02 | 7:07P | 718–810–0893 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/02 | 7:12P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 10 | --- | --- | --- |
| 1/02 | 7:21P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/02 | 7:23P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 12 | --- | --- | --- |
| 1/02 | 7:34P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 1/02 | 7:39P | 718–387–0553 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 8 | --- | --- | --- |
| 1/02 | 8:01P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/02 | 8:02P | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/02 | 8:03P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/02 | 8:30P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 17 | --- | --- | --- |
| 1/02 | 9:01P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 10 | --- | --- | --- |
| 1/02 | 9:10P | 718–852–1213 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/02 | 9:53P | 845–662–3315 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/02 | 9:57P | 929–251–6134 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/02 | 10:00P | 718–782–2306 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/02 | 10:07P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/02 | 10:18P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/02 | 10:35P | 718–782–2306 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/02 | 11:08P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 56 | --- | --- | --- |
| 1/03 | 12:04A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 119 | --- | --- | --- |
| 1/03 | 10:26A | 800–731–4553 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/03 | 10:27A | 800–731–4553 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 5 | --- | --- | --- |
| 1/03 | 10:34A | 718–387–2408 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 10 | --- | --- | --- |
| 1/03 | 10:43A | 718–387–2408 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 1/03 | 12:26P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 1/03 | 12:34P | 347–623–7597 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/03 | 12:56P | 845–622–3315 | Peak | PlanAllow | Brooklyn NY | Croton Fls NY | 2 | --- | --- | --- |
| 1/03 | 12:58P | 845–662–3315 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 11 | --- | --- | --- |
| 1/03 | 1:09P | 845–662–3315 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 27 | --- | --- | --- |
| 1/03 | 2:29P | 917–935–8463 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/03 | 4:30P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzm05 NY | 5 | --- | --- | --- |
| 1/03 | 4:34P | 718–782–7731 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/03 | 4:38P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzm05 NY | 5 | --- | --- | --- |
| 1/03 | 4:52P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/03 | 4:53P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/03 | 5:09P | 718–388–1254 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 15 | --- | --- | --- |
| 1/03 | 5:26P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 34 | --- | --- | --- |
| 1/03 | 5:28P | 718–388–1254 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/03 | 5:31P | 718–782–7731 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/03 | 5:46P | 718–802–5936 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/03 | 6:51P | 845–774–2413 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/03 | 6:53P | 718–387–7777 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/03 | 6:55P | 718–388–2828 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/03 | 7:52P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/03 | 8:02P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/03 | 8:22P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 14 of 24 |

## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/03 | 8:24P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 3 | --- | --- | --- |
| 1/03 | 8:26P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/03 | 8:28P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/03 | 8:35P | Unavailable | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/03 | 8:53P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 15 | --- | --- | --- |
| 1/03 | 8:59P | 718–855–7618 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 9 | --- | --- | --- |
| 1/03 | 9:09P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 19 | --- | --- | --- |
| 1/03 | 9:24P | 718–855–7618 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/03 | 9:28P | 718–855–7618 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 1/03 | 9:31P | 718–963–4080 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/03 | 9:43P | 000–000–0086 | Off–Peak | N&W,CallVM | Brooklyn NY | Voice Mail CL | 4 | --- | --- | --- |
| 1/03 | 9:45P | 718–810–0893 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 7 | --- | --- | --- |
| 1/03 | 9:53P | 718–810–0893 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 9 | --- | --- | --- |
| 1/03 | 11:16P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 16 | --- | --- | --- |
| 1/03 | 11:47P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 62 | --- | --- | --- |
| 1/04 | 4:15A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 16 | --- | --- | --- |
| 1/04 | 12:20P | 888–237–8289 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 15 | --- | --- | --- |
| 1/04 | 12:35P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 1/04 | 12:37P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/04 | 12:44P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 3 | --- | --- | --- |
| 1/04 | 1:18P | 800–203–5117 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/04 | 1:18P | 347–370–2556 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn07 NY | 3 | --- | --- | --- |
| 1/04 | 1:27P | 212–839–6335 | Peak | PlanAllow | New York NY | New York NY | 2 | --- | --- | --- |
| 1/04 | 1:29P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/04 | 1:29P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/04 | 1:29P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 1/04 | 1:47P | 212–839–6335 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 1/04 | 2:10P | 212–839–6335 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/04 | 2:20P | 347–789–5367 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 1/04 | 2:22P | 718–387–2437 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 2:23P | 718–387–2437 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 4:25P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 5 | --- | --- | --- |
| 1/04 | 4:30P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 1/04 | 4:34P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/04 | 4:35P | 718–243–2091 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/04 | 4:37P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/04 | 4:38P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/04 | 4:39P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/04 | 4:41P | 718–522–3332 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/04 | 4:44P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 1 | --- | --- | --- |
| 1/04 | 4:46P | 347–643–5805 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 5 | --- | --- | --- |
| 1/04 | 4:53P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 9 | --- | --- | --- |
| 1/04 | 5:01P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/04 | 5:04P | 845–783–5607 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 1/04 | 5:05P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/04 | 5:07P | 800–274–5282 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 9 | --- | --- | --- |
| 1/04 | 6:29P | 718–388–1254 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 6:30P | 845–774–0812 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 1/04 | 6:36P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 6:39P | 718–522–3332 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 6:44P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/04 | 6:47P | 646–758–8354 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/04 | 6:49P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/04 | 6:49P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/04 | 6:55P | 718–388–1254 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/04 | 7:04P | 347–889–0559 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 7:28P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/04 | 7:30P | 718–963–4080 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 7:31P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/04 | 7:51P | 845–774–0812 | Peak | PlanAllow | Brooklyn NY | Monroe NY | 1 | --- | --- | --- |
| 1/04 | 8:05P | 718–622–2695 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 8:14P | 718–963–4080 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 8:17P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 1/04 | 8:21P | 718–388–5688 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 9 | --- | --- | --- |
| 1/04 | 8:22P | 718–782–3261 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 8:33P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/04 | 8:59P | 718–853–0803 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 9:14P | 718–344–5036 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/04 | 9:28P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 11 | --- | --- | --- |
| 1/04 | 9:54P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 1/04 | 9:57P | 718–384–2666 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/04 | 9:57P | 718–384–2666 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 1/04 | 10:03P | 347–743–9270 | Off–Peak | N&W,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/04 | 10:07P | 347–743–9270 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/04 | 11:30P | 347–432–4119 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 1/05 | 1:28A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 48 | --- | --- | --- |
| 1/05 | 10:18A | 917–903–7216 | Peak | M2MAllow | Brooklyn NY | New York NY | 3 | --- | --- | --- |
| 1/05 | 10:27A | 718–388–8813 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 1/05 | 10:36A | 888–237–8289 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 5 | --- | --- | --- |
| 1/05 | 10:47A | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 3 | --- | --- | --- |
| 1/05 | 10:50A | 877–227–3728 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 31 | --- | --- | --- |
| 1/05 | 12:00P | 718–302–1014 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/05 | 1:06P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/05 | 1:07P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/05 | 1:09P | 718–812–8257 | Peak | M2MAllow | Brooklyn NY | New York NY | 8 | --- | --- | --- |
| 1/05 | 1:17P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/05 | 1:17P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/05 | 1:18P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 7 | --- | --- | --- |
| 1/05 | 5:06P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 8 | --- | --- | --- |
| 1/05 | 5:13P | 718–384–2666 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |

# verizon✓

## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1/05 | 5:16P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 1/05 | 5:22P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 1 | --- | --- | --- |
| 1/05 | 5:23P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 1/05 | 5:24P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/05 | 5:29P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/05 | 5:39P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/05 | 6:11P | 347–432–4119 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/05 | 6:11P | 347–432–4119 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/05 | 6:12P | 347–432–4119 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/05 | 6:13P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 1/05 | 6:16P | 347–432–4119 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/05 | 6:19P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 1/05 | 6:37P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/05 | 6:39P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 3 | --- | --- | --- |
| 1/05 | 6:41P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 1 | --- | --- | --- |
| 1/05 | 6:52P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 10 | --- | --- | --- |
| 1/05 | 7:02P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/05 | 7:05P | 000–000–0086 | Peak | PlanAllow,CallVM | Brooklyn NY | Voice Mail CL | 2 | --- | --- | --- |
| 1/05 | 7:09P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 5 | --- | --- | --- |
| 1/05 | 7:13P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/05 | 7:16P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/05 | 8:10P | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 1 | --- | --- | --- |
| 1/05 | 8:15P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 134 | --- | --- | --- |
| 1/05 | 10:32P | 514–495–0020 | Off–Peak | N&W | Brooklyn NY | Montreal QC | 1 | --- | .49 | .49 |
| 1/05 | 10:38P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 1/05 | 10:41P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 1/05 | 10:44P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 31 | --- | --- | --- |
| 1/05 | 11:57P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 30 | --- | --- | --- |
| 1/06 | 4:03A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 46 | --- | --- | --- |
| 1/06 | 10:02A | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 1/06 | 10:05A | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 1/06 | 10:40A | 646–726–9929 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 1/06 | 10:44A | 646–726–9929 | Peak | PlanAllow | Brooklyn NY | New York NY | 26 | --- | --- | --- |
| 1/06 | 10:50A | 718–388–5688 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/06 | 11:08A | 718–782–2437 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/06 | 11:10A | 646–726–9929 | Peak | PlanAllow,CallWait | Brooklyn NY | New York NY | 8 | --- | --- | --- |
| 1/06 | 11:18A | 718–388–5688 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 1/06 | 11:25A | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/06 | 11:31A | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 1/06 | 11:34A | 914–261–5153 | Peak | M2MAllow | Brooklyn NY | Wh Plains NY | 2 | --- | --- | --- |
| 1/06 | 11:37A | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 1 | --- | --- | --- |
| 1/06 | 11:54A | 718–599–4747 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 1/06 | 12:17P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 1/06 | 12:39P | 201–926–1770 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/06 | 12:47P | 518–606–3480 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718–387–4565

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|------|-----------|-------------|-------------|------|----------------|----------------------|-------|
| 1/06 | 1:07P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/06 | 1:16P | 718–599–4824 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/06 | 1:18P | 718–599–4872 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 1/06 | 1:20P | 718–782–7044 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 1/06 | 1:24P | 718–782–7044 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 1/06 | 2:59P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 92 | --- | --- | --- |
| 1/07 | 6:18P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 1/07 | 6:42P | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 10 | --- | --- | --- |
| 1/07 | 7:18P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 1/07 | 7:24P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 1/07 | 7:31P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 1/07 | 7:41P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 1/07 | 8:19P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 32 | --- | --- | --- |
| 1/07 | 8:50P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 68 | --- | --- | --- |
| 1/07 | 9:59P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 1/07 | 10:11P | 347–546–9596 | Off–Peak | N&W | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 1/07 | 10:17P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 6 | --- | --- | --- |
| 1/07 | 10:25P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 15 | --- | --- | --- |
| 1/07 | 10:50P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 20 | --- | --- | --- |



## Summary for Yehuda Herskovic: 718–675–6897

### Your Plan

**Plan from 12/8 – 12/20**
**Wireless Home Phone Unlimited**
$20.00 monthly charge
Unlimited monthly minutes

**Plan from 12/8 – 12/21**
**PAYU MB With EVDO**
$1.99 per megabyte

**M2M National Unlimited**
Unlimited monthly Mobile to Mobile

**UNL Night & Weekend Min**
Unlimited monthly OFFPEAK

### Monthly Charges

| | | |
|---|---|---|
| Wireless Home Phone Unlimited Refund | 12/21 – 01/07 | –11.61 |
| $20.00 per month / 18 days refunded | | |
| | | **–$11.61** |

### Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| Calling Plan (12/08 – 12/20) | minutes | unlimited | 660 | –– | –– |
| Mobile to Mobile (12/08 – 12/20) | minutes | unlimited | 18 | –– | –– |
| Night/Weekend | minutes | unlimited | 943 | –– | –– |
| Total Voice | | | | | $.00 |
| **Total Usage and Purchase Charges** | | | | | **$.00** |

| Surcharges | |
|---|---|
| Fed Universal Service Charge | –.52 |
| Gross Receipts Surchg | –.72 |
| | **–$1.24** |

| Taxes, Governmental Surcharges and Fees | |
|---|---|
| NY State Sales Tax–Telecom | –.51 |
| New York City Sales Tax–Teleco | –.58 |
| NY McTd Sales Tax–Telecom | –.05 |
| | **–$1.14** |

| **Total Current Charges for 718–675–6897** | **–$13.99** |
|---|---|

## Detail for Yehuda Herskovic: 718–675–6897

## Voice

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/09 | 3:26A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 28 | –– | –– | –– |
| 12/09 | 4:26A | 908–202–4962 | Off–Peak | N&W | Brooklyn NY | Newbrnswck NJ | 1 | –– | –– | –– |
| 12/09 | 4:32A | 347–731–8818 | Off–Peak | N&W | Brooklyn NY | New York NY | 1 | –– | –– | –– |
| 12/09 | 4:41A | 800–742–5877 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 1 | –– | –– | –– |
| 12/09 | 4:43A | 800–742–5877 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 2 | –– | –– | –– |
| 12/09 | 4:44A | 800–742–5877 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 2 | –– | –– | –– |
| 12/09 | 4:46A | 800–742–5877 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 2 | –– | –– | –– |
| 12/09 | 4:58A | 800–238–5355 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 11 | –– | –– | –– |
| 12/09 | 5:16A | 718–210–5572 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | –– | –– | –– |
| 12/09 | 9:24A | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 1 | –– | –– | –– |
| 12/09 | 9:29A | 718–906–6466 | Peak | PlanAllow | Brooklyn NY | Queens NY | 9 | –– | –– | –– |
| 12/09 | 9:38A | 718–963–3134 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | –– | –– | –– |
| 12/09 | 9:39A | 718–243–2091 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | –– | –– | –– |



## Detail for Yehuda Herskovic: 718-675-6897

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/09 | 9:42A | 718-906-6466 | Peak | PlanAllow | Brooklyn NY | Queens NY | 8 | --- | --- | --- |
| 12/10 | 10:36P | 908-202-4962 | Off-Peak | N&W | Brooklyn NY | Newbrnswck NJ | 1 | --- | --- | --- |
| 12/10 | 10:39P | 347-731-8818 | Off-Peak | N&W | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/10 | 10:50P | 800-925-6278 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 3 | --- | --- | --- |
| 12/10 | 10:53P | 800-925-6278 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/10 | 10:54P | 800-925-6278 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/10 | 10:55P | 800-925-6278 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 7 | --- | --- | --- |
| 12/10 | 11:02P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/10 | 11:25P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/10 | 11:42P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 12/11 | 2:23A | 888-328-6399 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/11 | 2:24A | 888-328-6399 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/11 | 2:25A | 888-328-6399 | Off-Peak | N&W | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/11 | 2:26A | 718-689-1100 | Off-Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 76 | --- | --- | --- |
| 12/11 | 4:08A | 908-202-4962 | Off-Peak | N&W | Brooklyn NY | Newbrnswck NJ | 1 | --- | --- | --- |
| 12/11 | 8:58A | 718-387-4565 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 9:48A | 718-407-4151 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 9:49A | 718-633-1834 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 6 | --- | --- | --- |
| 12/11 | 9:54A | 718-633-1834 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/11 | 11:40A | 718-633-1834 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 1:38P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 5:41P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 18 | --- | --- | --- |
| 12/11 | 6:07P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 46 | --- | --- | --- |
| 12/11 | 6:53P | 718-384-2666 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/11 | 7:13P | 718-782-7731 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 7:14P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 7:19P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 39 | --- | --- | --- |
| 12/11 | 8:27P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 24 | --- | --- | --- |
| 12/11 | 9:02P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 13 | --- | --- | --- |
| 12/11 | 9:17P | 718-855-7618 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/11 | 11:14P | 718-875-1583 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/11 | 11:18P | 718-782-3261 | Off-Peak | N&W | Brooklyn NY | Brooklyn NY | 23 | --- | --- | --- |
| 12/12 | 12:01P | 800-463-3339 | Peak | PlanAllow | Brooklyn NY | Toll-Free CL | 6 | --- | --- | --- |
| 12/12 | 5:05P | 718-782-7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/12 | 5:07P | 914-902-2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/12 | 5:10P | 914-902-2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/12 | 5:12P | 888-328-6399 | Peak | PlanAllow | Brooklyn NY | Toll-Free CL | 1 | --- | --- | --- |
| 12/12 | 5:42P | 888-328-6399 | Peak | PlanAllow | Brooklyn NY | Toll-Free CL | 2 | --- | --- | --- |
| 12/12 | 5:52P | 718-935-1897 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/12 | 6:09P | 347-765-2439 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/12 | 6:16P | 311-000-0000 | Peak | PlanAllow | Brooklyn NY | Govt Info CL | 25 | --- | --- | --- |
| 12/12 | 7:22P | 718-643-4050 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 12/12 | 7:44P | 718-782-7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/12 | 8:13P | 718-906-6400 | Peak | PlanAllow | Brooklyn NY | Queens NY | 11 | --- | --- | --- |
| 12/12 | 8:37P | 914-902-2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 4 | --- | --- | --- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 20 of 24 |

## Detail for Yehuda Herskovic: 718–675–6897

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/12 | 9:02P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/12 | 9:04P | 718–643–1702 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 12 | --- | --- | --- |
| 12/12 | 9:26P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/12 | 9:39P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 20 | --- | --- | --- |
| 12/12 | 10:16P | 718–384–3230 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/12 | 10:43P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/13 | 1:15A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 61 | --- | --- | --- |
| 12/13 | 7:55A | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/13 | 8:05A | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 4 | --- | --- | --- |
| 12/13 | 8:30A | 718–782–0747 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/13 | 5:17P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/13 | 6:10P | 718–643–1702 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/13 | 6:14P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 5 | --- | --- | --- |
| 12/13 | 6:30P | 718–384–3230 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/13 | 6:35P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 34 | --- | --- | --- |
| 12/13 | 7:17P | 347–962–9089 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/13 | 7:27P | 718–643–1702 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/13 | 7:45P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 4 | --- | --- | --- |
| 12/13 | 11:41P | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 66 | --- | --- | --- |
| 12/14 | 10:48A | 347–731–8818 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/14 | 11:20A | 800–925–6278 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 18 | --- | --- | --- |
| 12/14 | 4:31P | 718–243–2091 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 42 | --- | --- | --- |
| 12/14 | 5:12P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/14 | 5:13P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/14 | 5:22P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 5 | --- | --- | --- |
| 12/14 | 5:39P | 718–871–0249 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 11 | --- | --- | --- |
| 12/14 | 5:59P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/14 | 6:00P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/14 | 6:14P | 718–643–1702 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/14 | 8:04P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/14 | 8:08P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/14 | 8:09P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/14 | 8:39P | 845–239–9429 | Peak | PlanAllow | Brooklyn NY | Middletown NY | 1 | --- | --- | --- |
| 12/14 | 8:50P | 845–239–9429 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/14 | 9:05P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/14 | 9:09P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/15 | 12:54A | 718–689–1100 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn15 NY | 45 | --- | --- | --- |
| 12/15 | 12:45P | 800–238–5355 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 12/15 | 12:49P | 866–912–9717 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/15 | 12:50P | 866–912–9717 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/15 | 12:50P | 800–238–5355 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 5 | --- | --- | --- |
| 12/15 | 12:55P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/15 | 4:36P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 23 | --- | --- | --- |
| 12/15 | 5:01P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 2 | --- | --- | --- |
| 12/15 | 5:03P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 21 of 24 |

## Detail for Yehuda Herskovic: 718–675–6897

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/15 | 5:08P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 4 | --- | --- | --- |
| 12/15 | 5:12P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 12 | --- | --- | --- |
| 12/15 | 5:28P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/15 | 5:29P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/15 | 5:30P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/15 | 5:32P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/15 | 5:47P | 718–599–4747 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/15 | 5:49P | 917–363–0041 | Peak | PlanAllow | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/15 | 6:23P | 718–387–7777 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/15 | 6:32P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/15 | 6:37P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 1 | --- | --- | --- |
| 12/15 | 6:38P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 3 | --- | --- | --- |
| 12/15 | 7:33P | 718–906–6466 | Peak | PlanAllow | Brooklyn NY | Queens NY | 33 | --- | --- | --- |
| 12/15 | 8:46P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/15 | 8:48P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/15 | 8:50P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/15 | 8:50P | 718–344–5036 | Peak | M2MAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/15 | 9:05P | 718–243–2091 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 12/16 | 10:45A | 646–726–9929 | Peak | PlanAllow | Brooklyn NY | New York NY | 31 | --- | --- | --- |
| 12/16 | 11:25A | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 2 | --- | --- | --- |
| 12/16 | 12:17P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 3 | --- | --- | --- |
| 12/16 | 1:16P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/16 | 1:17P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/16 | 1:18P | 718–387–2574 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 1:50P | 347–988–4904 | Peak | M2MAllow | Brooklyn NY | Nwyrcyzn07 NY | 1 | --- | --- | --- |
| 12/16 | 2:59P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:00P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:01P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/16 | 3:11P | 201–926–1770 | Peak | M2MAllow | Brooklyn NY | Hackensack NJ | 1 | --- | --- | --- |
| 12/16 | 3:38P | 718–486–8969 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:40P | 718–218–8923 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/16 | 3:41P | 718–387–8347 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/16 | 3:44P | 718–388–1254 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/16 | 3:46P | 718–327–9061 | Peak | PlanAllow | Brooklyn NY | Queens NY | 1 | --- | --- | --- |
| 12/16 | 3:47P | 718–384–0616 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:48P | 718–624–0888 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:54P | 718–384–9329 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/16 | 3:55P | 718–522–5448 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/16 | 3:56P | 718–384–0616 | Peak | PlanAllow,CallWait | Brooklyn NY | Incoming CL | 1 | --- | --- | --- |
| 12/17 | 6:25P | 888–328–6399 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 3 | --- | --- | --- |
| 12/17 | 6:28P | 914–902–2775 | Off–Peak | N&W | Brooklyn NY | Wschstzn05 NY | 3 | --- | --- | --- |
| 12/17 | 6:48P | 718–782–7731 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/17 | 7:13P | 347–731–8818 | Off–Peak | N&W | Brooklyn NY | New York NY | 2 | --- | --- | --- |
| 12/17 | 7:19P | 347–534–8599 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/17 | 7:22P | 347–534–8599 | Off–Peak | N&W | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |



## Detail for Yehuda Herskovic: 718–675–6897

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 12/17 | 7:27P | 347–534–8599 | Off–Peak N&W | | Brooklyn NY | Nwyrcyzn06 NY | 1 | --- | --- | --- |
| 12/18 | 2:37A | 718–689–1100 | Off–Peak N&W | | Brooklyn NY | Nwyrcyzn15 NY | 101 | --- | --- | --- |
| 12/18 | 11:11A | 718–290–1580 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/18 | 3:24P | 866–593–2543 | Off–Peak N&W | | Brooklyn NY | Toll–Free CL | 26 | --- | --- | --- |
| 12/18 | 4:28P | 914–902–2775 | Off–Peak N&W | | Brooklyn NY | Wschstzn05 NY | 2 | --- | --- | --- |
| 12/18 | 4:49P | 718–388–5688 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 9 | --- | --- | --- |
| 12/18 | 6:13P | 718–384–2666 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/18 | 6:13P | 718–384–2666 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/18 | 6:25P | 718–384–2666 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/18 | 6:49P | 718–689–1100 | Off–Peak N&W | | Brooklyn NY | Nwyrcyzn15 NY | 7 | --- | --- | --- |
| 12/18 | 7:14P | 718–689–1100 | Off–Peak N&W | | Brooklyn NY | Nwyrcyzn15 NY | 4 | --- | --- | --- |
| 12/18 | 8:29P | 718–782–7731 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/18 | 8:32P | 718–782–7731 | Off–Peak N&W | | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/18 | 9:00P | 718–782–7731 | Off–Peak N&W | | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/18 | 9:54P | 845–351–3100 | Off–Peak N&W | | Brooklyn NY | Tuxedo NY | 20 | --- | --- | --- |
| 12/18 | 10:17P | 845–351–3100 | Off–Peak N&W | | Brooklyn NY | Tuxedo NY | 169 | --- | --- | --- |
| 12/19 | 8:04A | 845–351–3100 | Peak | PlanAllow | Brooklyn NY | Tuxedo NY | 28 | --- | --- | --- |
| 12/19 | 8:32A | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 2 | --- | --- | --- |
| 12/19 | 9:12A | 908–202–4962 | Peak | M2MAllow | Brooklyn NY | Newbrnswck NJ | 1 | --- | --- | --- |
| 12/19 | 11:18A | 718–290–1670 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/19 | 11:20A | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/19 | 4:31P | 914–902–2775 | Peak | PlanAllow | Brooklyn NY | Wschstzn05 NY | 7 | --- | --- | --- |
| 12/19 | 4:52P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 7 | --- | --- | --- |
| 12/19 | 4:59P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/19 | 4:59P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 13 | --- | --- | --- |
| 12/19 | 5:12P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 20 | --- | --- | --- |
| 12/19 | 5:36P | 888–328–6399 | Peak | PlanAllow | Brooklyn NY | Toll–Free CL | 2 | --- | --- | --- |
| 12/19 | 6:23P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/19 | 6:42P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 4 | --- | --- | --- |
| 12/19 | 6:48P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/19 | 6:50P | 718–782–3261 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 5 | --- | --- | --- |
| 12/19 | 7:57P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/19 | 8:06P | 718–689–1100 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn15 NY | 30 | --- | --- | --- |
| 12/20 | 12:39P | 718–810–0893 | Peak | PlanAllow | Brooklyn NY | New York NY | 1 | --- | --- | --- |
| 12/20 | 12:52P | 718–407–4151 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |
| 12/20 | 1:11P | 917–398–5009 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn01 NY | 1 | --- | --- | --- |
| 12/20 | 1:13P | 917–398–5009 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn01 NY | 2 | --- | --- | --- |
| 12/20 | 1:28P | 718–407–4151 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/20 | 1:30P | 718–407–4151 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | --- | --- | --- |
| 12/20 | 1:32P | 718–407–4151 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | --- | --- | --- |
| 12/20 | 4:17P | 845–351–3100 | Peak | PlanAllow | Brooklyn NY | Tuxedo NY | 2 | --- | --- | --- |
| 12/20 | 4:21P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | --- | --- | --- |
| 12/20 | 4:25P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Incoming CL | 2 | --- | --- | --- |
| 12/20 | 5:02P | 718–522–3332 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 13 | --- | --- | --- |
| 12/20 | 5:15P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | --- | --- | --- |



| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3513543757 | 988876917–00001 | Past Due | 23 of 24 |

## Detail for Yehuda Herskovic: 718–675–6897

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/20 | 5:16P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/20 | 5:17P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 6 | -- | -- | -- |
| 12/20 | 5:30P | 718–243–2091 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 2 | -- | -- | -- |
| 12/20 | 5:39P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 5 | -- | -- | -- |
| 12/20 | 5:52P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 11 | -- | -- | -- |
| 12/20 | 6:03P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 11 | -- | -- | -- |
| 12/20 | 6:07P | 718–782–0747 | Peak | PlanAllow,ConfCall | Brooklyn NY | Brooklyn NY | 1 | -- | -- | -- |
| 12/20 | 6:20P | 718–855–7618 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/20 | 7:01P | 347–546–9596 | Peak | PlanAllow | Brooklyn NY | Nwyrcyzn06 NY | 23 | -- | -- | -- |
| 12/20 | 7:30P | 718–243–2091 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/20 | 7:33P | 718–782–7731 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 11 | -- | -- | -- |
| 12/20 | 8:56P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 4 | -- | -- | -- |
| 12/20 | 9:00P | 718–384–2666 | Peak | PlanAllow | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/20 | 9:30P | 718–855–7618 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 13 | -- | -- | -- |
| 12/20 | 9:31P | 718–782–0747 | Off–Peak | N&W,ConfCall | Brooklyn NY | Brooklyn NY | 3 | -- | -- | -- |
| 12/20 | 10:15P | 718–782–3261 | Off–Peak | N&W | Brooklyn NY | Brooklyn NY | 7 | -- | -- | -- |
| 12/20 | 11:41P | 888–328–6399 | Off–Peak | N&W | Brooklyn NY | Toll–Free CL | 1 | -- | -- | -- |



# Need-to-Know Information

## Customer Proprietary Network Information (CPNI)

CPNI is information made available to us solely by virtue of our relationship with you that relates to the type, quantity, destination, technical configuration, location, and amount of use of the telecommunications and interconnected VoIP services you purchase from us, as well as related billing information. The protection of your information is important to us, and you have a right, and we have a duty, under federal law, to protect the confidentiality of your CPNI.

We may use and share your CPNI among our affiliates and agents to offer you services that are different from the services you currently purchase from us. Verizon offers a full range of services, such as television, telematics, high-speed Internet, video, and local and long distance services. Visit Verizon.com for more information on our services and companies.

If you don't want your CPNI used for the marketing purposes described above, please notify us by phone any time at 800.333.9956, online at vzw.com/myprivacy or through Customer Service at 800.922.0204 from Monday - Friday 7 AM to 11 PM and Saturday - Sunday 8 AM to 9 PM.

Unless you notify us in one of these ways, we may use your CPNI as described above beginning 30 days after the first time we notify you of this CPNI policy. Your choice will remain valid until you notify us that you wish to change your selection. Your decision about use of your CPNI will not affect the provision of any services you currently have with us.

Note: This CPNI notice does not apply to residents of the state of Arizona.

## Explanation of Surcharges

Surcharges include (i) a Regulatory Charge (which helps defray various government charges we pay including government number administration and license fees); (ii) a Federal Universal Service Charge (and, if applicable, a State Universal Service Charge) to recover charges imposed on us by the government to support universal service; and (iii) an Administrative Charge, which helps defray certain expenses we incur, including: charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers; fees and assessments on our network facilities and services; property taxes; and the costs we incur responding to regulatory obligations. **Please note that these are Verizon Wireless charges, not taxes. These charges, and what's included, are subject to change from time to time.**

## Returned Payments

In the event your check for payment of your wireless bill is returned by your bank for insufficient or uncollected funds, Verizon Wireless may resubmit your check electronically to your bank for payment from your checking account.

## FUSC Change

The Federal Universal Service Charge (FUSC) is a Verizon Wireless charge that is subject to change each calendar quarter based on contribution rates prescribed by the FCC. On January 1, the FUSC decreased to 4.26 percent of assessable wireless charges, other than separately billed interstate and international telecom charges. The FUSC on separately billed interstate and international telecom charges decreased to 16.7 percent. For more details, please call 888.684.1888.

## Customer Agreement Revision

We updated the My privacy section of our Customer Agreement to reflect that it is your responsibility to notify others that use your wireless devices to connect to the internet that we will collect information regarding their device and usage in accordance with our privacy policy. See https://verizonwireless.com/b2c/support/customer-agreement

# EXHIBIT 7

The attached fax was received from 7187826757 on 12/17/2018 at 5:42:29 PM.

JobID: 039570

A TATION ~~COSTODIEN OF RECORDS~~ 12/17/2017
WILONDA

MY NAME IS YEHUDA HERSKOVIC AS PER MY CONVERSATION WITH YOUR REPREZENTIVE I AM FAXING YOU THE SMALL CLAIM AWARD OF 718 oo/10 TO ME MY TELEPHONE # IS 347 731 8818 YOU CAN CONTACT ME PLEASE AT THIS # SO WE CAN AVOID THE COSLY COLLECTION AN AGRAVATION

YEHUDA HERSKOVIC

I SPOKE TO YOU TODAY

# Civil Court of the City of New York

COUNTY OF ___KINGS___

Small Claims/Commercial Claims Part

Index Number S.C. __3766 /18__

HERSKOVIC, YEHUDA

Claimant(s),

against

VERIZON WIRELESS

Defendant(s)

## NOTICE OF JUDGMENT

**DECISION:** After Trial/Inquest, the decision in the above action is as follows:

A. ☑ Judgment in favor of ___Claimant___ for ___$ 698___.

| | | |
|---|---|---|
| Judgment Award Amount | $ __698.00__ | *When an Award has been granted,* |
| Interest | $ _____ | *information below the bold line and* |
| Disbursements | $ __20.00__ | *on the reverse side applies to all parties.* |
| TOTAL JUDGMENT | $ __718.00__ | |

B. ☐ Judgment in favor of Defendant. Claim Dismissed. No monetary award.

*Information below the bold line and on the reverse side of this form does not apply to Dismissed Claims*

___12/4/18___
Date

___Nottech___
Judge, Civil Court/Arbitrator

**APPEAL:** An Appeal may only be taken from an Order or a Judgment rendered by a Judge (not an Arbitrator), after a trial.
An Appeal from this Judgment must be taken no later than the earliest of the following dates:
    (i) thirty days after receipt in court of a copy of the judgment by the appealing party,
    (ii) thirty days after personal delivery of a copy of the judgment by another party to the action to the
    appealing party (or by the appealing party to another party); or
    (iii) thirty-five days after the mailing of a copy of the judgment to the appealing party by the clerk of
    the court or by another party to the action.

## INFORMATION FOR THE JUDGMENT DEBTOR

*(The party against whom a money judgment has been entered)*

**YOU HAVE A LEGAL OBLIGATION TO PAY THIS JUDGMENT TO THE JUDGMENT CREDITOR.
YOU MUST PRESENT PROOF TO THE COURT UPON SATISFACTION OF THE JUDGMENT.**

Your failure to pay the judgment may subject you to any one or any combination of the following:
    a) garnishment of wage(s) and/or bank account(s).
    b) lien, seizure and/or sale of real property and/or personal property, including automobile(s)
    c) suspension of motor vehicle registration, and/or drivers license, if the underlying claim is
    based on judgment debtor's ownership or operation of a motor vehicle.
    d) revocation, suspension, or denial of renewal of any applicable business license or permit.
    e) investigation and prosecution by the State Attorney General for fraudulent or illegal business practices.
    f) a penalty equal to three times the amount of the unsatisfied judgment plus attorney's fees, if there are
    unpaid claims.

If you did not appear in court on the day the Hearing was held, you are a defaulting party. A judgment may have been taken against you even though you were not in court. If that is so, you may come to the court and apply in writing to have the default judgment opened. You must give the Judge a reasonable excuse for your failure to appear in court and show that you have a meritorious defense. The Judge will review your request and may vacate the default judgment and give you another chance to go to court.

**THE JUDGMENT IS VALID FOR A PERIOD OF 20 YEARS. IF THE JUDGMENT IS NOT COLLECTED
UPON THE FIRST ATTEMPT, FURTHER ATTEMPTS TO COLLECT MAY BE MADE AT A LATER DATE.**

**("INFORMATION FOR THE JUDGMENT CREDITOR" is on the reverse side.)**

CIV-SC-92 (Revised, October, 2000)

# EXHIBIT 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ~~QUEENS~~ KINGS
------------------------------------------------x



Read Form

YEHUDA HERSKOVIC Plaintiff,

- against -

VERIZO WIRELESS

                              Defendant.
------------------------------------------------x

Index No. 1251 /20 19

VERIFIED
**COMPLAINT**

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, YEHUDA HERSKOVIC , respectfully
shows and alleges as follows:

ON THE DATE OF 12/27/2017 I WENT IN TO THE VERIZON
WIRELESS STORE ON 100 WALL STR NEW YORK N.Y. 10005,
AND MADE A CONTRACT FOR A HOME DEVICE TO HAVE PHONE
SERVICE WITH THE NUMBER 718-387-4565 AND THE CONTRACT
WAS FOR TWO YEARS, AFFTER ABOUT A MONTH I STARTED TO HAVE
DIFICULTIES WITH THE SERVICE, PEAPLE ON THE OTHER END COLD NOT
HEAR ME AND CALLS WERE DROPT IN MIDEL OF A CONVERSATION
THEN I CALLD THE COMPANEY VERIZON WIRELESS AND THEY
TRIGD TO FIX IT BUT IT WAS NOT HELPING TO MULH IT KEPT ON
AN ON AND I KEAP CALLING AN COMPLANING THEY STATED
THAT NOTHING IS WRONG AND THE SAME PROBLEM WAS
GOING ON AND ON I REALY GOT TIRED OF THE SITUATION,
AND ON THE DATE OF DEC./10/2018 I SPOKE TO A COSTOMER
SERVICE AND SHE TRANSFERD ME TO A SUPER VISOR AND
TOLD THEM THAT I CANOT GO ON WITH THIS NO SERVICE
AN DIFICULTIES I NGED PROPER SERVICE AND I ASKED

PERMISON TO CANCEL THE CONTRACT AND GO TO A OTHER
PROVIDER AND COMPANEY WHO CAN GIVE ME PROPER
SERVICE THE SUPERVISER AGREED WITH ME AND SAID
SHE WILL WAVE THE DISSCONECTION FEE SO I WENT
TO ANOTHER COMPANEY AT&T WITH THE SAME
SERVICE AND SAME WIRELESS DEVICE FOR HOME
SERVICE AND SWITCH THE SERVICE TO AT&T WIRELESS
ATT THE END OF THE MONTH VERIZON WIRELESS SEND ME
A FINAL BILL WITH A 176.00$ DISCONETION CHARGE
FOR GOING TO A·OTHER COMPANE WHO CAN GIVE ME
SERVICE, I RIGHT AWAY CALLD VERIZON WIRELLES
AND ASK WHAT IS THE 176$ DISCONECTION CHARGES
I GOT PERMISION AN THE SUPERVISER PROMISD ME
TO WAVE THE DISCONECTION CHARGE AND I WAS ON
THE PHONE FOR A LONG TIME ARGUING WITH THE
CUSTOMER SERVICE REPRESENTIVE THEN WITH THE
SUPEVISER BUT BOTH REFUSD TO WAVE THE FEE
THEY DNIED ME MY RIGHT TO HAVE PROPER SERVICE
AND I VERIFIED ALL THE COMPLAIN'S I WAS MAKING
AN THEY STILL DNIED ME AN KEPT SENDING
BILL'S FOR ONLY THIS CHARGE ALL OTHER I WAS UP
TO DATE PAID EVERITHING I OWED EXEPT THE
DISCONECT CHARGE, THAN THE REAL NIGHTMARE
STARTED, THEY SEND ME COLECTION LETTERS ONE
AFTER THE OTHER AN CALLS OF COLECTION DIFFENT
COMPANEY'S AN THEY PUT IT ON MY CREDIT REPORT
AS A NEGATIVE RUNING MY CREDIT ONE LETTER
FROM DIVERSIFIED CONSULTANTS, INC, POBOX 551268
THEY CALLD ME HOME AN CELL DAY AFFTER DAY

2

AND I KEAP EXPLANING THAT I DO NOT OWE THIS MONEY AND THEY INSIST THAT I DO OWE THEM AND I ALSO CALLD VERIZON WIRELESS BUT THEY ALSO WERE NOT TO HELP OUT THE CITUATION THEN I APPLIED FOR CREDIT CARD FROM BARCLYS WICH I HAVE A CREDIT CARD AND OTHER THEY DENIED ME BECAUSE OF NEGATIVE INFORMATION ON MY CREDIT REPORT FROM EXPERIAN AN TRANSUNION THEY HARASD ME WITH THIS FRAUDELENT CHARGE SO LATE AS DEC/07/2018 THEY SEND ME A NEW COLECTION LETTER AN ALSO THEY PUT IT ON MY CREDIT REPORT. EVAN THEY ADMIT IN SMALL CLAIM COURT THEY REFUDED ME 698$ FOR BAD SERVICE, BUT THE 176 THEY STILL HAVE IT ON MY CREDIT REPORT AN NOW ON 3/1/2019 I RECEIVE A NEW LETTER WITH A MORE GRETER CHARGE OF 341,83$ AS YOU CAN SEE ATACH COPY FROM DYNAMIC RECOVERY SOLUTIONS WITH ADRESS 135 INTERSTATE BLVD. GREENVILLE, SC 29615 THE HARASMENT DONT STOP I CANT GET NEW CREDIT CARD I LOST ABOUT 3000$ ON INSANTIVES THE HARASMENT IS GOING ON STILL TODAY THEIR IS NO END TO MY AGRAVASION FROM THIS FALSE AND FRAUDELENT CHARGE IS MY VORST NIGHTMARE CANT SLEEP AT NIGHT THIS IS CAUSING ME HEADACKES AN IN MIDEL OF THE NIGHT I WAKE UP THINKING OF THIS COLECTION LETERS I AM NERVOS AND HAVE BAD DAYDREAMS FRIDAY DEC 7 2018 I SPOKE TO THE SUPERVISER OF COLLECTION DEP OF DIVERSIFIED

CONSALTANTS, INC WITH THE NAME PERALTA
ANGELYN AN THEY STILL REFUSE TO REMOVE THE
DAMAGING INFORMATION WICH IS FRAUDELONT AN
FALSE EVEN AFTER REFUNDING THE WHOLE AMOUNT
OF CHARGES FORMONTLY SERVICE SO ON DEC
13 2018 I CALD VERIZON WIRELES THEY GAVE ME
CONFLICKTING DATE WHEN MY SERVICE STATED
AN WHEN IT ENDED ON CREDIT REPORT IT IS WRITEN
DEC 1 2016 AN THEY CLAIM VERIZON WIRELES
SHE SAID JAN 07 2018 THEN THEY GAVE ME THE
DATE DEC 21 2016 AND DEC 27 2017 ALSO
REPREZENTITIVE COMFIRD THAT I CALD IN ON
ALL THIS DATES JUNE 28 2017, SEP 10 2017,
DEC 10 2017, OCT 30 2017, DEC 9 2017, DEC
10 2017, AND ON THIS DATE OF DEC 10 2017
I HAD A CONVERSATION WITH A SUPERVISER
THAT I CANOT GO ON LIKE THIS ANY LONGER
WITH THIS BAD SERVICE AN I AM SWITCHING
CARIER BECAUSE OF PHONE DROPS CALLS AND
PEOPLE ON OTHER END CANT HEAR ME AN SHE
AGREED THAT I CAN GO TO A DIFRENT CARER
SON ON DEC 27 2017 I WENT TO AT&T.
SO NOW THE RELIEF I AM SEEKING FROM
COURT IS AS FOLOWS
1) THAT VERIZON WIRELESS AND ALL THEIR
COLECTION AGENCIES STOP THE HARASMENT
AND AGRAVATING ME WITH THEIR COLECTION
AND EARASE THIS CHARGES FROM COLECTION
ON MY CREDIT REPORT OF ALL CREDIT REPORTING

4

AGENCIES LIKE EQUIFAX TRANS UNION EXPERIAN TO
REMOVE THE NEGATIVE REPORTING
2. 30,000$ FOR THE DAMAGES THAT DAY CAUSED TO
ME WITH THEIR ACTION OF THIS FALSE AND FRAUDULENT
CHARGES AN COLECTION ALL THIS TIME FROM
DEC 27 2017 UNTIL TODAY THE COUR SHOOL ORDER
TO REMOVE THE NEGATIVE COLECTION AND
RPORTING AND A JUGMENT IN THE AMOUNT
OF 30,000$ TO ~~YEHUDA HERS~~ BE GIVEN
TO YEHUDA HERSKOVIC

Dated: 3/26/2019

YEHUDA HERSKOVIC
Plaintiff

## VERIFICATION

YEHUDA HERSKOVIC , being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint
and know the contents thereof. The same are true to my knowledge, except as to matters
therein stated to be alleged on information and belief and as to those matters I believe
them to be true.

MH
**Signature**
YEHUDA HERSKOVIC
Print Name

Sworn to before me this
26 day of MARCH 2019

CHAIM FEILUSHEN
Notary Public
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE6075699
Qualified in Kings County
My Commission Expires 08-30-2019

5

Note: Strike *italicized* wording which does not apply.

## VERIFICATION

STATE OF NEW YORK)

COUNTY OF KINGS    )      ss.:

YEHUDA HERSKOVIC (your name), being duly sworn, deposes and says:

That I am the *plaintiff* / *petitioner* / *defendant* / *respondent* in this *action* /
*proceeding*. That I have read the foregoing _____ and know the
contents thereof; that the same is true to my own knowledge, except as to matters therein
stated to be alleged on information and belief; and as to those matters I believe them to be
true.

_____
*Plaintiff* / *Petitioner* / *Defendant* / *Respondent*
(Sign your name before a Notary Public)

YEHUDA HERSKOVIC
(Print Name)

Sworn before me this 26
day of MARCH , 20 19

_____
Notary Public

CHAIM PERLSTEIN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE5075699
Qualified in Kings County
My Commission Expires 05-30-2019

KOSR 02/17

# Exhibit N

**Jordan S. Yu, Esq.**
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
T. 213.377.5502 | F. 213.377.5501
jyu@yumollp.com

June 23, 2022

***VIA EMAIL***

Michael D. Blechman, Esq.
American Arbitration Association
c/o Pro Se Administrator 1
ProSeAdministrator1@adr.org

> RE: *Yehuda Herskovic v. Verizon Wireless*
> American Arbitration Association Case No.: 01-21-0016-5580

## ARBITRATION CLOSING BRIEF

Dear Arbitrator Blechman:

Respondent Cellco Partnership d/b/a Verizon Wireless ("Verizon") submits this Arbitration Closing Brief in connection with the telephonic evidentiary hearing held in this matter on June 9, 2022.

## I.     INTRODUCTION

Claimant Yehuda Herskovic ("Claimant") has failed to establish that he is entitled to any recovery from Verizon under any of the three legal theories he purports to assert for: (1) breach of contract, (2) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, ("FCRA") and (3) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").[1]

The crux of Claimant's case is his claim that he did not owe Verizon an early termination fee of $176.11[2] that was charged to him under the express terms of his Verizon Customer Agreement ("Agreement"). Claimant contends that because he cancelled his Verizon service and

---

[1] The Original Complaint filed by Claimant (Respondent's Exh. 1-3) appears to be for breach of contract (which he identifies on the civil case cover sheet) and violation of the FCRA, although Claimant does not specifically cite to the statute. In his Amended Complaint, Claimant does not mention breach of contract, but does reference the FCRA (Respondent's Exh. 2). Moreover, while the Amended Complaint includes two counts, both appear based on the FCRA and do not mention the FDCPA, although Claimant complains of collection attempts by outside agencies and cited to the FDCPA during the evidentiary hearing. Plaintiff's Arbitration Demand (Respondent's Exh. 3) simply states that "Verizon Wireless has been reporting false charges on my credit report.").

[2] The $176.11 total includes the actual early termination fee of $145.00 and an additional $31.11 in governmental surcharges and taxes based on the fee. *See* Respondent's Exhibit 6-321 (bill for December 2018).

later obtained a default money judgment against Verizon in small claims court, he effectively "rescinded" the Agreement. However, there is no basis in law or fact for Claimant's contention. To the contrary, the evidence introduced at the hearing—and the case records from the inquest in Claimant's small claims court action—reveal that there was no rescission, that Claimant continued to owe Verizon $176.11 even after entry of his default judgment, and that Verizon's credit reporting of the unpaid early termination fee was not only accurate, but is non-actionable under the FCRA and FDCPA.

      ***First***, the parties' Agreement plainly states that Claimant's "early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17" (Respondent's Exh. 5-2), and that any compensation for "dropped calls or interrupted Service" is strictly limited to a "credit for the time lost" (Respondent's Exh. 5-5). It is immaterial that Plaintiff's account allowed unlimited calls for a set monthly fee. Claimant's account bills reflect that he was credited on more than one occasion for dropped calls and/or interrupted service. *See, e.g.,* Respondent's Exh. 6-186 (credit adjustment for $13.88 on bill for August 2017), Exh. 6-238 (credit adjustment for $12.11 on bill for September 2017).

      ***Second***, Claimant is at best confused, and at worst, disingenuous in his insistence that Verizon promised to waive the $176.11 early termination fee under his Agreement. The Account Notes, which constitute a complete record of all calls between Verizon and Claimant, do not reflect any such promise, and Verizon's witness testified at the hearing that no fee waiver was ever offered to Claimant (*see* Respondent's Exh. 7-4). Moreover, the two calls to Verizon that Claimant claimed he made to discuss the fee waiver never occurred. Verizon established at the evidentiary hearing that both calls were in fact placed to AT&T, Claimant's new service provider, ***not*** Verizon. *See* Respondent's Exh. 6-335 and 6-336.

      ***Third***, it is simply not true that the small claims court ordered rescission of the parties' Agreement. *See* Respondent's Exh. 8. There is nothing in the default judgment or the Court's inquest record that would suggest an award of rescission, which is an equitable remedy. *See* Case Record Card, attached hereto as Respondent's Exh. 9.[3] Instead, there is a $698.00 damages award for "defective services rendered" on "02-01-2017." Claimant is also mistaken that this award was somehow a "refund" of the amounts he paid under the Customer Agreement: The total he paid on his account under the Agreement was only $377.54.[4] The $698.00 was obviously a damages award (obtained via default judgment) for purported "defective services," which by no means "rescinded" the parties' Agreement or represented any refund.

      ***Fourth***, an FCRA claim brought by a private litigant can only be based on a failure to reasonably investigate a credit reporting dispute. An FCRA claim cannot be predicated on merely inaccurate credit reporting. Here, as the Account Notes reflect, Plaintiff only submitted

---

[3] Verizon has attempted unsuccessfully to obtain a copy of the small claims summons from Claimant. Verizon was never served with the summons, and for this reason, did not attend the inquest. Verizon was subsequently able to obtain a copy of the case record card from the small claims court, which reflects the inquest proceedings, the relief requested and the relief awarded.

[4] This is the total of all amounts Claimant paid on his monthly bills; additionally, Claimant paid an initial $20.00 when he opened the account on December 8, 2016. So at most, Claimant paid Verizon only $397.54—hundreds of dollars less than the $698 he was awarded in damages by the small claims court in the default judgment.

two disputes to Verizon via an Automated Consumer Dispute Verification ("ACDV") — on October 10 and 11, 2018. This was two months *before* Claimant obtained his default small claims judgment in December 2018. Thus, Verizon's reasonable investigation revealed that the $176.11 reporting was based on a valid final bill that Claimant had never paid.

**Finally**, as discussed more fully below, Claimant's FDCPA claim—to the extent he purports to assert one—is barred as a matter of law because Verizon is a direct creditor, not a debt collector under the statute, and thus cannot be held liable on an FDCPA claim for any debt collection activity.

Accordingly, Claimant should take nothing by way of this Arbitration.

## II. RELEVANT FACTS

### A. Claimant's Opening of the Account and Assent to the Customer Agreement

On or about December 8, 2016, at a Verizon retail location located at 100 Wall Street, New York, NY, Claimant opened a Verizon Wireless Home Phone Unlimited Plan ("Account"). The Account was initially associated with a phone number ending in 6897, but Plaintiff ported-in the phone number ending in 4656 to the Account the next month. *See* Respondent's Exh. 4. In opening the Account and signing the receipt at the point of sale, Claimant accepted all of the terms of the Agreement: "I agree to the Verizon Wireless Customer Agreement including an early termination fee of up to $350 per line" and "settlement of disputes by arbitration instead of jury trial." Respondent's Exh. 4-2.

The Agreement is clear that if a customer terminates his or her service early, an early termination fee will apply:

> **What happens if my Postpay Service is canceled before the end of my contract term?**
>
> **... If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an early termination fee. If your contract term results from your purchase of an advanced device, your early termination fee will be $350, which will decline by $10 per month upon completion of months 7–17, $20 per month upon completion of months 18–22, $60 upon completion of month 23 and will be $0 upon completion of the contract term. For other contract terms entered into on or after November 14, 2014, your early termination fee will be $175, which will decline by $5 per month upon completion of months 7–17, $10 per month upon completion of months 18–22, $30 upon completion of month 23 and will be $0 upon completion of your contract term. If you cancel service, you may have to immediately pay off the remaining balance on any device agreement. Cancellations will**

> **become effective on the last day of that month's billing cycle,
> and you are responsible for all charges incurred until then.**

Respondent's Exh. 5-2 (emphasis in original). Similarly, the Agreement states in relevant part
that Verizon's liability for defective service is limited to service credits:

> **What are my rights for dropped calls or interrupted Service?**
>
> If you drop a call in your Coverage Area, redial. If it's answered
> within 5 minutes, call us within 90 days if you're a Postpay
> customer, or within 45 days if you're a Prepaid customer, and we'll
> give you a 1–minute airtime credit. If you're a Postpay customer
> and you lose Service in your Coverage Area for more than 24
> hours in a row and we're at fault, call us within 180 days and we'll
> give you a credit for the time lost. **Please be aware that these are
> your only rights for dropped calls or interrupted Service.**

Respondent's Exh. 5-2 (emphasis in original).

Moreover, the Agreement states that it is the sole agreement between the parties and
cannot be overridden by any oral representation:

> **This agreement and the documents it incorporates form the
> entire agreement between us. You can't rely on any other
> documents, or on what's said by any Sales or Customer Service
> Representatives, and you have no other rights regarding
> Service or this agreement.**

Respondent's Exh. 5-9 (emphasis in original). The Agreement also expressly
limits liability for both parties:

> **You and Verizon both agree to limit claims against each other
> solely to direct damages. That means neither of us will claim
> any damages that are indirect, special, consequential,
> incidental, treble or punitive. For example, disallowed damages
> include those arising out of a Service or device failure,
> unauthorized access or changes to your account or device, or
> the use of your account or device to access or make changes to
> an account with another entity, such as a financial entity,
> without authorization. This limitation and waiver will apply
> regardless of the theory of liability.**

Respondent's Exh. 5-7 (emphasis in original).

Finally, the Agreement specifically authorizes collection attempts by
Verizon or other parties:

You consent to allow Verizon and anyone who collects on our
behalf to contact you about your account status, including past due
or current charges, using prerecorded calls, email and calls or
messages delivered by an automatic telephone dialing system to
any wireless phone number, other contact number or email address
you provide.

Respondent's Exh. 5-2.

### B. Claimant's Service, Billing and Termination of His Account

On or about December 7, 2016, Claimant received his first bill, which included $20.00 in
monthly charges and a $40.00 activation fee. *See* Respondent's Exh. 6-3. At the evidentiary
hearing, Claimant testified that a Verizon representative told him that his activation fee and
related taxes would be waived. As Verizon's witness testified, and as the Account Notes
establish, this is false. Respondent's Exh. 7-14.

The following month, Claimant ported-in the phone number ending in 4656 to his
Account. *See* Respondent's Exh. 6-3. That same month, and again in July and September 2017,
Claimant was given adjustments for dropped calls and/or interrupted service. *See e.g.*
Respondent's Exh. 6-186 (credit adjustment for $13.88 on July 2017 bill); Exh. 6-238 (credit
adjustment for $12.11 on bill for September 2017).

On or about December 27, 2017, Claimant terminated his Verizon service and closed his
Account, porting his line out to AT&T. *See* Respondent's Exh. 7-4. Claimant's December bill
reflects an early termination fee of $145, along with taxes and fees of $31.11, for a total
outstanding bill of $176.11. *See* Respondent's Exh. 6-321. There is no indication in the Account
Notes that Claimant ever contacted Verizon to request that the early termination fee be waived.
*See* Respondent's Exh. 7-4.

At the evidentiary hearing, Claimant referenced two telephone calls reflected in his
December 2017 bill and falsely claimed that it was during these calls that Verizon promised to
waive the early termination fee and taxes. *See* Respondent's Exh. 6-335 (22 minute call to 866-
895-1009); 6-336 (40 minute call to 866-895-1009). However, those calls were to AT&T as
established at the hearing, to which he transferred his phone service, not to Verizon.

### C. Claimant's Continued Refusal to Pay His Final Bill and Submission of Two ACDVs

Verizon continued to send Claimant bills for the unpaid early termination fee and taxes of
$176.11 every month from January through May 2018 (*see* Respondent's Exh. 6-347 to 6-352).
However, it was not until June 28, 2018 that Claimant disputed the bill. *See* Respondent's Exh.
7-3 ("cust[omer] disputing bill, advised cust[omer] charges are for ETF [early termination
fee].").

Claimant then let four additional months pass before he submitted two ACDVs—on October 10 and 11, 2018. The first ACDV submitted on October 10, 2018 included "no details." Respondent's Exh. 7-2. The second ACDV submitted the following day stated that Claimant "made a 2 year contract" but that "after about a month of usage," he "started experiencing trouble with the service." *Id.* In response, Verizon verified that the Account information being reported "matches what we have on file," affirmed that the Account as an "unpaid collections account," and added a dispute indicator. *Id.*

Claimant continued to refuse to pay the debt. For example, the Account Notes entry for December 13, 2018 indicates that Claimant "refused to pay [his final] bill." Respondent's Exh. 7-1 to 7-2.

### D. Claimant's Small Claims Court Action and Judgment

Unbeknownst to Verizon, which was never served with any summons or complaint, on or about October 26, 2018, Claimant filed an action in the Civil Court for the City of New York, Small Claims, titled *Herskovic v. Verizon Wireless*, Case. No. 37766/18. *See* Respondent's Exh. 9. An inquest was held on December 4, 2018 at which Verizon did not appear. *Id.* The Inquest Case Card indicates that the claim was for $2,500 for "defective services rendered ... on 2/01/2017." *Id.* Because Verizon did not appear in the action, a default judgment was entered against it for damages in the amount of $698.00 with $20.00 in costs. *Id.* and Respondent's Exh. 8.

On December 17, 2018, Claimant faxed a Notice of Judgment to Verizon, reflecting a total judgment of $718.00. *See* Respondent's Exh. 8. There is nothing in the Notice of Judgment, nor the Court's Inquest Notes that suggests the parties' Agreement was rescinded or that Plaintiff did not continue to owe the $176.11 outstanding balance on his Account.

### E. Verizon's Payment of the Judgment and Claimant's New Lawsuit

On or about January 8, 2019, a Verizon representative spoke with Claimant and noted that he received a "judgment against Verizon for $718.00." The representative requested that a check be remitted to Claimant "in that amount." The representative had asked Claimant whether he wished to have his charged off balance of $176.11 deducted from the judgment check; however, Claimant demanded a check for the full amount and told the Verizon representative that he would resolve "that matter in a 'different' way." Respondent's Exh. 7-1.

On March 28, 2019, Plaintiff filed a second action in the New York Supreme Court for the County of King alleging breach of contract and what appeared to be a claim based on the FCRA, requesting $30,000 in damages. *See* Respondent's Exh. 1. The case was removed to federal court, where it is currently pending as *Herskovic v. Verizon Wireless*, E.D.N.Y. Case No. 1:2019-cv-03372 ("Federal Action"). On or about November 29, 2021, Plaintiff filed an Amended Complaint in both the Federal Action and this arbitration. The Amended Complaint contains two causes of action—for what appears to be violation of the FCRA and possibly the FDCPA. *See* Respondent's Exh. 2.

## III.   LEGAL ARGUMENT

### A.  Claimant's Breach of Contract Claim Fails

As a preliminary matter, Claimant's assertion that the Agreement was somehow "rescinded" by the Small Claims Court is meritless.  Under New York law, a contracting party may elect to seek rescission in equity or damages at law.  *Vitale v. Coyne Realty, Inc.*, 66 A.D.2d 562, 568, 414 N.Y.S.2d 388, 393 (1979).  "A claim for rescission, as opposed to a claim for breach of contract, seeks to 'restore the parties to status quo,' as if the parties had never entered into the contract."  *Unger v. Ganci*, 200 A.D.3d 1604, 161 N.Y.S.3d 546, 549 (2021) (internal quotation marks omitted).  Rescission "is appropriate only where, among other things, the status quo can be 'substantially restored.'"  *Id.*  Where, as here, performance under the contract precludes a return to the status quo, rescission is unavailable, and money damages are the appropriate remedy for an alleged breach.  *Id.* (trial court erred in granting rescission because "'the assimilation of plaintiff's company [into defendant's business is] complete,' and events have rendered the status quo practically impossible to recreate").

Here, the Agreement was for wireless home phone services, which Verizon provided to Claimant for a year, and which Claimant used on a daily basis as evidenced by the monthly billing statements.  *See* Respondents' Exh. 6.  In fact, in a span of just one month from January to February 2017, Claimant used Verizon's phone service over one thousand times.  Respondents' Exh. 6-31 to 55.  Moreover, there is no indication in the Small Claims records or judgment that Claimant sought—or was awarded—rescission.  Quite the opposite:  Claimant was awarded $698.00 to compensate him for purported "defective services rendered ... on 02-01-2017."  Respondent's Exh. 9.  The total Claimant paid on his Account under the Agreement was only $377.54.  *See* Respondent's Exh. 6.  Accordingly, the small claims judgment could not have been a rescission or refund.  Claimant's argument otherwise has not merit.

To the extent Plaintiff is attempting to bring a breach of contract claim for the $176.11 charge and its related credit reporting and collection, this claim is a non-starter.  "The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  *Maspeth Fed. Sav. & Loan Ass'n v. Yeshiva Kollel Tifereth Elizer*, 197 A.D.3d 1253, 1254, 153 N.Y.S.3d 580, 581 (2021) (internal quotation marks omitted).

Here, Claimant failed to pay his early termination fee under the Agreement, which Verizon was contractually authorized to charge and Claimant agreed to pay.  *See* Respondent's Exh. 5-2.  There is no evidence whatsoever—aside from Claimant's own self-serving testimony—that Verizon would have abrogated its own policies and offered to waive the fee and related taxes.  Such a waiver request would have required escalation to a supervisor and would have been noted in the Account Notes.  The Account Notes, however, contain no notation regarding any waiver.  In fact, Claimant previously attempted to argue that Verizon also agreed to waive activation fees and taxes, which was also false.  *See* Respondent's Exh. 7-4, 7-14. Finally, although Claimant attempted to falsely testify that two calls noted in his December 2017

bill were the calls wherein he requested (and Verizon agreed to) waive the termination fee, those calls were not even made to Verizon, but rather to AT&T.

In short, given the evidence presented at the hearing, Claimant has failed to establish either that he complied with the Agreement, or that Verizon breached it in any way. Accordingly, Claimant's breach of contract claim fails.

## B. Claimant's FCRA Claim Fails

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205 (2007); *see also* 15 U.S.C. § 1681 (describing the purpose of the FCRA). As part of its regulatory scheme, the FCRA "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012).

Section 1681s–2(a) details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, *see* 15 U.S.C. § 1681s–2(a)(1), and to correct information discovered to be inaccurate, *see id.* § 1681s–2(a)(2). However, the FCRA does ***not*** provide a private cause of action for violations of §1681s–2(a). *See* 15 U.S.C. § 1682s–2(d); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]he statute plainly restricts enforcement of [15 U.S.C. § 1681s–2(a)] to federal and state authorities.").

The ***only*** private right of action in the FCRA against furnishers like Verizon is under 15 U.S.C. § 1681s-2(b), which "imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a [consumer reporting agency]." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2010). This notice of dispute, called an ACDV (automated consumer dispute verification), is electronically sent from a consumer reporting agency ("CRA") to a furnisher like Verizon with a dispute code and a dispute description. *See Selvam v. Experian Info. Sols., Inc.*, No. 12 Civ. 1828 (DLI) (JO), 2015 WL 1321615, at *2 (E.D.N.Y. Mar. 24, 2015), *vacated on other grounds*, 651 F. App'x 29 (2d Cir. 2016) (summary order). "An ACDV is sent to the furnisher of the disputed information and asks the furnisher to verify, amend, or delete the reported information." *Id.*

To state a claim against a furnisher under § 1681s-2(b) of the FCRA, "a consumer must show that (1) a furnisher received notice of a credit dispute from a [credit reporting agency] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Ngambo v. Chase*, No. 20-CV-02224, 2020 WL 1940553, at *3 (S.D.N.Y. Apr. 22, 2020) (internal quotations and citation omitted); alterations in original). "The cornerstone of a claim under 15 U.S.C. § 1681s-2(b) is that the subject information was inaccurate; if the information was not inaccurate, there can be no FCRA violation." *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-02266 (PMH), 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022), citing *Lieberman v. Am. Express Co.*, No. 19-CV-6989 (BMC), 2020 WL 5517271, at *3 (E.D.N.Y. Sept. 14, 2020). *See also Mohnkern v. Equifax Info. Servs., LLC*, No. 19-CV-6446L,

2021 WL 5239902, at *7 (W.D.N.Y. Nov. 10, 2021) ("Without a threshold showing of inaccuracy, it follows, … that plaintiffs cannot show that [defendant] violated section 1681s-2(b) by failing to either conduct a reasonable investigation of the disputed Debt or request that the CRA defendants delete the Debt from plaintiffs' credit reports."). To be "inaccurate" under the FCRA, the information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

In determining whether a furnisher of information has satisfied its obligations arising under 15 U.S.C. § 1681s-2(b), "courts have required a 'reasonable investigation' to determine whether disputed information can be verified." *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14CV5687SJFAKT, 2017 WL 1325369, at *6 (E.D.N.Y. Feb. 14, 2017), quoting *Amendoeira v. Monogram Credit Card Bank of Georgia*, No. 05-CV-4588, 2007 WL 2325080, at *1 (E.D.N.Y. Aug. 7, 2007). Therefore, furnishers of information satisfy their investigation obligations under the FCRA by "review[ing] information provided by the consumer reporting agency, investigat[ing], and report[ing] any inaccuracies to all consumer reporting agencies to which the furnishers provide information." *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005). The FCRA does *not* require that a furnisher of information delete a consumer's disputed account, but rather, "simply requires the furnisher of information to investigate and to report information from the investigation." *See Ritchie v. N. Leasing Sys., Inc.*, No. 12 Civ. 4992, 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016).

Here, as a threshold matter, Claimant concedes that he did not pay the $176.11 Account balance, which is the balance Verizon reported to the CRAs. Accordingly, there is no inaccuracy in Verizon's reporting, and hence, there can be no liability under the FCRA.

But further, Plaintiff submitted two ACDVs, both in October 2018. The first did not include any details regarding the dispute; the second stated that Claimant had "made a 2 year contract" but that "after about a month of usage," he "started experiencing trouble with the service." Respondent's Exh. 7-2. In response to the ACDVs, Verizon conducted a thorough investigation of Claimant's Account records and confirmed that he had an outstanding balance of $176.11, which Claimant admitted he never paid and which was being accurately reported to the CRAs. In particular, as Verizon's witness testified, Verizon reviewed Claimant's billing and payment records, as well as the Account Notes, which all confirmed that Claimant owed a final, unpaid bill of $176.11. *See* Respondent's Exhs. 6-7.

Moreover, after conducting its investigation of Claimant's disputes, Verizon added a dispute indicator to the reporting. Therefore, Verizon fully complied with the FCRA. It bears noting that Claimant submitted his ACDVs two months *before* he received his default small claims court judgment on December 4, 2018. Thus, even if the Court had somehow "rescinded" the Agreement—which it did not—this would have no bearing whatsoever on Verizon's compliance with the FCRA. Significantly, Verizon did not receive any ACDVs after the small claims court entered its judgment on December 4, 2018. *See* Respondent's Exh. 7.

The evidence presented at the hearing establishes that Verizon's reporting was accurate in the first instance, and that Verizon conducted a reasonable investigation based on the information

provided by Claimant in the two October 2018 ACDVs, and timely reported the results of its investigation (including Claimant's dispute) to the CRAs. Accordingly, Verizon has no liability under the FCRA.

### C. Claimant's FDCPA Claim Fails

Congress enacted the FDCPA after finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many ***debt collectors***." 15 U.S.C. § 1692(a) (emphasis added). Accordingly, the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors." *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed.Appx. 89, 93 (2d Cir. 2012) (citations omitted); *see* 15 U.S.C. §§ 1692d–1692f. "To that end, [the FDCPA] regulates debt collectors' tactics and, *inter alia*, creates a private cause of action for victims of oppressive or offensive collection agency behavior." *Chiang v. Verizon New Eng. Inc.,* 595 F.3d 26, 41 (1st Cir. 2010) (citation and internal quotation omitted). "In order to prevail on an FDCPA claim, a plaintiff must prove that (1) he was the object of collection activity arising from consumer debt, (2) the defendant ***is a debt collector*** within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 158 (D. Me. 2011) (citation and internal quotation omitted) (emphasis added).

The FDCPA ***only*** applies to statutorily defined "debt collectors." 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses ... interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed ... or ***due another***") (emphasis added). "The term 'debt collector' ... does not include ... (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which ***was originated by*** such person." 15 U.S.C. § 1692a(6)(F) (emphasis added). Thus, creditors attempting to collect their own debts are not "debt collectors" under the FDCPA and are excluded from its coverage. *See Shieh v. Flushing Branch, Chase Bank USA, N.A.*, No. 11–civ–5505, 2012 WL 2678932, at *7–8 (E.D.N.Y. July 6, 2012) (dismissing FDCPA claim against bank, the original creditor, because "Chase, as [plaintiff's] former creditor, [was] exempted from the FDCPA" and there was "no allegation that it attempted to collect the debt under a false name"); *Torres v. Baum*, No. 10–civ–1385, 2011 WL 2532945, at *7 (N.D.N.Y. June 24, 2011) ("[F]urther disqualifying Chase Bank N.A. as a possible debt collector under our facts is its obvious status as a former creditor"); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y.2007) ("Since the Bank was not collecting the debt 'of another,' it is not a proper defendant under the FDCPA.").

In fact, in *Perez v. Experian*, No. 20CV9119PAEJLC, 2021 WL 4784280 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted*, No. 20CIV9119PAEJLC, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021), the court held that Verizon was not a "debt collector" subject to the FDCPA:

> Similarly, Verizon is not a "debt collector" as [Plaintiff's] pleadings, if anything, establish that it extends credit, thus creating a debt. *See Vallecastro*, 2014 WL 7185513, at *3; *Mazzei v.*

*Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004)
("Creditors are generally not considered debt collectors under the
FDCPA.") (citing 15 U.S.C. § 1692a(6)(F)). [Plaintiff] instead
alleges that Verizon "hire[s] debt collection companies like
Sequium." Pl. Opp. at 13. Further, [Plaintiff] does not allege that
Verizon used the name of a third party in connection with his debt
so as to fall within the narrow category of "creditors" who are also
considered "debt collectors." *Scalercio-Isenberg v. Citizens Fin.
Grp., Inc.*, No. 18-CV-9226 (JGK), 2019 WL 7187247, at *8
(S.D.N.Y. Dec. 26, 2019) (creditors only subjected to the FDCPA
if they use third party name to collect debts). Because Verizon is a
"creditor" who hires a debt collection company seeking to collect
its debts, [Plaintiff] has failed to allege that Verizon is a "debt
collector" within the meaning of the FDCPA. *See Houck v. U.S.
Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x
662, 664 (2d Cir. 2017) (affirming dismissal against creditor under
FDCPA).

*Id.* at *13. *See also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 30 (1st Cir. 2010)
("We also affirm entry of summary judgment on Plaintiff's FDCPA claim because there is no
material dispute of fact that Verizon NE is not a debt collector.").

Furthermore, creditors "cannot be held responsible for the actions of any other entity
merely based on vicarious liability." *Schuh v. Druckman & Sinel, LLP*, 602 F. Supp. 2d 454, 463
(S.D.N.Y. 2009); *see also Kolari v. New York–Presbyterian Hosp. (Kolari I)*, 382 F. Supp. 2d
562, 573 (E.D.N.Y. 2005) ("[A] creditor that is not itself a debt collector is not vicariously liable
for the actions of a debt collector it has engaged to collect its debts."), *vacated in part*, 455 F.3d
118. The rationale for treating debt collectors differently than creditors is that "debt collectors,
unlike creditors, are not constrained in their actions by the risk that a negative reputation
regarding debt collection practices might threaten their continued access to new borrowers."
*Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 528 n. 6 (S.D.N.Y. 2008) (citation omitted).

Here, Claimant complains that he received collection letters regarding the $176.11 debt
from outside debt collectors, including Diversified Consultants, Inc. (*see* Claimant's Exh. D) and
Convergent Outsourcing, Inc. (*see* Claimant's Exh. G). However, as Verizon's witness
established at the evidentiary hearing, these are third-party independent outside collection
agencies retained by Verizon. Verizon does not own, control or manage either of these entities,
nor does Verizon direct the collection activities of these entities. Because Verizon is Claimant's
original creditor, Verizon is exempt from the FDCPA.

Moreover, even if Verizon could be held liable under the FDCPA (which it cannot), there
was nothing harassing about the letters sent by these third-party collection agencies attempting to
collect the legitimate outstanding balance on Claimant's Account. *See, e.g.,* Claimant's Exh. G
(offering to settle $176.11 debt for $155.85). In fact, Claimant testified that the collection

activity ceased when he requested the collection agencies to stop contacting him.[5]  Accordingly, there can be no claim against Verizon under the FDCPA.

### D. Claimant Has Failed to Establish Any Damages

Even if Claimant were to succeed substantively on any of his claims (which he cannot), Claimant has not established any recoverable damages, much less $30,000 in recoverable damages sought in the Arbitration Demand.  As a preliminary matter, the parties' Agreement expressly limits Claimant's recovery to "direct damages" and precludes "any damages that are indirect, special, consequential, incidental, treble or punitive." Respondent's Exh. 5-7.  Such "contractual limitations on liability are generally enforceable." *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 170 A.D.3d 468, 472, 96 N.Y.S.3d 173, 176 (2019); *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 77 A.D.3d 431, 433, 908 N.Y.S.2d 654, 656 (2010), aff'd as modified, 18 N.Y.3d 675, 967 N.E.2d 666 (2012).  Accordingly, to the extent that Plaintiff's claimed emotional distress and credit denial damages are "consequential" or "special" or "indirect," they are barred by this contractual limitation of liability clause.[6]

Moreover, Claimant has failed to submit sufficient evidence to support his alleged damages.  First, although Claimant contends that he was denied credit based on Verizon's reporting of the $176.11 outstanding debt, none of the credit denials Claimant introduced into evidence identifies this reporting as the reason for the denial.  For example, Claimant's Exhibit L—a credit denial from Bank of America dated November 11, 2021—provides no reason at all for the denial.  Similarly, Claimant's Exhibit N-1, a credit denial from Barclay's Bank dated October 9, 2018, states that the only reason for the denial is excessive credit applications—not any delinquency.

---

[5] The fact that Verizon sent Claimant's debt to more than one collection agency is immaterial.  The FDCPA applies only to "debt collectors," and does not regulate the conduct of creditors, like Verizon.  Moreover, the FDCPA contemplates debt collection by successive debt collectors.  *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1081 (9th Cir. 2016) ("[T]he FDCPA unambiguously requires any debt collector—first or subsequent— to send a § 1692g(a) validation notice within five days of its first communication with a consumer in connection with the collection of any debt."); *Tocco v. Real Time Resols., Inc.*, 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014) (holding that "a debt collector must send a validation notice under section 1692g(a) even if a prior debt collector already sent a notice regarding the same debt").  Nonetheless, Verizon's policy is to not send an account to more than one collection agency if a written cease and desist request is received by either Verizon itself, or by the collection agency.  See 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt collector **in writing** that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.") (emphasis added).  Here, Claimant continued to contact Verizon. *See, e.g.,* Respondent's Exh. 7-1  Regardless, all collection activity stopped by the end of 2018.

[6] Damages can be direct/general or consequential/special.  Direct/general damages "are the natural and probable consequence of the breach" of a contract and include "money that the breaching party agreed to pay under the contract." *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805, 988 N.Y.S.2d 527, 11 N.E.3d 676 (2014) (citations omitted).  "By contrast, consequential, or special, damages do not directly flow from the breach." *Id. See Paciocco v. Acker*, 121 Misc. 2d 342, 344, 467 N.Y.S.2d 548, 550 (Sup. Ct. 1983) (treating "consequential damages" as "including emotional distress" on breach of contract claim against physician).

Likewise, Claimant's Exhibits M and N are credit card denials that cite a multiplicity of reasons for the denials, including the ratio of balances to credit limits and the length of time Claimant's accounts have been established. Moreover, Claimant has offered no evidence or testimony to establish that he suffered any direct monetary loss as a result of the alleged credit denials. Accordingly, Claimant's damages remain speculative. *Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 804, 533 N.E.2d 1055, 1055 (1988) (damages that are "inherently speculative" are not "compensable"). Indeed, Claimant admitted that he has multiple active credit cards he uses, and that no creditor reduced or increased the cost of credit due to Verizon's reporting of the Account.[7]

Further, Claimant has also failed to support his claimed emotional distress damages with sufficient evidence. For example, Plaintiff admitted at the hearing that he never saw a healthcare professional, nor took any prescribed medications for his alleged emotional distress. Claimant's emotional distress damages are based on nothing more than his vague testimony that the credit reporting and attempted collection of the $176.11 debt caused him annoyance. Yet, Claimant admits that he refused to pay that $176.11. In any event, Claimant admits that all collection activity stopped as of January 2019.

Finally, Claimant failed to mitigate his damages by refusing to have the $176.11 he owed Verizon deducted from his small claims court judgment. As the Account Notes indicate, Claimant informed Verizon in December 2018 that he would resolve the issue "another way," which was the filing of this lawsuit. *See, e.g.,* Claimant's Exhs. L (November 22, 2021) and M (March 2, 2021). Thus, the evidence does not support Claimant's damages.

## IV.   CONCLUSION

For all the foregoing reasons, Verizon respectfully requests that the Arbitrator enter an award in Verizon's favor, and that Claimant take nothing by way of his Arbitration.

Sincerely,

*/s/Jordan S. Yu*

Jordan S. Yu

---

[7] Both the FCRA and FDCPA permit recovery of actual damages and statutory damages, but they both cap the recovery of statutory damages at $1,000. *See* 15 U.S.C.A. § 1681n(a) (permitting recovery of actual damages "**or** damages of not less than $100 and not more than $1,000" for willful violation of the FCRA) (emphasis added); 15 U.S.C.A. § 1681o(a) (permitting recovery of actual damages, but not statutory damages, for negligent violation of FCRA); 15 U.S.C. § 1692k (permitting statutory damages "not exceeding $1,000").

Respondent's Exhibit 9

C: HERSKOVIC, YEHUDA

SCK 3766/2018

TRIAL:12 04-2018

D: VERIZON WIRELESS,

REQUEST
DEC 04 2019

$25000.00 (DEFS)DEFECTIVE SERVICES RENDERED. 02 01-2017 ON 02 01-2017

DECISION:

# CIVIL COURT OF THE CITY OF NEW YORK
## SMALL CLAIMS PART — CASE RECORD CARD

County of _Kings_

SC # _3766/18_

### I. INQUEST

Having been designated by the Court as the Referee in this case, to hear and report my findings, and after having examined the Claimant's proof, I, _Natasha Shisha_ , do hereby find and recommend:

Claimant is entitled to recover from the Defendant the sum of $ _698_ with interest from: _____  ☐ Dismissed

Date _____  Referee _Natan m____

The above report is approved, and the clerk is directed to enter judgment accordingly.

Date _____  J.C.C _____

_Hon. _____ Montalbano_
_Judge, Civil Court_

☐
### II. A. CONSENT TO ARBITRATION

WE WERE INFORMED THAT THE ARBITRATION AWARD IS FINAL AND THAT NO APPEAL IS PERMITTED.

Our consent is given to submit this controversy to _____ , as Arbitrator.

Claimant in Person _____

Attorney for Claimant _____
(Sign above and Print Name and Address on reverse side)

Defendant in Person _____

Attorney for Defendant _____
(Sign above and Print Name and Address on reverse side)

### II. B. ARBITRATOR'S FINDING AND AWARD

I, the Arbitrator designated to hear and determine this case, having heard the disputants, make this finding:

☐ Award in favor of Claimant $_____ with interest from: _____ .
☐ Claim Dismissed. No monetary award.
☐ Conditional award: _____
☐ Settled as per stipulation.

Date _____  ARBITRATOR _____

CIV-SC-90 (Revised 5/93)

Respondent's Exhibit 9

# Exhibit O

From:       Yehuda Herskovic
            225 Ross Street
            Brooklyn, NY 11211

To:         Hon. Michael D. Blechman
            Arbitrator
            American Arbitration Association

In Re: Yehuda Herskovic v. Verizon Wireless

June 23, 2022

## Briefing Post Evidentiary Hearing

Yehuda Herskovic submits the following as his briefing post the evidentiary hearing:

## Claimant's Claim

1.      This lawsuit arises out of an injury that Respondent caused after Claimant obtained a judgment in the Small Claims Court of Kings County against Respondent.

2.      On or about December 6, 2016, Claimant purchased a home device from Verizon Wireless and Cellco Partnership under the phone number 718.387.4565 that would allow making phone calls through the internet.

3.      The services were for a "Wireless Home Phone Unlimited" with a $20.00 monthly charge for unlimited phone calls. RESPONDENT'S EXHIBIT 6-3.

4.      After finding the home device defective due to frequent dropped calls, Claimant submits that Respondent was unable to cure the defective service, and the services were rescinded.

5.      On or about December 27, 2017, the services between Respondent and Claimant were rescinded. Claimant submits that a representative for Respondent conveyed to him that it would issue a refund and will not be charged a termination fee.

6.      On or about January 30, 2018, Respondent issued an invoice to Claimant charging an "early termination fee" along with other surcharges in the total amount of $176.11. In evidence, Claimant's Exhibit A is a true copy of the invoice that Claimant received.

7.    Because Respondent failed to refund the money paid and continued charging a termination fee, Claimant sued Respondent in Small Claims Court of King County under the caption Yehuda Herskovic v. Verizon Wireless, Index No. 3766/18. The lawsuit was filed February 7, 2018. The basis for the lawsuit sought a refund of all payments for the rescinded services.

8.    On December 4, 2018, the Small Claims Court awarded judgment in his favor for $718.00. In evidence, Claimant submitted Exhibit B a true copy of the judgment from the Small Claims Court.

9.    On January 9, 2019, Respondent duly satisfied the judgment in full. In evidence, Claimant submitted Exhibit C a true copy of the paystub of the check that he received from Respondent, which state in the Description that the payment is a "Customer Refund".

10.    The issue in this case is that starting about August 2018 to the present, Respondent has been reporting on Claimant's credit report a "charge off" of $176, representing the early termination fee. In evidence Claimant submitted Exhibit I, J, and K, true copies of copies of his credit reports, which show the only negative reporting is from Respondent.

11.    This report has been repeated monthly with all three credit bureaus and every time that Claimant disputed the alleged debt with the credit bureaus, Respondent has been insisting that the debt is valid. Indeed, at the evidentiary hearing, Claimant has insisted that the debt is valid and contended that the furnishing on Claimant's credit report is accurate.

12.    Claimant submits that Respondent's negative report is false because the services has been rescinded and should have never been charged an early termination fee. A recission leaves the parties with the position as if there was no contract and with no contract there is no basis for the early termination fee.

13.    Most important, Respondent's negative report is false because Claimant prevailed in Small Claims Court upholding the rescission awarding a refund of all monies paid.

14.    After Respondent satisfied the judgment, Respondent is now barred by collateral estoppel and transactional res judicata from claiming that Claimant still owed them any money.

15.    At all relevant times, it is undisputed that Respondent had agreed to abide by the judgment by the Small Claims Court and the

contention that Claimant owe them $176.11 was either waived or foreclosed as a matter of law.

16. By accepting the judgment of the Small Claims Court, Respondent agreed to an accord and satisfaction that the judgment for $718 settles all controversies between the parties arising from the transaction regarding the defective home device.

17. Moreover, by virtue of the judgment of the Small Claims Court, Respondent was bound by the rescission of the contract and there can be no termination of the contract, when the contract is rescinded. Since a recission leaves the parties in a position as if there was never a contract.

18. Claimant requests an award of declaratory and injunctive relief, that Respondent is collaterally estopped from pursuing any claim arising from the home device, including any claim for $176.11.

19. Claimant also requests an award that Respondent has no legitimate basis for publishing a negative tradeline on Claimant's credit report.

20. As Exhibit I, J, and K, which are true copies of Claimant credit reports shows, except for Respondent's false report, Claimant has an unblemished credit report with a credit score in the mid 700s.

21. As a direct result of Respondent's negative report, Claimant submits to have repeatedly been denied credit. Claimant submitted Exhibit L, M, N, and N1, true copies of instances where Claimant was denied credit to "serious delinquencies" all while the only delinquency was the negative reporting from Respondent.

22. As a direct result of Respondent's negative report, Claimant submits to have suffered actual damages and emotional distress. The actual damages arise from the fact that Claimant lives on social security and much of his income is supplemented by offering people to handle automobile registrations at the local motor vehicle agencies. A substantial part of the income involves using a credit card and receiving points or milage on the spendings. These points or milage are the equivalent of money, where Claimant is able to either convert the points into cash or spend it on personal expenses. Claimant submitted Exhibit O, P, Q, R, S, and T, true copies of billing statements showing the bulk of charges are made by motor vehicle agencies, ranging in monthly transactions from $10,000 to $51,000. Each dollar is the equivalent of at

least one point.

23. Because of the negative reporting of Respondent, Claimant submits to have been repeatedly denied credit where he could have received for the same transaction a minimum of 2 to 5 points per dollar. This is a substantial loss of income over the past two and half years of over a million points, the equivalent of at least 1 to 2 cents per points, ranging from $10,000 to $20,000.

24. Although Respondent views Claimant's income of credit card points in a negative light, Claimant submits that it is his livelihood and is necessary to keep himself occupied while living solely on social security.

25. In addition, every single day Claimant has been going through the emotional toll the loss of these points is causing, when in fact, if not for Respondent's negative reporting, Claimant submits that he could have been enjoying far more credit card points.

26. Furthermore, every single time that Claimant could have received a new credit card, Claimant lost out on the thousands of bonuses points that credit card providers offer for new accounts.

27. Respondent submits that upon learning of the judgment they wanted to offset the $176.11 and Claimant refused. Respondent did not go to the Small Claims Court to argue for that offset and instead paid the judgment in full. Claimant submits that Respondent knew of the judgment and the basis of the judgment on January 7, 2019, at the time they issued payment of "Customer Refund".

28. After prevailing in Small Claims Court, Respondent pursued a game of harassing Claimant.

29. As shown in Exhibit B, on December 4, 2018, Claimant obtained judgment from the Small Claims Court.

30. On December 7, 2018, Respondent utilized a debt collector with the name Diversified Consultants Inc. to issue a dunning letter falsely purporting that Claimant owes $176.11 plus $31.69 in interest in the total amount of $207.80. Claimant submitted Exhibit D, a true copy of the collection letter delegated from Respondent.

31. This collection letter was false and deceptive for a number of reasons. First, Respondent had no legal basis for charging Claimant interest on the termination fee. Respondent has been unable to explain the basis for sending debt collectors to Claimant seeking compounded

interest on a disputed termination fee. Second, the $31.69 violated the usury statutes of the State of New York. The General Obligations Law voids obligations that charge above the civil usury rate of 16%. Third, Respondent caused a debt collector to harass Claimant by falsely misrepresenting the amount of the debt, in violation of 15 USC § 1692e(2)(a). Fourth, the judgment of the Small Claims Court and the satisfaction thereof foreclosed the claim that Claimant owed Respondent any money.

32. Claimant duly disputed the false debt with Diversified Consultants Inc. Respondent was unable to verify the debt with Diversified Consultants Inc. and the tradeline was returned to Respondent.

33. On June 14, 2019, Respondent utilized a debt collector with the name Convergent Outsourcing Inc. to send Claimant a dunning letter to falsely state that he owes $176.11 plus $31.69 in interest in the total amount of $207.80. Claimant submitted Exhibit G a true copy of the collection letter delegated from Respondent.

34. Claimant duly disputed the false debt with Convergent Outsourcing Inc. Yet, despite having prevailed with a judgment on the entirety of the transaction and despite having Claimant's dispute honored by independent debt collectors, Respondent had continued the negative reporting on Claimant's credit report, causing Claimant the damages as outlined earlier.

35. Despite having debt collectors return the tradeline to Respondent as an illegal collection, Respondent continues injuring Claimant with a false and negative tradeline on his credit report. Three years has already passed, and Respondent still maintains the negative tradeline on Claimant's credit report.

36. Respondent has a habit of alternating debt collectors after a debt is marked as disputed to harass the consumer and illegitimately force the consumer to either repeat the dispute process, give up on the dispute, or extort payment for the disputed debt. At the hearing Respondent admitted that the FDCPA does not apply to original creditor, it only applies to a debt collector, and thus they are able to alternate debt collectors and force the consumer to repeat disputing the debt. This is harassment.

37. Furthermore, this harassment by Respondent is by design. They have a "recovery" team to dun consumers with malicious charges

as a "termination fee" in retaliation for leaving Respondent to another utility provider. The malicious charge offs imposed by Respondent against consumers is by design, even when the debt cannot be substantiated, to create an obstacle for the consumer to obtain utility services with another provider. The negative results are that a successive utility provider will demand a substantial security deposit from the consumer, because Respondent has reported on the consumer's credit report the termination fee.

38. Respondent abuses the credit report system knowing that consumers have a limited recourse, given that Congress has enacted the Fair Credit Reporting Act to refocus all causes of action on where a report constitutes accurate reporting. As a direct result, Claimant was unable to ask the Small Claims Court to enjoin Respondent from further harassing him.

39. It is upon this history of abuse Respondent willfully tarnished his credit report—despite that the judgment of the Small Claims Court foreclosed Respondent's claim for $176—and punitive damages are warranted.

40. As a direct result, each separate time that Respondent reported the false debt on Claimant's credit report from December 4, 2018 onwards constitute a separate willful violation of Claimant's rights under the FCRA. Claimant duly ask for punitive damages compounded by each separate negative report on Claimant's credit report.

41. Meaning, each month that Respondent made a negative report to the credit bureaus constitute a separate willful violation of the FCRA.

42. There is no other adequate remedy at law to correct Respondent's habit of extorting consumers through reporting false charges to the credit bureaus.

43. As Exhibit I, J, and K, true copies of Claimant's credit reports show that Respondent made the negative report separately to Experian and separately to TransUnion.

44. There has been a passing of 43 months since December 2018. They are 86 negative reports that Respondent made between Experian and TransUnion.

45. Respondent has known about the judgment as late as January 7, 2019. Respondent still did not remove the negative tradeline

from Claimant's credit report and thus did not even seek to mitigate the damages. Indeed, the payment stub, wherein Respondent paid Claimant to satisfy the judgment shows that that Respondent acknowledged that the judgment of the Small Claims Court was for a refund. At the evidentiary hearing, Respondent acknowledged that it made a business choice, instead of challenging the judgment it was satisfied.  Thus, Respondent is bound by the outcome of the judgment.

46.    Wherefore, Claimant requests an award in compensatory damages of $20,000 as damages afforded by law under 15 USCA 1681n(a)(1)(A) and General Business Law § 380-m for actual damages for willful noncompliance with the FCRA and actual damages for negligent noncompliance with the FCRA under 15 USCA 1681o(a)(1)(A) and General Business Law § 380-l.

47.    Claimant also requests an award of damages afforded by law as punitive damages under 15 USCA 1681n(a)(2) of $1,000 per false reporting to each credit bureau in the total amount of $86,000.

48.    Claimant also request that Respondent be ordered to immediately delete from Claimant's credit reports any negative reporting it has made.

49.    Claimant also request that Respondent be placed under the threat of a severe penalty that its continuous negative reporting of the tradeline on any of his credit reports be met with a $10,000 penalty per month for each report.

## Legal Argument

50.    The controversy in this case arises from a post judgment violation. This case does not arise from a breach of contract.

51.    To the extent that Respondent seeks affirmative relief that the termination fee is valid, under its Customer Agreement, Respondent had the opportunity to litigate the issue in the Small Claims Court.  In its Customer Agreement, Respondent provides that auxiliary to arbitration, they accept litigating claims in Small Claims Court. The judgment herein comes from the Small Claims Court.

52.    Under New York law, the transactional analysis approach to res judicata provides, that once a claim is brought to a final conclusion, all other claims between the same parties or those in privity with them arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.

Kleinman v Weisman Law Group, P.C., 176 AD3d 1046, 1047 [2d Dept 2019]. The transaction here has been fully decided, which involved the services of a home device, the doctrine of res judicata precludes the Respondent from relitigating the basis for the termination fee, as a judgment on the merits exist in the prior action between the same parties involving the same transaction. Kleinman v Weisman Law Group, P.C., 176 AD3d 1046, 1047 [2d Dept 2019]. Even if Respondent is to argue that the doctrine of res judicata only applies to claims and cannot bar affirmative defenses, affirmative defenses may be dismissed as barred by res judicata. Conway & Conway v Kaplan, 70 Misc 3d 1213(A) [Sup Ct 2021]. Res judicata applies to affirmative defenses, as well as all defenses and compulsory counterclaims that were, or could have been, raised in the prior matter. In re Ditech Holding Corp., 19-10412 (JLG), 2022 WL 1750997, at *13 [Bankr SDNY May 28, 2022].

53. In this sense of res judicata, the violation here arises from Respondent's failure to give credence to the judgment of the Small Claims Court and continuing reporting a termination fee that arose from the same series of transactions upon which Claimant obtained a refund. Regardless of whether the Small Claims Court involved a claim for recission, the claim in this action does NOT arise from the series of transactions covered under the Customer Agreement, because all claims and defenses arising from that series of transaction are now barred. Respondent has no legal basis for continuing furnishing on Claimant's credit report that the Claimant owes them $176.11, because that claim is barred by the judgment arising from the same series of transactions. This failure to abide by a valid judgment is a claim completely independent from the transactions that created that judgment. See CPLR 5101, 5104, 5210 (examples of methods to enforce a judgment).

54. Here, the violations of the FCRA are independent claims from the judgment of the debt that created the negative report; see Williams v Capital One Bank (USA) N.A., 785 Fed Appx 741, 745 [11th Cir 2019] (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 282, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). Also see Wilson v HSBC Bank, USA, 16-CV-8405 (NSR), 2018 WL 1449204, at *7 [SDNY Mar. 22, 2018].

55. Viewed in light most favorable to Respondent as the furnisher, the Respondent's duty to remove the tradeline from Claimant's credit report was conferred (according to the latest time possible—notwithstanding that the report was inaccurate from its inception), when

the judgment by the Small Claims Court was entered. At that point, the Respondent's endeavor to assert a claim against Claimant was barred by transactional res judicata. The FCRA regulates how the furnisher must correct or delete inaccurate information. A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violated FCRA. Gross v CitiMortgage, Inc., 33 F4th 1246, 1251 [9th Cir 2022]. The FCRA does allow for private civil causes of action against furnishers under limited circumstances, such as when a furnisher willfully or negligently fails to correct a credit reporting error after receiving notice of a dispute from a consumer reporting agency. See 15 U.S.C. §§ 1681n, 1681o, 1681s–2(b)–(d).Galper v JP Morgan Chase Bank, N.A., 802 F3d 437, 445 [2d Cir 2015]

56.    Moreover, Respondent is barred by the doctrine of collateral estoppel, which precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same. The doctrine of collateral estoppel applies here, as the issues in both actions are identical to the extent of determining whether the Claimant was entitled to a refund or owed money to Respondent, the issue in the prior action was actually litigated and decided, there was a full and fair opportunity to litigate the action, the issue previously litigated was necessary to support a valid and final judgment on the merits, and the Respondent had its time to litigate the validity of the termination fees. Kleinman v Weisman Law Group, P.C., 176 AD3d 1046, 1047 [2d Dept 2019]

57.    Respondent has not shown that its Customer Agreement continues for a claim of recission. Respondent has also not shown that its arbitration clause continues for controversies arising post judgment. The judgment of the Small Claims Court brought to an end any claims or defenses presented by the Customer Agreement.

58.    The propounded basis for arbitration arises from the contention the Respondent's Customer Agreement has an arbitration component. The Customer Agreement states that it applies only to an issue involving a service provided by Respondent ("By using the Service you are agreeing to every provision of this Agreement whether or not you have read it. This agreement also applies to anyone who uses your Service.").

59.    But the controversy in this case arises from a violation to

abide by a judgment by the Small Claims Court and continuing a negative tradeline on Claimant's credit report for a debt that is collaterally barred by the judgment of the Small Claims Court. The controversy in this case arises from a judgment; not a service. Claimant submits that the action in the Small Claims Court sought a recission on the transaction creating the Customer Agreement and seeking a full refund of all monies paid. Respondent satisfied that judgment as a Customer Refund. Respondent presented at the evidentiary hearing that upon learning of the judgment in the Small Claims Court it made a business decision to satisfy the judgment and issue a Customer Refund, rather than litigate it.

60. Instead, Respondent argues that upon learning of the judgment it offered Claimant to offset its termination fee from the judgment, which Claimant declined. Respondent submits that upon discussing the judgment with Claimant, there was a threat that Claimant will sue Respondent for its reporting of the $176.11 on his credit report. While Claimant denies having made any threats, the Respondent's argument underscores the fact that Respondent was aware of Claimant's dispute and made a conscious-willful choice to continue with the negative reporting even after knowing that such claim is precluded by the judgment.

61. Respondent keeps waiving its Exhibit 4 for the proposition that Claimant signed an arbitration agreement. Claimant submits that this is false. First, there is no mention of Yehuda Herskovic anywhere on that document to illustrate that the signature has any relationship with Claimant. Second, there is no evidence from the document itself that Yehuda Hesrkovic signed that document. Third, Respondent did not submit any extrinsic evidence showing that Claimant signed Exhibit 4. Fourth, Claimant disputed that this document is not his signature, does not look like his signature and Respondent did not produce a signature expert to assess whether the signature is of Claimant.

62. Respondent insists that despite the services were $20.00 monthly charge for unlimited phone calls and Claimant received a refund of approximately $12-13. But these refunds confirm that the Claimant faced an issue with Respondent's services. While it is nice that Respondent offered a partial refund, Respondent offers no logical reason why a consumer would hold onto a defective service, spend hours calling Respondent's customer service for a correction, and have to frequently call the provider to receive an inconsequential refund of $12-13. Claimant as the consumer needed and paid for a phone service, not for an

extracurricular activity of chasing Respondent's customer service. In fact, the Customer Agreement offers no compensation to a user who needs to spend hours chasing Respondent's customer service.

63.   Indeed, the Respondent insists that under the User Agreement the "only rights for dropped calls or interrupted Service" were to receive a penny refund for each dropped call. Respondent's Exhibit 5-5. In other words, a consumer facing dropped calls with Respondent has no meaningful remedy other than to suck it up. Claimant submits that it is precisely this experience why Claimant had no choice but to seek a recission and refund of the defective services.

64.   Moreover, Respondent insists that its Exhibit 7 is a true and complete record a recording of all the phone calls that Claimant had with Respondent.   Exhibit 7 on its face dispels that.  For instance, Respondent's Exhibit 7-8 shows that on 09/10/2017 "MDN 718-387-4565: TROUBLE SHOOTING WAS DONE TIER 2 TECH TRANSFER PHONE IS DROPPING SIGNAL INTERMITTENTLY, CLOSED BY PREV REP PREMATURELY" (emphasis added).

65.   The record of dropped calls continues on Respondent's Exhibit 7-7, shows that on "MDN 718-387-4565: DROPS CALLS. HAND SET SAYS NO SIGNAL AND DROPS CALLS. CUSTOMER IS NOT ABLE TO CHECK THE HOME PHONE DEVICE. HAVING HIM DIAL THE *228 TO PROGRAM THE HOME PHONE AND TO WATCH IT FOR DROPPED CALLS." Respondent's Exhibit 7-3 shows that on 06/28/2018 "***SUP   CALL***SPOKE   WITH   YEHUDA   DROPPED.... VROYALS/RECOVERY." Respondent's Exhibit 1-1 shows that on December 13, 2018 "MDN 718-387-4565:CCI CHECK DATES WHEN CALLING RE REDISPUTES OF BILL. CUST ASKED FOR DATES WHEN HE CALLED IN. ASKED TO KNOW WHAT WAS STATED ON THE REMARKS. INFORMED CUST I AM UNABLE TO GIVE HIM THAT INFO. CUST MAY WANT TO GO TO COURT BC HE HAD ISSUES IN PAST. CUST UPSET BC HE HAD DROPPED CALLS IN THE PAST. REFUSED TO PAY THE BILL. NEEDS REPRINT OF BILL. EDU CUST TO GET A REPRINT AT THE STORE."

66.   These quotes from Respondent's Exhibit 7 shows that Claimant did have an issue with Respondent's services due to frequent dropped calls. While Respondent thinks that a consumer faced with dropped call should continue a defective service, in the real world dropped calls in the middle of a conversation is extremely frustrating and

is not a what a consumer bargain for. Respondent cannot show that any consumer would want a defective service after having promoted itself as the "Most Reliable Network."

67.    Finally, under New York public policy, it is the public policy of this State, however, that a party may not insulate itself from damages caused by grossly negligent conduct. This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum. Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing. <u>Sommer v Fed. Signal Corp.</u>, 79 NY2d 540, 554 [1992], <u>Media Glow Digital, LLC v Panasonic Corp. of N. Am.</u>, 16 CIV. 7907 (JFK), 2018 WL 2175550, at *5 [SDNY May 11, 2018]. The Respondent cannot resort to its Customer Agreement as a shield against damages for willful misconduct. The FCRA under 15 USCA 1681o(a)(1)(A) and General Business Law § 380-l provides for damages for willful misconduct of making an inaccurate report on a consumer credit report. Respondent is foreclosed under <u>Sommer</u> from escaping liability for incidental and punitive the damages it caused.

## Conclusion

68.    Wherefore, Claimant requests an award, that Respondent is collaterally estopped from pursuing any claim arising from the home device, including any claim for $176.11.

69.    Wherefore, Claimant also requests an award that Respondent has no legitimate basis for publishing a negative tradeline on Claimant's credit report.

70.    Wherefore, Claimant requests an award in compensatory damages of $20,000 as damages afforded by law under 15 USCA 1681n(a)(1)(A) and General Business Law § 380-m for actual damages for willful noncompliance with the FCRA and actual damages for negligent noncompliance with the FCRA under 15 USCA 1681o(a)(1)(A) and General Business Law § 380-l.

71.    Wherefore Claimant also requests an award of damages afforded by law as punitive damages under 15 USCA 1681n(a)(2) and General Business Law § 380-l of $1,000 per false reporting to each credit bureau in the total amount of $86,000.

72.    Wherefore Claimant also request that Respondent be ordered to immediately delete from Claimant's credit reports any negative

reporting it has made.

73.     Wherefore Claimant also request that Respondent be placed under the threat of a severe penalty that its continuous negative reporting of the tradeline on any of his credit reports be met with a $10,000 penalty per month for each report.

Respectfully submitted,
Yehuda Herskovic, yhm1234@yahoo.com, **347 731 8818**