11/22/2022  ORIGINAL  RECEIVED NOV 22 2022 PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Yehuda Herskovic, plaintiff,

v.

Verizon Wireless also doing business as Cellco Partnership, Defendant.

Case EDNY 1-19-cv-03372-HG-RML

Reply in Support to vacate orders compelling arbitration, remanding the matter to State court, vacate or modify arbitration award, and/or for clarification that the limit on damages is null and void

Yehuda Herskovic states under the laws prohibiting perjury:

1. I state the following facts based on personal knowledge and familiarity of the record of this case.

2. I make the following reply to the opposition (ECF 75) to the motion to vacate and other relief filed by Defendant (ECF 73). Defendant raised a number of contentions that require a reply.

3. Most notably, Defendant has failed to contest the judgment merger rule. Defendant also concedes that the federal courts lack jurisdiction under the Rooker Feldman doctrines to hear any grievance to a judgment of a state Court tribunal by failing to address this issue. These issues undermine each contention raised by Defendant.

## Reply Regarding FRCP 60(b)

4. Defendant argues that FRCP 60(b) does not apply because there is no final judgment, the motion is untimely, the Arbitrator ruled that it has jurisdiction, that the arbitration clause survived the termination of services, and that this case does not seek to enforce the judgment. Each of these deceptive contentions require a reply.

A) The Court has the "Complete Power" to Consider the Motion

5. As for Defendant's argument that there is no final judgment, this argument does not comport with the 1946 Committee Notes to FRCP 60(b), which states "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule

Page 1

60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." In this sense, because the Court has the complete power for interlocutory orders "to afford such relief from them as justice requires" akin to FRCP 60(b), Plaintiff has properly invoked FRCP 60(b) to guide the Court with the applicable standard that there is a just basis to vacate the orders compelling arbitration.

6. In addition, Defendant does not address the fact that FRCP 60(b) allows seeking relief from a final "proceeding," and an arbitration itself is a "proceeding." Plaintiff is moving for relief from the final arbitration proceeding.

7. Since Defendant argues that the use of FRCP 60(b) is procedurally defective contending that the orders compelling arbitration were not a final order, the Court has discretion to utilize the same motion under FRCP 54(b) which allows to vacate "any order or other decision, however designated ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." See *New Falls Corp. v. Soni Holdings, LLC*, No. 21-865-CV, 2022 WL 2720517, at *1 (2d Cir. July 14, 2022)(the District Court has discretion to utilize 54(b) on a 60(b) motion), *Smalls v. Collins*, 10 F.4th 117 (2d Cir. Aug. 20, 2021), *Colvin v. Keen*, 900 F.3d 63, 71 (2d Cir. 2018) (the revision of partial judgments under Rule 54(b) is not so restricted by the Federal Rules, as Rule 60(b). The Court should exercise that discretion to consider the motion under FRCP 54(b) so the motion can be considered on the merits, as the court did in *Buczakowski v. 1199SEIU*, No. 518CV0812LEKML, 2020 WL 2092480, at *1 (N.D.N.Y. May 1, 2020), instead of using procedural diversions to create an injustice. Either under FRCP 60(b) or 54(b) the merits are the same.

B) <u>The Motion is Timely</u>

8. As for Defendant's argument that the motion is untimely under FRCP 60(c), that argument is moot if the Court exercises its discretion to consider the motion under FRCP 54(b). Nonetheless, the motion is timely.

9. Before getting to the question of whether the motion is timely, it is important not to lose sight of the procedural posture. The Arbitrator

ruled:

> While the contract [(referring to the Customer Agreement)] between the parties did provide for a fee for "early termination," the evidence showed that Claimant brought an action in small claims court in which he recovered $698.00, which appears to have been in effect a refund for "defective services rendered." Under those circumstances, I find that no fee for "early termination" should have been due.

10. Defendant disagrees and has repeatedly asserted, and does the same in its opposition papers, that the $176 early termination fee is not collateral to the judgment of the Small Claims Court. (ECF 75 p. 9 "But there was no such 'disobedience.' ... It was Verizon Wireless's credit reporting and debt collection of a separate 'early termination' fee that was at issue in the arbitration.")

11. The Defendant's contention that the early termination fee was not collateral to the judgment of the Small Claims Court is effectively inviting the Court to review and reject the Small Claims judgment. Given that the Arbitrator found the early termination fee is collateral to the Small Claims judgment, Defendant is asking the Court to reject the effect of the Small Claims judgment by denying Plaintiff's motion. Rooker Feldman applies when the losing party in state court seeks review and rejection of a state court judgment. *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, No. 20-CV-3611 (JGK), 2022 WL 6664840, at *9 (S.D.N.Y. Oct. 11, 2022). "The Rooker–Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Est. of Murphy v. Area Co-op. Educ. Servs.*, 127 F. Supp. 2d 297, 302 (D. Conn. 2000). As such, the Court cannot reject the effect of the judgment of the Small Claims Court had on the early termination fee to assume that the judgment did not dispose that fee without violating Rooker Feldman.

12. Regardless of whether the Arbitrator has ultimately upheld the judgment of Small Claims Court, given that Defendant has invited the Court to limit the effect of the Small Claims judgment, Rooker-Feldman applies. "Whether a federal court has subject matter jurisdiction is a question that may be raised at any time by the court sua sponte." *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 177 (2d Cir. 2020), *cert. denied*,

141 S. Ct. 2878 (2021). As such, just on the question whether the Court should reject the early termination fee as collateral to the judgment of the Small Court, such review triggers Rooker-Feldman and the issue of jurisdiction may be raised at any time.

13. As such, the timeliness of the motion is irrelevant because the Court is now faced with an Arbitrator's award and this motion is filed within three months of the award. The question is whether the Court had the jurisdiction to compel arbitration *ab initio* over the dispute as to whether the Small Claims judgment is collateral over the early termination fee. This question is relevant because the Defendant invited the Court and the Arbitrator to reject the judgment of the Small Claims Court. Rooker-Feldman prohibits subject matter jurisdiction whenever there is such invitation, even if the Court is capable of avoiding the invitation. Because Defendant had invited the Court to delegate to the Arbitrator the authority of rejecting the judgment of the Small Claims Court, the Court was without jurisdiction to compel arbitration.

14. Even if the timeliness of the motion could somehow be relevant, the motion is timely. The argument that Defendant had presented to compel arbitration was that the early termination fee was not connected to the Small Claims judgment. The Arbitrator found otherwise. With the Arbitrator's finding in place, Plaintiff moved swiftly to vacate the orders compelling arbitration, since the Arbitrator dispelled any basis for disconnecting the early termination fee from the Small Claims judgment. As such, the motion is timely.

15. Regardless, there is the argument according to applicable standards, the Court could not have addressed the Plaintiff's argument any earlier—even though Plaintiff had argued in his handwritten opposition that the arbitration is foreclosed by the judgment (ECF 14 p. 4)[1]—because the Court took the view that the arbitration agreement was broad. "Accordingly, where the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this – coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability – constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318–19 (2d Cir. 2021). Here, the Court found that the arbitration agreement is

---

[1] "For arbitration has already been met at Small Claim action SC 3766/18 no arbitration is a valid [option]".

"sufficiently broad" where "agreement provides that the parties 'agree to resolve disputes only by arbitration', and that the agreement would be governed by the Federal Arbitration Act." (ECF 29). This finding arguably triggered *DDK Hotels*. As such the Court has unintentionally deferred the question of arbitrability to the Arbitrator. Now that the Arbitrator has decided that the early termination fee is collateral to the judgment of Small Claims Court, the fact that the arbitration agreement has merged with the judgment becomes visible and inescapable. Thus, the motion to vacate is timely.

### C) The Arbitrator Did Not Rule That the Arbitration Clause Survived the Judgment Merger.

16. As for the argument that the Arbitrator ruled that it had jurisdiction, that misconstrues what really happened. The Arbitrator stated:

> Having duly considered the submissions of the parties, I hereby rule pursuant to ICDR Rule 14 (a) that I do have jurisdiction to arbitrate this case because there is a valid arbitration agreement covering the claim.
>
> Additionally, the respondent's request to file a summary judgment motion on res judicata grounds is hereby denied under ICDR Rule 33 because, in light of the apparent differences between the claim at issue in the small claims case and the claim in this arbitration, I cannot determine based on the materials before me that Respondent has shown substantial cause that the motion is likely to succeed.

March 15, 2022 (ECF 67).

17. It is plain that the Arbitrator did not consider "the apparent differences between the claim at issue in the small claims case and the claim in this arbitration." Rather the assumption was that "there is a valid arbitration agreement covering the claim" sufficient to warrant a review of the merits without deciding whether the judgment merger rule apply. Such preliminary finding does not override or preclude a later ruling that the defense is barred by a prior judgment allowing the unwrapping of the fact that no arbitration agreement exist after the so-called Customer Agreement[2]

---

[2] Notably, the basis for arbitration arises from a fraudulent document labeled as a

merged with the judgment.

18. Moreover, the final award holds the early termination fee is collateral to the judgment of the Small Claims Court. On what basis did the "valid arbitration agreement" survive the judgment merger rule? The answer is None. Defendant has not cited any source to overcome the judgment merger rule. There is no support for Defendant's claim that the arbitration agreement continues in perpetuity by language of "continues to apply even after you have stopped receiving services from us." (quoting ECF 75 p. 5). The judgment merger rule and res judicata brings an end to all disputes and claims arising from the same transaction. There is nothing here to continue the arbitration agreement after a judgment has been entered resolving all disputes arising from the same transaction.

19. As such, the Arbitrator's ruling on jurisdiction was simply a preliminary assumption of the authority to decide the question of arbitrability and does not displace the Final Award that the early termination fee is collateral to the judgment of Small Claims Court, including for purposes of recognizing the judgment merger rule retroactively.

D) <u>An Arbitration Clause That Per Se Survived the Termination of Services Does Not Survive the Judgment Merger Rule.</u>

20. As for the argument that the arbitration clause survived the termination of services that argument is without any support to continue post judgment.

21. "The theory of merger of a judgment and its underlying cause of action, while it has served some other functions, essentially is based on a policy to prevent successive actions on the same cause. Hence it is closely related to the doctrine of res judicata." *Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*, 15 N.Y.2d 141, 147, 204 N.E.2d 638, 641 (1965). "New York has adopted the transactional analysis approach to res judicata, so that once a

---

"Customer Agreement" that are imposed on customers without the customer being able to agree, opt-out or reject such unsolicited extraneous terms. Defendant being a traditional monopoly as found by the Supreme Court (in *Verizon Commc'ns, Inc. v. F.C.C.*, 535 U.S. 467, 477, 122 S. Ct. 1646, 1654, 152 L. Ed. 2d 701 (2002)) uses its monopoly muscle to subjugate the consumer to extraneous terms with a a ban on private attorney general claims, punitive damages, and imposes arbitration. Defendant does not deny using its monopoly muscle to coerce customers and subjugating them to an arbitration agreement without there ever being a negotiation to call such extraneous terms as an "agreement."

claim is brought to a final conclusion, all other claims between the same parties or those in privity with them arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Kleinman v. Weisman L. Grp., P.C.*, 176 A.D.3d 1046, 1047, 110 N.Y.S.3d 122 (2019).

22. Defendant cannot and has not explained how and why its arbitration clause would survive the judgment merger rule. The judgment of the Small Claims Court has brought to a final conclusion the entire series of transactions between the parties.

23. Indeed, the purported arbitration agreement consents to resolving disputes in Small Claims Court. Once the Small Claims Court issues a judgment the entire series of transactions became resolved. See *Kleinman v. Weisman L. Grp., P.C.*, 176 A.D.3d 1046, 1047, 110 N.Y.S.3d 122 (2019) (collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same).

24. The issue here was clearly raised in Small Claims Court that Plaintiff sought a refund for defective services in its entirety and whether the parties owe money to each other relating to the defective service. As such the collateral estoppel and the judgment merger rule applies.

25. There is no merit that the arbitration clause "continues to apply even after you have stopped receiving services from us" to extend post judgment. The fact that an arbitration agreement applies after service was terminated only applies so long there is no judgment. Once there is a judgment, there is no dispute or controversy remaining for the arbitration clause to survive the judgment, otherwise such agreement would in essence be an agreement to dishonor a judgment. Public policy does not give Defendant the luxury to dishonor a judgment to continue shopping for arbitration awards that will give them the license to harm former customers.

E) <u>The Entire Basis of This Action Relies on The Judgment to Rectify the Reporting of a False Debt that is Foreclosed by the Judgment.</u>

26. Defendant falsely argues "the basis of the current action was <u>not</u> to enforce this judgment, but to challenge Verizon Wireless's credit reporting and collection of a $176.00 early termination fee under the FCRA and

FDCPA." (ECF 75 p. 4 underline in original). The original complaint and the amended complaint show otherwise.

27. The original complaint alleged that Defendant had continued the negative reporting of the early termination fee despite having prevailed in Small Claims Court. Relying on the judgment, Defendant pleaded for an order directing Defendant to remove the negative reporting from his credit report. (ECF 2-2)(Even they admit in Small Claims Court that they refunded me 698$ for bad service, but the 176$ they still have it on my credit report . . . They still refuse to remove the damaging information and false even after refunding the whole amount from monthly service.)

28. The amended complaint pleaded "Defendant's negative report is false because Plaintiff prevailed in Small Claims Court upholding the rescission awarding Plaintiff the refund of all monies paid." (ECF 63).

29. On a side note, this case is not per se a cause of action under the FDCPA, rather it shows that Defendant knowingly caused debt collectors to violate the FDCPA to warrant punitive damages by demonstrating the element of willfulness and reckless disregard to the rights of others.

## Reply on the Issue of Federal Standing

30. Defendant's argument that Plaintiff has alleged a concrete injury fails to grasp reality on two distinct points.

31. First point, the issue is not whether the Arbitrator stripped the Court of jurisdiction; the issue is whether the original complaint or amended complaint alleged an injury for federal jurisdiction. The answer is, it did not, and remand is required. The Arbitrator merely highlighted an absence of Article III standing to be in federal court.

32. Second point, Defendant argues that Plaintiff cited only a "single district court case" and dissemination of false information satisfies Article III. However, see other cases, *Hossain v. Trans Union, LLC*, No. 22CV5541PKCSJB, 2022 WL 14058958, at *3 (E.D.N.Y. Oct. 24, 2022) (allegations of dissemination of credit report to a third-party must describe "when and how Plaintiff's credit report was shared, who it was shared with, and how Plaintiff learned of the disclosure" and otherwise lack standing), *Williams v. Portfolio Recovery Assocs., LLC*, No. 21-CV-5656(DRH), 2022 WL 256510, at *3 (E.D.N.Y. Jan. 27, 2022) (false information disseminated to the third-party vendor about plaintiff owing a debt to defendant does not

support the existence of a concrete harm), *Gross v. TransUnion, LLC*, No. 21-CV-1329 (BMC), 2022 WL 2116669, at *3 (E.D.N.Y. June 13, 2022) (an "injury to his credit worthiness," "increased difficulty obtaining credit," and "embarrassment, humiliation, and other emotional injuries" is insufficient for Article III standing). The case here did not satisfy any of the foregoing elements.

33. In *Ramirez*, TransUnion, who is a credit reporting agency, communicated to third parties that Ramirez is a terrorist, which if false is defamatory. However, there mere existence of false information on a credit report is not considered a communication to third party. A complaint would need to allege that a "credit report was disseminated to a potential creditor or other third party in a manner that harmed him." *Shmaye Krausz, v. Loandepot.Com, LLC* No. 22 CV 152 (VB), 2022 WL 16960928, at *3 (S.D.N.Y. Nov. 16, 2022). But the complaint here did not do so. Because Federal standing "is not met when a plaintiff's injury arises from the independent action of some third party." *Connecticut Parents Union v. Wentzell*, 462 F. Supp. 3d 167, 173 (D. Conn. 2020), *aff'd sub nom. Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021). A claim "cannot rely on speculation about the unfettered choices made by independent actors not before the court" to create standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, 133 S. Ct. 1138, 1150, 185 L. Ed. 2d 264 (2013). In other words, even if the complaint alleged it was denied credit based on the information Defendant disseminated to third parties, the complaint would need to allege facts that plaintiff was otherwise entitled to that credit or benefit to show as the proximate cause that he was harmed. Here, Plaintiff alleged to have been denied credit for a credit card. But, whether to extend credit for a credit card is not a benefit that Plaintiff has alleged to have been entitled to, because credit cards by its nature is offered at the discretion of the provider. "[W]hat matters is whether the alleged injury *to the plaintiff* has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). A plaintiff does not have a traditional right to sue for denial of credit for a credit card. As such, Defendant's argument that there is federal standing because Plaintiff merely alleged to have been denied credit cards based on the dissemination of information to third parties is insufficient to confer federal standing where the decision whether to grant credit depends on unfettered choices made by independent actors.

## Reply on Vacating the Award with Regard to Damages

34. Plaintiff's motion presents three separate reasons for vacating or modifying the Arbitrator's award. First, pursuant to 9 USC 10(a)(4) the damages aspect did not arise from the purported Customer Agreement (which was the basis for arbitration) but from the judgment, and once the Arbitrator decided the question of arbitrability in favor of Plaintiff that the early termination fee is collateral to the judgment, the Arbitrator did not have the authority to decide the damages arising from dishonoring a judgment. Second, because the parties disputed enforceability of the limitation in the so-called Customer Agreement against statutory and punitive damages, the Arbitrator did not have the authority to decide whether Plaintiff's "proffered theories in support of a damage claim have merit." Third, the FCRA is a private-attorney-general statute, under the so-called Customer Agreement "NO...PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT" and "<u>THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.</u>" the Arbitrator did not have any authority to dispose with the dispute on the enforceability of the FCRA, because whether the Plaintiff can maintain a claim as a private attorney general is a question for the judiciary, not the Arbitrator. In the alternative, pursuant to 9 USC 10(a)(4) and 11(b) vacating and rejecting the arbitration award inasmuch it failed to consider damages under the FCRA.

35. Defendant distorts the reasons Plaintiff provided for vacating the arbitration award and invents its own theory as to what Plaintiff has submitted to the Court by distorting that (1) "Plaintiff's real dispute is with the outcome reached, not with the arbitrator's authority to award damages", (2) that Plaintiff had agreed to submit the issue of damages to the Arbitrator, (3) "The key question submitted to the arbitrator was whether Verizon Wireless's reporting and collection of a $176 unpaid early termination fee violated the FCRA and FDCPA", (4) "The arbitrator did not reference this limitation of liability in ruling that Plaintiff's evidence of damages was insufficient and that none of his proffered theories in support of a damage claim have merit", and (5) there was no disobedience to the judgment of Small Claims Court since it "was Verizon Wireless's credit reporting and debt collection of a separate 'early termination' fee that was at issue in the arbitration". Each of these distortions require a reply.

36. As for the first distortion that "Plaintiff's real dispute is with the outcome reached, not with the Arbitrator's authority to award damages." Defendant's bald lie is belied by the motion itself.

37. As outlined earlier, Plaintiff's motion in Argument III presents three separate reasons for vacating or modifying the Arbitrator's award. First, pursuant to 9 USC 10(a)(4) the damages aspect did not arise from the purported Customer Agreement (which was the basis for arbitration) but from the judgment, and once the Arbitrator decided the question of arbitrability in favor of Plaintiff that the early termination fee is collateral to the judgment, the Arbitrator did not have a contract for the authority to decide the damages that were caused by dishonoring the effect of the judgment. Second, because the parties disputed whether the limitation in the so-called Customer Agreement against statutory and punitive damages is enforceable, the Arbitrator did not have the authority to decide whether Plaintiff's "proffered theories in support of a damage claim have merit." Third, the FCRA is a private-attorney-general statute, under the so-called Customer Agreement "NO…PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT" and "<u>THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.</u>" the Arbitrator did not have any authority to dispose with enforceability of the FCRA, because whether the Plaintiff can maintain a claim as a private attorney general is a question for the judiciary, not the Arbitrator. In the alternative, pursuant to 9 USC 10(a)(4) and 11(b) vacating and rejecting the arbitration award inasmuch it failed to consider damages under the FCRA. The foregoing outline deals precisely with the lack of authority of the Arbitrator.[3]

38. In addition, Plaintiff has repeatedly disputed the basis for arbitration and informed AAA that he is only attending arbitration under duress and is protesting the very basis of arbitration. (ECF 60). Plaintiff's real dispute is with the entirety of arbitration because there is no arbitration

---

[3] Plaintiff's motion to vacate does NOT address the fact that the Arbitrator was more concerned with collecting his compensation to have included those fees in its award in the next sentence after absolving Defendant from paying any damages, rather than articulating some reasoning in its conclusory finding as to why "none of [Plaintiff's] proffered theories in support of a damage claim have merit" or why the evidence was insufficient.

agreement whatsoever and the Arbitrator had no authority whatsoever.

39. On the same note as for the second distortion, that Plaintiff had agreed to submit the issue of damages to the Arbitrator, this is another bald lie. Even if assuming that the Court compelled arbitration, that itself is not an agreement to submit the issue of damages to the Arbitrator. As the Court held, "But merely arguing the arbitrability issue to an Arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946, 115 S. Ct. 1920, 1925, 131 L. Ed. 2d 985 (1995). "Where a court makes an order of reference to arbitration, the Arbitrators render an award, and application is thereafter made to a court to confirm the award and enter judgment upon it, the questions of who arbitrated which issues and to what end must be viewed through the lens of the court's order compelling arbitration in the first place. In other words, the issue turns upon the scope of the court's order directing the parties to proceed to arbitration." *Cont'l Grp., Inc. v. NPS Commc'ns, Inc.*, 873 F.2d 613, 618 (2d Cir. 1989). As such, a Court order compelled arbitration—which is essentially a dictate by a coercive power threatening Plaintiff with dismissal if he does not submit to arbitration (ECF 41), cannot be viewed as an agreement to submit the issue of damages to the Arbitrator, because the parties "acted within the scope of their authority under the order directing the arbitration." See *Philippine Bulk Shipping Inc., Manila v. Int'l Mins. & Chem. Corp.*, 376 F. Supp. 654, 656 (S.D.N.Y. 1973). The Plaintiff was compelled to arbitration, the issue of damages was submitted to the Arbitrator under the coercive force of the orders compelling arbitration. As such, Defendant cannot show that the Plaintiff agreed to submit the issue of damages to the Arbitrator.

40. Indeed, "Despite the general policy favoring arbitration, the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of a particular dispute, a party cannot be compelled to forgo the right to seek judicial relief and instead submit to arbitration." *Saks & Co. v. Swiss Bank Corp.*, No. 94 CIV. 4616 (JFK), 1995 WL 11044, at *5 (S.D.N.Y. Jan. 12, 1995), *aff'd*, 62 F.3d 1412 (2d Cir. 1995). The Plaintiff was compelled to arbitration, once the Arbitrator decided that the early termination fee is collateral to the judgment of the Small Claims Court, Defendant has the burden of proving that there is an agreement to arbitrate the damages that incurred as a result of reporting an early termination fee foreclosed by a judgment

disposing that fee. Defendant cannot and has not passed that showing.

41. Moreover, "Arbitration is a matter of contract. In the normal course, a party who has not agreed to arbitrate cannot be required to submit to arbitration, and an arbitration award may not be enforced against him or her." *Orlogin, Inc. v. U.S. Watch Co.*, No. 90 CIV. 1106 (RJW), 1990 WL 364470, at *6 (S.D.N.Y. June 25, 1990). Defendant has not shown that Plaintiff agreed to submit the issue of damages to the Arbitrator, especially after the so-called Customer Agreement faded away when it merged with the judgment.

42. Likewise, Plaintiff is contesting the entire arbitration. The fact that Plaintiff is not seeking to vacate the Arbitrator's finding as to the early termination fee being collateral to the judgment is of no relevance. That is not Plaintiff accepting the Arbitrator's authority to decide the issue or agreeing with the outcome (because Plaintiff fully disputes the authority for arbitration in its entirety); rather the award disposed Defendant's hypothesis that there is a basis for arbitration. This is an award that Defendant asked for by seeking arbitration and Defendant is judicially estopped from switching positions and disclaiming it. The need to vacate such decision is where the Arbitrator under his own logic went on to decide damages on an issue it was clearly without an arbitration agreement. As such, vacatur is appropriate 9 USC 10(a)(4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

43. "A court may also vacate an award that exhibits 'manifest disregard of law,' that is, 'that the Arbitrator s were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" *Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc.*, 14 F. Supp. 3d 90, 96 (E.D.N.Y. 2014). The Arbitrator was fully aware that res judicata barred the basis for the early termination fee and the damages arises from the judgment and not the so-called Customer Agreement and chose to disregard it.

44. As for the third distortion Defendant argues that "The key question submitted to the Arbitrator was whether Verizon Wireless's reporting and collection of a $176 unpaid early termination fee violated the FCRA and FDCPA." Perhaps Defendant is trying to rebrand the key question by burying its head in the sand and pretending no one is seeing them. However, the parties' submissions before the Arbitrator show differently.

Plaintiff contended repeatedly that "This lawsuit arises out of an injury that Respondent caused after Claimant obtained a judgment in the Small Claims Court of Kings County against Respondent." (ECF 73-2, Exhibit O). Defendant contended that the early termination fee was valid and not affected by the judgment. (ECF 73-2, Exhibit N). The Arbitrator ruled that early termination fee was collateral to the judgment. The fact that Plaintiff addressed his basis for damages does not mean that Plaintiff "submitted" the issue to the Arbitrator. Rather, Plaintiff was acting under the coerciveness of the order compelling arbitration and preserving his posture so that he may reach to the point where he can appeal from the Court's decision compelling arbitration.

45. As for the fourth distortion that (4) "The arbitrator did not reference this limitation of liability in ruling that Plaintiff's evidence of damages was insufficient and that 'none of his proffered theories in support of a damage claim have merit'", that one is belied by the quote itself the Defendant cites. And is also belied by the catch all line "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied."

46. The parties contested before the Arbitrator the enforceability of the limitation of liability. Either the Arbitrator acknowledged the enforceability by stating that "none of his proffered theories in support of a damage claim have merit" or expressly did so in the catch all line "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied."

47. Furthermore, 15 U.S.C.A. § 1681n(a) and N.Y. Gen. Bus. Law § 380-l provides for statutory and punitive damages without "evidence" of an actual injury. "A court may also vacate an award that exhibits 'manifest disregard of law,' that is that the Arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc.*, 14 F. Supp. 3d 90, 96 (E.D.N.Y. 2014). Here the Arbitrator was fully aware that 15 U.S.C.A. § 1681n(a) and N.Y. Gen. Bus. Law § 380-l provides for statutory and punitive damages without "evidence" of an actual injury. As such, there is a just basis for vacating the arbitration award as to damages.

48. As for the fifth distortion that there was no disobedience to the judgment of Small Claims Court since it "was Verizon Wireless's credit reporting and debt collection of a separate 'early termination' fee that was at issue in the arbitration." That argument is belied by the facts and law.

49. The FCRA mandates a report of a debt be accurate. Defendant cannot and has not shown under which legal theory the reporting of an early termination fee would be actionable after there is a judgment of the Small Claims Court refunding the entire transaction. In particular, in light of res judicata and collateral estoppel, Defendant has no factual or legal basis for claiming that the early termination fee was somehow separate from the judgment refunding the entire transaction between the parties.

## Reply on the Limitations of Liability

50. It is long established that the FCRA is a private attorney general statute. "The FCRA is a private-attorney-general statute, and its enforcement depends on the willingness of private plaintiffs to bring claims." See *Prado v. Equifax Info. Servs. LLC*, 331 F.R.D. 134, 138 (N.D. Cal. 2019), *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 819 (E.D. Va. 2015), *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982). The FCRA serves for "citizen-suit" by "private plaintiffs" as an "enforcement action." *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2206 (2021).

51. Defendant claims that Plaintiff's argument for declaring the limitation on liability as null and void is "difficult to decipher." The Defendant is having difficulties with Plaintiff's argument because the so-called Customer Agreement states that the Arbitrator does not have the authority to decide the enforceability of private attorney general theories.

> NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. <u>NO</u> CLASS OR REPRESENTATIVE OR <u>PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.</u>

52. Given that the so-called Customer Agreement "limit claims against each other solely to direct damages. That means neither of us

will claim any damages that are indirect, special, consequential, incidental, treble or punitive." (ECF 73-1, Exhibit C). Defendant employed those provisions to limit the Arbitrator's ability to award damages available under FCRA.

53. Before the Arbitrator, Plaintiff has contested the limitation of liability as being foreclosed by public policy. As such, the Arbitrator was without any authority to decide the enforceability of the limitation against the FCRA. Nonetheless, since the so-called Customer Agreement states that only the Court can decide the enforceability of the limitation against the FCRA, Plaintiff requests a holding that the limitation of liability be declared as null and void. Defendant is having difficulty to "decipher" Plaintiff's argument because Defendant cannot dispute the plain language of its own so-called Customer Agreement.

54. Instead, of addressing Plaintiff's argument, Defendant argues that (1) "Plaintiff is once again asking the Court to substitute its own judgment for that of the arbitrator on an issue that the arbitrator did not even address" and (2) "the issue is moot because the arbitrator did not, in fact, rule on the limitation of liability provision in the parties' Customer Agreement."

55. As discussed earlier, the Arbitrator decided the enforceability by stating that "none of his proffered theories in support of a damage claim have merit" or expressly did so in the catch all line "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." With this type of jargon in the final award, Defendant has not and cannot explain how the arbitrator did not rely on the limitation of liability.

## As for the Remaining Arguments of Defendant's Opposition

56. This reply is limited to the extent of filing a reply to Defendant's Opposition (ECF 75) to Plaintiff's Motion (ECF 74). Defendant's remaining arguments found under heading E and F are directed as a reply in support of Defendant's motion (ECF 72). Because the rules do not contemplate a sur-reply without leave from the Court, Plaintiff will not address them here, but requests for leave to file a sur-reply should the Court deem those contentions necessary for its review.

# Conclusion

57. Wherefore, Plaintiff requests vacating the orders compelling arbitration and remanding the matter to the State court.

58. Wherefore, Plaintiff also requests in the alternative a holding that the Arbitrator exceeded its authority in deciding damages, which arises from a breach of judgment.

59. Wherefore, Plaintiff requests in the alternative that the limitation of damages provided in the Customer Agreement is inapplicable to Plaintiff's claim.

November 22, 2022
Respectfully submitted,

Yehuda Herskovic, yhm1234@yahoo.com, **347 731 8818**

plaintiff Yehuda Herskovic,

Telephone number **347-731-8818**

*[signature]*

11/22/2022